IN THE
UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA ex rel. | ) | |
| THOMAS O'FARRELL, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | 08 C 2403 |
| | ) | |
| EDDIE JONES,[1] | ) | |
| Warden, Pontiac Correctional Center, | ) | The Honorable |
| | ) | Milton I. Shadur, |
| Respondent. | ) | Judge Presiding. |

**LIMITED RESPONSE
TO PETITION FOR WRIT OF HABEAS CORPUS**

Pursuant to this Court's orders of May 1, 2008 (Doc. 6) and May 22, 2008
(Doc. 12), respondent EDDIE JONES states that he intends to rely on the one-year
statute of limitations prescribed by 28 U.S.C. § 2244(d)(1).  Respondent further
states that the instant petition for writ of habeas corpus is untimely and should be
dismissed with prejudice pursuant to Rule 4 of the Rules Governing Section 2254
Cases in the United States District Courts.  In support, respondent states as
follows:

---

[1]  Eddie Jones is no longer Warden at Pontiac Correctional Center.  Assistant
Warden Joseph Mathy is currently the "state officer who has custody" of petitioner,
and he should be substituted as the proper respondent in this action.  *See* Rule 2(a)
of the Rules Governing Section 2254 Cases in the United States District Courts;
Fed. R. Civ. P. 25(d)(1); *Rumsfeld v. Padilla*, 542 U.S. 426, 434-35 (2004) (citing
*Hogan v. Hanks*, 97 F.3d 189, 190 (7th Cir. 1996)); *Bridges v. Chambers*; 425 F.3d
1048, 1049-50 (7th Cir. 2005).

I.    **Procedural Background**

1.    Petitioner Thomas O'Farrell is incarcerated at the Pontiac

Correctional Center in Pontiac, Illinois, where he is in the custody of respondent

Eddie Jones.  Petitioner's prison identification number is K54340.

### Petitioner's Convictions and Direct Appeal

2.    On January 21, 1997, following a bench trial in the Circuit Court of

Cook County, Illinois, petitioner was convicted of murder and sentenced to 50 years'

imprisonment.  *See* Certified Statement of Disposition, *People v. O'Farrell*, No. 95

CR 30463, at 5-6 (Exh. A); *see also* Rule 23 Order, *People v. O'Farrell*, No. 1-97-

0911, at 1 (Ill.App. 1999) (Exh. B).

3.    On March 24, 1999, the state appellate court affirmed the judgment of

conviction and sentence, and modified petitioner's mittimus.  *See* Exh. B at 18-20.

4.    Petitioner filed a petition for leave to appeal (PLA) in the Illinois

Supreme Court that was denied on February 2, 2000.[2]  *See* PLA, *People v. O'Farrell*,

No. 88841 (Exh. C); *see also People v. O'Farrell*, 724 N.E.2d 1273 (Ill. 2000) (Table)

(Exh. D).  Respondent has confirmed that petitioner did not file a petition for writ of

certiorari in the United States Supreme Court.

_____

[2]  On November 1, 1999, petitioner filed a complaint for relief under the
Illinois Habeas Corpus Act, 735 ILCS 5/10-101, *et seq*. *See* Exh. A at 8.  The trial
court denied the complaint on November 2, 1999.  *Id*.  Although petitioner indicates
that no appeal was taken from that judgment, *see* Petition (Pet.) at 4, petitioner did
file a notice of appeal with respect to the denial of his habeas corpus complaint.
However, petitioner voluntarily moved to withdraw that appeal, and the state
appellate court granted that motion on January 31, 2001.  *See* Order of Jan. 31,
2001, *People v. O'Farrell*, No. 1-00-0968 (Ill.App.) (Exh. H).

-2-

**Petitioner's First Postconviction Petition and Related Proceedings**

5.     On January 20, 2000, petitioner filed his first pro se postconviction petition under 725 ILCS 5/122-1, *et seq.*  *See* Petitioner's App'x B – Exh. 16, at 43. Appointed counsel filed an amended petition on April 13, 2001, and an amendment to the amended petition on May 8, 2001.  *See* Amended Postconviction Petition, *People v. O'Farrell*, No. 95 CR 30463 (Exh. E).

6.     Also on January 20, 2000, petitioner filed a motion requesting that a judge other than Circuit Judge Michael P. Toomin (the judge who presided at trial) handle his postconviction petition.  *See* Motion for Different Judge, *People v. O'Farrell*, No. 95 CR 30463 (Exh. F).  Petitioner's motion for a judge other than Judge Toomin was denied on February 15, 2000.  *See* Ruling on Petitioner's Motion for Different Judge, *People v. O'Farrell*, No. 95 CR 30463 (Exh. G).

7.     On October 4, 2001, the state trial court granted the State's motion to dismiss petitioner's postconviction petition.  *See* Ruling on State's Motion to Dismiss, *People v. O'Farrell*, No. 95 CR 30463 (Exh. I).

8.     Petitioner did not file a timely notice of appeal from the judgment dismissing his first postconviction petition.  Rather, on November 1, 2001, petitioner mailed from prison four documents to the Circuit Court of Cook County: (1) an affidavit of intent to file an appeal with the state appellate court; (2) a motion to proceed in forma pauperis; (3) a motion for appointment of counsel; and (4) a motion requesting a copy of transcripts and common law records.  *See* Documents

Filed by Petitioner in the Circuit Court of Cook County on Nov. 1, 2001, *People v. O'Farrell*, No. 95 CR 30463 (Exh. J).

9.      On December 5, 2001, the trial court denied each of petitioner's motions.  *See* Report of Proceedings, *People v. O'Farrell*, No. 95 CR 30463 (Dec. 5, 2001) (Exh. K).

10.      On April 16, 2002, petitioner moved to compel the clerk of the circuit court to recognize his affidavit of intent to file a notice of appeal as a proper notice of appeal.  *See* Exh. A at 12.  On April 16, 2002, the state trial court denied that motion.  *Id.* at 13; *see also* Report of Proceedings, *People v. O'Farrell*, No. 95 CR 30463 (Apr. 11, 2002) (Exh. L).  The trial court first noted that there was no requirement that the clerk of the circuit court transmit to the state appellate court an affidavit of intent to file a notice of appeal.  Exh. L at 48.[3]  The court then observed that, in a March 7, 2002 letter from the state appellate court to petitioner, the clerk of the appellate court "pointed out to [petitioner] . . . that if he wished to appeal, he must file a motion in the Appellate Court for leave to file a late notice of appeal that meets the Supreme Court rule [ ] 606[c] . . ."  *Id.* at 49.

11.      More than two years later, on August 24, 2004, petitioner, through counsel, filed a motion in the state appellate court for leave to file a late notice of appeal from the trial court's judgment dismissing his first postconviction petition. *See* Motion for Leave to File a Late Notice of Appeal, *People v. O'Farrell*, No. 1-04-

---

[3]   In citing to the reports of proceedings, respondent refers to the page number indicated in the lower right-hand corner of those documents.

2481 (Ill.App) (Exh. M).  On September 7, 2004, the state appellate granted

petitioner's motion for leave to file a late notice of appeal.  *See* Order of Sept. 7,

2004, *People v. O'Farrell*, No. 1-04-2481 (Ill.App.) (Exh. N).

12.    On August 30, 2005, following briefing by the parties, the state

appellate court affirmed the judgment dismissing petitioner's first postconviction

petition.  *See* First Rule 23 Order, *People v. O'Farrell*, No. 1-04-2481 (Ill.App. 2005)

(Exh. O).

13.    Petitioner filed a PLA in the state supreme court that was denied on

January 25, 2006.  *See* PLA, *People v. O'Farrell*, No. 101468 (Exh. P).  However, in a

supervisory order entered that same day, the state supreme court vacated the state

appellate court's judgment and directed that court to (1) permit petitioner to file a

pro se supplemental brief; and (2) consider on the merits any claim raised in that

supplemental brief unless a resolution on other grounds was appropriate.  *See*

*People v. O'Farrell*, 844 N.E.2d 1233 (Ill. 2006) (Table); *see also* Pet. App'x B – Exh.

3.

14.    On May 21, 2007, upon remand from the state supreme court, the state

appellate court again affirmed the judgment dismissing petitioner's first

postconviction petition.  *See* Second Rule 23 Order, *People v. O'Farrell*, No. 1-04-

2481 (Ill.App. 2007) (Exh. Q).

15.    Acting pro se, petitioner filed a petition for rehearing in the state

appellate court.  On August 6, 2007, the appellate court entered a modified order

that again affirmed the judgment dismissing petitioner's first postconviction

petition.  *See* Rule 23 Order Upon Denial of Rehearing, *People v. O'Farrell*, No. 1-

04-2481 (Ill.App. 2007) (Exh. R).

16.     Petitioner then filed a PLA in the state supreme court that was denied

on November 29, 2007.  *See* PLA, *People v. O'Farrell*, No. 105256 (Exh. S); *People v.*

*O'Farrell*, 879 N.E.2d 936 (Ill. 2007) (Table) (Exh. T).

**Petitioner's Second Postconviction Petition and Related Proceedings**

17.     On May 14, 2003, petitioner filed his second pro se postconviction

petition in the Circuit Court of Cook County.  *See* Second Postconviction Petition,

*People v. O'Farrell*, No. 95 CR 30463 (Exh. U).[4]

18.     One week earlier, on May 7, 2003, petitioner moved to substitute for

cause the judge assigned to handle his second postconviction petition.  *See* Motion to

Substitute Judge for Cause, *People v. O'Farrell*, No. 95 CR 30463 (Exh. V).[5]  The

---

[4] The copy of petitioner's second postconviction petition that respondent obtained from the Circuit Court of Cook County does not indicate the date on which petitioner mailed that document from prison.  The circuit court did not receive the petition until May 28, 2003.  *See* Exh. A at 13.  Although the petition was signed by petitioner on May 7, 2003, it was not notarized until May 14, 2003.  Accordingly, May 14, 2003 appears to be the earliest date on which petitioner could have mailed his petition from prison.  But in any event, the instant federal habeas petition would still be untimely even if petitioner's second postconviction petition were deemed filed on May 7, 2003.  *See* Section II, *infra.*

[5] Although petitioner's motion to substitute judge for cause was notarized on May 7, 2003, the date on which petitioner mailed that document from prison is not indicated on the motion.  However, the date of this filing is not material to respondent's statute of limitations argument.

trial court denied petitioner's motion on July 9, 2003. *See* Report of Proceedings, *People v. O'Farrell*, No. 95 CF 30463 (Jul. 9, 2003) (Exh. W).

19.     On July 24, 2003, the trial court dismissed petitioner's second postconviction petition. *See* Order Dismissing Second Postconviction Petition, *People v. O'Farrell*, No. 95 CR 30463 (Exh. X).

20.     Petitioner took separate appeals from the judgment denying his second postconviction petition and the order denying his motion to substitute judge for cause. Through appointed counsel, petitioner subsequently moved in the state appellate court to dismiss both appeals. *See* Pet. App'x B – Exh. 5 (Motion to Dismiss Appeal, *People v. O'Farrell*, No. 1-03-2619 (Ill.App.) (appeal from denial of motion to substitute judge)); Pet. App'x B – Exh. 6 (Motion to Dismiss Appeal as Moot, *People v. O'Farrell*, No. 1-03-3404 (Ill.App.) (appeal from judgment dismissing second postconviction petition)).

21.     On March 29, 2004, the state appellate court granted petitioner's motions to dismiss appeal numbers 1-03-2619 and 1-03-3404. *See* Pet. App'x B – Exh. 5, at 3 (order dismissing appeal from denial of motion to substitute judge); *see also* Pet. at 4 (stating that appeal from dismissal of second postconviction petition was dismissed on March 29, 2004); Exh. Q at 8 (stating that appellate court granted petitioner's motion to voluntarily dismiss appeal from dismissal of second postconviction petition).

-7-

### Petitioner's Third Postconviction Petition

22.     On November 7, 2003, petitioner filed his third pro se postconviction petition in the Circuit Court of Cook County.  *See* Third Postconviction Petition, *People v. O'Farrell*, No. 95 CR 30463 (Exh. Y).  The trial court dismissed the petition on January 2, 2004.  *See* Ruling on Petitioner's Third Postconviction Petition, *People v. O'Farrell*, NO. 95 CR 30463 (Exh. Z).

23.     Petitioner appealed to the state appellate court, and appointed counsel filed a motion under *Pennsylvania v. Finley*, 481 U.S. 551 (1987), to withdraw as counsel on appeal.  *See* Motion to Withdraw as Counsel on Appeal, *People v. O'Farrell*, No. 1-04-1094 (Ill.App.) (Exh. AA).

24.     On October 31, 2005, after petitioner responded to the *Finley* motion, the state appellate court granted appointed counsel's motion to withdraw and affirmed the judgment dismissing petitioner's third postconviction petition.  *See* Rule 23 Order, *People v. O'Farrell*, No. 1-04-1094 (Ill.App. 2005) (Exh. BB).

25.     Petitioner filed a PLA in the state supreme court that was denied on January 25, 2006.  *See* PLA, *People v. O'Farrell*, No. 101736 (Exh. CC); *see also People v. O'Farrell*, 844 N.E.2d 970 (Ill. 2006) (Table) (Exh. DD).

### Federal Habeas Proceedings

26.     Petitioner filed the instant habeas petition on April 28, 2008, the date on which it was received by the district court clerk.  (*See* Doc. 1).  Petitioner did not indicate when (if at all) he placed his petition in the internal mailing system at

Pontiac Correctional Center, and he did not indicate that postage had been prepaid.

Consequently, petitioner may not avail himself of the "mailbox rule" applicable to

habeas corpus cases. *See* Rule 3(d), Rules Governing Section 2254 Cases in the

United States District Courts; *see also Ingram v. Jones*, 507 F.3d 640, 644 (7th Cir.

2007) (requiring "strict compliance" with similarly-worded "mailbox rule" in Fed. R.

App. P. 4(c)).[6]

27.    The instant petition raises five claims:

(A)    the prosecution knowingly introduced at sentencing false testimony
       from witness Thomas Dye;

(B)    trial counsel was ineffective for:

    (1)    failing to investigate or present a defense that petitioner could
       only be convicted of inducement to commit suicide or second
       degree murder;

    (2)    failing to successfully prosecute a motion to suppress petitioner's
       inculpatory custodial statement;

    (3)    failing to move to have Judge Toomin excused;

    (4)    coercing petitioner into electing a bench trial;

    (5)    failing to present mitigating evidence, and introducing
       unfavorable evidence, during sentencing; and

    (6)    committing errors the cumulative effect of which denied
       petitioner the effective assistance of counsel;

(C)    direct appeal counsel was ineffective for failing to argue that trial
       counsel was ineffective;

---

[6] Respondent notes that the petition is dated April 4, 2008.  Even under that more favorable filing date, the petition is still untimely.  *See* Section II, *infra*.

(D)    postconviction trial counsel was ineffective for:

    (1)    moving to dismiss petitioner's appeal from the judgment denying his pro se postconviction petition; and

    (2)    failing to amend petitioner's pro se postconviction petition with appropriate legal authority;

(E)    the cumulative impact of trial counsel's, direct appeal counsel's, and postconviction trial counsel's errors violated petitioner's Fifth, Sixth, and Fourteenth Amendment rights.

*See* Pet. at 6-20.

    28.    On May 1, 2008, this Court ordered respondent to file a response indicating (1) whether he intended to rely on the one-year statute of limitations applicable to habeas corpus petitions; and (2) whether the petition is or is not timely.  (*See* Doc. 6).  On May 22, 2008, this Court granted respondent's request for a 30-day extension of time in which to comply with the Court's May 1, 2008 order. (Doc. 12).

    29.    The following materials, pertinent to this Court's timeliness determination, are being manually filed with this Court under separate cover:

Exhibit A:    Certified Statement of Disposition, *People v. O'Farrell*, No. 95 CR 30463;

Exhibit B:    Rule 23 Order, *People v. O'Farrell*, No. 1-97-0911 (Ill.App. 1999);

Exhibit C:    PLA, *People v. O'Farrell*, No. 88841;

Exhibit D:    *People v. O'Farrell*, 724 N.E.2d 1273 (Ill. 2000) (Table);

Exhibit E:    Amended Postconviction Petition, *People v. O'Farrell*, No. 95 CR 30463;

Exhibit F:    Motion for Different Judge, *People v. O'Farrell*, No. 95 CR 30463;

Exhibit G:    Ruling on Petitioner's Motion for Different Judge, *People v. O'Farrell*, No. 95 CR 30463;

Exhibit H:    Order of Jan. 31, 2001, *People v. O'Farrell*, No. 1-00-0968 (Ill.App);

Exhibit I:    Ruling on State's Motion to Dismiss, *People v. O'Farrell*, No. 95 CR 30463;

Exhibit J:    Documents Filed in the Circuit Court of Cook County by Petitioner on Nov. 1, 2001, *People v. O'Farrell*, No. 95 CR 30463;

Exhibit K:    Report of Proceedings, *People v. O'Farrell*, No. 95 CR 30463 (Dec. 5, 2001);

Exhibit L:    Report of Proceedings, *People v. O'Farrell*, No. 95 CR 30463 (Apr. 16, 2002);

Exhibit M:    Motion for Leave to File a Late Notice of Appeal, *People v. O'Farrell*, No. 1-04-2481 (Ill.App);

Exhibit N:    Order of Sept. 7, 2004, *People v. O'Farrell*, No. 1-04-2481 (Ill.App.);

Exhibit O:    First Rule 23 Order, *People v. O'Farrell*, No. 1-04-2481 (Ill.App. 2005);

Exhibit P:    PLA, *People v. O'Farrell*, No. 101468;

Exhibit Q:    Second Rule 23 Order, *People v. O'Farrell*, No. 1-04-2481 (Ill.App. 2007);

Exhibit R:    Rule 23 Order Upon Denial of Rehearing, *People v. O'Farrell*, No. 1-04-2481 (Ill.App. 2007);

Exhibit S:    PLA, *People v. O'Farrell*, No. 105256;

Exhibit T:    *People v. O'Farrell*, 879 N.E.2d 936 (Ill. 2007) (Table);

Exhibit U:    Second Postconviction Petition, *People v. O'Farrell*, No. 95 CR 30463;

Exhibit V:    Motion to Substitute Judge for Cause, *People v. O'Farrell*, No. 95 CR 30463;

Exhibit W:    Report of Proceedings, *People v. O'Farrell*, No. 95 CF 30463 (Jul. 9, 2003);

Exhibit X:    Order Dismissing Second Postconviction Petition, *People v. O'Farrell*, No. 95 CR 30463;

Exhibit Y:    Third Postconviction Petition, *People v. O'Farrell*, No. 95 CR 30463;

Exhibit Z:    Ruling on Petitioner's Third Postconviction Petition, *People v. O'Farrell*, NO. 95 CR 30463;

Exhibit AA:   Motion to Withdraw as Counsel on Appeal, *People v. O'Farrell*, No. 1-04-1094 (Ill.App.);

Exhibit BB:   Rule 23 Order, *People v. O'Farrell*, No. 1-04-1094 (Ill.App. 2005);

Exhibit CC:   PLA, *People v. O'Farrell*, No. 101736; and

Exhibit DD:   *People v. O'Farrell*, 844 N.E.2d 970 (Ill. 2006) (Table).

## II.    Argument

Petitioner's petition for writ of habeas corpus should be dismissed with prejudice because it is untimely under 28 U.S.C. § 2244(d)(1), which imposes a one-year statute of limitations on the filing of § 2254 habeas corpus petitions. Section 2244(d) provides as follows:

> (1)  A 1-year period of limitations shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of—

(A)  the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B)  the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C)  the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D)  the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

(2)  The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d).

## A.    The Entire Application Is Untimely Under § 2244(d)(1)(A).

Under § 2244(d)(1)(A), petitioner's conviction became final on May 2, 2000 — 90 days after the Illinois Supreme Court denied his PLA on direct appeal — when the time for filing a petition for writ of certiorari in the United States Supreme Court expired. *See Anderson v. Litscher*, 281 F.3d 672, 674 (7th Cir. 2002). Therefore, petitioner's federal habeas petition was due to be filed on or before May 2, 2001.

The one-year statute of limitations is tolled during the pendency of a properly filed application for state postconviction relief.  *See* 28 U.S.C. § 2244(d)(2); *Allen v. Siebert*, 128 S.Ct. 2, 3 (2007).  Petitioner filed his first postconviction petition on January 20, 2000 (before his conviction became final), and respondent does not dispute that this filing tolled the limitations period under § 2244(d)(2).  The statute of limitations remained tolled until October 4, 2001, when the state trial court dismissed petitioner's first postconviction petition.  *See* Exh. H.

Under Illinois law, petitioner had 30 days from the entry of the trial court's judgment to file a timely notice of appeal.  *See* Ill. Sup. Ct. R. 606(b).  But as explained above, petitioner did not file a timely notice of appeal from the judgment dismissing his first postconviction petition.  *See* ¶¶9-11, *supra*.  Consequently, as of October 4, 2001, no "properly filed" application for postconviction relief was actually "pending" in state court.  *See Carey v. Saffold*, 536 U.S. 214, 219-20 (2002).  Therefore, the statute of limitations began to run on October 5, 2001, and it expired on October 4, 2002.  *See* Fed. R. Civ. P. 6(a).  Because petitioner did not file his federal habeas petition until April 4, 2008, it is untimely and should be dismissed with prejudice.

Petitioner is not entitled to statutory tolling under § 2244(d)(2) for any period of time between October 5, 2001 and October 4, 2002.  Petitioner might argue that the limitations period was tolled during the 30 days in which he could have filed, but did not file, a notice of appeal from the judgment dismissing his first

postconviction petition. Such an argument would be meritless. "When Congress intended to exclude from the limitations period time during which a pleading *could* have been filed, it did so explicitly." *Gildon v. Bowen*, 384 F.3d 883, 886 (7th Cir. 2004) (emphasis added) (citing 28 U.S.C. § 2244(d)(1)(A)). In contrast to § 2244(d)(1)(A) — which excludes the "time for seeking" direct review — subsection (d)(2) excludes from the limitations period only the time during which a petitioner has a "properly filed" application for postconviction review "pending" in state court.

Here, since petitioner never filed a notice of appeal during the 30-day period for doing so, that 30-day period is not "time during which a properly filed" postconviction petition was actually "pending." 28 U.S.C. § 2244(d)(2); *see also Gutierrez v. Schomig*, 233 F.3d 490, 492 (7th Cir. 2000) (Congress, rather than excluding the time in which a postconviction pleading could be filed, "explicitly required a 'properly filed' pleading to toll the statute of limitations"). Therefore, the limitations period was not tolled during those 30 days.[7]

Furthermore, although the state appellate court granted petitioner leave to file an untimely appeal from the judgment dismissing his first postconviction petition, petitioner did not request leave to file an untimely notice of appeal until

---

[7] In *Fernandez v. Sternes*, 227 F.3d 977, 980 (7th Cir. 2000), the Seventh Circuit expressly reserved the question whether the time provided for filing a collateral appeal to a higher court "is treated as time during which an application is pending, if the time expires without a filing." However, this Court need not resolve that issue because, even if the limitations period was tolled during the 30 days in which petitioner could have filed a notice of appeal, the statute of limitations would have expired on November 3, 2002, well before petitioner filed the instant petition.

August 24, 2004, nearly two years *after* § 2244(d)(1)(A)'s limitations period had expired. When a state court permits a prisoner to file an untimely appeal on collateral review, § 2244(d)(2) excludes from the limitations period only the "time between the filing of the request to excuse the default and the state court's decision on the merits (if it elects to excuse the default)." *Fernandez*, 227 F.3d at 980.

After the state trial court denied petitioner's first postconviction petition on October 4, 2001, that petition was not "pending" in state court until August 24, 2004, when petitioner filed a motion for leave to file an untimely notice of appeal that the state appellate court subsequently granted. *See id.* at 979-80. But since the one-year statute of limitations had expired on October 4, 2002, the pendency of petitioner's first postconviction appeal from August 24, 2004 until November 29, 2007 (when his PLA was denied by the state supreme court) could not toll the already-expired limitations period. *Accord Teas v. Endicott*, 494 F.3d 580, 582-83 (7th Cir. 2007) (subsection (d)(2) did not make federal petition timely where limitations period under § 2244(d)(1)(A) had expired three years before petitioner filed for state collateral relief); *see also Escamilla v. Jungwirth*, 426 F.3d 868, 870 (7th Cir. 2005) (state postconviction petition filed after § 2244(d)(1)'s limitations period had expired has no tolling effect under subsection (d)(2)); *United States ex rel. Chavez v. Evans*, No. 04 C 2646, 2004 WL 2211625, *1 (N.D. Ill. Sept. 30, 2004) (filing of untimely PLA, even if accepted by state supreme court, could not toll an already-expired limitations period).

Similarly, petitioner's second postconviction petition (filed on May 14, 2003) and his third postconviction petition (filed on November 7, 2003), *see* ¶18, ¶23, *supra*, are irrelevant for purposes of § 2244(d)(2) because they were filed after the statute of limitations expired on October 4, 2002. *Accord Teas*, 494 F.3d 582-83; *Escamilla*, 426 F.3d at 870.

Petitioner's entire application for habeas corpus relief is untimely under § 2244(d)(1)(A), and this Court should dismiss it with prejudice.

## B.     Petitioner's False Testimony Claim Is Not Timely Under § 2244(d)(1)(D).

Petitioner's first claim — that prosecutors knowingly introduced at sentencing false testimony from witness Thomas Dye — is not timely under § 2244(d)(1)(D). *See Pace v. DiGuglielmo*, 544 U.S. 408, 416 n.6 (2005) (limitations period under § 2244(d)(1)(D) requires claim-by-claim consideration). Under that subsection, the one-year statute of limitations begins running on "the date on which the factual predicate of the claim . . . could have been discovered through the exercise of due diligence." 28 U.S.C. § 2244(d)(1)(D). Petitioner appears to contend that the factual predicate of his false testimony claim — *i.e.*, that the prosecution knew or should have known that Dye's testimony was false, *see Giglio v. United States*, 405 U.S. 150, 154 (1972) — was not available to him until October 18, 2004. *See* Pet. at 6. On that date, Dye was deposed in an unrelated civil lawsuit and stated that an assistant state's attorney (ASA) pressured him to testify falsely at petitioner's sentencing hearing. *See* Pet. App'x A – Exh. 1. But any argument that

-17-

the limitations period with respect to petitioner's false testimony claim began

running on October 18, 2004 would be without merit.

Based on the allegations contained in petitioner's first pro se postconviction

petition (which was filed on January 26, 2000) and his amended petition (which was

filed by counsel on April 13, 2001), the factual predicate of petitioner's false

testimony claim was known to petitioner — or could have been discovered through

the exercise of due diligence — no later than April 13, 2001, the date that his

amended postconviction petition was filed.

First, petitioner alleged in his pro se petition that trial counsel was

ineffective in his handling of a motion to reconsider petitioner's 50-year sentence.

*See* Pet. App'x B – Exh. 16 at 5.  In support of that claim, petitioner argued that

"Dye had taken petitioner[']s legal and personal paperwork upon [Dye's] departure"

from the Cook County Jail where he and Dye had been cellmates, and that those

materials "contained a copy of the death certificate of the victim."  *Id.* at 7.

Petitioner attached to his petition two grievances that he filed with officials at the

Cook County Jail, each of which detailed how Dye had allegedly stolen petitioner's

legal and personal papers.  *See id.* at 48, 49-50.  The gist of petitioner's claim was

that Dye's testimony at the sentencing hearing was based on what Dye learned

from reading petitioner's legal and personal papers, and not on any admissions

about the crime that petitioner made to Dye while the two were housed together at

the Cook County Jail.  *See*, *e.g.*, *id.* at 28-29 ("The factual evidence that . . . Dye

testified to was obtained through the legal and personal paperwork that Dye had

taken from the cell that he and [p]etitioner shared" at the Cook County jail); *see also id.* at 29-30.

Second, petitioner supported his ineffective assistance claim by arguing in his pro se petition that "[t]he total testimony of State's witness[ ] Dye should be suppressed due to the misconduct and/or witness tampering of" the ASA who elicited Dye's testimony at sentencing. *Id.* at 8. According to petitioner, the ASA arranged two meetings between:

> Dye and Anne Dworak, the best friend to the victim in this cause at the suppression and sentencing hearings . . . so that Mrs. Dworak could give Dye some intimate details of the victim and [p]etitioner[']s life together to enhance [Dye's] testimony, making it more believable that [p]etitioner had confessed to him about the murder of the victim. These meetings took place in the jury room from the trial court. Mrs. Dworak was not a potential witness for the State and did not testify during the suppression or sentencing hearings . . . Furthermore, [the ASA] deceived and misled the trial court during the sentencing hearing by telling the trial court that the intimate details of the victim and petitioner[']s life together that . . . Dye testified to could have only been told to Dye by [p]etitioner.

*Id.* at 8; *see also id.* at 16-19 (alleging that trial counsel was ineffective for failing to prove to the trial court that Dye had perjured himself during sentencing); *id.* at 27-28 (repeating claim that prosecutor engaged in witness tampering).

Petitioner supported that allegation with an affidavit from his father, Thomas C. O'Farrell. *See* Pet. App'x A – Exh. 2, at 5-6. In the affidavit, petitioner's father averred that on August 22, 1996, he saw the prosecutor, Dye, and Dworak

enter the jury room before Dye was scheduled to testify at a pretrial hearing. The three emerged from the jury room ten to 15 minutes later. *Id.* at 5. Petitioner's father also averred that a similar meeting between the prosecutor, Dye, and Dworak occurred on February 24, 1997 — immediately before Dye testified in aggravation at petitioner's sentencing hearing. *Id.* at 6.

Third, in the amended petition filed by appointed counsel, petitioner raised a claim that direct appeal counsel was ineffective for failing to argue that trial counsel failed to assert in the trial court that the prosecutor engaged in misconduct in relation to Dye's testimony at sentencing. *See* Exh. E at 6. Specifically, petitioner contended that trial and direct appeal counsel should have argued that the prosecutor committed misconduct "in the presentation of the testimony of Mr. Dye as the prosecutors were made aware of accusations against Mr. Dye in his taking legal papers from [petitioner]." *Id.* Petitioner further alleged that prior counsel should have argued that prosecutors engaged in misconduct by "obtaining and presenting . . . Dye's testimony without first determining its veracity," given Dye's history of acting as an informant for the State's Attorney's Office. *Id.* In other words, petitioner's ineffective assistance claim was based in part on a factual predicate similar to one on which his current false testimony claim relies: prosecutors should have known that Dye's testimony was fabricated, given that (1) prosecutors "were made aware of accusations against Mr. Dye in his taking legal papers from" petitioner; and (2) prosecutors knew that Dye often testified against

defendants in criminal cases in exchange for leniency in Dye's pending criminal matters.

The foregoing excerpts from petitioner's pro se and amended postconviction petitions demonstrate that the factual predicate of petitioner's false testimony claim — that the prosecution knew or should have known that Dye's sentencing hearing testimony was false — was available to petitioner no later than April 13, 2001, when the amended petition was filed. Moreover, it does not appear from the record that petitioner previously sought an affidavit from Dye regarding whether prosecutors had pressured Dye to testify falsely at the sentencing hearing. If petitioner had been exercising due diligence, he would have sought an affidavit from Dye in 2000 and 2001. Indeed, that Dye in 2004 stated in a sworn deposition that he had been pressured to testify falsely at petitioner's sentencing hearings tends to refute a response by petitioner that seeking Dye's affidavit during state postconviction proceedings would have been futile.

That petitioner's false testimony claim is arguably bolstered by Dye's statements during the October 18, 2004 deposition does not mean that the one-year statute of limitations for that claim runs from that later date. As explained above, as of April 13, 2001, petitioner had substantial factual support for a claim that prosecutors introduced at sentencing testimony from Dye that they knew or should have known was perjured. *See* pp. 17-20, *supra*. Because Dye's statements during the 2004 deposition merely corroborate the already available factual predicate of petitioner's false testimony claim, petitioner's discovery of that additional factual

material does not restart the limitations period.  *Accord Escamilla*, 426 F.3d at 871

("Section 2244(d)(1)(D) does not restart the time when corroborating evidence

becomes available; if it did, then the statute of limitations would fail in its purpose

to bring finality to criminal judgments, for any prisoner could reopen the judgment

by locating any additional fact.").[8]

Because the factual predicate of petitioner's false testimony was available —

or could have been discovered with due diligence — on April 13, 2001, petitioner

was required to raise that claim in a federal habeas petition on or before April 13,

2001.  However, as discussed above, petitioner's first postconviction petition was

pending at that time, and it tolled the statute of limitations until October 4, 2001.

*See* p. 14, *supra.*  As also discussed above, petitioner is not entitled to statutory

tolling for any period between October 5, 2001 and October 4, 2002.  *See* pp. 14-16,

*supra.*  Accordingly, petitioner's false testimony claim is time-barred even under the

more generous benchmark provided by § 2244(d)(1)(D) because it was not asserted

on federal habeas review until April 28, 2008.

---

[8]  In *Townes v. Brooks*, No. 04-5002, 2005 WL 1377888, *4 (N.D. Pa. Jun. 8, 2005), the district court held that the limitations period for petitioner's false testimony claim ran under § 2244(d)(1)(D) from the date on which petitioner received affidavits from two witnesses averring that they had testified falsely at petitioner's trial.  *Townes* is distinguishable because nothing in the court's opinion in that case indicates — as is the case here — that substantial factual support for the false testimony claim was available prior to a witness' statement that his testimony was false.

### C. Petitioner Is Not Entitled To Equitable Tolling.

Petitioner has not alleged, and there is nothing in the record to suggest, that extraordinary circumstances beyond his control prevented him from timely filing a federal habeas petition. *See Pace*, 544 U.S. at 418 (assuming without deciding that § 2244(d)(1)'s limitations period may be equitably tolled). Accordingly, this Court should hold that equitable tolling is not warranted in petitioner's case.

Respondent has considered that petitioner might argue that his postconviction trial attorney's failure to file a notice of appeal from the judgment dismissing his first postconviction petition warrants equitable tolling. Such an argument would have no merit, as both the Supreme Court and the Seventh Circuit have held that attorney errors are insufficient to justify equitable tolling, especially in the postconviction context where there is no constitutional right to counsel. *Lawrence v. Florida*, 127 S.Ct. 1079, 1085 (2007) ("Attorney miscalculation is simply not sufficient to warrant equitable tolling, particularly in the postconviction context where prisoners have no constitutional right to counsel"); *Powell v. Davis*, 415 F.3d 722, 727 (7th Cir. 2005) ("'attorney misconduct, whether labeled negligent, grossly negligent, or willful, is attributable to the client' and thus is not a circumstance beyond a petitioner's control that might excuse an untimely petition") (quoting *Modrowski v. Mote*, 322 F.3d 965, 968 (7th Cir. 2003)).

But any error by postconviction trial counsel notwithstanding, petitioner remained free to file a federal habeas petition between October 5, 2001 and October 4, 2002 if he was concerned that the lack of a timely-filed notice of appeal would

-23-

jeopardize his ability to pursue federal habeas relief.  *See generally Dolis v. Chambers*, 454 F.3d 721, 725 (7th Cir. 2006) ("We have gone so far as to suggest that it would be wise for a petitioner to file in both state and federal court simultaneously, particularly where there is some procedural uncertainty about the state court post-conviction proceeding, and then ask the district court to stay the federal case until the state case concludes to ensure that she does not miss the one-year deadline").  His failure to do so, as well as his failure promptly to file in the state appellate court a motion for leave to file a late notice of appeal, *see* Ill. Sup. Ct. R. 606(c) (motion for leave to file late notice of appeal must be filed no later than six months after time for filing notice of appeal has expired), demonstrate petitioner's lack of diligence.  *See Pace*, 544 U.S. at 418 (equitable tolling only available if prisoner has been diligently pursuing his rights).

## CONCLUSION

For the reasons set forth above, the instant petition for writ of habeas corpus is untimely and should be dismissed with prejudice.  If this Court determines that any of petitioner's claims are timely, respondent respectfully requests 30 days from the entry of the Court's order to address the merits and/or procedural defaults of those claims.

June 17, 2008                                   Respectfully submitted,

                                                LISA MADIGAN
                                                Attorney General of Illinois

                              By:     s/ Michael R. Blankenheim
                                      MICHAEL R. BLANKENHEIM, Bar # 6289072
                                      Assistant Attorney General
                                      100 West Randolph Street, 12th Floor
                                      Chicago, Illinois 60601-3218
                                      TELEPHONE: (312) 814-8826
                                      FAX: (312) 814-2253
                                      EMAIL: mblankenheim@atg.state.il.us

**CERTIFICATE OF SERVICE**

I hereby certify that on June 17, 2008, I electronically filed respondent's **Limited Response To Petition For Writ Of Habeas Corpus** with the Clerk of the United States District Court for the Northern District of Illinois, Eastern Division, using the CM/ECF system, and that on the same date I mailed by United States Postal Service the same to the following non-registered party:

Thomas O'Farrell, K54340
Pontiac Correctional Center
700 West Lincoln Street
P.O. Box 99
Pontiac, Illinois 61764

s/ Michael R. Blankenheim
MICHAEL R. BLANKENHEIM, Bar # 6289072
Assistant Attorney General
100 West Randolph Street, 12th Floor
Chicago, Illinois 60601-3218
TELEPHONE: (312) 814-8826
FAX: (312) 814-2253
EMAIL: mblankenheim@atg.state.il.us