

IN THE
UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

**FILED**

UNITED STATES OF AMERICA ex rel.        )
  THOMAS O'FARRELL,                                )
                                     )        **JUN 1 7 2008** T C
             Petitioner,                         )
                                      )        **MICHAEL W. DOBBINS**
                                      )        **CLERK, U.S. DISTRICT COURT**
           v.                                          )        08 C 2403
                                      )
EDDIE JONES,                                        )
  Warden, Pontiac Correctional Center,    )        The Honorable
                                      )        Milton I. Shadur,
             Respondent.                      )        Judge Presiding.

## TO THE CLERK OF THE UNITED STATES DISTRICT COURT

The attached exhibits A through DD to respondent's Limited Answer to

Petition for Writ of Habeas Corpus are hereby filed with this Court:

> Exhibit A:    Certified Statement of Disposition, *People v. O'Farrell*, No. 95
> CR 30463;
>
> Exhibit B:    Rule 23 Order, *People v. O'Farrell*, No. 1-97-0911 (Ill.App. 1999);
>
> Exhibit C:    PLA, *People v. O'Farrell*, No. 88841;
>
> Exhibit D:    *People v. O'Farrell*, 724 N.E.2d 1273 (Ill. 2000) (Table);
>
> Exhibit E:    Amended Postconviction Petition, *People v. O'Farrell*, No. 95 CR
> 30463;
>
> Exhibit F:    Motion for Different Judge, *People v. O'Farrell*, No. 95 CR
> 30463;
>
> Exhibit G:    Ruling on Petitioner's Motion for Different Judge, *People v.
> O'Farrell*, No. 95 CR 30463;

Exhibit H:     Order of Jan. 31, 2001, *People v. O'Farrell*, No. 1-00-0968 (Ill.App);

Exhibit I:     Ruling on State's Motion to Dismiss, *People v. O'Farrell*, No. 95 CR 30463;

Exhibit J:     Documents Filed in the Circuit Court of Cook County by Petitioner on Nov. 1, 2001, *People v. O'Farrell*, No. 95 CR 30463;

Exhibit K:     Report of Proceedings, *People v. O'Farrell*, No. 95 CR 30463 (Dec. 5, 2001);

Exhibit L:     Report of Proceedings, *People v. O'Farrell*, No. 95 CR 30463 (Apr. 16, 2002);

Exhibit M:     Motion for Leave to File a Late Notice of Appeal, *People v. O'Farrell*, No. 1-04-2481 (Ill.App);

Exhibit N:     Order of Sept. 7, 2004, *People v. O'Farrell*, No. 1-04-2481 (Ill.App.);

Exhibit O:     First Rule 23 Order, *People v. O'Farrell*, No. 1-04-2481 (Ill.App. 2005);

Exhibit P:     PLA, *People v. O'Farrell*, No. 101468;

Exhibit Q:     Second Rule 23 Order, *People v. O'Farrell*, No. 1-04-2481 (Ill.App. 2007);

Exhibit R:     Rule 23 Order Upon Denial of Rehearing, *People v. O'Farrell*, No. 1-04-2481 (Ill.App. 2007);

Exhibit S:     PLA, *People v. O'Farrell*, No. 105256;

Exhibit T:     *People v. O'Farrell*, 879 N.E.2d 936 (Ill. 2007) (Table);

Exhibit U:     Second Postconviction Petition, *People v. O'Farrell*, No. 95 CR 30463;

Exhibit V:     Motion to Substitute Judge for Cause, *People v. O'Farrell*, No. 95 CR 30463;

Exhibit W:     Report of Proceedings, *People v. O'Farrell*, No. 95 CF 30463 (Jul. 9, 2003);

Exhibit X: Order Dismissing Second Postconviction Petition, *People v. O'Farrell*, No. 95 CR 30463;

Exhibit Y: Third Postconviction Petition, *People v. O'Farrell*, No. 95 CR 30463;

Exhibit Z: Ruling on Petitioner's Third Postconviction Petition, *People v. O'Farrell*, NO. 95 CR 30463;

Exhibit AA: Motion to Withdraw as Counsel on Appeal, *People v. O'Farrell*, No. 1-04-1094 (Ill.App.);

Exhibit BB: Rule 23 Order, *People v. O'Farrell*, No. 1-04-1094 (Ill.App. 2005);

Exhibit CC: PLA, *People v. O'Farrell*, No. 101736; and

Exhibit DD: *People v. O'Farrell*, 844 N.E.2d 970 (Ill. 2006) (Table).

June 17, 2008

Respectfully submitted,

LISA MADIGAN
Attorney General of Illinois

By:

MICHAEL R. BLANKENHEIM, Bar # 6289072
Assistant Attorney General
100 West Randolph Street, 12th Floor
Chicago, Illinois 60601-3218
TELEPHONE: (312) 814-8826
FAX: (312) 814-2253
EMAIL: mblankenheim@atg.state.il.us

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS        Page 001

PEOPLE OF THE STATE OF ILLINOIS

                    VS                    NUMBER 95CR3046301

    THOMAS        OFARRELL

            CERTIFIED STATEMENT OF CONVICTION / DISPOSITION

   I, DOROTHY BROWN, Clerk of the Circuit Court of Cook County, Illinois,
and keeper of the records and seal thereof do hereby certify that the
electronic records of the Circuit Court of Cook County show that:

The States Attorney of Cook County filed an INDICTMENT/INFORMATION
with the Clerk of the Circuit Court.

Charging the above named defendant with:

   720-5/9-1(A)(1)              F      MURDER/INTENT TO KILL/INJ
   720-5/9-1(A)(2)              F      MURDER/STRONG PROB KILL/I
The following disposition(s) was/were rendered before the Honorable Judge(s):


10/30/95 IND/INFO-CLK OFFICE-PRES JUDGE        11/13/95 1701
         95CR3046301 ID# CR100870240
11/13/95 CASE ASSIGNED                         11/13/95 1726
         FITZGERALD, THOMAS R.
11/13/95 DEFENDANT IN CUSTODY
         TOOMIN, MICHAEL P.
11/13/95 PRISONER DATA SHEET TO ISSUE
         TOOMIN, MICHAEL P.
11/13/95 PUBLIC DEFENDER APPOINTED
         TOOMIN, MICHAEL P.
11/13/95 DEFENDANT ARRAIGNED
         TOOMIN, MICHAEL P.
11/13/95 PLEA OF NOT GUILTY
         TOOMIN, MICHAEL P.
11/13/95 ADMONISH AS TO TRIAL IN ABSENT
         TOOMIN, MICHAEL P.
11/13/95 MOTION FOR DISCOVERY                              E        2
         TOOMIN, MICHAEL P.
11/13/95 CONTINUANCE BY AGREEMENT        12/08/95
         TOOMIN, MICHAEL P.
12/08/95 DEFENDANT IN CUSTODY
         TOOMIN, MICHAEL P.
12/08/95 PRISONER DATA SHEET TO ISSUE
         TOOMIN, MICHAEL P.
12/08/95 DEFENDANT NOT IN COURT
         TOOMIN, MICHAEL P.
12/08/95 MOTION FOR DISCOVERY                              E        1
         TOOMIN, MICHAEL P.

EXHIBIT A

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS      Page 002

PEOPLE OF THE STATE OF ILLINOIS

                    VS                    NUMBER 95CR3046301

THOMAS        OFARRELL

CERTIFIED STATEMENT OF CONVICTION / DISPOSITION

   I, DOROTHY BROWN, Clerk of the Circuit Court of Cook County, Illinois,
and keeper of the records and seal thereof do hereby certify that the
electronic records of the Circuit Court of Cook County show that:

The States Attorney of Cook County filed an INDICTMENT/INFORMATION
12/08/95 CONTINUANCE BY AGREEMENT                    01/05/96
        TOOMIN, MICHAEL P.
01/05/96 DEFENDANT IN CUSTODY
        TOOMIN, MICHAEL P.
01/05/96 PRISONER DATA SHEET TO ISSUE
        TOOMIN, MICHAEL P.
01/05/96 CONTINUANCE BY AGREEMENT                    02/02/96
        TOOMIN, MICHAEL P.
02/02/96 DEFENDANT IN CUSTODY
        TOOMIN, MICHAEL P.
02/02/96 PRISONER DATA SHEET TO ISSUE
        TOOMIN, MICHAEL P.
02/02/96 MOTION FOR BAIL REDUCTION                          D        2
        TOOMIN, MICHAEL P.
02/02/96 MOTION TO QUASH ARREST                             E        2
        TOOMIN, MICHAEL P.
02/02/96 MOTION TO SUPPRESS EVIDENCE                        E        2
        TOOMIN, MICHAEL P.
02/02/96 CONTINUANCE BY AGREEMENT                    02/23/96
        TOOMIN, MICHAEL P.
02/23/96 DEFENDANT IN CUSTODY
        TOOMIN, MICHAEL P.
02/23/96 PRISONER DATA SHEET TO ISSUE
        TOOMIN, MICHAEL P.
02/23/96 CONTINUANCE BY AGREEMENT                    03/29/96
        TOOMIN, MICHAEL P.
03/29/96 DEFENDANT IN CUSTODY
        TOOMIN, MICHAEL P.
03/29/96 PRISONER DATA SHEET TO ISSUE
        TOOMIN, MICHAEL P.
03/29/96 CHANGE PRIORITY STATUS              R
        TOOMIN, MICHAEL P.
03/29/96 MOTION TO SUPPRESS EVIDENCE                        E        2
        TOOMIN, MICHAEL P.
03/29/96 WITNESSES ORDERED TO APPEAR                 03/29/96
        TOOMIN, MICHAEL P.
03/29/96 CONTINUANCE BY AGREEMENT                    05/23/96
        TOOMIN, MICHAEL P.

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS       Page 003

PEOPLE OF THE STATE OF ILLINOIS

                    VS                NUMBER 95CR3046301

    THOMAS        OFARRELL

              CERTIFIED STATEMENT OF CONVICTION / DISPOSITION

    I, DOROTHY BROWN, Clerk of the Circuit Court of Cook County, Illinois,
and keeper of the records and seal thereof do hereby certify that the
electronic records of the Circuit Court of Cook County show that:

The States Attorney of Cook County filed an INDICTMENT/INFORMATION
04/04/96 NOTICE OF MOTION/FILING                   05/23/96 1726
05/23/96 DEFENDANT IN CUSTODY
        TOOMIN, MICHAEL P.
05/23/96 PRISONER DATA SHEET TO ISSUE
        TOOMIN, MICHAEL P.
05/23/96 DEFENDANT IN CUSTODY
        TOOMIN, MICHAEL P.
05/23/96 PRISONER DATA SHEET TO ISSUE
        TOOMIN, MICHAEL P.
05/23/96 MOTION TO QUASH ARREST                         E        2
        TOOMIN, MICHAEL P.
05/23/96 MOTION TO SUPPRESS EVIDENCE                    E        2
        TOOMIN, MICHAEL P.
05/23/96 MOTION TO SUPPRESS                             E        2
        STATEMTS.
        TOOMIN, MICHAEL P.
05/23/96 WITNESSES ORDERED TO APPEAR      05/23/96
        TOOMIN, MICHAEL P.
05/23/96 CONTINUANCE BY AGREEMENT         05/31/96
        TOOMIN, MICHAEL P.
05/31/96 DEFENDANT IN CUSTODY
        TOOMIN, MICHAEL P.
05/31/96 PRISONER DATA SHEET TO ISSUE
        TOOMIN, MICHAEL P.
05/31/96 WITNESSES ORDERED TO APPEAR      05/31/96
        TOOMIN, MICHAEL P.
05/31/96 CONTINUANCE BY AGREEMENT         06/06/96
        TOOMIN, MICHAEL P.
06/06/96 DEFENDANT IN CUSTODY
        TOOMIN, MICHAEL P.
06/06/96 PRISONER DATA SHEET TO ISSUE
        TOOMIN, MICHAEL P.
06/06/96 WITNESSES ORDERED TO APPEAR
        TOOMIN, MICHAEL P.
06/06/96 CONTINUANCE BY AGREEMENT         06/17/96
        TOOMIN, MICHAEL P.
06/17/96 DEFENDANT IN CUSTODY
        TOOMIN, MICHAEL P.

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS      Page 004

PEOPLE OF THE STATE OF ILLINOIS

VS                         NUMBER 95CR3046301

THOMAS      OFARRELL

CERTIFIED STATEMENT OF CONVICTION / DISPOSITION

I, DOROTHY BROWN, Clerk of the Circuit Court of Cook County, Illinois,
and keeper of the records and seal thereof do hereby certify that the
electronic records of the Circuit Court of Cook County show that:

The States Attorney of Cook County filed an INDICTMENT/INFORMATION

| Date | Description | Date | Code | Num |
|------|-------------|------|------|-----|
| 06/17/96 | PRISONER DATA SHEET TO ISSUE | | | |
| | TOOMIN, MICHAEL P. | | | |
| 06/17/96 | CONTINUANCE BY AGREEMENT | 06/20/96 | | |
| | TOOMIN, MICHAEL P. | | | |
| 06/20/96 | DEFENDANT IN CUSTODY | | | |
| | TOOMIN, MICHAEL P. | | | |
| 06/20/96 | PRISONER DATA SHEET TO ISSUE | | | |
| | TOOMIN, MICHAEL P. | | | |
| 06/20/96 | WITNESSES ORDERED TO APPEAR | 06/20/96 | | |
| | TOOMIN, MICHAEL P. | | | |
| 06/20/96 | CONTINUANCE BY AGREEMENT | 06/25/96 | | |
| | TOOMIN, MICHAEL P. | | | |
| 06/25/96 | DEFENDANT IN CUSTODY | | | |
| | TOOMIN, MICHAEL P. | | | |
| 06/25/96 | PRISONER DATA SHEET TO ISSUE | | | |
| | TOOMIN, MICHAEL P. | | | |
| 06/25/96 | MOTION TO SUPPRESS EVIDENCE | | S | 2 |
| | AS TO THE LETTER | | | |
| | TOOMIN, MICHAEL P. | | | |
| 06/25/96 | MOTION TO SUPPRESS EVIDENCE | | D | 2 |
| | AS TO THE GUN | | | |
| | TOOMIN, MICHAEL P. | | | |
| 06/25/96 | MOTION TO QUASH ARREST | | D | 2 |
| | TOOMIN, MICHAEL P. | | | |
| 06/25/96 | MOTION TO SUPPRESS | | D | 2 |
| | STATEMTS. | | | |
| | TOOMIN, MICHAEL P. | | | |
| 06/25/96 | CONTINUANCE BY AGREEMENT | 07/15/96 | | |
| | TOOMIN, MICHAEL P. | | | |
| 07/15/96 | DEFENDANT IN CUSTODY | | | |
| | TOOMIN, MICHAEL P. | | | |
| 07/15/96 | PRISONER DATA SHEET TO ISSUE | | | |
| | TOOMIN, MICHAEL P. | | | |
| 07/15/96 | CONTINUANCE BY AGREEMENT | 08/22/96 | | |
| | TOOMIN, MICHAEL P. | | | |
| 08/09/96 | MOTION TO SUPPRESS | | E | 2 |
| 08/09/96 | HEARING DATE ASSIGNED | 08/22/96 1726 | | |

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS      Page 005

PEOPLE OF THE STATE OF ILLINOIS

                    VS                    NUMBER 95CR3046301

    THOMAS        OFARRELL

            CERTIFIED STATEMENT OF CONVICTION / DISPOSITION

    I, DOROTHY BROWN, Clerk of the Circuit Court of Cook County, Illinois,
and keeper of the records and seal thereof do hereby certify that the
electronic records of the Circuit Court of Cook County show that:

The States Attorney of Cook County filed an INDICTMENT/INFORMATION
08/22/96 DEFENDANT IN CUSTODY
        TOOMIN, MICHAEL P.
08/22/96 PRISONER DATA SHEET TO ISSUE
        TOOMIN, MICHAEL P.
08/22/96 MOTION TO SUPPRESS                            D        2
        STATEMTS.
        TOOMIN, MICHAEL P.
08/22/96 MOTION DEFT - CONTINUANCE - MD      09/27/96
        TOOMIN, MICHAEL P.
09/27/96 DEFENDANT IN CUSTODY
        TOOMIN, MICHAEL P.
09/27/96 PRISONER DATA SHEET TO ISSUE
        TOOMIN, MICHAEL P.
09/27/96 CONTINUANCE BY AGREEMENT            10/15/96
        TOOMIN, MICHAEL P.
10/15/96 DEFENDANT IN CUSTODY
        TOOMIN, MICHAEL P.
10/15/96 PRISONER DATA SHEET TO ISSUE
        TOOMIN, MICHAEL P.
10/15/96 ADMONISH PER SP CT RULE 402
        TOOMIN, MICHAEL P.
10/15/96 WITNESSES ORDERED TO APPEAR         10/15/96
        TOOMIN, MICHAEL P.
10/15/96 CONTINUANCE BY AGREEMENT            01/20/97
        TOOMIN, MICHAEL P.
01/21/97 DEFENDANT IN CUSTODY
        TOOMIN, MICHAEL P.
01/21/97 PRISONER DATA SHEET TO ISSUE
        TOOMIN, MICHAEL P.
01/21/97 JURY WAIVED
        TOOMIN, MICHAEL P.
01/21/97 MOTION DIRECT VERD OR FINDING                 D
        TOOMIN, MICHAEL P.
01/21/97 FINDING OF GUILTY                   C001
        TOOMIN, MICHAEL P.
01/21/97 LESSER INCLUDED OFFENSE MERGED      C002
        TOOMIN, MICHAEL P.

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS        Page 006

PEOPLE OF THE STATE OF ILLINOIS

VS                    NUMBER 95CR3046301

THOMAS        OFARRELL

CERTIFIED STATEMENT OF CONVICTION / DISPOSITION

I, DOROTHY BROWN, Clerk of the Circuit Court of Cook County, Illinois,
and keeper of the records and seal thereof do hereby certify that the
electronic records of the Circuit Court of Cook County show that:

The States Attorney of Cook County filed an INDICTMENT/INFORMATION
01/21/97 CHANGE PRIORITY STATUS            M
         TOOMIN, MICHAEL P.
01/21/97 WITNESSES ORDERED TO APPEAR            01/21/97
         TOOMIN, MICHAEL P.
01/21/97 CONTINUANCE BY AGREEMENT            01/24/97
         TOOMIN, MICHAEL P.
01/24/97 DEFENDANT IN CUSTODY
         TOOMIN, MICHAEL P.
01/24/97 PRISONER DATA SHEET TO ISSUE
         TOOMIN, MICHAEL P.
01/24/97 CONTINUANCE BY AGREEMENT            01/28/97
         TOOMIN, MICHAEL P.
01/24/97 CONTINUANCE BY AGREEMENT            01/28/97
         TOOMIN, MICHAEL P.
01/28/97 DEFENDANT IN CUSTODY
         TOOMIN, MICHAEL P.
01/28/97 PRISONER DATA SHEET TO ISSUE
         TOOMIN, MICHAEL P.
01/28/97 JURY WAIVED
         DEATH SENTENCING HRG.
         TOOMIN, MICHAEL P.
01/28/97 MOTION DECLARE DEATH PEN UNCON                    D        2
         TOOMIN, MICHAEL P.
01/28/97 PRE-SENT INVEST. ORD, CONTD TO        02/24/97 1726
         TOOMIN, MICHAEL P.
02/24/97 RECALL/EXEC SENT TO POLICE AGY
02/24/97 NOTICE OF APPEAL FILED, TRNSFR
02/25/97 NOTICE OF NOTICE OF APP MAILED
02/25/97 HEARING DATE ASSIGNED                02/28/97 1713
02/24/97 DEFENDANT IN CUSTODY
         TOOMIN, MICHAEL P.
02/24/97 PRISONER DATA SHEET TO ISSUE
         TOOMIN, MICHAEL P.
02/24/97 MOTION DEFENDANT - NEW TRIAL                    D
         TOOMIN, MICHAEL P.
02/24/97 DEF SENTENCED ILLINOIS DOC        C001
              50 YRS
         TOOMIN, MICHAEL P.

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS     Page 007

PEOPLE OF THE STATE OF ILLINOIS

VS                        NUMBER 95CR3046301

THOMAS       OFARRELL

## CERTIFIED STATEMENT OF CONVICTION / DISPOSITION

I, DOROTHY BROWN, Clerk of the Circuit Court of Cook County, Illinois, and keeper of the records and seal thereof do hereby certify that the electronic records of the Circuit Court of Cook County show that:

The States Attorney of Cook County filed an INDICTMENT/INFORMATION
02/24/97 CREDIT DEFENDANT FOR TIME SERV
                    515 DYS
        TOOMIN, MICHAEL P.
02/24/97 MOTION TO REDUCE SENTENCE                          D        2
        TOOMIN, MICHAEL P.
02/24/97 DEF ADVISED OF RIGHT TO APPEAL
        TOOMIN, MICHAEL P.
02/24/97 NOTICE OF APPEAL FILED, TRNSFR
        TOOMIN, MICHAEL P.
02/24/97 WARRANT QUASHED                     W001
        TOOMIN, MICHAEL P.
02/24/97 ORDER OF CRT, STAY OF MITTIMUS           03/20/97 1726
        TOOMIN, MICHAEL P.
02/28/97 PUBLIC DEF APPTD FOR APPEAL
02/28/97 O/C FREE REPT OF PROCD ORD N/C
02/28/97 MEMO OF ORDS & NOA PICKED-UP
03/12/97 REPT OF PRCDS ORD FR CRT RPT
03/13/97 APPELLATE COURT NUMBER ASGND                      97-0911
03/20/97 DEFENDANT IN CUSTODY
        SALONE MARCUS R.
03/20/97 LET MITTIMUS ISSUE/MITT TO ISS
        SALONE MARCUS R.
06/09/97 M/D PETN FOR TRNSCT,COMLAW RCD                     E        2
06/09/97 HEARING DATE ASSIGNED              06/13/97 1726
06/11/97 COMMON LAW RECORD PREPARED
06/13/97 DEFENDANT NOT IN COURT
        TOOMIN, MICHAEL P.
06/13/97 M/D PETN FOR TRNSCT,COMLAW RCD                     D
        AND CLR DENIED
        TOOMIN, MICHAEL P.
06/25/97 CLR RECD BY APP COUNSEL
        PUBLIC DEFENDER
08/05/97 TRANS PROC REC/FILED CLKS OFF
08/07/97 REPORT OF PROCEEDINGS PREPARED
08/13/97 REPRT/PROCDS RECD BY APP ATTRY
        PUBLIC DEFENDER
09/23/97 HEARING DATE ASSIGNED              09/30/97 1726

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS    Page 008

PEOPLE OF THE STATE OF ILLINOIS

VS                    NUMBER 95CR3046301

THOMAS      OFARRELL

CERTIFIED STATEMENT OF CONVICTION / DISPOSITION

I, DOROTHY BROWN, Clerk of the Circuit Court of Cook County, Illinois, and keeper of the records and seal thereof do hereby certify that the electronic records of the Circuit Court of Cook County show that:

The States Attorney of Cook County filed an INDICTMENT/INFORMATION
09/30/97 DEFENDANT NOT IN COURT
    TOOMIN, MICHAEL P.
09/30/97 SPECIAL ORDER
    MOTION TO CHANGE PROTECTION CUSTODY DEINED
    TOOMIN, MICHAEL P.
01/27/98 SUPPL REPORT OF PRCD PREPARED
01/27/98 SUPPL REC RECD BY APPL COUNSEL
    STATE APPELLATE DEFENDER
05/26/99 MANDATE FILED                      06/09/99 1701
06/09/99 REVIEW COURT AFFIRMANCE
    AS MODIFIED
    FITZGERALD, THOMAS R.
06/16/99 MANDATE FILED                      06/25/99 1701
06/25/99 MANDATE RECALLED                   05/25/99
    CLAY, EVELYN B.
10/25/99 DEFENDANT IN CUSTODY
    TOOMIN, MICHAEL P.
10/25/99 PRISONER DATA SHEET TO ISSUE
    TOOMIN, MICHAEL P.
10/25/99 HABEAS CORPUS PETITION FILED
    TOOMIN, MICHAEL P.
10/25/99 CONTINUANCE BY AGREEMENT           10/27/99
    TOOMIN, MICHAEL P.
11/01/99 HABEAS CORPUS PETITION FILED                F       2
11/01/99 HEARING DATE ASSIGNED              11/05/99 1726
    APPT. OF COUNSEL
11/02/99 HABEAS CORPUS PETITION DENIED               D       2
11/02/99 SPECIAL ORDER
    MOTION TO PROCEED IN FORMA PAUPERIS DENIED
    TOOMIN, MICHAEL P.
11/02/99 SPECIAL ORDER                               D
    MOTION TO APPOINT COUNSEL DENIED
    TOOMIN, MICHAEL P.
11/05/99 PREVIOUS ORDER TO STAND            11/02/99
    TOOMIN, MICHAEL P.
12/14/99 NOTICE OF APPEAL FILED, TRNSFR     00/00/00

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

Page 009

PEOPLE OF THE STATE OF ILLINOIS

VS

NUMBER 95CR3046301

THOMAS        OFARRELL

CERTIFIED STATEMENT OF CONVICTION / DISPOSITION

I, DOROTHY BROWN, Clerk of the Circuit Court of Cook County, Illinois, and keeper of the records and seal thereof do hereby certify that the electronic records of the Circuit Court of Cook County show that:

The States Attorney of Cook County filed an INDICTMENT/INFORMATION

| Date | Event | | Date | Call |
|------|-------|---|------|------|
| 01/18/00 | NOTICE OF NOTICE OF APP MAILED | | 00/00/00 | |
| 01/18/00 | HEARING DATE ASSIGNED | | 01/21/00 | 1713 |
| 01/26/00 | POST-CONVICTION FILED | CALL | 02/04/00 | 1701 |
| 01/26/00 | PAUPER PETITION FILED | | 02/04/00 | 1701 |
| 01/26/00 | HEARING DATE ASSIGNED | | 02/04/00 | 1701 |
| 01/21/00 | PUBLIC DEF APPTD FOR APPEAL | | 00/00/00 | |
| 01/21/00 | O/C FREE REPT OF PROCD ORD N/C | | 00/00/00 | |
| 01/21/00 | MEMO OF ORDS & NOA PICKED-UP | | 00/00/00 | |
| 02/04/00 | CASE ASSIGNED | | 02/04/00 | 1726 |
| | WOOD, WILLIAM S. | | | |
| 02/04/00 | CONTINUANCE BY ORDER OF COURT | | 02/07/00 | |
| | TOOMIN, MICHAEL P. | | | |
| 02/07/00 | TRANSFERRED | | 02/08/00 | 1712 |
| | TOOMIN, MICHAEL P. | | | |
| 02/08/00 | CONTINUANCE BY ORDER OF COURT | | 02/09/00 | |
| | MOORE, COLLEEN MCSWEENEY | | | |
| 02/09/00 | CONTINUANCE BY ORDER OF COURT | | 02/15/00 | |
| | MOORE, COLLEEN MCSWEENEY | | | |
| 02/15/00 | SPECIAL ORDER | | 00/00/00 | |
| | MOTION FOR DIFFERENT JUDGE TO CONSIDERED IS HE RD & DENIED | | | |
| | MOORE, COLLEEN MCSWEENEY | | | |
| 02/15/00 | TRANSFERRED | | 02/15/00 | 1726 |
| | MOORE, COLLEEN MCSWEENEY | | | |
| 02/10/00 | REPT OF PRCDS ORD FR CRT RPT | | 00/00/00 | |
| 02/22/00 | CONTINUANCE BY ORDER OF COURT | | 03/15/00 | |
| | TOOMIN, MICHAEL P. | | | |
| 03/09/00 | MANDATE FILED | | 03/21/00 | 1701 |
| 03/21/00 | REVIEW COURT AFFIRMANCE | | 00/00/00 | |
| | AS MODIFIED | | | |
| | WOOD, WILLIAM S. | | | |
| 04/24/00 | DEFENDANT NOT IN COURT | | 00/00/00 | |
| | TOOMIN, MICHAEL P. | | | |
| 04/24/00 | DEFENDANT IN CUSTODY | | 00/00/00 | |
| | TOOMIN, MICHAEL P. | | | |
| 04/24/00 | APPEARANCE FILED | | 00/00/00 | |
| | TOOMIN, MICHAEL P. | | | |
| 04/24/00 | CONTINUANCE BY AGREEMENT | | 07/12/00 | |
| | TOOMIN, MICHAEL P. | | | |

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS       Page 010

PEOPLE OF THE STATE OF ILLINOIS

                    VS                    NUMBER 95CR3046301

      THOMAS       OFARRELL

              CERTIFIED STATEMENT OF CONVICTION / DISPOSITION

    I, DOROTHY BROWN, Clerk of the Circuit Court of Cook County, Illinois,
and keeper of the records and seal thereof do hereby certify that the
electronic records of the Circuit Court of Cook County show that:

The States Attorney of Cook County filed an INDICTMENT/INFORMATION
04/14/00 NOTICE OF APPEAL FILED, TRNSFR      00/00/00
04/25/00 NOTICE OF NOTICE OF APP MAILED      00/00/00
04/25/00 HEARING DATE ASSIGNED               04/28/00 1713
04/28/00 SPECIAL ORDER                       00/00/00
      PRO SE
04/28/00 FREE REPORT OF PRCDS DENIED         00/00/00
04/28/00 MEMO OF ORDS & NOA PICKED-UP
05/09/00 APPELLATE COURT NUMBER ASGND        00/00/00 00-0968
05/17/00 TRANS PROC REC/FILED CLKS OFF       00/00/00
05/22/00 COMMON LAW RECORD PREPARED          00/00/00
05/22/00 REPORT OF PROCEEDINGS PREPARED      00/00/00
06/28/00 ILL STATE APPELLATE DEF APPTD       00/00/00
      PER APPELLATE COURT ORDER DATED JUNE 7, 2000
06/29/00 CLR RECD BY APP COUNSEL             00/00/00
      STATE APPELLATE DEFENDER
06/29/00 REPRT/PROCDS RECD BY APP ATTRY      00/00/00
      STATE APPELLATE DEFENDER
07/12/00 DEFENDANT NOT IN COURT              00/00/00
      TOOMIN, MICHAEL P.
07/12/00 CONTINUANCE BY AGREEMENT            08/14/00
      TOOMIN, MICHAEL P.
08/14/00 DEFENDANT NOT IN COURT              00/00/00
      TOOMIN, MICHAEL P.
08/14/00 DEFENDANT IN CUSTODY                00/00/00
      TOOMIN, MICHAEL P.
08/14/00 CONTINUANCE BY AGREEMENT            10/10/00
      TOOMIN, MICHAEL P.
04/28/00 REPT OF PRCDS ORD FR CRT RPT        00/00/00
10/10/00 DEFENDANT NOT IN COURT              00/00/00
      TOOMIN, MICHAEL P.
10/10/00 CONTINUANCE BY AGREEMENT            12/05/00
      TOOMIN, MICHAEL P.
12/05/00 DEFENDANT IN CUSTODY                00/00/00
      TOOMIN, MICHAEL P.
12/05/00 PRISONER DATA SHEET TO ISSUE        00/00/00
      TOOMIN, MICHAEL P.
12/05/00 CONTINUANCE BY AGREEMENT            01/09/01
      TOOMIN, MICHAEL P.

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS      Page 011

PEOPLE OF THE STATE OF ILLINOIS

                    VS                    NUMBER 95CR3046301

    THOMAS        OFARRELL

            CERTIFIED STATEMENT OF CONVICTION / DISPOSITION

    I, DOROTHY BROWN, Clerk of the Circuit Court of Cook County, Illinois,
and keeper of the records and seal thereof do hereby certify that the
electronic records of the Circuit Court of Cook County show that:

The States Attorney of Cook County filed an INDICTMENT/INFORMATION
01/09/01 DEFENDANT NOT IN COURT                   00/00/00
        TOOMIN, MICHAEL P.
01/09/01 CONTINUANCE BY AGREEMENT                 03/07/01
        TOOMIN, MICHAEL P.
03/07/01 DEFENDANT NOT IN COURT                   00/00/00
        TOOMIN, MICHAEL P.
03/07/01 CONTINUANCE BY AGREEMENT                 03/19/01
        TOOMIN, MICHAEL P.
03/19/01 CONTINUANCE BY AGREEMENT                 03/26/01
        TOOMIN, MICHAEL P.
03/26/01 CONTINUANCE BY ORDER OF COURT            04/13/01
        URSO, JOSEPH J.
04/03/01 MANDATE FILED                            04/12/01 1701
04/12/01 SPECIAL ORDER                            00/00/00
        APPELLANTS MOTION TO WITHDRAW APPEAL IS ALLOWE
        WOOD, WILLIAM S.
04/13/01 DEFENDANT NOT IN COURT                   00/00/00
        TOOMIN, MICHAEL P.
04/13/01 DEFENDANT IN CUSTODY                     00/00/00
        TOOMIN, MICHAEL P.
04/13/01 SPECIAL ORDER                            00/00/00
        LLV TO FILE AMENDED PC
        TOOMIN, MICHAEL P.
04/13/01 CONTINUANCE BY AGREEMENT                 05/30/01
        TOOMIN, MICHAEL P.
05/07/01 SPECIAL ORDER                            00/00/00
        AMENDMENT TO AMENDED P. C. PET.
05/30/01 DEFENDANT IN CUSTODY                     00/00/00
        TOOMIN, MICHAEL P.
05/30/01 PRISONER DATA SHEET TO ISSUE             00/00/00
        TOOMIN, MICHAEL P.
05/30/01 SPECIAL ORDER                            00/00/00
        LV STATE TO FILE MOTION TO DISMISS
        TOOMIN, MICHAEL P.
05/30/01 CONTINUANCE BY AGREEMENT                 06/28/01
        TOOMIN, MICHAEL P.
06/28/01 DEFENDANT NOT IN COURT                   00/00/00
        TOOMIN, MICHAEL P.

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS          Page 012

PEOPLE OF THE STATE OF ILLINOIS

                    VS                    NUMBER 95CR3046301

    THOMAS        OFARRELL

             CERTIFIED STATEMENT OF CONVICTION / DISPOSITION

    I, DOROTHY BROWN, Clerk of the Circuit Court of Cook County, Illinois,
and keeper of the records and seal thereof do hereby certify that the
electronic records of the Circuit Court of Cook County show that:

The States Attorney of Cook County filed an INDICTMENT/INFORMATION
06/28/01 DEFENDANT IN CUSTODY                    00/00/00
     TOOMIN, MICHAEL P.
06/28/01 SPECIAL ORDER                           00/00/00
     PETION TO FILE RESPONSE TO STATES MOTION TO DI MISS
     TOOMIN, MICHAEL P.
06/28/01 WITNESSES ORDERED TO APPEAR             00/00/00
     TOOMIN, MICHAEL P.
06/28/01 CONTINUANCE BY AGREEMENT                08/22/01
     TOOMIN, MICHAEL P.
08/22/01 DEFENDANT NOT IN COURT                  00/00/00
     TOOMIN, MICHAEL P.
08/22/01 SPECIAL ORDER                           00/00/00
     HRG. ON MOT/DIS AMENDED E & C
     TOOMIN, MICHAEL P.
08/22/01 CONTINUANCE BY AGREEMENT                10/04/01
     TOOMIN, MICHAEL P.
10/04/01 DEFENDANT NOT IN COURT                  00/00/00
     TOOMIN, MICHAEL P.
10/04/01 SPECIAL ORDER                           00/00/00
     MOT/DIS AMENDED PET. PCR GRANTED
     TOOMIN, MICHAEL P.
10/11/01 DEFENDANT NOT IN COURT                  00/00/00
     TOOMIN, MICHAEL P.
10/11/01 DEFENDANT IN CUSTODY                    00/00/00
     TOOMIN, MICHAEL P.
10/11/01 SPECIAL ORDER
     PET. & ORDER FOR ATTY/ FEES APPROVAL IN AMT. OF $2,485.27
     TOOMIN, MICHAEL P.
11/30/01 M/D PETN FOR TRNSCT,COMLAW RCD          00/00/00 F          2
11/30/01 PAUPER PETITION FILED                   00/00/00 F          2
11/30/01 HEARING DATE ASSIGNED                   12/05/01 1726
12/05/01 SPECIAL ORDER                           00/00/00
     MOTION DENIED
     TOOMIN, MICHAEL P.
04/11/02 SPECIAL ORDER                           00/00/00 F          2
     COMPEL CLERK/FILE DEFTS AFFIDV OF INTENT/ TO F LE APPEAL.
04/11/02 HEARING DATE ASSIGNED                   04/16/02 1726

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS          Page 013

PEOPLE OF THE STATE OF ILLINOIS

VS                    NUMBER 95CR3046301

THOMAS      OFARRELL

CERTIFIED STATEMENT OF CONVICTION / DISPOSITION

I, DOROTHY BROWN, Clerk of the Circuit Court of Cook County, Illinois, and keeper of the records and seal thereof do hereby certify that the electronic records of the Circuit Court of Cook County show that:

The States Attorney of Cook County filed an INDICTMENT/INFORMATION
04/16/02 DEFENDANT NOT IN COURT                 00/00/00
        TOOMIN, MICHAEL P.
04/16/02 DEFENDANT IN CUSTODY                   00/00/00
        TOOMIN, MICHAEL P.
04/16/02 SPECIAL ORDER                          00/00/00
        MTN TO COMPEL CLERK'S OFFICE TO FILE APPEAL IS DENIED.  CLERK TO NOTIFY.
        TOOMIN, MICHAEL P.
07/24/02 M/D PETN FOR TRNSCT,COMLAW RCD         00/00/00 F      2
07/24/02 HEARING DATE ASSIGNED                  08/01/02 1726
08/01/02 FREE REPORT OF PRCDS DENIED            00/00/00 D      2
        CLERK TO NOTIFY
        TOOMIN, MICHAEL P.
05/28/03 POST-CONVICTION FILED                  00/00/00
05/28/03 HEARING DATE ASSIGNED                  06/04/03 1701
06/04/03 CASE ASSIGNED                          06/04/03 1726
        BIEBEL, PAUL JR.
06/04/03 CONTINUANCE BY ORDER OF COURT          06/09/03
        EGAN, JAMES D.
06/09/03 CONTINUANCE BY ORDER OF COURT          06/11/03
        EGAN, JAMES D.
06/11/03 CONTINUANCE BY ORDER OF COURT          07/16/03
        TOOMIN, MICHAEL P.
07/09/03 MOTION S.O.J.-FOR CAUSE-FILED          00/00/00 S      2
        TOOMIN, MICHAEL P.
07/09/03 TRANSFERRED                            07/09/03 1712
        TOOMIN, MICHAEL P.
07/09/03 MOTION TO SUBSTITUTE JUDGE             00/00/00 D      2
        MOORE, COLLEEN MCSWEENEY
07/09/03 TRANSFERRED                            07/09/03 1726
        MOORE, COLLEEN MCSWEENEY
07/10/03 CONTINUANCE BY ORDER OF COURT          07/16/03
        GEARY, ADRIENNE M.
07/16/03 CONTINUANCE BY ORDER OF COURT          07/24/03
        TOOMIN, MICHAEL P.
07/24/03 POST-CONV PETITION DENIED              00/00/00
        TOOMIN, MICHAEL P.
07/25/03 NOTIFICATION SENT TO DEFENDANT         00/00/00

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS        Page 014

PEOPLE OF THE STATE OF ILLINOIS

                    VS                    NUMBER 95CR3046301

    THOMAS        OFARRELL

            CERTIFIED STATEMENT OF CONVICTION / DISPOSITION

    I, DOROTHY BROWN, Clerk of the Circuit Court of Cook County, Illinois,
and keeper of the records and seal thereof do hereby certify that the
electronic records of the Circuit Court of Cook County show that:

The States Attorney of Cook County filed an INDICTMENT/INFORMATION
08/12/03 NOTICE OF APPEAL FILED, TRNSFR          00/00/00
08/19/03 NOTICE OF NOTICE OF APP MAILED          00/00/00
08/19/03 HEARING DATE ASSIGNED                   08/22/03 1713
08/22/03 ILL STATE APPELLATE DEF APPTD           00/00/00
        BIEBEL, PAUL JR.
08/22/03 O/C FREE REPT OF PROCD ORD N/C          00/00/00
        BIEBEL, PAUL JR.
08/22/03 MEMO OF ORDS & NOA PICKED-UP            00/00/00
        BIEBEL, PAUL JR.
09/11/03 APPELLATE COURT NUMBER ASGND            00/00/00 03-2619
09/08/03 REPT OF PRCDS ORD FR CRT RPT            00/00/00
08/12/03 NOTICE OF APPEAL FILED, TRNSFR          00/00/00
11/04/03 NOTICE OF NOTICE OF APP MAILED          00/00/00
11/04/03 HEARING DATE ASSIGNED                   11/07/03 1713
11/07/03 POST-CONVICTION FILED                   00/00/00
11/07/03 HEARING DATE ASSIGNED                   11/17/03 1701
11/17/03 CASE ASSIGNED                           11/17/03 1726
        CRANE, CLAYTON J.
11/17/03 DEFENDANT NOT IN COURT                  00/00/00
        TOOMIN, MICHAEL P.
11/17/03 PRISONER DATA SHEET TO ISSUE            00/00/00
        TOOMIN, MICHAEL P.
11/17/03 CONTINUANCE BY ORDER OF COURT           12/17/03
        TOOMIN, MICHAEL P.
11/07/03 ILL STATE APPELLATE DEF APPTD           00/00/00
        BIEBEL, PAUL JR.
11/07/03 O/C FREE REPT OF PROCD ORD N/C          00/00/00
        BIEBEL, PAUL JR.
11/07/03 MEMO OF ORDS & NOA PICKED-UP            00/00/00
        BIEBEL, PAUL JR.
11/21/03 APPELLATE COURT NUMBER ASGND            00/00/00 03-3404
12/17/03 DEFENDANT IN CUSTODY                    00/00/00
        TOOMIN, MICHAEL P.
12/17/03 PRISONER DATA SHEET TO ISSUE            00/00/00
        TOOMIN, MICHAEL P.
12/17/03 CONTINUANCE BY ORDER OF COURT           01/07/04
        TOOMIN, MICHAEL P.

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS          Page 015

PEOPLE OF THE STATE OF ILLINOIS

                        VS                 NUMBER 95CR3046301

      THOMAS        OFARRELL

          CERTIFIED STATEMENT OF CONVICTION / DISPOSITION

    I, DOROTHY BROWN, Clerk of the Circuit Court of Cook County, Illinois,
and keeper of the records and seal thereof do hereby certify that the
electronic records of the Circuit Court of Cook County show that:

The States Attorney of Cook County filed an INDICTMENT/INFORMATION
12/26/03 TRANS PROC REC/FILED CLKS OFF          00/00/00
12/30/03 SUPPL REPORT OF PRCD PREPARED          00/00/00
01/02/04 SPECIAL ORDER                          00/00/00
         TOOMIN, MICHAEL P.
01/02/04 SPECIAL ORDER                          00/00/00
         TOOMIN, MICHAEL P.
01/02/04 SPECIAL ORDER                          00/00/00
         PETITION PCR DEMANDS PE ORDER FILES STAMP DATE
         TOOMIN, MICHAEL P.
01/02/04 SPECIAL ORDER                          00/00/00
         MOTION FOR LEAVE TO PROCEED IN FORMA PAUPERIS  S DENIED
         TOOMIN, MICHAEL P.
01/06/04 NOTIFICATION SENT TO DEFENDANT         00/00/00
01/07/04 DEFENDANT IN CUSTODY                   00/00/00
         TOOMIN, MICHAEL P.
01/07/04 PRISONER DATA SHEET TO ISSUE           00/00/00
         TOOMIN, MICHAEL P.
01/07/04 PREVIOUS ORDER TO STAND                01/02/04
         TOOMIN, MICHAEL P.
01/08/04 SUPPL REC RECD BY APPL COUNSEL         00/00/00
         STATE APPELLATE DEFENDER
01/23/04 COMMON LAW RECORD PREPARED             00/00/00
01/23/04 REPORT OF PROCEEDINGS PREPARED         00/00/00
01/27/04 CLR RECD BY APP COUNSEL                00/00/00
         STATE APPELLATE DEFENDER
01/27/04 REPRT/PROCDS RECD BY APP ATTRY         00/00/00
         STATE APPELLATE DEFENDER
01/29/04 SUPPL REPORT OF PRCD PREPARED          00/00/00
02/03/04 SUPPL REC RECD BY APPL COUNSEL         00/00/00
         STATE APPELLATE DEFENDER
02/17/04 REPT OF PRCDS ORD FR CRT RPT           00/00/00
04/23/04 ILL STATE APPELLATE DEF APPTD          00/00/00
         BIEBEL, PAUL JR.
04/23/04 O/C FREE REPT OF PROCD ORD N/C         00/00/00
         BIEBEL, PAUL JR.
04/23/04 MEMO OF ORDS & NOA PICKED-UP           00/00/00
         BIEBEL, PAUL JR.

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS        Page 016

PEOPLE OF THE STATE OF ILLINOIS

VS                              NUMBER 95CR3046301

THOMAS        OFARRELL

CERTIFIED STATEMENT OF CONVICTION / DISPOSITION

I, DOROTHY BROWN, Clerk of the Circuit Court of Cook County, Illinois, and keeper of the records and seal thereof do hereby certify that the electronic records of the Circuit Court of Cook County show that:

The States Attorney of Cook County filed an INDICTMENT/INFORMATION
| 05/19/04 | REPT OF PRCDS ORD FR CRT RPT | 00/00/00 | |
| 06/02/04 | MANDATE FILED | 06/11/04 | 1701 |
| 06/11/04 | SPECIAL ORDER | 00/00/00 | |
| | DEFENDANTS MOTION TO DISMISS APPEAL ALLOWED | | |
| | BIEBEL, PAUL JR. | | |
| 06/17/04 | SUPP TRAN PRO REC/FILE CLK OFF | 00/00/00 | |
| 06/25/04 | SUPPL REC RECD BY APPL COUNSEL | 00/00/00 | |
| | STATE APPELLATE DEFENDER | | |
| 06/22/04 | SUPPL REPORT OF PRCD PREPARED | 00/00/00 | |
| 09/03/04 | SUPP TRAN PRO REC/FILE CLK OFF | 00/00/00 | |
| 09/22/04 | SUPPL REPORT OF PRCD PREPARED | 00/00/00 | |
| 09/21/04 | NOTICE OF APPEAL FILED, TRNSFR | 00/00/00 | |
| 09/29/04 | NOTICE OF NOTICE OF APP MAILED | 00/00/00 | |
| 09/29/04 | HEARING DATE ASSIGNED | 10/01/04 | 1713 |
| 09/23/04 | SUPPL REC RECD BY APPL COUNSEL | 00/00/00 | |
| | STATE APPELLATE DEFENDER | | |
| 10/01/04 | ILL STATE APPELLATE DEF APPTD | 00/00/00 | |
| | BIEBEL, PAUL JR. | | |
| 10/01/04 | O/C FREE REPT OF PROCD ORD N/C | 00/00/00 | |
| | BIEBEL, PAUL JR. | | |
| 10/01/04 | MEMO OF ORDS & NOA PICKED-UP | 00/00/00 | |
| | BIEBEL, PAUL JR. | | |
| 10/08/04 | APPELLATE COURT NUMBER ASGND | 00/00/00 | 04-2481 |
| 11/23/04 | REPT OF PRCDS ORD FR CRT RPT | 00/00/00 | |
| 12/09/04 | MANDATE FILED | 12/20/04 | 1701 |
| 12/20/04 | SPECIAL ORDER | 00/00/00 | |
| | DEFENDANT MOTION TO DISMISS APPEAL ALLOWED | | |
| | BIEBEL, PAUL JR. | | |
| 12/22/04 | SUPPL REPORT OF PRCD PREPARED | 00/00/00 | |
| 12/28/04 | SUPPL REC RECD BY APPL COUNSEL | 00/00/00 | |
| | STATE APPELLATE DEFENDER | | |
| 12/28/04 | SUPPL REC RECD BY APPL COUNSEL | 00/00/00 | |
| | STATE APPELLATE DEFENDER | | |
| 01/04/05 | REPT OF PRCDS ORD FR CRT RPT | 00/00/00 | |
| 02/17/05 | COMMON LAW RECORD PREPARED | 00/00/00 | |
| 02/17/05 | CLR RECD BY APP COUNSEL | 00/00/00 | |
| | STATE APPELLATE DEFENDER | | |

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS        Page 017

PEOPLE OF THE STATE OF ILLINOIS

                    VS              NUMBER 95CR3046301

THOMAS        OFARRELL

        CERTIFIED STATEMENT OF CONVICTION / DISPOSITION

    I, DOROTHY BROWN, Clerk of the Circuit Court of Cook County, Illinois,
and keeper of the records and seal thereof do hereby certify that the
electronic records of the Circuit Court of Cook County show that:

The States Attorney of Cook County filed an INDICTMENT/INFORMATION
03/14/05 TRANS PROC REC/FILED CLKS OFF          00/00/00
03/16/05 SUPPL REC RECD BY APPL COUNSEL         00/00/00
        STATE APPELLATE DEFENDER
03/14/05 SUPPL REPORT OF PRCD PREPARED          00/00/00
03/28/05 REPORT OF PROCEEDINGS PREPARED         00/00/00
04/06/05 REPRT/PROCDS RECD BY APP ATTRY         00/00/00
        STATE APPELLATE DEFENDER
04/06/05 SUPPL REC RECD BY APPL COUNSEL         00/00/00
        STATE APPELLATE DEFENDER
06/24/05 SUPP TRAN PRO REC/FILE CLK OFF         00/00/00
06/30/05 SUPPL REPORT OF PRCD PREPARED          00/00/00
07/14/05 SUPPL REC RECD BY APPL COUNSEL         00/00/00
        STATE APPELLATE DEFENDER
02/28/06 MANDATE FILED                          03/10/06 1701
03/10/06 REVIEW COURT AFFIRMANCE                00/00/00
        BIEBEL, PAUL JR.
07/18/07 MANDATE FILED                          07/27/07 1701
        04-2481
07/27/07 REVIEW COURT AFFIRMANCE                00/00/00
        GAINER THOMAS V JR.
07/24/07 MANDATE FILED                          08/03/07 1701
        04-2481
08/03/07 MANDATE RECALLED                       00/00/00
        GAINER THOMAS V JR.
01/17/08 MANDATE FILED                          01/31/08 1701
        04-2481
01/31/08 REVIEW COURT AFFIRMANCE                00/00/00
        BIEBEL, PAUL JR.



                    I hereby certify that the foregoing has
                    been entered of record on the above
                    captioned case.
                    Date 05/08/08

                    _____
                              DOROTHY BROWN
        CLERK OF THE CIRCUIT COURT OF COOK COUNTY

*THIRD DIVISION*
*March 22, 1959*    *EXHIBIT 1ᵗ*

__NOTICE__

The text of this order may be changed or corrected prior to the time for filing of a Petition for Rehearing or the disposition of the same.

No. 1--97--0911

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the Circuit Court of Cook County. |
| Plaintiff-Appellee, | ) | |
| v. | ) | No. 95 CR 30463 |
| THOMAS O'FARRELL, | ) | Honorable Michael Toomin Judge Presiding. |
| Defendant-Appellant. | ) | |

O R D E R

Following a bench trial, defendant Thomas O'Farrell was convicted of first degree murder and sentenced to 50 years' imprisonment. On appeal, defendant contends that: (1) his sentence was excessive; (2) he should not have been subject to the truth-in-sentencing law because it violates the single subject rule of the Illinois Constitution; and (3) the mittimus should be amended to reflect that he was convicted and sentenced for only one count of first degree murder. For the reasons set forth below, we affirm and modify the mittimus.

In the early morning hours of September 28, 1995, defendant's wife, Lesley O'Farrell, was shot and killed by two gunshot wounds,

EXHIBIT B

16-58

1--97--0911

one to her head and the other to her chest. Defendant, who was 31 years old at the time, was charged by indictment with first degree murder of his wife. Defendant waived his right to a jury trial. Prior to trial, the court denied defendant's motions to quash his arrest and suppress his statements. The trial court also denied defendant's motion to suppress physical evidence with respect to a firearm the police found, but granted the motion with respect to a letter written by defendant's wife which had been taken off of a dresser by the police. The trial court also denied defendant's motion to suppress statements he made about why he shot his wife to Thomas Dye, a police informant, while both were being held in the Cook County jail.

At defendant's trial, Chicago police officer Veronica Pettry testified that she and her partner, Peter Maderer, received a radio call at 4:20 a.m. that a shooting or a burglary was in progress at defendant's address. When they arrived at defendant's house, the front door was open and defendant was sitting with his son on the base of a staircase inside the house. Defendant was bleeding from a gunshot wound and he told Officers Pettry and Maderer that he and his wife had been shot in their bedroom. Defendant described the shooter as "a six-foot-three inch, black man with short black hair, approximately 200 pounds." Defendant also stated that he thought his wife was dead and asked Pettry and Maderer to check on her. While Maderer checked the upstairs bedroom, defendant told Pettry that "he was sleeping, and he awoke, he heard a loud boom, which he

2

1--97--0911

suspected was a gunshot. And as he awoke, he saw this six-foot-three, 200 pound black man offender." After Maderer checked the upstairs master bedroom of the house and confirmed that defendant's wife was dead, Pettry and Maderer asked defendant how he became injured. Defendant told them he "tried to disarm the offender" and a struggle ensued from the bedroom and continued outside into the hallway, "at which time the gun went off." Defendant further told Pettry and Maderer that he thought that the offender had been shot in the stomach. Officer Maderer then searched the house to see if the intruder was still present but did not find him. When an ambulance arrived at the house, Pettry and Maderer told defendant to get medical treatment and that they would look around for more clues and check to see if there was anything missing.

Chicago police officer Ronald Cooper testified that he rode with defendant, who appeared to be injured in his shoulder, and defendant's son in the ambulance to the hospital. While in the ambulance, defendant told Cooper that "while he was sleeping he heard a loud noise followed by a second loud noise. At that time he awoke, and he observed *** [a] male black in his bedroom standing over his wife." Defendant also told Cooper that he "jumped out of his bed, and he grabbed the male black in his bedroom and they began to wrestle." Just outside the bedroom, in the hallway, two shots were fired. Defendant thought the black man was shot and one shot had struck defendant in the shoulder. Defendant also told Cooper that the black man ran down the stairs

3

16-60

1--97--0911

and out the door next to the kitchen, and defendant followed the man out of the house onto the street.

Chicago police detective William Kernan testified that he was assigned to go to the hospital and interview defendant. Defendant told Kernan that he was employed as a truck driver, got off work at 10:30 p.m. on September 27, 1998, stopped at a bar for a few beers, and left at approximately 11 p.m. Defendant also told Detective Kernan that he briefly spoke with his wife before going to bed and she told him that their two dogs had been barking. Defendant further told Kernan the same story he had told the other officers at his house and in the ambulance about how he and his wife had been shot.

Chicago police officer Patrick Moran testified that he was assigned to investigate the scene of the murder. Officer Moran stated that "[a] pane of the window [from the first floor bathroom] was missing and a pane of window glass was on the lawn in front of the window"; "below the window was a pile of flagstone and pieces of lumber"; and on the second floor of defendant's home he found two bullet holes in the wall and discovered pictures and broken wooden picture frames on the floor. Moran also identified a police photograph that showed a bed pillow that was lying across the victim's legs that had two bullet holes in it and powder burns and another photograph of a pillow with blood on it that was underneath the victim.

Detective Harry Collins testified that he arrived at

16-81

1--97--0911

defendant's home around 5 or 5:15 a.m. to conduct a search of
defendant's bedroom.  Collins did not have a warrant to search the
furniture, but he found a video cassette box that fell out of the
inside of a television cabinet when he bumped into it with his
foot.   Inside the box was a single-shot derringer pi...ol, some
expended shell casings and a hypodermic needle.  Collins also saw
a glass window pane which had been removed from the first floor
bathroom lying on the lawn and that putty had been removed from
around the window.

Detective Richard Schak testified that he learned at
approximately 8:30 a.m. on September 28, 1995, that a small
derringer pistol had been found in a movie video case in the
bedroom where Leslie O'Farrell was shot.   Detective Schak asked
defendant at the Area Five police headquarters if he owned a gun or
if there would be any reason for a gun to be in his home.
Defendant told Schak that "there wouldn't be any reason for a gun
to be there, and he didn't own a gun."  Schak then gave defendant
Miranda warnings.  According to Schak, after he told defendant that
a gun was found in the bedroom in a closed video case, defendant
responded, "You're right," and further stated "I did it.   I killed
her, but she wanted me to.  I did it for her."  Defendant explained
to Schak that his wife had been sick and she had diabetes, was
beginning to experience kidney failure, was diagnosed with Bell's
Palsy and was concerned about being disfigured.   Defendant also
stated that six months earlier his wife had tried to kill herself

5

1--97--0911

with an insulin overdose.  Defendant also told Schak that his wife
pleaded with him to help her take her own life, she asked him to
shoot her, she "came up" with the weapon, they made a plan, and he
did "take her life for her."

Defendant further told Schak that on the day of the shooting,
he went home after work and his wife talked to him about taking her
life.  Defendant also stated that his wife had taken the glass out
of the bathroom window and removed the glass so it would look like
somebody came into the house through the bathroom.  Defendant
further stated that his wife asked him to take her life after she
went to sleep.  Defendant waited after she fell asleep and she woke
up several times and continued to ask him why he did not take her
life.  After 4 a.m., defendant decided to go ahead and "continue
the plan" and fired a shot into his wife's skull through a pillow
while she was lying in bed.  Defendant then shot his wife in her
chest because she was quivering and moving around and he thought
she might be in some pain.  Thereafter, he fired a shot in the
hall, then shot himself in the shoulder and put the gun in the
video case.  Defendant then called 911.

Assistant State's Attorney Tom Kougias testified that he met
Detective Schak at Area Five police headquarters, had a
conversation with him, reviewed the police reports that were
available, and questioned defendant.  Detective Schak was present
while Kougias asked defendant questions.  Kougias stated that he
gave defendant *Miranda* warnings and interviewed defendant from

6

16-63

1--97--0911

approximately 11:30 a.m. until 2 p.m. on September 28, 1995.
Kougias' testimony was identical to Schak's regarding defendant's
wife's illnesses and defendant's version of the events that
occurred on the night defendant's wife was shot. Kougias further
testified that the "story" defendant and his wife decided on was to
make the bathroom window look like "a point of entry" for a "six-
foot-three-inch African-American male black" to break in the house,
shoot defendant's wife and then flee. Kougias also stated that
defendant told him that he went about the house throwing pictures
on the floor to make it look like a struggle had occurred and
pushed the screen door out beyond its limit so that it would break
and it would be more believable that the offender escaped through
the screen door.

The trial court subsequently found defendant guilty of two
counts of first degree murder, and merged count two into count one.
At defendant's sentencing hearing, in aggravation the State called
Thomas Dye, a police informant, who testified that in November and
December 1995 he was in the Cook County jail with defendant. While
there, defendant told him that he had killed his wife and "there
was insurance money involved." Defendant further told Dye that
being with his wife was a good thing to do financially because her
family had money; his parents and his wife's family were involved
in a custody battle concerning his son; he did not "know how to
handle it as far as keeping the insurance money tied into his side
of the family"; he had preplanned to kill his wife; and he did not

16-64

1--97--0911

like his wife, but stayed with her to "solidify the insurance money" that was coming from her grandparents. Dye also stated that defendant told him "[defendant's] son would inherit the money and [defendant] would control the inheritance based on his son being a minor."

Dye further testified that defendant told him that on the night of the shooting he got drunk at a bar and went back to his house, put a pillow over his wife's head and shot her. Dye also stated that defendant told him that if he was convicted of second degree murder "it would be okay because he would be out of jail before his son turned 18." Defendant further told Dye that he "hoped" to be found guilty of second degree murder because his father was a police officer, his wife was sick and he would tell the court it was a mercy killing, he did not have a record, and he was "clean-cut."

In mitigation, Dr. Larry Heinrich, a licensed clinical psychologist and board certified forensic examiner in psychology, testified in behalf of defendant that he examined defendant in May 1996 to evaluate him for fitness and sanity. According to Dr. Heinrich, defendant suffered from chronic depression and was experiencing a depressive disorder when he was in therapy during his marriage in 1992. Based on defendant's and his wife's therapy records, defendant's depressive disorder was related to family and personal issues such as financial conditions, his wife's health and the raising of his son. Heinrich also stated that defendant's wife

8

1--97--0911

talked about passive suicidal ideation and wishes in her therapy session, and wrote in her personal diary notes about despondencies, hopelessness, helplessness and a feeling of a sense of worthlessness and being useless as a woman. Heinrich further stated that at one time defendant and his wife considered separation and divorce.

Gerald Phillips, defendant's adopted brother, testified that as a child, defendant had asked his parents to take Phillips into their home and raise him after Phillips' parents had died and he was having problems with his new family. Phillips was eventually adopted by defendant's parents when he was 14 years old. John Kohn, defendant's brother-in-law testified that defendant came to his rescue after he was involved in a traffic altercation and was attacked and stabbed. Defendant also submitted 30 letters from his friends and family in his behalf that described defendant as a kind and compassionate person.

In closing argument, the State argued that defendant's act merited that defendant be sentenced to 60 years' imprisonment because defendant's murder of his wife was "pure sickness" based on defendant's acts in removing the bathroom window, throwing pictures down from off the wall to make the murder look like a struggle occurred, implicating a black person, and defendant's shooting of himself so that the police would believe he had been assaulted.

Defendant's counsel urged the trial court to impose the minimum sentence of 20 years' imprisonment based upon Dr.

9

K-66

1--97--0911

Heinrich's testimony; Dye's lack of credibility; defendant's participation in 20 sessions of marital counseling; the lack of evidence of any battery by defendant against his wife; defendant's lack of criminal history; and testimony that defendant had been a loving member of his family, helping out those in need and he was a good father.

Defendant testified that he was "very sorry for all the pain and suffering" he had caused everyone. Defendant further stated that he signed a prenuptial agreement and he would not receive financial gain from his wife's death. Defendant also asked the trial court to "please make a reasonable sentence [so] that [he] may one day return back to this society and try to make up to [his] son for the loss of his mother."

The trial court subsequently sentenced defendant to 50 years' imprisonment. Defendant filed a motion for new trial and a motion to reconsider his sentence, which the trial court denied. This appeal followed.

Defendant first contends that the trial court abused its discretion in sentencing him to 50 years' imprisonment, arguing that the sentence is excessive because he had no prior criminal history, had strong family and community support, the circumstances of his case were unique and unlikely to recur, and he had a "great amount of rehabilitative potential." Defendant also argues that Dye's testimony was "self-serving" and "completely untrustworthy and should be given no credence by this Court in assessing whether

10

1--97--0911

[his] sentence was excessive."   The State argues that the trial court's sentence was not an abuse of discretion based on the fact that defendant shot and killed his wife because "he no longer wanted to be married to her and wanted to gain control over a large inheritance which she had received."

"The standard of review of a sentence claimed to be excessive is whether *** the trial court exercised discretion and, if so, whether this discretion was abused."   People v. Cox, 82 Ill. 2d 268, 275, 412 N.E.2d 541 (1980).  A reviewing court is empowered to reduce the punishment that has been imposed by the trial court. 134 Ill. 2d R. 615(b)(4).  The trial court's judgment with regard to the appropriate punishment is entitled to great deference. People v. Illgen, 145 Ill. 2d 353, 379, 583 N.E.2d 515 (1991), citing People v. Godinez, 91 Ill. 2d 47, 55, 434 N.E.2d 1121 (1982).  "[A] reviewing court will not substitute its judgment for that of a sentencing court merely because it would have weighed the factors differently."   People v. Pittman, 93 Ill. 2d 169, 178, 442 N.E.2d 836 (1982), citing People v. Perruquet, 68 Ill. 2d 149, 368 N.E.2d 882 (1977).   The trial court is in the best position to determine an appropriate sentence because of its ability to hear evidence and view witnesses.   People v. Jones, 236 Ill. App. 3d 244, 251, 603 N.E.2d 619 (1992).

At the time of defendant's murder of his wife, the Unified Code of Corrections (Code) provided a sentence of imprisonment for first degree murder of not less than 20 years and not more than 60

11

16-68

1--97--0911

years.  730 ILCS 5/5--8--1 (a)(1)(a) (West 1996).  Section 5--4--1(c) of the Code provides that, "[i]n imposing a sentence for a violent crime *** the trial judge shall specify on the record the particular evidence, information, factors in mitigation and aggravation or other reasons that led to his sentencing determination."  730 ILCS 5/5--4--1(c) (West 1996).  "The nature of the crime, protection of the public, deterrence, and punishment all have equal status in the determination" in setting an appropriate sentence.  People v. Smith, 246 Ill. App. 3d 647, 653, 616 N.E. 2d 737 (1993).  It is also well settled that a trial court is not required to make an express finding that a defendant lacks rehabilitative potential nor accord greater weight to a defendant's potential for rehabilitation than to the seriousness of the offense.  People v. Boclair, 225 Ill. App. 3d 331, 335-36, 587 N.E.2d 1221 (1992).  A sentence within the statutory limitations will not be disturbed on review unless it is grossly disproportionate to the nature of the offense.  People v. Moore, 178 Ill. App. 3d 531, 542, 533 N.E.2d 463 (1988).

The trial court's statements at defendant's sentencing hearing here clearly indicate that the court considered all factors in aggravation and mitigation.  In imposing sentence, the trial court stated that the factors of aggravation "loom high."  The court also stated:

> "[What the facts] reveal is a sad and sorted
> [sic] tale, cold-blooded and rather ruthless

12

16-67

1--97--0911

> killing of a wife as she laid rather helpless
> in her bed. No struggle indicated, a plan
> purportedly devised by Lesley, so the
> defendant says, and acted upon by himself, and
> thereafter inflicted a not so grievous wound
> upon himself, and engaged in further deception
> to mask his own culpability."

The court also stated,

> "We have a factor of deterrence both for
> *** [defendant] that he must, by his own acts
> and conduct, be removed from society for a
> number of years to come, and the factor of
> deterrence, as in all cases, for others who
> may be similarly situated or inclined to
> emulate *** [defendant's] behavior here."

The court summarized the mitigating factors as follows,

> "It is true in mitigation that *** [defendant]
> has no prior history of criminal convictions,
> which the Court has and is duty bound to
> consider. He has obviously had the benefit of
> a good upbringing, parents who have been
> faithful to him, supportive, even up to this
> day, and, no doubt, will continue to be,
> numerous friends and family who have made
> submissions on his behalf today, somebody with

13

1--97--0911

> a fairly enviable background when I look at
> Mr. O'Farrell in contrast to many others who
> walk in and out of this courtroom.  He is a
> high school graduate, three years of college,
> enjoye_ fairly regula_ employment, at least
> for the three years preceding this event, had
> a family, has a young son, who, unfortunately,
> must suffer the loss of, not only his mother,
> but now his father as well."

The court further noted that while it felt defendant was "truly
remorseful for [the] inevitable result," defendant had overlooked
the fact that it was because of the life that was taken by his hand
that his son will lose the benefit of both parents.  The trial
court also stated that a factor it would consider, as defense
counsel pointed out, was that "this is a truth-in-sentencing case."

  We conclude that the trial court's remarks reveal that it
carefully considered both mitigating and aggravating factors in
sentencing defendant.  The trial court was in the best position to
determine an appropriate sentence because of its ability to hear
evidence, view witnesses and weigh the factors in aggravation and
mitigation in sentencing defendant.  We will not substitute our
judgment for that of the trial court.  Additionally, defendant's
50-year sentence was within the statutory range of 20 to 60 years
for the offense of first degree murder.   730 ILCS 5/5--8--1
(a)(1)(a)(West 1996).  Accordingly, we find that the trial court

14

1--97--0911

did not abuse its discretion in sentencing defendant to 50 years' imprisonment.

We briefly note that defendant's reliance on People v. Hammerli, 277 Ill. App. 3d 873, 662 N.E.2d 452 (1996), and People v. Crow, 168 Ill. App. 3d 744, 521 N.E.2d 594 (1988), in support of his excessive argument, is misplaced. Defendant relies on Hammerli and Crowe for the proposition that because the defendants in those cases were convicted of murdering an ex-spouse and spouse, respectively, and received a sentence of 35 years' imprisonment, lower than his 50-year sentence, his sentence is excessive. Defendant's "argument" consists merely of making a comparison between the nature of the acts of the defendants in committing the murders in Hammerli and Crowe, which were found to be methodical and logical (Hammerli, 277 Ill. App. 3d at 882) and deliberate, planned, "coldblooded and brutal" (Crowe, 168 Ill. App. 3d at 756), and his own murder of his wife, which he asserts was "hardly cold and calculated, but was instead the result of stress and depression." However, like the Crowe court, in responding to the Crowe defendant's argument that she was suffering an "'emotional upheaval' [when she murdered her husband] and that deterrence is of little effect in such a situation," we similarly respond to defendant's argument by pointing out that defendant here "was convicted of murder, not voluntary manslaughter." Crowe, 168 Ill. App. 3d at 757. Moreover, the trial court's judgment with regard to the appropriate punishment is entitled to great deference and,

15

16-72

1--97--0911

as discussed above, the trial court fully considered all mitigating and aggravating factors and we find no reason to substitute our judgment for that of the trial court.

Defendant also argues that this court should not give "credence" to Dye's testimony in assessing whether his sentence was excessive. A trial court's determination as to the credibility of witnesses and the weight to be given their testimony is entitled to great deference. People v. Jones, 174 Ill. App. 3d 737, 745, 528 N.E.2d 1363 (1988). The trial court was in the best position to assess Dye's credibility based on his testimony and in viewing him, and we will not reweigh the evidence. We further find that defendant has waived review of his argument that we should compare his sentence to the average sentence imposed for first degree murder according to the "Statistical Presentation of the Illinois Department of Corrections." Defendant has raised this issue for the first time in his reply brief; defendant did not raise it as his sentencing hearing nor did he raise it in his motion to reconsider his sentence. People v. Enoch, 122 Ill. 2d 176, 186, 522 N.E.2d 1124 (1988).

Defendant next argues that "[t]his Court should issue an order stating that *** [he] will not be subject to the truth-in-sentencing law," enacted by Public Act 89-404, because it "violated the single subject rule of the Illinois Constitution, Article IV, Section 8(d)." The State argues that Public Act 89-404 was passed in compliance with the single subject rule because it was limited

1--97--0911

to the single subject of governmental relations. The State also argues that if Public Act 89-404 was originally passed in violation of the single subject rule, any defect has been cured by its subsequent codification. The State contends that it is irrelevant that defendant was sentenced after the codification because he could have filed a timely action for a declaratory judgment that Public Act 89-404 was passed in violation of the constitution's single subject requirement.

Section 3--6--3(a)(2)(i) was enacted on August 20, 1995, as part of Public Act 89-404, and provides "that a prisoner who is serving a term of imprisonment for first degree murder shall receive no good conduct credit and shall serve the entire sentence imposed by the court."  730 ILCS 5/3--6--3(a)(2)(i) (West 1996). Defendant was convicted of an offense that occurred on September 28, 1995, and because his offense occurred after August 20, 1995, the truth-in-sentencing provision would be applicable to him. However, our supreme court has recently held that Public Act 89-404 violated the single subject rule. <u>People v. Reedy</u>, Nos. 85191, 85297 (Cons.) (January 22, 1999). The <u>Reedy</u> court also declined to accept the codification argument asserted by the State that a defendant is precluded from challenging the constitutionality of an act on single subject grounds once the act has become codified. <u>Reedy</u>, slip op. at 8-9. We therefore hold that defendant is entitled to be sentenced in accordance with the statute in effect prior to Public Act 89-404, and is eligible to receive "one day of

17

1--97--0911

good conduct credit for each day of service in prison." 730 ILCS
5/3--6--3 (West 1994).

Lastly, defendant contends the mittimus should be amended to
reflect that he was convicted and sentenced for only one count of
first degree murder; defendant argues that the mittimus incorrectly
shows that he was convicted of two counts of murder. The State
argues this is a "non-issue" because the trial court expressly
stated that it was merging count two of the indictment into count
one; i.e., the court clearly wrote upon the mittimus, "Count Two to
Merge."

This court is empowered to "reverse, affirm, or modify the
judgment or order" from which an appeal is taken. 134 Ill. 2d R.
615(b)(1)(1990). A reviewing court has a duty to resolve
contradictions which exist between the common law record and the
report of proceedings by looking at the record as a whole. People
v. Stingley, 277 Ill. App. 3d 239, 242, 660 N.E.2d 67 (1995),
citing People v. Fike, 117 Ill. 2d 49, 56, 509 N.E.2d 1011 (1987).
Where there is only one victim, there can be only one conviction
for murder. People v. Burnett, 267 Ill. App. 3d 11, 17, 640 N.E.2d
1350 (1994). It is the oral pronouncement of the judge which is
the judgment of the court; the written order of commitment is
merely evidence of the judgment of the court. People v. Smith, 242
Ill. App. 3d 399, 402, 609 N.E.2d 1004 (1993), citing People v.
Williams, 97 Ill. 2d 252, 310, 454 N.E.2d 220 (1983). "Where
looking at the record as a whole, if the written order is not

18

16-75

1--97--0911

inconsistent with the intent, sense and meaning of the circuit court's oral pronouncement, the written order will be enforced." Smith, 242 Ill. App. 3d at 402.

In the present case, defendant was indicted on two counts of first degree murder, in violation of "Chapter 720, Act 5, Section 9--1--A(1) of the Illinois Compiled Statutes" (count one) and "Chapter 720, Act 5, Section 9--1--A(2)" (count two). At defendant's bench trial, the court stated:

> "All in all, based upon the totality of the
> circumstances here, the Court finds that the
> State has overwhelmingly I would say proved
> the allegations contained in the indictment
> and more particularly the allegations in Count
> 1, which are predicated upon the theory of
> express malice or intentional murder. The
> Court will enter a finding of guilty as to
> Count 1. Count 2, while there is sufficient
> evidence to sustain it, it will merge into the
> finding as to Count 1. And that will be the
> findings entered today."

The mittimus lists both counts from the indictment and clearly states, "Count Two to Merge." Given the fact that the written order is consistent with what the trial court orally pronounced, we find that the mittimus need not be amended.

For the reasons stated, the judgment of the circuit court is

19

16-76

1--97--0911

affirmed, and we modify the mittimus to reflect defendant's
entitlement to receive one day of good conduct credit for each day
of service in prison. See e.g., People v. Percy Jones, No. 1--97--
3747 (December 31, 1998); People v. Reedy, 295 Ill. App. 3d 34, 44,
692 N.E.2d 376 (1998).

Affirmed, as modified.

BURKE, J., with CERDA and McBRIDE,' JJ., concurring.

---

'J. McBride replaced J. Leavitt as a panel member in the
decision of this appeal, and she reviewed the record, briefs, and
tape of the oral argument.

16--77

ORIGINAL

## NO. **88481**

### IN THE SUPREME COURT OF THE STATE OF ILLINOIS

| | |
|---|---|
| PEOPLE ~~OF THE~~ STATE OF ILLINOIS, ~~Plaintiff-Appellee,~~ Respondent | ) PETITION FOR LEAVE TO ) APPEAL FROM THE APPELLATE ) COURT OF ILLINOIS, FIRST ) JUDICIAL DISTRICT ) NO. /97-0911 |
| v. | ) ) THERE HEARD ON APPEAL ) FROM THE CIRCUIT COURT ) OF COOK COUNTY, ILLINOIS ) NO. 95 CR 30463 |
| THOMAS O'FARRELL, Petitioner ~~Defendant-Appellant, Pro-Se,~~ | ) ) Honorable Michael P. Toomin ) Judge Presiding |

### PETITION FOR LEAVE TO APPEAL

THOMAS O'FARRELL
Defendant-Appellant, Pro-Se
Inmate #K54340
P.O. Box 515
Joliet, Illinois 60432
(815) 727-6141

**ORAL ARGUMENT REQUESTED**

35 101899
70 111799
R-032499
RH den'd 090899

# FILED

OCT 2 9 1999

SUPREME COURT CLERK

EXHIBIT C

NO.

IN THE SUPREME COURT OF THE STATE OF ILLINOIS

| | |
|---|---|
| PEOPLE OF THE STATE OF ILLINOIS,<br>Plaintiff-Appellee, | ) PETITION FOR LEAVE TO<br>) APPEAL FROM THE APPELLATE<br>) COURT OF ILLINOIS, FIRST<br>) JUDICIAL DISTRICT<br>) NO. 97-0911<br>) |
| v. | ) THERE HEARD ON APPEAL<br>) FROM THE CIRCUIT COURT<br>) OF COOK COUNTY, ILLINOIS<br>) NO. 95 CR 30463<br>) |
| THOMAS O'FARRELL,<br>Defendant-Appellant, Pro-Se, | ) Honorable Michael P. Toomin<br>) Judge Presiding |

## PETITION FOR LEAVE TO APPEAL

TO THE HONORABLE JUSTICES OF THE SUPREME COURT OF THE
STATE OF ILLINOIS:

May it please the Honorable Court:

### I.

### PRAYER FOR LEAVE TO APPEAL

Your Petitioner, thomas O'Farrell, Pro-Se, respectfully
petitions this Honorable Court for Leave To Appeal pursuant
to Supreme Court Rule 315. from the judgement of the Appellate
Court of Illinois, First Judicial district, which affirmed
the judgement of conviction and modified sentence entered by
the Circuit Court of Cook County, Illinois upon the verdict
finding Petitioner guilty to Two Counts of First Degree Murder.

## II.

### OPINION AND PROCEEDINGS BELOW

On January 21, 1997, Petitioner was found guilty of Two Counts of First Degree Murder.  Petitioner was subsequently sentenced to a (50) Fifty year prison term upon his conviction. Petitioner appealed this conviction to the Illinois Appellate Court, First Judicial District.   On March 24, 1999 the Appellate Court delivered its opinion in said appeal, affirming the judgement of conviction and modified the sentence.   Petitioner filed a petition for rehearing on May 26, 1999, but the Appellate Court subsequently denied said petition on September 8, 1999. Petitioner filed an affidavit of intent to file a petition for leave to appeal to the Illinois Supreme Court with the Supreme Court of Illinois and the Appellate Court of Illinois, First Judicial District on September 25, 1999.

## IV.

### STATEMENT OF FACTS

Defendant, Thomas O'Farrell, was charged by the State, by indictment for the offense, two counts of First Degree Murder in connection with the shooting death of his wife, Lesley Chapman-O'Farrell. (said victim)  Defendant waived his right to a trail by jury, and this cause proceeded to a bench trial. Trial Court subsequently sentenced Defendant to a (50) fifty year prison term upon his conviction of this offense.

The State's case showed that Defendant's wife on the morning of September 28, 1995 was shot twice in her home and died from said gunshot wounds.

Eleanor Zagone testified that she was friends with the victim and Defendant for many years. (R.I12-13)  Ms. Zagone received a telephone call at approximately 4:15 a.m. on the morning of September 28, 1995 from the Defendant. (R.I14-15) Ms. Zagone heard Defendant yell in an excited tone of voice: "Ellie, Ellie, Ellie." (R.I15)  Defendant then told Ms. Zagone that: "Someone came in the house and shot Lesley." (R.I16) Ms. Zagone told Defendant: "Tom, calm down and call the police." (R.I16)  Defendant then told Ms. Zagone he had called the police, but needed her to come to the home and get the victim and Defendant's son, LeRoi. (R.I16)  Ms. Zagone told Defendant: "Why don't you call Abby because she is closer." (R.I16)  Ms. Zagone knew the victim suffered from eye and kidney problems due to complications caused by her diabetes. (R.I17-18)

Chicago Police Officer Veronica Pettry testified that at

-0-

## III.

### POINTS RELIED UPON FOR REVERSAL

THE FIFTY YEAR SENTENCE IMPOSED UPON THOMAS O'FARRELL
WAS GROSSLY DISPROPORTIONATE, EXCESSIVE AND AN ABUSE
OF DISCRETION IN LIGHT OF THE ACTUAL OFFENSE, DEFENDANT'S
LACK OF PRIOR CRIMINAL ACTIVITY, HIS STRONG FAMILY AND
COMMUNITY SUPPORT, THE UNUSUAL CIRCUMSTANCES LEADING
UP TO THE OFFENSE WHICH ARE UNLIKELY TO RECUR, AND
OVERWHELMING EVIDENCE THAT HE HAS EXCELLENT REHABILITATIVE

POTENTIAL..........................................................8

Ill. Const. 1970, art I, sec 11.....................................9

Illinois Department of Corrections, Statistical Presentation............16

People v. Cox, 82 Ill.2d 268, 415 N.E.2d 541 (1980)......................8

People v. Crow, 168 Ill.App.3d 744, 521 N.E.2d 594 (5th Dist. 1988.......16

People v. Gibbs, 49 Ill.App.3d 664, 364 N.E.2d 491 (1st Dist. 1977........9

People v. Hammerli, 277 Ill.App.3d 873, 662 N.E.2d 452 (1st Dist 1996....16

People v. Neither, 230 Ill.App.3d 540...................................16

People v. Phillips, 265 Ill.App.3d 438, 637 N.E.2d 715 (1st Dist. 1994....9

People v. Williams, 638 N.E.2d 345.....................................17

730 I.L.C.S. 5/5-8-1(a)(1)(a) (1995)....................................8

## IV.

## STATEMENT OF FACTS

Defendant, Thomas O'Farrell, was charged by the State, by indictment for the offense, two counts of First Degree Murder in connection with the shooting death of his wife, Lesley Chapman-O'Farrell. (said victim)  Defendant waived his right to a trail by jury, and this cause proceeded to a bench trial. Trial Court subsequently sentenced Defendant to a (50) fifty year prison term upon his conviction of this offense.

The State's case showed that Defendant's wife on the morning of September 28, 1995 was shot twice in her home and died from said gunshot wounds.

Eleanor Zagone testified that she was friends with the victim and Defendant for many years. (R.I12-13) . Ms. Zagone received a telephone call at approximately 4:15 a.m. on the morning of September 28, 1995 from the Defendant. (R.I14-15) Ms. Zagone heard Defendant yell in an excited tone of voice: "Ellie, Ellie, Ellie." (R.I15) Defendant then told Ms. Zagone that: "Someone came in the house and shot Lesley." (R.I16) Ms. Zagone told Defendant: "Tom, calm down and call the police." (R.I16)  Defendant then told Ms. Zagone he had called the police, but needed her to come to the home and get the victim and Defendant's son, LeRoi. (R.I16)  Ms. Zagone told Defendant: "Why don't you call Abby because she is closer." (R.I16)  Ms. Zagone knew the victim <u>suffered</u> from eye and kidney problems due to complications caused by her diabetes. (R.I17-18)

Chicago Police Officer Veronica Pettry testified that at

-0-

approximately 4:20 a.m. on the morning of September 28, 1995, she and her partner, Chicago Police Officer Pete Maderer were dispatched to the victim and Defendant's home, located at 3435 West Ardmore, Chicago, Illinois. (R.I20-21)  Upon arriving at the victim and Defendant's home, the front door was open and Defendant and his son were sitting on the base of the stairs. (R.I22)  According to Officer Pettry, while she was walking up to the front door, Defendant allegedly said: "Get the hell in here." (R.I24)   Defendant told Officer Pettry that his wife had been shot by an intruder in the upstairs bedroom. (R.I26) Defendant was awakened by the sound of a gunshot and saw a black male intruder in the bedroom. (R.I28)   Defendant began struggling with the intruder, the struggle took them into the hallway, at which time the gun went off, Defendant thought that the intruder had been shot in the stomach. (R.I28)

Chicago Police Officer Ronald Cooper testified that he was assigned to go with Defendant and the paramedics to the hospital. (R.I46-48)  Defendant told Officer Cooper that he was awakened by gunshots and saw a black male intruder standing over his wife, that he and the intruder struggled, that the intruder was shot in the stomach and that he was shot in the shoulder during the struggle. (R.I50)

Chicago Police Detective William Kernan testified that he interviewed Defendant at  Illinois Masonic Hospital. (R.I58) Defendant told Detective Kernan that on the previous night he had left work at approximately 10:30 p.m., stopped at the bar for a few beers, left the bar at approximately 11:30 p.m., and

-1-

arriving   home   a   little after midnight. (R.I61)   Defendant
spoke with his wife, who was still awake, then went to sleep.
(R.I61-62)    Defendant was awakened by: "Two loud pops, which
he believed to be gunfire or firecrackers." (R.I62)   Defendant
looked over and observed a black male intruder standing over
his wife, struggled with the intruder, and both the intruder
and Defendant were shot during   the   struggle.    (R.I62-63)
Defendant fell over his rottweiler, at which time the intruder
ran down the stairs and out of the rear door of the house.
(R.I63)

Chicago Police Officer, Evidence Technician Patrick Moran
testified   that   he <u>opened</u> the vhs video cassette tape box
exposing   the   contents,   (R.I114-115)   which   contradicts
Detective Harry Collins testimonies.

Chicago Police Detective Harry Collins testified that he
arrived at   the   victim and Defendant's home (the scene) at
approximately 6:00-6:30 a.m. on the morning of September 28,
1995. (R.I123)   Detective Collins then conducted a search of
the victim and Defendant's home, where while looking behind a
t.v. stand, his foot bumped the bottom of said t.v. stand,
causing the door to swing open and a vhs video cassette tape
box fall out to his feet, <u>opening</u> exposing a derringer pistol,
some shell casings and a hypodermic needle, (R.I119-120) which
contradicts his previous testimony in the suppression hearing
of the motion to suppress evidence, that he had <u>opened</u> the vhs
video cassette tape box after it fell out to his feet.
(R.I132)

-2-

Evidence Technician Robert Berk testified that he examined samples from Defendant's hands and determined the left hand of Defendant had been in the environment of gunshot residue by either handling, firing or being in the close proximity to the weapon when it was discharged. (R.I140) On cross examination, Mr. Berk admitted that the presence of residue on Defendant's left hand could be consistent with being in a struggle over a weapon. (R.I141)

Chicago Police Detective Richard Schak testified Defendant was present at Area Five Headquarters at approximately 8:30-9:00 a.m. on the morning of September 28, 1995, when he learned that a small derringer was found in a video cassette case at the victim and Defendant's home. (R.I144) Detective Schak then asked Defendant if he owned a gun or if there would be any reason for a gun to be in his home. (R.I146) After Defendant said he did not own a gun or there would be no reason for a gun to be in his home, Detective Schak gave Defendant <u>miranda</u> warnings and informed Defendant that he was no longer a victim in this case, no longer a witness, and in his eyes Defendant was now a suspect. (R.I146) Defendant said he understood his rights and since he had nothing to hide would "gladly" talk with the detective. (R.I147) According to Detective Schak, Defendant then stated that: "I did it. I killed her, but she wanted me to. I did it for her." (R.I148) Detective Schak then stated: "That doesn't make any sence, but why don't you explain it." (R.I148-149) According to Defendant, his wife had been sick and had

-3-

diabetes and was experiencing <u>kidney failure</u> and <u>diagnosed</u> <u>with bell's palsy</u>, and his wife had <u>tried to commit suicide</u> six months earlier by taking an <u>overdose of her insulin</u>. (R.I149) The <u>victim</u> obtained a weapon and together they devised a plan after the <u>victim plead</u> with Defendant <u>to take</u> <u>her life</u>. (R.I149) Defendant told Detective Schak that on September 27, 1995, Defendant got off work at approximately 11:30 p.m., stopped at the bar for a few drinks, and then went home. (R.I150) Defendant believed his wife would be sleeping upon his arrival home, but she was still awake. (R.I150) She talked to Defendant about <u>taking her life and would he do what</u> <u>she asked him to do</u>, at which time they talked for awhile, and <u>Defendant decided to do it</u>. (R.I150) Defendant's wife told Defendant that she had already took steps to make it look like a break-in, that she had removed the glass from the bathroom window so it would look like someone came into the house through the bathroom, and then asked Defendant <u>after she went</u> <u>to sleep, would he take her life</u>. (R.I150) Defendant's wife went to sleep, Defendant sat there and thought about it. (R.I150) Defendant's wife woke up several times and questioned Defendant, <u>why he did not take her life and why he</u> <u>would not do it</u>. (R.I150) <u>Finally, Defendant agreed to do it,</u> <u>and told her he would do it</u>. (R.I150) At approximately 4:00 a.m., Defendant's wife went back to sleep, at which time Defendant continued with the plan and shot his wife through a pillow in the head. (R.I150-151) At this point Defendant's wife began to quiver and move round, Defendant thought she was

-4-

in pain, so Defendant then shot his wife in the chest at which
point she stopped moving. (R.I151)  Defendant then stood there
for a few minutes looking at his wife and thinking about what
he   had   just done. (R.I151)   Defendant then went into the
hallway and shot into the wall. (R.I151)   Although Defendant
agreed that he would not hurt himself to his wife, Defendant
thought it would look more believable if he was hurt in the
struggle, so Defendant fired a shot into the meaty part of his
shoulder, pur the gun into the vhs video cassette case, called
911 twice, a friend of the victim and Defendant's, his father,
and   then   took his son from his room and went downstairs,
opened the front door and waited for the police to arrive.
(R.I152)

A stipulation was entered that Dr.  Nancy  Jones would
testify if called that she performed the autopsy on Lesley
Chapman-O'Farrell and that she died as a result of multiple
gunshot wounds, and the manner of death was ruled a homicide.
(R.I158-159)

Chicago Police Firearms Expert Richard Chenow testified
that he examined two bullets taken from the body of Lesley
Chapman-O'Farrell during the autopsy and compared these
bullets to rounds test-fired from the gun found in the vhs
video cassette box. (R.I163-170)  According to Mr. Chenow, one
of the bullets   recovered   from the body had class
characteristics consistent with the test-fired bullets.
(R.I170-171)      However,   there   were   no   individual
characteristics which could positively show that the bullet

-5-

recovered from the body had been fired from the gun found in the vhs video cassette box. (R.I172) MR. Chenow also testified that the derringer found in the vhs video cassette box was a single shot gun, which had to be reloaded each time it was firred. (R.I173-174) Mr. Chenow further testified that without the striations or individual characteristics on the bullets recovered from the victims body, he could not give a positive opinion. (R.I175)

After the People rested, Thomas O'Farrell, Defendant's father testified that Defendant was right-handed. (R.I198) Defendant subsequently rested. (R.I198)

Following closing arguments, the Trial Court found Defendant guilty of first degree murder and merged the second count into the first count. (R.I209-210) On February 24, 1997, the Trial Court sentenced Defendant to 50 years imprisonment. (R.K87) Trial Court denied Defendant's motion to reconsider sentence on the same date. (R.K88) Defendant file a timely notice of appeal. (R.C.97)

In February 1998, Defendant filed an appeal with the Appellate Court arguing that his sentence was excessive, an abuse of discretion of the Trial Court, Truth-in-sentencing, Public Act 89-404 violated the single subject rule of Article IV, Section 8 of the Illinois Constitution and that the sentencing order should be amended to reflect that Defendant was convicted and sentenced for only one count of first degree murder. (R.Def. Br. i-ii)

On March 24, 1999, the Appellate Court ordered

Defendant's conviction affirmed, modified the sentence due to the single subject violation of the Illinois Constitution, Article IV, Section 8 and denied the amendment of the sentencing order. (R.App. Court order)

Defendant filed a petition for rehearing with the Appellate Court on May 26, 1999, which was denied on September 8, 1999. (R. Def. Pet. for rehearing)

**V.**

**ARGUMENT**

THE FIFTY YEAR SENTENCE IMPOSED UPON THOMAS O'FARRELL

WAS GROSSLY DISPROPORTIONATE, EXCESSIVE AND AN ABUSE

OF DISCRETION IN LIGHT OF THE ACTUAL OFFENSE, DEFENDANT'S

LACK OF PRIOR CRIMINAL ACTIVITY, HIS STRONG FAMILY AND

COMMUNITY SUPPORT, THE UNUSUAL CIRCUMSTANCES LEADING

UP TO THE OFFENSE WHICH ARE UNLIKELY TO RECUR, AND

OVERWHELMING EVIDENCE THAT HE HAS EXCELLENT REHABILITATIVE

POTENTIAL.

Thomas O'Farrell was convicted of the offense of first

degree murder, which has a sentencing range of 20 to 60 years

imprisonment. 730 I.L.C.S. 5/5-8-1(a)(1)(a) (1995). Under

the unusual circumstances of the case at bar, where the evidence

showed this offense was actually a "mercy killing" and defendant

had no prior history of criminal activity, had strong family

and community support, and where the unusual circumstances

leading up to the offense are unlikely to recur, the sentence

of 50 years imprisonment (more than twice the minimum sentence)

was grossly disproportionate and excessive to the actual offense.

Accordingly, this Honorable Court should reduce his sentence.

The standard or review of a sentence claimed to be excessive

is whether the trial court exercised discretion and, if so,

whether the trial court abused its discretion. People v. Cox,

82 Ill.2d 268, 275, 412 N.E.2d 541 (1980). Generally a reviewing

court will not reduce a sentence on appeal. Nevertheless,

-8-

there are instances which call for a reviewing court to reduce
a sentence even when the sentence is within the statutory
limits. People v. Gibbs, 49 Ill. App.3d 644, 648, 364 N.E.2d
491 (1st Dist. 1977).  A reviewing court is empowered to reduce
a excessive sentence that has been imposed by the trial court
under Supreme Court Rule 615(b)(4).  A sentence falling within
statutory limits is usually not overturned unless it is grossly
disproportionate to the nature of the actual offense. People
v. Phillips, 265 Ill. App.3d 438, 449, 637 N.E.2d 715 (1st
Dist. 1994).  Moreover, the Illinois Constitution requires
that the sentence reflect defendant's rehabilitative potential
as well as the seriousness of the actual offense. (Ill. Const.
1970, art. I sec. 11).

The evidence adduced at trial and at sentencing shows
that the 50 year sentence imposed upon defendant was an abuse
of discretion.  At the time of the offense defendant was 31
years old and had absolutely no history of prior criminal
activity. (R.K-85;C.79)  Moreover, the unusual circumstances
of the actual offense show that it arose from a unique situation
which is very unlikely to recur, since the actual offense
was a "mercy killing" and a result of defendant's severe emotional
and mental disturbance, namely depression and conflict which
resulted from his wife's (the victim) serious illnesses.

Defendant's confession established the following facts.
Defendant believed that the victim was terminally ill. (R.I182)
The victim had been sick, had diabetes, experienced kidney
failure, was recently diagnosed with bell's palsy which caused

the victim to become concerned with her disfigurement, and
that the victim approximately six months earlier attempted
to take her own life by overdosing on her insulin. (R.I149)
The victim continuously plead with defendant to help her take
her life. (R.I149)  Defendant argued with the victim in the
past, because defendant <u>did not</u> want to assist her in taking
her life. (R.I182)  On the night prior to the offense, defendant
left work, went for a few beers and went home a little after
midnight. (R.I161)  Defendant believed that his wife would
be sleeping upon his arrival home, but she was still awake.
(R.I150)  Upon defendant's arrival home, the victim handed
him a gun. (R.I182)  The gun was a single shot derringer that
had to be reloaded after each shot. (R.I169;173)  Then the
victim asked defendant to help her take her life. (R.I150)
The victim eventually talked defendant into helping her take
her life and told defendant that she had already took steps
to make it look like someone broke into the home and killed
her. (R.I150)  Then the victim went to sleep, at which point
defendant sat and thought about what she had asked of him.
(R.I150)  The victim woke up several time between 1:00 a.m.
and 4:00 a.m., at which point she continued to ask defendant
why he had not yet took her life, at which time defendant
agreed to do it, and told her he would. (R.I150)  Approximately
4:00 a.m. on the morning of the offense, defendant's wife
went back to sleep, at which time defendant continued with
his wives plan and shot through a pillow into her head. (R.I150-
151)  Defendant's wife began to quiver and move around, defendant

-10-

thought she was in pain, so defendant reloaded the gun and
shot his wife in the chest, at which point she stopped moving.
(R.I151)  Defendant after standing there for a few minutes
looking at his wife and thinking about what he had just done,
went into the hallway and shot into the wall and then shot
himself in his shoulder, put the gun into a vhs video cassette
case, and then called 911 twice, a friend and his father.
(R.I151-152)

Defendant then told the police about waking up to the
sound of gunshots, fighting off a six-foot-three, 200-pound
black male intruder where he was shot in the shoulder, watched
the intruder flee and discovered that his wife was dead. (R.I25-
29;I49-52; and I62-64)  However, when defendant was interrogated
by detective Schak and confronted with evidence linking him
to the offense, defendant told detective Schak and A.S.A.
Kougias the truth about the offense actually being a "mercy
killing". (R.I148-152;I182-186)

State's witness Eleanor Zagone who was friends with the
victim and defendant verified that the victim suffered from
eye and kidney problems due to complications caused by her
diabetes. (R.I17-18)

The State relies extensively upon the testimony of State's
witness Thomas Dye to support an offense of a cold, calculated
and premeditated murder.  It was Dye alone who testified that
defendant realized the victim's family had money early in
their relationship. (R.K15-16)  Defendant did not have an
affectionate or love feeling for the victim, but thought dating

-11-

her would be a good thing to do financially. (R.K16)  Defendant
stayed with the victim longer than he wanted to so he could
solidify the insurance money due to be inherited by her from
her grandparents. (R.K15)  Defendant was unhappy, didn't want
to be married to the victim, their relationship deteriorated
and he decided to kill her. (R.K18)

Dye testified for the State at O'Farrell's sentencing
hearing in exchange for an agreement where he would receive
four years imprisonment on three separate convictions for
theft. (R.K9)  At the time of his testimony, Dye had a total
of 14 prior felony convictions and had been imprisoned three
separate times. (R.K21;28)  Dye was a drug dealer for a period
of time and admitted that he used many aliases in his life.
(R.K23-24)  Dye testified against another inmate in a prior
case and obtained a deal whereby the prosecution agreed to
cut his 14 year sentence in half and have three other felony
convictions run concurrent with his already reduced sentence.
(R.K21-22)  Dye admitted that he was assigned to the protective
custody unit where defendant was housed because he was widely
known as a "jailhouse snitch". (R.K26)

Moreover, Dye's testimony is inconsistent with the testimony
of Dr. Larry Heinrich, a Licensed Clinical Psychologist and
a Board-certified Forensic Examiner in Psychology who testified
at O'Farrell's sentencing hearing.  Dr. Heinrich examined
defendant twice and reviewed the reports of Dr. Kenneth Robbins,
the marriage therapist of the victim and defendant. (R.K34-35)
According to Dr. Heinrich's testimony, while defendant was

in marriage counseling, he stated he did not want his marriage to end and wanted to do everything possible to keep his marriage together. (R.K37)

This testimony was completely different from the testimony of Dye, who claimed that defendant never loved his wife, only married her for her money, and killed her in a cold-blooded scheme to obtain control of her inheritance. (R.K16)  The testimony of Dr. Heinrich and the reports of Dr. Robbins are far more credible and should be given far more credence than the self-serving testimony of Dye.

The above facts demonstrate that Dye has committed crimes of dishonesty throughout his entire life outside of prison. While incarcerated, Dye continues to take advantage of the system by becoming a "jailhouse snitch", who testified against other inmates for his own advantage.  The testimony of Dye, however, is completely untrustworthy and should be given no credence by this Honorable Court in assessing whether defendant's sentence was grossly disproportionate and excessive.

Dr. Larry Heinrich, a Licensed Clinical Psychologist and Board-certified Forensic Examiner in Psychology testified that defendant had suffered from depression since 1992, and had been treated by Dr. Kenneth Robbins. (R.K35-36)  Defendant suffered from severe emotional and mental disturbance, namely depression at the time of the offense. (R.K39)  Dr. Heinrich confirmed that the victim suffered from diabetes which caused kidney and vision problems. (R.K61)  Additionally, the victim had a partial facial paralysis as a result of bell's palsy.

-13-

(R.K61)  The victim was depressed about her failing health
conditions and the status of her marriage. (R.K60)  Dr. Heinrich
referred to a session between the victim and Dr. Robbins where
the victim talked of despondencies, hopelessness, and helplessness
and feeling a sense of worthlessness and being less of a woman
and had <u>passive suicidal ideation ideas</u>. (R.K39-40)

Based on this evidence, it can be seen that the actual
offense in this case at bar was a direct cause of defendant's
severe emotional, mental disturbance, namely depression and
his marital problems.  While this certainly does not excusse
defendant of this offense, it demonstrates that the actual
offense was an aberration in an otherwise law-abiding life.
Moreover, this evidence demonstrates that the actual offense
was hardly cold and calculated to warrant the 50 year sentence,
but was instead the result of stress and depression.

The evidence at sentencing also showed that defendant
had excellent rehabilitative potential and a great deal of
support from his family and friends, and that defendant demonstrated
many admirable qualities in his life.  The record contains
30 letters from defendant's siblings, cousins, aunts, uncles,
and friends. (S.R.6-46)  These letters repeatedly describe
defendant as a loving and devoted father, a kind and compassionate
person, loyal friend and one who comes to the aid anyone in
distress. (S.R.6-46)

---

[1]    S.R. refers to a supplemental report which contains
the letters submitted on defendant's behalf at sentencing.

-14-

The record also contains a letter from Marcus Cartlidge,
an inmate at Cook County Department of Corrections.  In the
letter, Cartlidge describes an incident where he was attacked
by two other inmates.  During this attack, defendant without
thinking of the consequences put his own life and well-being in
severe jeopardy when he came to Cartlidge's aid, pulling the
attackers off of Cartlidge, and prevented Cartlidge from being
seriously injured.  In the course of helping Cartlidge, defendant
was injured himself. (S.R.47)  All of these many letters demonstrate
that throughout his life, defendant was a decent, caring,
and responsible person.

In addition to the letters, the testimony at the sentencing
hearing also illustrated the admirable qualities of defendant's
life.  Gerald Phillips testified that his parents died when
he was 14 years old and was forced to live with his sister's
mother-in-law. (R.K63-64)  Due to the unsuitable family situation,
Phillips ran away from home. (R.K63-64)  During this period,
defendant told Phillips that he could live with defendant's
family. (R.K64)  Phillips accepted defendant's offer and moved
in and as time went on, things worked out so well that Phillips
was eventually adopted by defendant's parents. (R.K62-65)

John Kohn, who married defendant's sister, testified
about an incident where defendant came to his rescue, saving
his life by administering first aid after he had been stabbed
severely in the arm and waited until the ambulance and police
arrived. (R.K67-70)  Kohn also testified he had become friends
with defendant and defendant was a loving father. (R.K70)

-15-

In two cases with some similar facts, the defendants received much lower sentences than the 50 year sentence imposed on O'Farrell in this case at bar.  In People v. Hammerli, 277 Ill.App.3d 873, 662 N.E.2d 452 (1st Dist. 1996), the sentencing court found the defendant had acted methodically and logically in committing the first degree murder of his ex-wife, and then escaping and covering up the offense. Hammerli, 622 N.E.2d at 453-457.  Nevertheless, the defendant in Hammerli was sentenced to only 35 years of imprisonment, 15 years less than O'Farrell's sentence.

In People v. Crow, 168 Ill.App.3d 744, 521 N.E.2d 594 (5th Dist. 1988), the defendant planned and carried out the first degree murder of her husband. Crow, 521 N.E.2d at 595-597.  Despite the clear premeditated nature of the offense, the defendant in Crow was sentenced to 35 years of imprisonment, 15 years less than the sentence imposed upon O'Farrell.

Additionally, the Illinois Department of Corrections put together the Statistical Presentation of the Illinois Department of Corrections where they compiled and broke-down all the offenses and sentences to assist the reviewing courts in their imposing or reviewing sentences. People v. Neither, 230 Ill.App.3d 546, 595 N.E.2d 126, 127.  According to the Statistical Presentation, the average sentence that was imposed for first degree murder in Cook County was 36.8 years in 1996, 37.6 years in 1995, 36.1 years in 1994, and 34.5 years in 1993. Illinois Department of Corrections, Statistical Presentation, 67 (1996).  All of these sentences were significantly lower

-16-

that both <u>Williams</u> and defendant both suffered from depression
at the time of the offense which were brought on by years
and years of living a difficult situation which resulted in
a sudden and intense passion and both defendants promised
their wives that they would end their suffering.

   All of these factors--the lack of any prior criminal
history, the unique circumstances of the actual offense, many
good qualities defendant has demonstrated throughout his life,
and the extensive support for defendant from family and friends-
-show that defendant has a great amount of rehabilitative
potential.  Despite the actual offense, significate mitigation,
the trial court imposed a grossly disproportionate and excessive
sentence of 50 years, more than twice the minimum term of
20 years and only 10 years less than the maximum term of 60.
Under the Circumstances of this case at bar, such a harsh
sentence was an abuse of discretion.  Accordingly, this Honorable
Court should reduce defendant's sentence.

# VI.

## CONCLUSION

WHEREFORE, the Petitioner respectfully requests that this Honorable Court reduce his sentence.

Respectfully submitted,

Thomas O'Farrell, Pro-Se,
Defendant-Appellant
Inmate #K54340
P.O. Box 515
Joliet, Illinois 60432



724 N.E.2d 1273 (Table)
187 Ill.2d 585, 724 N.E.2d 1273 (Table), 244 Ill.Dec. 189
**(Cite as: 187 Ill.2d 585)**

Page 1

**H**

People v. O'Farrell
Ill. 2000.
(The decision of the Court is referenced in the
North Eastern Reporter in a table captioned
"Supreme Court of Illinois Dispositions of Petitions
for Leave to Appeal".)

Supreme Court of Illinois
People
v.
Thomas O'Farrell
NO. 88481

JANUARY TERM, 2000
February 02, 2000

Lower Court: No. 1-97-0911

Disposition: Denied.

Ill. 2000.
People v. O'Farrell
187 Ill.2d 585, 724 N.E.2d 1273 (Table), 244
Ill.Dec. 189

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

EXHIBIT D

STATE OF ILLINOIS    )
                     )  SS
COUNTY OF COOK       )

IN THE CIRCUIT COURT OF COOK COUNTY
COUNTY DEPARTMENT, CRIMINAL DIVISION

Valerie Pahls
FILED
APR 13 2001
DOROTHY BROWN
CLERK OF CIRCUIT COURT

PEOPLE OF THE STATE OF ILLINOIS,    )
                                    )
        PLAINTIFF-RESPONDENT,       )
                                    )
        .V.                         )        95 CR 3046301
                                    )
THOMAS O'FARRELL,                   )
                                    )
        DEFENDANT-PETITIONER.       )

## AMENDED POST CONVICTION PETITION

NOW COMES, the Petitioner, THOMAS O'FARRELL, by and through his attorney, DEBORAH J. GUBIN, pursuant to 725 ILCS 5/122-1 and moves this Honorable Court to grant the Defendant a hearing and set aside the conviction and sentence of Defendant and in support thereof states as follows:

1.    PETITIONER, THOMAS O'FARRELL, (hereinafter O'FARRELL), was charged with the offense of murder on September 28, 1995.

2.    Assistant Public Defender, Joseph Kennelly was appointed to represent O'FARRELL at trial.

3.    That the Defendant was tried on such charge before a judge on January 21, 1997. There was a finding of guilty of the offense of Murder.

4.    On February 24, 1997 Defendant's Motion for a New Trial was denied and he was sentenced to 50 years in the Illinois Department of Corrections.

5.    That there was a substantial violation of the Defendant's constitutional rights under the Constitution of the United States and of Illinois int the following ways:

I

**THE REPRESENTATION BY MR. KENNELLY WAS INEFFECTIVE TO THE EXTENT IT CAUSED A SUBSTANTIAL DENIAL OF O'FARRELL'S RIGHTS UNDER THE CONSTITUTION OF THE UNITED STATES AND OF ILLINOIS**

1. Mr. Kennelly's presentation and argument of the Motions to Quash Arrest and Suppress Evidence and Motion to Suppress Physical Evidence was inadequate.

A. Mr. Kennelly failed to delineate when the arrest of defendant occurred; how the arrest was prior to the revelation of any incriminating evidence and/or probable cause; how the photographs belied the officer's testimony (of the cabinet opening on it's own; how the tape opened on its own; whether the tape box opened on its own or was opened).

i. The Court's ruling pointed this out and by failing to file a motion for reconsideration after obtaining the transcripts and prior to trial he could have pointed out the Court's error as to the scope of search allowed by it being a crime scene and consent to be on the premises. Thompson v. Louisiana, 469 U.S 1197, 105 S.Ct 981 (1984)

ii. O'Farrell's father was able to testify as to the condition and structure of the furniture in question and that it would not open by "bumping it". (Affidavit of Thomas C. O'Farrell).

iii. The testimony at the motion was that the tape container was opened. This exceeds the officers rights to examine the premises for evidence and invades O'Farrell's expectation of privacy. Arizona v. Hicks, 480 U.S. 321, 107 S.Ct. 1149 (1987); People v. Faine, 88 Ill.App.3d 387 (2nd Dist. 1980).

B. Mr. Kennelly failed to ask for reconsideration of the motions on the contradictory testimony of the several officers concerning who and how the tape was opened and the impeaching testimony of the officer at the motion stating it opened on its own and then at trial stating it was opened by the evidence technician.

2. Mr. Kennelly failed to call any witnesses which would have introduced evidence of the emotional state of Defendant and deceased at the time of the incident which would have reduced the matter to Second Degree. Included in this is the emotional and physical condition of the deceased; her statements to defendant's family members.

A. Thomas C. O'Farrell was ready willing and able to testify as to the relationship between O'Farrell and Lesley; his observations of her mental state. (Affidavit of Thomas C. O'Farrell)

B. Mrs. O'Farrell was ready, willing and able to testify as to the deceased's state of mind and her observations of the relationship between O'Farrell and his wife. (Affidavit of Mary A. O'Farrell).

C. Failed to call his medical expert on the effect Lesley's medical condition could have on her mental state in conjunction with her documented "Chronic Depression".

3. In the sentencing hearing failed to cross examine the State's key witness Thomas Dye concerning the legal papers stolen from defendant which contained information used by Mr. Dye in his testimony having the documentation of the theft.

3

00303

4. In the sentencing hearing failed to request the court to reconsider the pre-trial motion for additional discovery concerning Mr. Dye.

A. In failing to raise the issue of the Court's denial of the motion for additional discovery concerning Mr. Dye effectively waiving it for consideration by the Court and for appellate review.

B. Failed to request the Court to take judicial notice of the Probate Act which would have contradicted the testimony of Mr. Dye, decreasing his credibility.

C. Failed to introduce the Certified Copies of the Final Accounting of the Estate of Lesley Chapman O'Farrell which contradicted the testimony of Mr. Dye, decreasing his credibility. (Certified Copy Attached)

5. Failed to properly present mitigating evidence through the expert witness.

A. Mr. Kennelly failed to explain how deceased's view of her disease could be magnified in her mind due to her clinical depression.

B. Mr. Kennelly failed to give an adequate definition of clinical depression and its symptoms and how the deceased exhibited them.

C. Mr. Kennelly failed to have the expert or other witnesses discuss the facts of deceased's life in light of the statement of defendant to the police that she had requested he take her life.

D. Failed to elicit testimony of the physical condition

4

00304

of the deceased and how, while the doctor told the police it was not terminal at the time of her death, her condition was not such that there would be ever be improvement and that the condition would continue and there would be continued deterioration.

6. Failed to present mitigating evidence through witnesses who would testify to deceased's depressed state of mind and prior suicide attempts. (See Affidavits of Thomas C. O'Farrell and Mary A. O'Farrell).

7. Failed to present mitigating evidence as to motive with Defendant's father who was the Administrator of the deceased's estate as to the small monetary value of the estate. (See Affidavit of Thomas C. O'Farrell and Certified Copy of Final Report of Estate of Lesley Chapman O'Farrell).

8. Failed to request the Court take Judicial Notice of the statutes concerning the probate of estates of minors and that they are closely monitored by the court.


## II

A    **APPELLATE COUNSEL WAS INEFFECTIVE IN HIS FAILURE TO RAISE CERTAIN ISSUES TO THE EXTENT IT CAUSED A SUBSTANTIAL DENIAL OF O'FARRELL'S RIGHTS UNDER THE CONSTITUTION OF THE UNITED STATES AND OF THE STATE OF ILLINOIS**

1. Appellate should have raised as an issue on appeal the denial of the Motion to Quash Arrest and Suppress Evidence. See the argument concerning Mr. Kennelly's failure to raise request a reconsideration of the motion.

5

00305

2. The denial of the Motion to Suppress Physical Evidence. The case law was misinterpreted by the trial court and should have been brought before the Appellate Court for review.

3. Trial counsel's ineffective representation at trial and at the sentencing hearing.

4. The denial of Defendant's motion for additional discovery concerning Mr. Dye.

5. Prosecutorial misconduct in the obtaining and presenting of Mr. Dye's testimony without first determining its veracity considering Mr. Dye's history.

A. There was prosecutorial misconduct in the presentation of the testimony of Mr. Dye as the prosecutors were made aware of accusations against Mr. Dye in his taking legal papers from Defendant

B. There was prosecutorial misconduct in calling Mr. Dye, knowing Mr. Dye's history of calling prosecutors to obtain lesser sentences in exchange for testifying.

C. There was prosecutorial misconduct in failing to tender information concerning all of Mr. Dye's involvement as a witness for the State in various cases.


III

### DEFENDANT'S CONSTITUTIONAL RIGHTS WERE DENIED BY THE COURT
### ALLOWING MR. DYE TO TESTIFY

1. The Court erred in allowing Mr. Dye to testify without taking steps to insure Defendant was tendered all information due

6

00306

under <u>Brady v. Maryland</u>.

2. This was compounded by the Court failing to take Judicial Notice of applicable statutes concerning the Probate of Minor Estates laws in Illinois.

The supporting affidavits, records, are attached hereto as Exhibits and incorporated thereby in support of the defendant's motion.

WHEREFORE, the defendant prays that this Court set aside the finding of guilty and grant the defendant a new trial and/or a new sentencing hearing.

Attorney for Thomas O'Farrell

7

00307

## CERTIFICATION

I, DEBORAH J. GUBIN, state the following:

1. I am an attorney, licensed in the State of Illinois.

2. I have been appointed to represent Petitioner, THOMAS O'FARRELL, on his Post-Conviction Petition.

3. I have reviewed the pro-se petition filed by Petitioner; the record and transcripts filed on appeal; the brief filed by appellate counsel.

4. I have met with Petitioner in person and discussed the contents of the pro-se petition and the amended petition.

Deborah J. Gubin

Deborah J. Gubin
605 W. Madison
Suite 331
Chicago, 'IL 60661
(312) 902-3149
Att. No. 55073

8

00308

NOTE * J. Collers McSweeny
oured Motion on February 1

STATE OF ILLINOIS)
                 )ss   FILED
COUNTY OF COOK   )

JAN 26   4:33 PM

IN THE CIRCUIT COURT OF COOK COUNTY
COUNTY DEPARTMENT - CRIMINAL DIVISION
CRIMINAL DIVISION

PEOPLE OF THE STATE OF ILLINOIS,  )
          PLAINTIFF-RESPONDENT,   )
                                  )
                                  )   CASE NO. 95 CR 3046301
                  v.              )
THOMAS O'FARRELL,                 )   JUDGE _____
          DEFENDANT-PETITIONER,   )

---

### MOTION FOR DIFFERENT JUDGE TO CONSIDER

---

NOW COMES, Defendant, Thomas O'Farrell, Pro-Se, and request
this Honorable Court enter an order granting Defendants Motion
For Different Judge To Consider pursuant to Ill. Rev. Stat. 725
ILCS 5/122-8.  In support of this motion Defendant states as
follows:

1) The Trial Court is mentioned within Defenant-Petitioners
Post-Conviction Petition under Judicial Misconduct therefore,
Defendant believes that the Trial Court will be bias against his
petition.

2) The Trial Court prior to the Defendants trial in this
cause had determined Defendants guilt and sentence prior to any
evidence be offered therefore Defendant was prejudiced by Trial
Courts bias action.

WHEREFORE, Defendant prays, that this Honorable Court grant
said motion and enter an order for a different judge to hear
Defendants Post-Conviction Petition.

Subscribed and Sworn to before me          Respectfully submitted,
on this 90 day of January, 2000

_Jeannine Kohlmeyer_                        Thomas O'Farrell, Pro-Se
Notary Public

OFFICIAL SEAL
Jeannine Kohlmeyer
Notary Public State of Illinois
My Commission Expires 11/13/2001

**EXHIBIT F**

Case 1:08-cv-02403   Document 33   Filed 04/17/2008   Page 80 of 356

1    STATE OF ILLINOIS   )
                         )  SS:
2    COUNTY OF COOK      )

3             IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
                   COUNTY DEPARTMENT-CRIMINAL DIVISION

4    PEOPLE OF THE STATE OF ILLINOIS    )
                                        )
5                  -vs-                 )  No. 95 CR 30463
                                        )
6    THOMAS O'FARRELL                   )

7

8                              REPORT OF PROCEEDINGS had at the

9    hearing of the above-entitled cause before Colleen

10   McSweeney-Moore, one of the judges of said division, on the 15th

11   day of February, A.D., 2000.

12

13

14

15

16

17

18

19

20

21

22

23

24

B-1

EXHIBIT G        -17

1          THE CLERK:   Thomas O'Farrell, sheet one.

2          THE COURT:   Defendant filed a pro se petition for

3     post-conviction relief before Judge Toomin.

4              He also filed a motion entitled motion for different

5     judge to consider.  It is a two paragraph motion.  It is not

6     supported by affidavit pursuant to the statute.  He alleges

7     that -- he mentions that the judge is under judicial misconduct

8     and, therefore, the judge would be biased against him.  There is

9     no such allegation in his petition.

10             And he also alleges that since the trial court also

11    found the Defendant guilty and sentenced him, therefore, he would

12    be prejudiced.

13             The Defendant's motion does not rise to a level of

14    allegations to substitute Judge Toomin for cause.  It is

15    unsupported pursuant to the statute.  It's heard and denied.

16    Transfer instanter to Judge Toomin.

17                      (Which were all the proceedings had)

18

19

20

21

22

23

24

B-2

1  STATE OF ILLINOIS  )
                       )  SS:
2  COUNTY OF C O O K  )

3           I, ELIZABETH A. REYES, Official Shorthand Reporter of

4  the Circuit Court of Cook County, County Department-Criminal

5  Division, do hereby certify that I reported in shorthand the

6  evidence had in the above-entitled cause and that the foregoing

7  is a true and correct transcript of all the evidence heard.

8

9

10

11                              Official Shorthand Reporter
                                License No. 084-001910
12                              Circuit Court of Cook County
                                County Department
                                Criminal Division
13

14  Dated this __30th__ day of _____April_____ A.D., 2004.

15

16

17

18

19

20

21

22

23

24

B-3

19

FILED                                                    ORDER

IN THE APPELLATE COURT, STATE OF ILLINOIS    2001 MAR 28  PM 4:10
                    FIRST DISTRICT

                                        DOROTHY BROWN
                                  CLERK OF THE CIRCUIT COURT
                                      EXECUTIVE OFFICE

People                    )
Appellee                  )
                          )
                          )
         v.               )        NO.  00-968
                          )
Thomas O'Farrell          )
         Appellant        )
                          )
                          )

                    ORDER

         On motion of appellant, pro se,
to withdraw his appeal - 00-968, and a Finley
petition having been filed.

                        It is hereby Ordered that
appellant, pro se's motion to withdraw    RECEIVED
his appeal is allowed.                      APR 0 2 2001

                                      CLERK OF THE CIRCUIT COURT
                                          CRIMINAL DIVISION

                                         ORDER ENTERED

                                          JAN 31 2001

                                     APPELLATE COURT, FIRST DISTRICT

Name

Attorney for    Thomas O'Farrell      _____
                                       Justice
Address         K 54340
                                      _____
City            PO Box 99              Justice
Telephone       Pontiac, Il           _____
                                       Justice

                    EXHIBIT H

GILBERT S. MARCHMAN, CLERK OF THE APPELLATE COURT, FIRST DISTRICT

CASE NO. _08CV2403_____

ATTACHMENT NO. (EXHIBITS A-DD) 1_____

EXHIBIT _____

TAB (DESCRIPTION) _____

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

## COUNTY DEPARTMENT, CRIMINAL DIVISION

PEOPLE OF THE STATE OF ILLINOIS, )
                                     )

      Plaintiff-Respondent )
                                     )     Post-Conviction
                                     )     No. 95 CR 30463

THOMAS O'FARRELL, )

      Defendant-Petitioner. )

Amma Thompson
**FILED**

OCT 0 4 2001

DOROTHY BROWN
CLERK OF CIRCUIT COURT

### RULING ON RESPONDENT'S MOTION TO DISMISS

Petitioner, Thomas O'Farrell, seeks post-conviction relief from the judgment of conviction entered in the above-entitled cause on February 24, 1997. On that date, following a bench trial, this court sentenced O'Farrell to a term of fifty years imprisonment for the offense of first degree murder, in violation of Section 9-1-A of the Illinois Criminal Code. 720 ILCS 5/9-1A (West 1992). As grounds for relief, petitioner claims that: 1) the trial court failed to insure that all *Brady* material relating to a State's witness was tendered to his attorney; 2) the court failed to take judicial notice of applicable law concerning the probate of minors' estates; 3) he was denied the effective assistance of both trial and appellate counsel; and 4) he received an excessive sentence.

Respondent has moved to dismiss this proceeding asserting that the amended petition fails to raise any constitutional questions within the purview of the Post-Conviction Hearing Act, that the claims presented are barred by the doctrines of *res*

EXHIBIT I



*judicata* and waiver, and that the petition fails to establish the requisite deficient performance and resulting prejudice required to support a claim of ineffective assistance of counsel.

Having taken the matter under advisement and having considered the pleadings, exhibits and trial record, the court will address the issues raised within the framework of the arguments offered by counsel.

## BACKGROUND

The instant prosecution stemmed from the fatal shooting of petitioner's wife, Lesley O'Farrell, in the early morning hours of September 28, 1995. Mrs. O'Farrell was shot and killed by two gunshot wounds while laying in her bed at the family residence located at 3435 West Ardmore Street in the City of Chicago.

Following arraignment, defense counsel presented motions to suppress physical evidence as well as petitioner's statements. After evidentiary hearings were concluded, the court denied the motions, however it barred introduction of a letter written by the victim which had been recovered from her dresser. Later, the court likewise denied petitioner's motion to suppress statements made to Thomas Dye, a police informant, while the two were inmates at the Cook County Jail.

Petitioner waived his right to a jury and the matter proceeded to trial before this court. At trial, the evidence disclosed that at 4:20 a.m., Chicago Police officers received a radio transmission that a shooting or a burglary was in progress at petitioner's home. Responding to the call, Officer Veronica Pettry testified that she encountered petitioner and his son who were sitting on the base of a staircase inside the home. Petitioner was bleeding from a gunshot wound to his shoulder and informed the officers that he and his

2



wife had been shot by an intruder who entered their second floor bedroom. He described

the shooter as "a six foot three inch, black man with short black hair, approximately 200

pounds." (See R. Vol. IV at 26). Petitioner told Officer Pettry that he was awakened by a

loud boom and then observed the intruder. O'Farrell claimed that as he tried to disarm the

offender he was shot in the ensuing struggle, and that he thought the intruder was also

shot. After checking the upstairs bedroom, the police confirmed that petitioner's wife

was dead.

An ambulance was summoned and O'Farrell was taken to Illinois Masonic

Hospital, together with his four-year old son. Officer Ronald Cooper accompanied them

and enroute petitioner repeated the version of the shooting that he had given to the

responding officers. While being treated for his shoulder wound, petitioner was

interviewed by Detective William Kernan and again repeated the story he had previously

told at his home and enroute to the hospital. After being treated and released from the

hospital petitioner agreed to accompany the officers to Area Five headquarters to continue

the interview.

Evidence technician Patrick Moran was assigned to investigate the murder scene

and discovered that a pane of window glass was missing from a first floor window. On

the second floor he noted two bullet holes in the wall and found pictures and broken

frames on the hallway floor. He also observed the victim lying on the right side of the

bed, face-up, with a pillow across her legs containing two bullet holes with corresponding

powder burns. Closer examination revealed gunshot wounds to the victim's head and

upper chest. Detective Henry Collins was also present and testified that as he bumped into

a television cabinet located in the master bedroom, a video cassette box opened and fell

3



out revealing a single-shot Derringer pistol, some expended shell casings and a hypodermic needle.

Detective Richard Schak interviewed petitioner at Area Five and inquired as to whether there would be any reason for a gun to be in his bedroom. Petitioner, however, denied that any gun was at his home. Sensing that O'Farrell was now a suspect, rather than a witness, Schak administered *Miranda* warnings, after which petitioner readily admitted the he had killed his wife pursuant to a mutually conceived plan. Petitioner told Schak that his wife was a diabetic and was beginning to experience kidney failure. She had also been diagnosed with Bell's Palsy and was concerned about being disfigured. O'Farrell further explained that when he arrived home from work that evening his wife produced the weapon and asked him to shoot her after she fell asleep. Earlier, she had removed a glass pane from the downstairs bathroom window to make it look like an intruder had entered. After 4:00 a.m., petitioner decided to implement the plan and fired a shot into his wife's skull through a pillow while she was lying in the bed. A second shot was directed to her chest. Petitioner fired a third shot in the hallway and, after shooting himself in his shoulder, he put the gun in the video cassette box and then called 911.

O'Farrell was also interviewed by Assistant State's Attorney Tom Kougias and essentially repeated what he had told Detective Schak. The parties further stipulated that Dr. Nancy Jones, the medical examiner, would testify that, while performing a post-mortem examination upon the victim, she removed two bullets from her remains. In her opinion the cause of death was multiple gunshot wounds. Additionally, a gunshot residue test administered to O'Farrell revealed the presence of residue on his left hand, indicating

4



that petitioner had handled, fired or been in close proximity to a weapon when it was discharged. (See R. Vol. IV at 140)

At the conclusion of the trial petitioner was found guilty of two counts of first degree murder. In the capital sentencing hearing that followed, petitioner again waived jury and the issue of eligibility was initially presented to this court. When the proofs were concluded the court determined that the State had failed to prove beyond a reasonable doubt that the murder had been committed in a cold, calculated and premeditated manner pursuant to a preconceived plan.

A non-capital sentencing hearing was later convened wherein the State in aggravation presented Thomas Dye, a police informant, who testified regarding conversations he shared with petitioner while they were cellmates in the Cook County Jail. According to Dye, O'Farrell told him that he preplanned to kill his wife, that he did not like her, but stayed with her to solidify the insurance money that was coming from her grandparents. Although O'Farrell's son would inherit the money, petitioner related that he would be in a position to control the inheritance during his son's minority. Petitioner further expressed his hope to be found guilty of second degree murder because his father was a police officer, his wife's illness would support the claim of a mercy killing and he had no criminal record.

In mitigation, the defense presented Dr. Larry Heinrich, a licensed clinical psychologist who had evaluated petitioner for fitness and sanity during the course of the trial proceedings. Dr. Heinrich concluded that petitioner suffered from chronic depression related to family and personal issues. He also noted that the victim had manifested passive suicidal ideation and wishes during therapy sessions.

5



At the conclusion of the hearing, petitioner was sentenced to a term of fifty years imprisonment in the Illinois Department of Corrections. A direct appeal was taken to the Illinois Appellate Court, First Judicial District, wherein petitioner contended that:

1) He received an excessive sentence;

2) The mittimus should be amended to reflect that he was convicted and sentenced for only one count of first degree murder; and

3) He should not have been subject to the truth-in-sentencing law because it violated the single-subject rule of the Illinois Constitution.

In affirming petitioner's conviction, while rejecting claims one and two, the reviewing court modified the mittimus in conformity with *People v. Reedy*, 295 Ill. App.3d 34, 44, 692 N.E.2d 376 (1998), to reflect petitioner's entitlement to receive one day of good conduct credit for each day of service in prison. *People v. Thomas O'Farrell*, No. 1-97-0911 (1999), (unpublished order under Supreme court Rule 23).

Although O'Farrell sought further review in the Illinois Supreme Court, his petition for leave to appeal was denied on February 2, 2000. See, *People v. O'Farrell*, 187 Ill.2d 585, 724 N.E.2d 1273 (2000). The record does not reflect whether petitioner thereafter filed a petition for *certiorari* in the United States Supreme Court.

## ANALYSIS

Mr. O'Farrell commenced this proceeding on January 26, 2000, upon the filing of his *pro se* post-conviction petition. Although petitioner also sought to disqualify this court upon allegations of bias, his motion for substitution of judges was heard and denied by Judge Colleen McSweeney Moore on February 15, 2000. The matter was then returned to this court and counsel was appointed to represent petitioner. On April 13, 2001, an amended post-conviction petition was filed with petitioner's concurrence. On May 7,

6



2001, petitioner filed an amendment to the amended petition, adding the claim of excessive sentence.

The instant proceeding is presently before this court pursuant to Section 122-1 of the Post-Conviction Hearing Act (hereinafter, the "Act"). 725 ILCS 5/122-1 (West 2001). A post-conviction proceeding is not a direct appeal, but rather, is a collateral attack on prior judgment. *People v. Barrow*, 195 Ill.2d 506, 519, 749 N.E.2d 892, 901 (2001). The issues raised on post-conviction review are limited to those which could not or were not previously raised on direct appeal or in prior post-conviction proceedings. *People v. McNeal*, 194 Ill.2d 135, 140, 742 N.E.2d 269, 272 (2001). Under the Act, a petitioner enjoys no entitlement to an evidentiary hearing. *People v. Cloutier*, 191 Ill.2d 392, 397, 732 N.E.2d 519, 523 (2000). In order to obtain a hearing, the petitioner has the burden of establishing that a substantial violation of his constitutional rights occurred at trial or sentencing. *People v. Johnson*, 191 Ill.2d 257, 268, 730 N.E.2d 1107, 1111 (2000).

At the outset, it should be noted that, from an analysis of the instant petition and the appellate opinion affirming his conviction, it is apparent that several of petitioner's allegations involve matters of record which were raised or could have been raised on direct appeal. Among these are petitioner's claims that 1) he received ineffective assistance of trial counsel; 2) that his constitutional rights were denied by this court's decision to allow the testimony of Thomas Dye; and 3) that he received an excessive sentence. The law is unmistakably clear:

> The scope of post-conviction review is limited to matters which have not been, and could not have been, previously adjudicated. Thus, determinations of the reviewing court on direct review are *res judicata* as to issues actually decided, and issues that could have been raised on direct appeal, but were not, are waived.

7

*People v. Mack,* 167 Ill. 2d 525, 531, 658 N.E.2d 437, 440 (1995).

Accordingly, each of the aforementioned claims are barred by the doctrines of *res judicata* and waiver. However, even absent these procedural bars, it is doubtful that petitioner's position here would be substantially enhanced.

As noted, O'Farrell asserts that he was denied the effective assistance of both trial and appellate counsel. In assessing such claims, Illinois courts follow the two-prong test of *Strickland v. Washington,* 466 U.S. 668, 687, 80 L. Ed.2d 674, 693, 104 S.Ct. 2052, 2064 (1984). Under this standard, petitioner must show that counsel's representation fell below an objective standard of reasonableness, and that, but for this deficiency, there is a reasonable probability that counsel's performance was prejudicial to the defense. *People v. Albanese,* 104 Ill.2d 504, 525-26, 473 N.E.2d 1246, 1255 (1984). "Prejudice exists when 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *People v. Erickson,* 183 Ill.2d 213, 224, 700 N.E.2d 1027, 1032 (1998)(citations omitted). A petitioner's failure to make the requisite showing of either deficient performance or sufficient prejudice defeats an ineffectiveness claim. *People v. Morgan,* 187 Ill.2d 500, 529-30, 719 N.E.2d 681, 698 (1999). The *Strickland* standard is also used when reviewing the performance of appellate counsel. *People v. Hayes,* 279 Ill. App.3d 575, 580-81, 665 N.E.2d 419, 423 (2nd Dist. 1996).

Neither mistakes in strategy nor the fact that another attorney with the benefit of hindsight would have proceeded differently is sufficient to establish ineffective assistance of counsel. *People v. Trotter,* 299, Ill. App.3d 535, 539, 701 N.E.2d 272, 275 (1st Dist.

8



1998). Indeed, to ruminate over the wisdom of counsel's advice is precisely the kind of retrospection proscribed by *Strickland*, and its progeny. See, *Strickland*, 466 U.S. at 689, 80 L.Ed.2d at 694, 104 S.Ct. at 2065 (a fair assessment of attorney's performance requires that every effort be made to eliminate the distorting effects of hindsight).

Consideration will first be given to petitioner's claim that trial counsel's presentation and argument on the pre-trial motions to suppress was inadequate. Although petitioner boldly claims that his attorney failed to establish that the arrest occurred prior to the revelation of any incriminating evidence or probable cause, that claim is refuted by the record. At the hearing on the motion to quash arrest, petitioner acknowledged that upon his release from Illinois Masonic Hospital he told the police "that I would voluntarily come over and answer their questions." (See R. Vol. I at 36). Petitioner was not handcuffed or viewed as a suspect; his status initially was that of a witness. Detective Schak's testimony clearly established that probable cause to arrest petitioner later arose stemming from the recovery of the Derringer in the master bedroom, coupled with petitioner's denial of knowledge of its presence. Petitioner likewise faults trial counsel for failing to contest the court's ruling that the search of the premises was consensual, yet the court's finding of consent was clearly established from the testimony. As the court noted in its ruling, petitioner initially invited Officer Maderer into his home and authorized him to continue his investigation before being taken to Illinois Masonic. Contrary to petitioner's claim, the court did not rely upon any crime scene exception to the Fourth Amendment, but rather upon "uncontroverted evidence of consent." (See R. Vol. II at G-31).

Petitioner further asserts that trial counsel was incompetent for failing to call his father, Thomas C. O'Farrell, to testify on the motion to suppress. In general, whether to

9



call a particular witness is a matter of trial strategy. *People v. Flores*, 128 Ill.2d 66, 106, 538 N.E.2d 481, 488 (1989). Nevertheless, failure to call a potential witness for the defense may indeed support an ineffectiveness claim. *People v. Barry*, 202 Ill. App.3d at 216, 559 N.E.2d at 922. Although petitioner has produced an affidavit from Mr. O'Farrell, given the court's finding of consent, it falls far short of establishing that a different result would have obtained had he testified.

Petitioner additionally claims that defense counsel's failure to move for reconsideration of the denial of the motion to suppress constituted ineffective assistance of counsel. It should be noted that in support of the motion, counsel sought reliance upon the Supreme Court's, holding in *Thompson v. Louisiana*, 469 U.S. 17, 83 L. Ed.2d 246, 105 S.Ct. 409 (1984), the same case noted in the amended petition. (See, R. Vol. V at K-4). Moreover, although trial counsel did not file a motion to reconsider, the record reflects that he preserved the issues for appellate review in petitioner's motion for new trial. (See, CLR at 72-73). Inasmuch as this court found the allegations to be meritless, had they been preserved in a motion for reconsideration earlier in the proceedings, it is manifest that they would have suffered an identical fate.

Deficient performance is also claimed as a result of trial counsel's failure to present evidence of the emotional state of both petitioner and the victim at the time of the occurrence. Petitioner submits that had such evidence been introduced, it would have reduced the grade of homicide to second-degree murder. However, petitioner fails to enlighten the court as to how the emotional state of either himself or the victim could conceivably have warranted a reduction in the degree of homicide under the facts of this case. In Illinois, once the State has proven first-degree murder beyond a reasonable

doubt, to support a second-degree finding the defendant must prove by a preponderance of the evidence that he was acting under a sudden and intense passion resulting from serious provocation by the victim or that he believed that the circumstances justified using self-defense, but that his belief was unreasonable. *People v. Shumpert*, 126 Ill.2d 344, 351, 533 N.E.2d 1106, 1109 (1989).

Because no claim of self-defense has been interposed here, petitioner must necessarily be relying on the theory that, at the time of the shooting, he was acting under sudden and intense passion resulting from serious provocation by his wife. Petitioner's reliance upon the theory of serious provocation is clearly misplaced. As the Illinois Supreme Court observed in *People v. Chevalier*, 131 Ill.2d 66, 71, 544 N.E.2d 942, 944 (1989), the only categories of serious provocation which have been recognized are substantial physical injury or assault, mutual quarrel or combat, illegal arrest, and adultery with the offender's spouse; but not mere words or gestures or trespass to property. (See also, Smith-Hurd Annot., 720 ILCS 5/9-2, Committee Comments). Under the circumstances presented here, competent counsel would not have reasonably perceived that the emotional state of petitioner or the victim would suffice to establish the requisite element of serious provocation to support a second-degree murder finding.

Petitioner's remaining allegations of trial counsel's incompetence encompass purported deficiencies in the conduct of his sentencing hearing. Specifically, petitioner faults his attorney's failure to request the court to reconsider its decision denying additional discovery regarding Thomas Dye, as well as his failure to cross-examine Dye concerning his theft of petitioner's legal papers. Petitioner takes further issue with counsel's failure to utilize applicable probate statutes to refute Dye's testimony.

11



Additionally, petitioner submits that trial counsel failed to properly present mitigating evidence through expert witnesses as well as petitioner's parents.

Addressing petitioner's contentions as to Thomas Dye, the record demonstrates with considerable clarity that this court was fully apprised of Mr. Dye's nefarious background and its resulting effect upon his credibility. In his cross-examination of Dye, defense counsel brought out that the witness had fourteen felony convictions, that he had provided information to prosecutors for his benefit in the past, that he supported himself as a drug dealer for periods of time and that he had access to petitioner's property when they were cellmates. (See, R. Vol. V at K21-29). Moreover, it is apparent from the record that Dye's testimony had no effect upon the sentence imposed by this court. Defense counsel's argument that Dye's testimony was absolutely worthless clearly resonated with the court for at no time in imposing sentence was mention made of Thomas Dye or the motive of financial gain that he ascribed to petitioner. (See R. Vol. V at K83-87). As to counsel's failure to properly present mitigating evidence, it should be recalled that counsel did present the testimony of Dr. Larry Heinrich, a highly regarded clinical psychologist, as well as certain family members. Petitioner has made no showing in his amended petition that had additional mitigation evidence been presented, a different sentence would have resulted.

Petitioner further asserts that appellate counsel was ineffective for failing to raise certain issues complained of herein on direct appeal. Although it is manifest that a criminal defendant is guaranteed the effective assistance of counsel on appeal, *Evitts v. Lucey*, 469 U.S. 387, 396-97, 83 L.Ed.2d 821, 829-30, 105 S.Ct. 830, 836-37 (1985), effective assistance in a constitutional sense means competent, not perfect, representation.

*People v. Odle*, 151 Ill.2d 168, 173, 601 N.E.2d 732, 735 (1992). The two-prong test set

forth in *Strickland v. Washington*, 466 U.S. 668, 687, 80 L.Ed.2d 674, 693, 104 S.Ct.

2052, 2064 (1984), is utilized in reviewing the performance of trial and appellate counsel

alike. *People v. Childress*, 191 Ill.2d 168, 175, 730 N.E.2d 32, 36 (2000). As the Illinois

Supreme Court has recognized:

> A defendant who contends that appellate counsel rendered ineffective
> assistance, e.g., by failure to argue an issue, must show that the failure to
> raise that issue was objectively unreasonable and that, but for this
> failure, defendant's conviction or sentence would have been reversed.

*People v. Richardson*, 189 Ill.2d 401,412, 727 N.E.2d 362, 369-70 (2000); See also,

*People v. Stewart*, 141 Ill.2d 107, 119, 565 N.E.2d 968, 973 (1990), and *People v.

Caballero*, 126 Ill.2d 248, 270, 533 N.E.2d 1089, 1096 (1989).

Significantly, appellate counsel's judgment as to what issues should be raised and

argued on appeal is generally not to be questioned, and may be grounds for post-

conviction relief only if patently erroneous. *People v. Wilson*, 273 Ill. App.3d 71, 75, 652

N.E.2d 405, 408 (3rd Dist. 1995). Clearly, appellate counsel is under no obligation to brief

every conceivable argument on appeal. *People v. Coleman*, 168 Ill.2d 509, 523, 660

N.E.2d 919, 928 (1995); *People v. Collins*, 153 Ill.2d 130, 140, 606 N.E.2d 1137, 1142

(1992); *People v. Barnard*, 104 Ill.2d 218, 230, 470 N.E.2d 1005, 1009 (1984); *People v.

Porter*, 141 Ill. App.3d 208, 211, 490 N.E.2d 47, 50 (1st Dist. 1986). "It is not

incompetence for counsel to refrain from raising those issues which, in his judgment, are

without merit." *People v. Sanders*, 209 Ill. App.3d 366, 377, 568 N.E.2d 200, 207 (1st

Dist. 1991)(citations omitted).

Here, appellate counsel's decision not to raise the issues now asserted cannot be deemed "patently erroneous." For example, counsel's decision not to raise the issue of the court's denial of petitioner's pre-trial motions could well be grounded upon counsel's belief that the issues had little merit or likelihood of being successful on appeal. This is likewise true with respect to the issues surrounding Thomas Dye, for a careful reading of the record would have alerted appellate counsel to the fact that the court placed utterly no reliance upon Dye's proffers at sentencing.

Petitioner also challenges appellate counsel's failure to raise the issue of trial counsel's incompetence. Where such claims are made, the focus necessarily must be on the trial attorney's performance. *People v. Coleman*, 168 Ill.2d 509, 522-23, 660 N.E.2d 919, 927 (1995); *People v. Guest*, 166 Ill.2d 381, 390, 655 N.E.2d 873, 877 (1995). Here, the court has already considered the allegations of trial counsel's incompetence and found them to be lacking. Because the underlying claims of ineffectiveness lack support, petitioner's claims of ineffective assistance of appellate counsel are likewise without merit. *People v. Zambrano*, 266 Ill. App.3d 856, 865, 640 N.E.2d 1334, 1341 (1st Dist. 1994). "Obviously, if the underlying claim lacks merit, defendant suffered no prejudice due to appellate counsel's failure to raise the issue on direct appeal." *People v. Johnson*, 183 Ill.2d 176, 187, 700 N.E.2d 996, 1002 (1998).

Petitioner further submits that the court's admission of Dye's testimony resulted in a denial of his constitutional rights. Because this issue could have been raised on direct appeal the doctrine of waiver serves to bar consideration of this claim here. Moreover, as previously noted, the record of the trial proceedings fails to reflect that Mr. Dye's pronouncements were in any manner relied upon by this court at sentencing.

14

Finally, O'Farrell asserts that his right to due process and equal protection of the law were denied by the excessive sentence imposed by the court. According to petitioner, the excessiveness of his sentence is highlighted by his lack of criminal history, evidence of his state of depression, as well as the victim's, her degenerative physical condition, and his strong family history. As noted earlier, the excessive sentence claim was presented on direct appeal and rejected by the reviewing court. The doctrine of *res judicata* prevents further consideration here. Furthermore, the mere alleged excessiveness of a sentence which was within the statutory limits when imposed does not create a constitutional issue which may serve as a basis for post-conviction relief. *People v. Ballinger*, 53 Ill.2d 388, 390, 292 N.E.2d 400, 401 (1973); *People v. Hoffman*, 25 Ill.App.3d 261, 271, 322 N.E.2d 865, 872-73 (1st Dist. 1974); *People v. Wenger*, 42 Ill.App.3d 608, 610, 356 N.E.2d 432, 434 (4th Dist. 1976). In Illinois, at the time of petitioner's sentencing, the sentencing range for first degree murder was twenty to sixty years. 735 ILCS 5/5-8-1 (West 1992). Because petitioner's sentence clearly falls within the statutorily authorized limits, he has failed to raise a claim cognizable under the Act.

## CONCLUSION

Based upon the foregoing discussion, the court finds that petitioner has failed to make a substantial showing that his constitutional rights were violated in either the trial or appellate proceedings. The court therefore grants respondent's motion and hereby dismisses the instant proceeding for post-conviction relief.

**ENTERED:**

Michael P. Toomin
Circuit Court of Cook County
Criminal Division

**DATED:** _May 2001_

STATE OF ILLINOIS)
          )ss
COUNTY OF COOK  )

IN THE CIRCUIT COURT OF COOK COUNTY
COUNTY DEPARTMENT - CRIMINAL DIVISION

| PEOPLE OF THE STATE OF ILLINOIS,) | Appeal from the |
| PLAINTIFF-RESPONDENT,) | Circuit court of |
| ) | Cook County, Illinois |
| -v- ) | |
| ) | No. 95 CR 30463 |
| THOMAS O'FARRELL, ) | |
| DEFENDANT-PETITIONER,) | Michael P. Toomin |
| ) | Judge Presiding |

### MOTION FOR LEAVE TO FILE AND PROCEED IN FORMA PAUPERIS

NOW COMES, Defendant, Thomas O'Farrell, Pro-Se, and request this Honorable Court enter an order granting Defendants Motion. In support of this Motion Defendant states as follows:

1) That Defendant is in the custody of the State of Illinois, under the Department of Corrections of said State, pursuant to an order entered February 24, 1997 under indictment number above in the Circuit Court of Cook County, Illinois.

2) That Defendant is without funds, assets, personal, or real property to pay the costs of the proceedings on Appeal.

WHEREFORE, Defendant prays that this Honorable Court will grant Defendants Motion and allow Defendant to proceed In Forma Pauperis.

Respectfully submitted,

Thomas O'Farrell, Pro-Se,
Defendant-Petitioner

EXHIBIT J

STATE OF ILLINOIS)
               )ss
COUNTY OF COOK    }

IN THE CIRCUIT COURT OF COOK COUNTY
COUNTY DEPARTMENT - CRIMINAL DIVISION

| | |
|---|---|
| PEOPLE OF THE STATE OF ILLINOIS, )<br>PLAINTIFF-RESPONDENT, )<br>)<br>-v- )<br>)<br>THOMAS O'FARRELL, )<br>DEFENDANT-PETITIONER, )<br>) | Appeal from the<br>Circuit Court of<br>Cook County, Illinois<br><br>No. 95 CR 30463<br><br>Michael P. Toomin<br>Judge Presiding |

## MOTION FOR APPOINTMENT OF APPELLATE PANEL COUNSEL
## OR PRO-BONO COUNSEL

NOW COMES, Defendant, Thomas O'Farrell, Pro-Se, and request

this Honorable Court enter an order granting Defendants Motion.

In support of this Motion Defendant states as follows:

1) Defendant is in the custody of the State of Illinois,

under the Department of Corrections of said State, pursuant to

an order entered February 24, 1997 under indictment number above

in the Circuit Court of Cook County, Illinois.

2) That Defendant is without funds, assets, personal, or

real property to pay the costs of counsel in the Appeal

proceedings.

3) Defendant is now Appealing the ruling on Defendants

Post-Conviction Petition, where Defendant raised Ineffective

Assistance of Trial Counsel an Assistant Public Defender and

of Appellate Counsel an Assistant State Appellate Defender.

4) Defendant firmly believes that the Public Defenders

Office and the Office of the State Appellate Defender will

FILED
NOV 08 2001
DOROTHY BROWN
CLERK CIRCUIT COURT

-1-

not defend Defendant to the best of their ability on Defendants

Appeal due to the issue of Ineffective Assistance of Counsel on

both an Assistant Public Defender and on Appellate Counsel an

Assistant Appellate Defender.    Defendant believes that the

Offices of the Public Defender and State Appellate Defender

would proceed half-heartedly on filing Defendants Appeal,

therefore violating Defendants Rights to Due Process secured to

all in the State of Illinois and United States Constitutions.

WHEREFORE, Defendant prays that this Honorable Court will

grant Defendants Motion and appoint either an Appellate Panel

Counsel or Pro-Bono Counsel to represent Defendant in the Appeal

to the Appellate Court of Illinois, First Judicial District.

Respectfully submitted,

Thomas O'Farrell, Pro-Se,
Defendant-Petitioner

-2-

STATE OF ILLINOIS)
          )ss
COUNTY OF COOK  )

IN THE CIRCUIT COURT OF COOK COUNTY
COUNTY DEPARTMENT – CRIMINAL DIVISION

---

| | |
|---|---|
| PEOPLE OF THE STATE OF ILLINOIS,)<br>PLAINTIFF-RESPONDENT,)<br>)<br>-v-  )<br>)<br>THOMAS O'FARRELL,  )<br>DEFENDANT-PETITIONER,)<br>) | Appeal from the<br>Circuit Court of<br>Cook County, Illinois<br><br>No. 95 CR 30463<br><br>Michael P. Toomin<br>Judge Presiding |

---

AFFIDAVIT OF INTENT TO FILE AN APPEAL
TO THE APPELLATE COURT OF ILLINOIS, FIRST JUDICIAL DISTRICT

NOW COMES, Defendant, Thomas O'Farrell, Pro-Se, Defendant-Petitioner who states as follows:

1) That the above captioned cause was decided by the Honorable Michael P. Toomin on October 4, 2001.

2) That Defendant intends, in good faith to file an Appeal to the Appellate Court of Illinois, First Judicial District in the above captioned cause.

3) That the undersigned, first being duly Sworn on oath, deposes and states that the statements contained herein are true in substance and in fact.

FILED
NOV 08 2001
DOROTHY BROWN
CLERK OF CIRCUIT COURT

Respectfully submitted,

Thomas O'Farrell, Pro-Se,
Defendant-Petitioner

STATE OF ILLINOIS)
                 )ss
COUNTY OF COOK   )

### IN THE CIRCUIT COURT OF COOK COUNTY
### COUNTY DEPARTMENT - CRIMINAL DIVISION

| | |
|---|---|
| PEOPLE OF THE STATE OF ILLINOIS,)<br>PLAINTIFF-RESPONDENT,)<br> )<br> -v- )<br> )<br>THOMAS O'FARRELL, )<br> DEFENDANT-PETITIONER,)<br> ) | Appeal from the<br>Circuit Court of<br>Cook County, Illinois<br><br>No. 95 CR 30463<br><br>Michael P. Toomin<br>Judge Presiding |

**FILED**

### MOTION FOR TRANSCRIPTS AND COMMON LAW RECORDS

NOV 08 2001

DOROTHY BROWN
CLERK OF CIRCUIT COURT

NOW COMES, Defendant, Thomas O'Farrell, Pro-Se, and requests

this Honorable Court enter an order granting Defendants Motion.

In support of this Motion Defendant states as follows:

1) Defendant is in the custody of the State of Illinois,

under the Department of Corrections of said State, pursuant to

an order entered February 24, 1997 under indictment number above

in the Circuit Court of Cook County, Illinois.

2) That Defendant is without funds, assets, personal, or

real property to pay the costs for the documents requsted herein:

    a) Transcripts of all Court proceedings and Motions entered;

    b) Motions and any written responses to this particular

       case number;

    c) Orders entered in this cause; and

    d) Any papers filed on behalf and/or against Defendant

       involving the initial arrest.

-1-

3) In accordance with Supreme Court Rules:

The report of the proceedings are hereby requested and held pursuant to Supreme Court Rule 607 of Chapter 110A of the Illinois Complied Statutes 725 ILCS 5/122-1 of the Post-Conviction Act.

WHEREFORE, Defendant prays that this Honorable Court will grant Defendants Motion and order the Clerk of the Circuit Court, Dorothy Brown to prepare and forward a copy of the above records to Defendant.

Respectfully submitted,

Thomas O'Farrell, Pro-Se,
Defendant-Petitioner

**FILED**

**NOV 08 2001**

DOROTHY BROWN
CLERK OF CIRCUIT COURT

-2-

STATE OF ILLINOIS      )
                       )ss
COUNTY OF LIVINGSTON   )

## PROOF OF SERVICE

I, the undersigned, hereby certify under penalty of perjury and as otherwise provided by law that I have served a copy of the foregoing documents upon the following parties of record by placing same into an envelope with the following names and addresses in plain view:

Dorothry Brown,                     State's Attorney for Cook County,
Clerk of the Circuit Court          Richard A. Devine
2650 S. California Ave.             2650 S. California Ave.
Chicago, Illinois 60608            Chicago, Illinois 60608

and placing same into the United States Mail at the Pontiac Correctional Center, Pontiac, Illinois with proper postage to be fully prepaid by the State of Illinois in accordance with the policies and procedures of the Pontiac Correctional Center on this _1_ day of November, 2001.

                              By _____
                                 Thomas O'Farrell, Pro-Se
                                 Defendant-Petitioner

**FILED**

**NOV 0 8 2001**

## NOTICE OF FILING

PLEASE TAKE NOTICE, that on the date stated herein, I mailed to Dorothy Brown, Clerk of the Circuit Court of Cook County, Illinois for filing in the case of People v. O'Farrell, Case Number 95 CR 30463 One (1) original and Five (5) copies of the following documents:

Affidavit of intent to file an Appeal to the Appellate Court of Illinois, First Judicial District;  Motion for leave to file and proceed In Forme Pauperis;  Motion for appointment of Appellate Panel Counsel or Pro-Bono Counsel; and Motion for transcripts and common law records

with One (1) to be stamped filed and returned to me.

DOROTHY BROWN
CLERK OF CIRCUIT COURT

                              Respectfully submitted,

                              _____
                              Thomas O'Farrell, Pro-Se,
                              Defendant-Petitioner

Subsrcibed and Sworn to before me
on this _1_ day of November, 2001.

_____
Notary Public

```
"OFFICIAL SEAL"
Paula G. Rich
Notary Public, State of Illinois
My Commission Exp. 04/24/2005
```

1    STATE OF ILLINOIS  )
                   )  SS:
2    COUNTY OF COOK     )

3            IN THE CIRCUIT COURT OF COOK COUNTY
             COUNTY DEPARTMENT-CRIMINAL DIVISION
4
    THE PEOPLE OF THE  )
5    STATE OF ILLINOIS  )
                   )
6                   )   Indictment No. 95 30463
        VS        )
7                   )   Charge:  Murder
                   )
8    THOMAS O'FARRELL   )

9            REPORT OF PROCEEDINGS

10       BE IT REMEMBERED that on the 5th day of

11   December A.D., 2001, this cause came on for hearing

12   before the Honorable MICHAEL P. TOOMIN, Judge of said

13   court.

14

15

16

17

18

19

20

21

22

23   Brenda D. Hayes, CSR, 084-001226
     Official Court Reporter
     2650 S. California
24   Chicago, Illinois  60608

EXHIBIT K

1              THE CLERK:  Thomas O'Farrell.

2              THE COURT:  On October 4th this court

3     dismissed this petition on the State's motion to

4     dismiss.  He was represented by appointed counsel,

5     Debbie Gubin, and I don't know that she has done

6     anything insofar as appeal.

7                    He has filed here a motion for leave to

8     proceed in forma pauperis with somebody other than the

9     public defender or State Appellate defender.

10    Apparently he's not happy with either services.  He

11    says he -- He has an affidavit of intent to file an

12    appeal to the Appellate Court, it was received on

13    November the 8th.  I don't know that a notice of

14    intent to file an appeal is worth much at all, no

15    matter when it was filed.  He had thirty days to file

16    the Notice of Appeal, it doesn't appear that he did

17    that.  I think he's going to have to take this up with

18    the Appellate Court.

19                    The court will deny his motion for

20    transcripts, motion for appointment of appellate

21    counsel and the motion for transcripts and common law

22    record all denied.  Clerk to notify.

23                        (Which were all the proceedings

24                          in the above entitled matter.)

1    STATE OF ILLINOIS)
                      )       SS:
2    COUNTY OF C O O K)

3            IN THE CIRCUIT COURT OF COOK COUNTY
                COUNTY DEPARTMENT-CRIMINAL DIVISION

4

5            I, BRENDA D. HAYES, Official Court

6    Reporter for the Circuit Court of Cook County, Cook

7    Judicial Circuit of Illinois, do hereby certify that

8    I reported stenographically the proceedings had on

9    the hearing in the above entitled cause; that I

10   thereafter transcribed said hearing into

11   typewriting, which I hereby certify to be a

12   true and accurate transcript of the proceedings

13   had before the Honorable MICHAEL P. TOOMIN, Judge of

14   said court.

15

16

17

18

19

20                    OFFICIAL COURT REPORTER

21

22

23

24

K-4

```
1       STATE OF ILLINOIS    )
                             )    SS.
2       COUNTY OF C O O K    )

3                 IN THE CIRCUIT COURT OF COOK COUNTY
                  COUNTY DEPARTMENT-CRIMINAL DIVISION
4
        THE PEOPLE OF THE    )
5       STATE OF ILLINOIS    )
                             )    Case No. 95-30463
6              VS            )
                             )    Before JUDGE MICHAEL TOOMIN
7       THOMAS O'FARRELL     )
                                  APRIL 16, 2002
8

9            Court convened pursuant to adjournment.

10           Present:

11               HONORABLE RICHARD DEVINE,
                     State's Attorney of Cook County, by
12               MS. ASHLEY ROMITO,
                     Assistant State's Attorney,
13                   appeared for the People;

14               MR. EDWIN BURNETTE,
                     Public Defender of Cook County, by
15               MS. JULIE KOEHLER,
                     Assistant Public Defender,
16                   appeared for the defendant.

17

18

19

20

21

22      Paul P. Marzano, CSR, RPR
        Official Court Reporter
23      2650 S. California, Room 4C02
        Chicago, IL  60608
24      License #84-001789
```

EXHIBIT L

L-1

47

1

2      THE CLERK:  Thomas O'Farrell, sheet one.  That's

3  for a motion.

4      THE COURT:  Thomas O'Farrell on sheet one has

5  filed a motion to compel the clerk to file the

6  defendant's affidavit to file an appeal to the Appellate

7  Court with the clerk of the Appellate Court.

8                  This -- this motion is a classic

9  example of how a defendant who intends to represent

10  himself simply does not understand what is occurring and

11  what the appellate process is about.

12                  Apparently, after this Court

13  dismissed his petition for post conviction relief, he

14  was notified.  He received a copy of that order and then

15  filed with the Clerk of the Circuit Court an affidavit

16  of intent to file an appeal.

17                  I don't know what that is supposed

18  to mean.  I'm sure that the clerk of this Circuit Court

19  did not know what they're supposed to mean.  And now he

20  is complaining that the clerk did not transmit that

21  affidavit of intent to file an appeal to the Appellate

22  Court.  There is no requirement, nor would the clerk in

23  anyway honor such a request because it is not a notice

24  of appeal that he filed.

L-3



1                      A notice of an appeal, as the law

2      requires, the Appellate Court would have the case.  They

3      could appoint counsel and none of this correspondence

4      would be necessary to sort through and find out what

5      this defendant is complaining about, and the answer in

6      the packet of material is fairly clear because he wrote

7      to the Appellate Court.  They told him what the facts of

8      life were.  They told him since he did not file a notice

9      of appeal, there was nothing for Dorothy Brown to submit

10     to the Appellate Court, and they would not have any

11     appeal docketed until he did that.

12                     They also pointed out to him in a

13     lengthy letter of March 7th of this year that if he

14     wished to appeal, he must file a motion in the Appellate

15     Court for leave to file a late notice of appeal that

16     meets the Supreme Court rules of 606C and meets the

17     requirements.  The clear language of March 7th escaped

18     Mr. O'Farrell because he's still filing things in the

19     Circuit Court and jurisdiction has long passed in the

20     Circuit Court.

21                     If he wants to appeal this matter,

22     he has to follow the directions of the clerk of the

23     Appellate Court, Mr. Rabid, who pointed out clearly all

24     of the steps he had to take to perfect his appeal.

119

```
 1        There is nothing more that this Court can do, and I will
 2        not compel the Clerk of the Circuit Court to do anything
 3        in this case that the defendant is requesting because
 4        there is no requirement nor is there any procedure
 5        available that he is suggesting.
 6                              So, the motion to compel the Clerk
 7        of the Circuit Court to file his affidavit of intent to
 8        appeal shall be and is hereby denied.
 9                                      (Which were all of the
10                                       proceedings had in the
11                                       above-entitled cause.)
12
13
14
15
16
17
18
19
20
21
22
23
24
```

50

No.

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the Circuit Court |
| | ) | of Cook County, Illinois. |
| Respondent-Appellee, | ) | |
| | ) | |
| -vs- | ) | No. 95 CR 30463. |
| | ) | |
| THOMAS O'FARRELL, | ) | Honorable |
| | ) | Michael P. Toomin, |
| Petitioner-Appellant. | ) | Judge Presiding. |

## PROOF OF SERVICE

TO:   Richard A. Devine                     Mr. Thomas O'Farrell
      Cook County State's Attorney          Register No. K-54340
      300 Daley Center                      Pontiac Correctional Center
      Chicago, Illinois  60602              P.O. Box 99
                                            Pontiac, IL 61764

You are hereby notified that on August 24, 2004, we personally delivered the original and three copies of the attached Motion for Leave to File a Late Notice of Appeal and Draft Order to the Clerk of the above Court, a copy of which is hereby served on you.

PATRICIA UNSINN
Assistant Deputy Defender

STATE OF ILLINOIS  )
                   )  SS
COUNTY OF COOK     )

The undersigned, being first duly sworn on oath, deposes and says that he personally delivered the required number of copies of the attached Motion to the Clerk of the above Court and to the State's Attorney of Cook County on August 24, 2004.

CLERK

SUBSCRIBED AND SWORN TO BEFORE ME
on August 24, 2004.

NOTARY PUBLIC

Official Seal
Kathleen Callahan
Notary Public State of Illinois
My Commission Expires 04/28/06

EXHIBIT M

21

No.

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the Circuit Court |
| | ) | of Cook County, Illinois. |
| Respondent-Appellee, | ) | |
| | ) | |
| -vs- | ) | No. 95 CR 30463. |
| | ) | |
| THOMAS O'FARRELL, | ) | Honorable |
| | ) | Michael P. Toomin, |
| Petitioner-Appellant. | ) | Judge Presiding. |

## MOTION FOR LEAVE TO FILE A LATE NOTICE OF APPEAL

Thomas O'Farrell, Petitioner-Appellant, by Michael J. Pelletier, Deputy Defender, and Patricia Unsinn, Assistant Deputy Defender, Office of the State Appellate Defender, pursuant to Supreme Court Rule 606(c), moves this Court to allow him leave to file a late notice of appeal.

In support of this motion, Patricia Unsinn states:

1.     Appellant was convicted of first degree murder and sentenced to a term of 50 years' imprisonment. His conviction was affirmed on appeal under appeal no. 1-97-0911.

2.     On April 13, 2001, appellant filed a *pro se* petition for post-conviction relief. The court appointed counsel but ultimately dismissed the petition on the State's motion on October 4, 2001.

3.     On November 1, 2001, appellant, who remains incarcerated, mailed to the circuit court clerk four documents: an Affidavit of Intent to File an Appeal to the Appellate Court of Illinois, First Judicial District, a Motion for Leave to File and Proceed In Forma Pauperis, a



Motion for Appointment of Appellate Panel Counsel or Pro-Bono Counsel, and a Motion for

Transcripts and Common Law Records. See attached documents.

4. On December 5, 2001 the Honorable Michael P. Toomin denied the motions. See

attached order. With respect to the affidavit of intent to file an appeal, Judge Toomin stated, "I

don't know that a notice of intent to file an appeal is worth much at all, no matter when it was

filed." See attached transcript.

5. On December 9, 2001, the circuit court clerk returned appellant's documents to

him without file stamping them.

6. Appellant continued to make efforts to have his notice of intent filed and

processed as a notice of appeal, but was unsuccessful.

7. These events came to the attention of the State Appellate Defender after appellant

filed a successive petition which was also dismissed by the circuit court and which is currently

being appealed under appellate number 1-03-3404. The State Appellate Defender represents

appellant in that appeal.

8. Upon review of the record in that appeal, appellate counsel concluded that

appellant had indicated in a timely manner his desire to appeal from the dismissal of his original

post-conviction petition, that he was indigent, and that he needed counsel to assist him.

Although appellant entitled the document an "Affidavit of Intent to File and Appeal to the

Appellate Court of Illinois, First Judicial District," the circuit court could and should have treated

it as a notice of appeal as it was timely filed, indicated a desire to appeal, and identified the final

judgment from which appellant wanted to appeal. Any defects in the document were ones of

form, rather than substance, which would have caused no prejudice to the State, and therefore,

should have been overlooked, as a notice of appeal is to be liberally construed. *People v.*



*Hansen*, 198 Ill. App. 3d 160, 555 N.E.2d 797 (4th Dist. 1990); *People v. Gallagher*, 191 Ill. App. 3d 488, 548 N.E.2d 78 (4th Dist. 1989). Especially when considered in the context of the accompanying documents, appellant identified the date of the order from which he wanted to appeal, the court to which the appeal would be taken, the nature of the order, and the fact that he was indigent, and without counsel, and wanted counsel appointed, satisfying the requisites of a notice of appeal. Supreme Court Rule 606(d). If the court did not want to treat appellant's affidavit and accompanying documents as a notice of appeal, since appellant indicated a desire to appeal, the court should have directed the clerk of the circuit court to file a notice of appeal on his behalf. *People v. Sanders*, 40 Ill. 2d 458, 240 N.E.2d 627 (1968); Supreme Court Rules 606(a) and 651(d). At the very least, being informed of appellant's desire to appeal and that he was indigent and required counsel to represent him for purposes of appeal, the court should have appointed counsel who would have had the responsibility of filing a notice of appeal on his behalf. *Roe v. Flores-Ortega*, 526 U.S. 1069 (2000).

9.     Because of these circumstances, the failure of the clerk to file a notice of appeal was not due to appellant's culpable negligence. Additionally, there is merit to his appeal.

WHEREFORE, appellant respectfully requests that this Honorable Court allow him leave to file a late notice of appeal.

Respectfully submitted,

PATRICIA UNSINN
Assistant Deputy Defender
Office of the State Appellate Defender
203 North LaSalle Street - 24th Floor
Chicago, Illinois 60601
(312) 814-5472
COUNSEL FOR PETITIONER-APPELLANT



STATE OF ILLINOIS    )
                     )  SS
COUNTY OF COOK       )

## AFFIDAVIT

Patricia Unsinn, being first duly sworn on oath, deposes and says that she has read the foregoing Motion by her subscribed and the facts stated therein are true and correct to the best of her knowledge and belief.

PATRICIA UNSINN
Assistant Deputy Defender

SUBSCRIBED AND SWORN TO BEFORE ME
on August 24, 2004.

NOTARY PUBLIC

Official Seal
Kathleen Callahan
Notary Public State of Illinois
My Commission Expires 04/26/06



04-2481

IN THE

## APPELLATE COURT OF ILLINOIS

### FIRST DISTRICT

| | | |
|---|---|---|
| PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the Circuit Court of Cook County, Illinois. |
| | ) | |
| Respondent-Appellee, | ) | |
| | ) | |
| -vs- | ) | No. 95 CR 30463. |
| | ) | |
| THOMAS O'FARRELL, | ) | Honorable Michael P. Toomin, |
| | ) | |
| Petitioner-Appellant. | ) | Judge Presiding. |

### ORDER

This matter coming to be heard on Motion for Leave to File a Late the Notice of Appeal, all parties having been duly notified, and the Court being advised in the premises,

IT IS HEREBY ORDERED:

That the motion for leave to file a late notice of appeal is allowed/~~denied~~.

The Office of the State Appellate Defender, having already been appointed to represent defendant on appeal number 1-03-3404, is appointed to represent defendant on appeal. Allowed/denied.

_____
PRESIDING JUSTICE

**ORDER ENTERED**

SEP 0 7 2004

APPELLATE COURT, FIRST DISTRICT

_____
JUSTICE

_____
JUSTICE

DATE: _____
PATRICIA UNSINN
Assistant Deputy Defender
Office of the State Appellate Defender
203 North LaSalle Street - 24th Floor
Chicago, Illinois  60601
(312) 814-5472
COUNSEL FOR PETITIONER-APPELLANT



EXHIBIT N

NOTICE

This text of this order may be
changed or corrected prior to the
time for filing of a Petition for
Rehearing or the disposition of
the same.

SECOND DIVISION
August 30, 2005

No. 1-04-2481

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

05·815

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 95 CR 30463 |
| | ) | |
| THOMAS O'FARRELL, | ) | Honorable |
| | ) | Michael P. Toomin, |
| Defendant-Appellant. | ) | Judge Presiding. |

### O R D E R

Defendant Thomas O'Farrell appeals from an order of the
circuit court denying his *pro se* motion for substitution of judge
at the proceedings on his first postconviction petition.  On
appeal, defendant contends that the trial court's denial of his
motion for substitution of judge was based on its misapprehension
of crucial facts.  We affirm.

Following a bench trial, defendant was convicted of first
degree murder and sentenced to 50 years' imprisonment.  On direct
appeal, this court affirmed defendant's conviction and sentence
and modified the mittimus to allow defendant one day of good
conduct credit for each day of his sentence served.   People v.

EXHIBIT O

1-04-2481

O'Farrell, No. 1-97-0911 (1999) (unpublished order under Supreme Court Rule 23).

On January 26, 2000, defendant filed a *pro se* postconviction petition, alleging, in relevant part, that his counsel was ineffective in failing to present evidence of judicial misconduct in a posttrial motion. Defendant asserted that his counsel should have alleged that prior to the start of his trial the trial court's deputy, Michael Stawczek, Sr., told defendant that "Judge Toomin (trial court) is going to find you guilty and give you fifty (50) years." Defendant attached affidavits from himself and his father. Defendant's father attested that defendant informed him that the court's "Deputy *** told [defendant] that he was going to be found guilty and sentenced to fifty (50) years." Defendant attested that the "Deputy *** told [him] in the elevator, prior to trial, that, 'Judge Toomin [was] going to find [him] guilty and give [defendant] fifty (50) years.'"

On the same date defendant filed his petition, he also filed a *pro se* "motion for different judge to consider," alleging that the trial judge would be biased against him in deciding his postconviction petition because he mentioned the trial judge in his petition when he discussed judicial misconduct. Defendant also alleged that

> "[t]he Trial Court prior to the Defendant['s] trial in
> this cause had determined Defendant['s] guilt and

2

1-04-2481

> sentence prior to any evidence be[ing] offered
> therefore Defendant was prejudiced by Trial Court['s]
> bias[ed] action."

On February 15, 2000, the court denied the motion for
substitution of judge,[1] noting that

> "[i]t is not supported by affidavit pursuant to the
> statute. *** [Defendant] mentions that the judge is
> under judicial misconduct and, therefore, the judge
> would be biased against him.  There is no such
> allegation in his petition.  And he also alleges that
> since the trial court also found the Defendant guilty
> and sentenced him, therefore, he would be prejudiced.
> The Defendant's motion does not rise to a level of
> allegations to substitute [the trial judge] for cause.
> It is unsupported pursuant to the statute."

Subsequently, appointed counsel amended defendant's
postconviction petition, and the State filed a motion to dismiss,
which the trial court granted on October 4, 2001.  In May 2003,
defendant filed a successive *pro se* petition for relief and
another motion for substitution of judge.  In July 2003, the
successive petition and the motion for substitution of judge were

---

[1]It appears that defendant appealed the denial of his motion
for substitution of judge but then moved to dismiss it on his own
motion, which this court allowed.  People v. O'Farrell, No. 1-00-
0968 (2001) (dispositional order).

1-04-2481

both denied.[2]

This court allowed defendant to file a late notice of appeal of the order dismissing his first postconviction petition on October 4, 2001.

On appeal, defendant contends that the court erred in denying his motion for substitution of judge in February 2000.

As an initial matter, defendant's failure to indicate that he was appealing the denial of his motion for substitution of judge in his notice of appeal does not result in this court's loss of jurisdiction over that order because such an order was a step in the procedural progression leading to the order mentioned in the notice of appeal. See Jiffy Lube Internnational v. Agarwal, 277 Ill. App. 3d 722, 727 (1996).

We next note that defendant contends the standard of review is *de novo* because the trial court allegedly failed to consider crucial evidence in denying his motion for substitution. The standard for reviewing the trial court's denial of defendant's motion for substitution of judge is abuse of discretion. See People v. Meeks, 249 Ill. App. 3d 152, 160 (1993). Furthermore, we review the trial court's judgment, not its reasons for the judgment. People v. Lee, 344 Ill. App. 3d 851, 853 (2003).

---

[2]Twice defendant appealed the dismissal of his successive postconviction petition, but then moved to dismiss it. This court allowed both dismissals. People v. O'Farrell, Nos. 1-03-2619 and 1-03-3404 (2004) (dispositional orders). Defendant then filed another appeal, and defendant's appellate counsel moved to withdraw. That appeal is still pending. People v. O'Farrell, No. 1-04-1094 (appeal pending).

4

1-04-2481

Accordingly, we may affirm a trial court's judgment on any basis
supported by the record regardless of its reasons for reaching
its decision.  In re Marriage of Loomis, 348 Ill. App. 3d 972,
974 (2004).  We now turn to the issue on appeal.

Our supreme court has held that there is no absolute right
to substitution of a judge at a postconviction proceeding.
People v. Enis, 194 Ill. 2d 361, 416 (2000).  The defendant must
show that he will be substantially prejudiced if the motion for
substitution is denied.  Enis, 194 Ill. 2d at 416.  A defendant
alleging prejudice must support such an allegation with an
affidavit.  People v. Brim, 241 Ill. App. 3d 245, 248-49 (1993).
A mere conclusory statement, even if made under oath, is
insufficient to establish the violation of any constitutional
right.  People v. Coleman, 32 Ill. App. 3d 949, 952 (1975).  A
trial judge who, prior to hearing any evidence, "*expresses*" the
opinion that the defendant is guilty may be disqualified.
(Emphasis added.)  People v. Williams, 272 Ill. App. 3d 868, 874-
75 (1995).

In the present case, contrary to defendant's contention,
there are no affidavits attached to the motion for substitution
of judge.  Defendant, however, is apparently asserting that the
affidavits attached to his first postconviction petition were
also intended to support his motion for substitution where the
motion and petition were filed on the same date.  Defendant's
motion for substitution of judge and his petition for

5

1-04-2481

postconviction relief were two separate pleadings. Defendant was required to attach to the motion for substitution an affidavit supporting his allegations of prejudice. See Brim, 241 Ill. App. 3d at 248-49. Furthermore, even considering defendant's motion with the affidavits attached to defendant's first postconviction petition, we find that the trial court did not abuse its discretion in denying the motion for substitution.

Defendant alleged in his petition that the court was prejudiced against him because it decided his case prior to hearing any evidence. Defendant attested in his affidavit that prior to the start of his trial the court's deputy informed him that the judge was going to find him guilty and sentence him to 50 years in prison. The affidavit of defendant's father indicated that defendant informed him that prior to trial the deputy told him he was going to be found guilty and imprisoned for 50 years. These affidavits only attest to the deputy's statements but do not indicate that the *judge expressed* to the deputy that he was going to find defendant guilty and impose a 50-year sentence. See Williams, 272 Ill. App. 3d at 874-75. Defendant's allegation in his motion that the judge had found him guilty prior to trial was merely a conclusory allegation that did not mandate substitution. See Coleman, 32 Ill. App. 3d at 951-52 (motion for substitution properly denied where the motion alleged that the defendant's trial judge was party to an improper conversation with a fellow prisoner, but the attached affidavit

6

1-04-2481

failed to attest to an actual conversation between the judge and
the prisoner). Moreover, in the absence of an affidavit from the
deputy, Michael Stawczek, Sr., the person who allegedly told
defendant that the judge was going to find him guilty,
substitution was not required because the allegation was not
"substantially borne out" by matters evidenced in the record.
See Coleman, 32 Ill. App. 3d at 952.

In addition, the fact that defendant alleged judicial
misconduct in his postconviction petition cannot be used as a
basis to obtain substitution of his trial judge. See generally
In re Marriage of Hartian, 222 Ill. App. 3d 566, 569 (1991) (the
respondent failed to show prejudice by the trial judge where he
filed a complaint against the judge with the Judicial Inquiry
Board); People v. House, 202 Ill. App. 3d 893, 899-900, 909-10
(1990) (substitution not required where the defendant complained
of the trial judge's rulings in his postconviction petition).
Furthermore, a judge is presumed to be impartial even after
extreme provocation. People v. Jackson, 205 Ill. 2d 247, 276
(2001); People v. Steidl, 177 Ill. 2d 239, 265 (1997). Moreover,
if we were to conclude that an allegation of judicial misconduct
in a postconviction petition would require recusal, then
defendants would simply allege misconduct on their trial judge's
part for the purpose of obtaining another judge. See generally
People v. Smeathers, 297 Ill. App. 3d 711, 716 (1998) (filing a
complaint against one's trial judge does not require substitution

1-04-2481

because to hold otherwise would allow defendants to obtain a new judge by filing frivolous complaints "to force an endless stream of recusals"). Accordingly, we find that the trial court did not abuse its discretion in denying defendant's motion for substitution.

For the reasons stated, we affirm the circuit court's judgment.

Affirmed.

BURKE, P.J., with WOLFSON and GARCIA, JJ., concurring.

8

# 101468

NO. _____

## IN THE SUPREME COURT OF ILLINOIS

| | | |
|---|---|---|
| People State of Illinois, | ) | Appellate Court, |
| | ) | First District |
| Respondent | ) | No. 1-04-2481 |
| | ) | |
| v. | ) | Circuit Court, |
| | ) | Cook County |
| Thomas O'Farrell, | ) | No. 95 CR 30463 |
| | ) | |
| Petitioner | ) | Hon. Michael P. Toomin, |
| | ) | Judge Presiding. |

### PETITION FOR LEAVE TO APPEAL

**FILED**

OCT 2 0 2005

**SUPREME COURT CLERK**

35- 100405
70 - 110805
R - 083005
No RH

Thomas O'Farrell
Reg. No. K-54340
P. O. Box 99
Pontiac, Illinois 61764

EXHIBIT P

IN THE
SUPREME COURT OF ILLINOIS

| | | |
|---|---|---|
| People of the State of Illinois, | ) | Appeal from the Circuit |
| | ) | Court of Cook County |
| Plaintiff/Appellee, | ) | Illinois. |
| | ) | |
| vs. | ) | No. 95 CR 30463 |
| | ) | |
| Thomas O'Farrell, | ) | Honorable |
| | ) | Michael P. Toomin, |
| Defendant/Appellant. | ) | Judge Presiding. |

## PETITION FOR LEAVE TO APPEAL

### 1.
### PRAYER FOR LEAVE TO APPEAL

Your Petitioner, Thomas O'Farrell, pro se, respectfully petitions this Honorable Court for Leave to Appeal pursuant to Supreme Court Rule 315, from the judgment of the Illinois Appellate Court, First Judicial District, which affirmed the summary dismissal of his pro se Petition for Post Conviction Relief by the Circuit Court of Cook County.

### 2.
### OPINION AND PROCEEDINGS BELOW

On January 26, 2000, Petitioner filed a pro se Petition for Post Conviction Relief and a pro se Motion for Substitution of Judge. On October 4, 2001, the Court granted the State's motion to dismiss the petition. Petitioner filed a timely notice of appeal. On March 7, 2005, appointed counsel filed a Brief and Argument, challenging only the denial of the motion for substitution of judge. On June 9, 2005, Petitioner filed a Motion for Leave to File a Supplemental Brief before the Appellate Court. In said Brief, Petitioner challenged the trial court's summary

dismissal of the petition.   On June 15, 2005, the Appellate Court
denied Petitioner leave to file the supplemental brief.  On August
30, 2005, the Appellate Court affirmed the denial of the motion
for substitution of judge.  This appeal follows.

### 3.
### POINTS RELIED UPON FOR REVERSAL

1.  Whether the Appellate Court erred in affirming
the denial of Petitioner's pro se Motion for Substitution of
Judge, where in doing so, the Court created an impossible
burden of proof for a pro se movant to satisfy?

2.  Whether the Appellate Court erred in denying Appellant
leave to file his Supplemental Brief and Argument, where Appellate
Counsel failed to brief any of the issues contained in his post
conviction petition.

### 4.
### STATEMENT OF FACTS

On January 26, 2000, Petitioner filed a pro se post conviction
petition and a pro se motion for substitution of judge.  In his
petition, Petitioner raised various claims of ineffective assistance
of trial counsel.  In one such claim, Petitioner argued that his
trial counsel was ineffective because he failed to include in his
post-trial motion that the bailiff, Michael Stawczek told Petitioner
on the morning of his trial that Judge Toomin was going to find
him guilty and sentence him to a term of fifty (50) years.   In
support of this contention, Petitioner attached his own affidavit
and the affidavit of his father, a retired Alsip Police Lieutenant,
who stated that Petitioner called him and informed him of what
the bailiff had said.  In his motion, Petitioner stated that he

believed Judge Toomin would be biased against him because he had determined his guilt and sentence prior to any evidence being presented at his trial, and because he raised this claim of judicial misconduct in his petition.

On February 15, 2000, Judge McSweeny-Moore heard and denied Petitioner's motion, finding that his claim that Judge Toomin would be prejudiced against him because he "found [him] guilty and sentenced him," did not rise to the level of an allegation sufficient to substitute Judge Toomin for cause, the motion was not supported by affidavit as required under the statute, and Petitioner did not raise a claim of judicial misconduct in his petition.

Private counsel was appointed to represent Petitioner, and on April 13, 2001, filed an amended post conviction petition in place of his pro se petition. In this petition, counsel maintained that the trial court erred because it failed to ensure that all Brady material relating to Thomas Dye, a jailhouse informant who testified against Petitioner at his sentencing hearing, was tendered to the defense, and failed to take judicial notice of the applicable law concerning the probate of minor's estates. Counsel additionally maintained that trial counsel was ineffective for failing to properly present the motion to quash arrest and suppress physical evidence; file pre-trial motion requesting the court to reconsider it's denial of these motions; call witnesses to introduce the mental state of of the defendant and victim in order to support a second degree murder finding; cross-examine Dye concerning the legal papers stolen from Petitioner; utilize the probate statutes, introduce certified copies of of the final

accounting of the victim's estate, and the testimony of the estate administrator; request that the court reconsider the motion for additional discovery; and present additional mitigating evidence concerning the victim's medical and mental conditions. Counsel further contended that appellate counsel was ineffective for failing to raise claims concerning trial counsel's ineffectiveness at trial and sentencing, the denial of the motion for additional discovery, as well as the motions to quash arrest and suppress physical evidence, and the prosecutor's misconduct for presenting Dye's testimony and failing to tender all information concerning Dye's involvement as an informant for the State. In support of this petition, counsel attached affidavits from Petitioner's parents and probate documents from the victim's estate. On may 8, 2001, an amendment to the amended petition was filed, which alleged that trial counsel was ineffective because he prevented Petitioner from raising his excessive sentence claim at trial or on direct appeal.

On May 30, 2001, the State filed a motion to dismiss the amended petition. In this motion, the State argued that the issues raised did not state constitutional questions that were cognizable under the Post Conviction Hearing Act, and that those that did were barred by the doctrines of waiver and res judicata or have been held by Illinois courts to be insufficient to warrant a hearing. On June 28, 2001, counsel filed a response to the State's motion, and on August 22, 2001, a hearing on the State's motion was held.

On October 4, 2001, the circuit court granted the State's motion to dismiss, finding that Petitioner's claims that his trial



counsel was ineffective, that the court erroneously allowed Dye to testify, and that his sentence was excessive were barred by the doctrines of waiver and res judicata and Petitioner failed to make a substantial showing that his constitutional rights were violated either at trial or on direct review.

Petitioner's motion for leave to file late notice of appeal was allowed by the Appellate Court on September 7, 2004, and appellate counsel was appointed. On appeal, counsel briefed one issue for consideration by the Court: whether the trial court erred in denying Petitioner's pro se motion for substitution of judge. On June 9, 2005, Petitioner filed a motion for leave to file a supplemental brief before the Appellate Court. The Appellate Court denied Petitioner leave to file the supplemental brief, and on August 30, 2005, the Court affirmed the trial court's denial of the motion for substitution of judge.

5.

## ARGUMENTS

1.  THE APPELLATE COURT ERRED IN AFFIRMING THE DENIAL OF
    PETITIONER'S PRO SE MOTION FOR SUBSTITUTION OF JUDGE,
    WHERE IN DOING SO, THE COURT CREATED AN IMPOSSIBLE
    BURDEN OF PROOF FOR A PRO SE MOVANT TO SATISFY.

Petitioner filed a pro se motion for substitution of judge at the same time he filed his post conviction petition. In denying the motion, the court reasoned that Petitioner's claim that the judge would be prejudiced against him because he "found [him] guilty and sentenced him," did not rise to the level of an allegation sufficient to substitute the judge for cause, Petitioner failed to raise a claim of judicial misconduct in his post conviction petition, and the motion was not supported by an affidavit. However, the record shows that the court's

recollection of these facts was in error. Petitioner did not claim that the judge would be biased against him because he found him guilty and sentenced him, but rather because he had determined his guilt and sentence prior to any evidence being presented at his trial. In addition, Petitioner raised a claim of judicial misconduct in his post conviction petition and supported this claim by attaching two affidavits, all of which were filed with his motion for substitution of judge. Thus, where the trial court's denial of Petitioner's motion was based upon it's inaccurate recollection of the facts, the Appellate Court should have reversed the ruling, and remanded the cause for a hearing.

In it's order affirming the denial of Petitioner's motion, the Appellate Court stated that Petitioner's affidavit and the affidavit of his father, were insufficient to establish bias on the part of the trial judge. The Court reasoned that, because Petitioner was relying on a statement made by bailiff Michael Stawczek, the motion needed to be accompanied by an affidavit from Stawczek to have any viability. This Court should grant leave to appeal to determine whether the Appellate Court created an impossible standard for a pro se litigant to meet, when filing a motion for substitution of judge.

First, the Court erred in determining that Petitioner needed the affidavit of Stawczek in order to prevail on his motion for substitution of judge. Primarily, because an affidavit from Stawczek would be impossible for Petitioner to obtain. It would have been more appropriate for the trial court to hold a hearing, calling Stawczek as a witness, given the fact that Petitioner's affidavit alone was sufficient to establish a prima facie case of impartiality on the part of the trial judge. <u>People v.</u>

Williams, 272 Ill.App.3d 868, 651 N.E.2d 532 (1st Dist. 1995);
People v. Robinson, 18 Ill.App.3d 804, 310 N.E.2d 652 (1st Dist.
1974). In creating this heightened standard of review, the Court
made it virtually impossible for a pro se litigant to ever succeed
on the merits of a motion for substitution of judge.

2. THE APPELLATE COURT ERRED IN DENYING APPELLANT LEAVE TO
   FILE HIS SUPPLEMENTAL BRIEF AND ARGUMENT, WHERE APPELLATE
   COUNSEL FAILED TO BRIEF ANY OF THE ISSUES CONTAINED IN HIS
   POST CONVICTION PETITION.

This Court should grant leave to appeal in the instant case
to determine whether the hybrid representation rule prevents
criminal defendants who are represented by counsel on appeal,
from filing pro se pleadings in the Appellate Court, where no
Sixth Amendment right to effective representation exists.

In the case at bar, appellate counsel only briefed one
issue for consideration by the Court: whether the trial court
erred in denying Petitioner's pro se motion for substitution of
judge. Counsel failed to raise any of the issues contained in
Petitioner's pro se or amended post conviction petitions.

In his supplemental brief, Petitioner raised five (5) issues
for consideration by the Court: (1) whether he was denied the
effective assistance of counsel, in violation of the Sixth
Amendment to the U.S. Constitution, where trial counsel failed
to present additional evidence during the suppression hearing
to prove his confession was illegally obtained; (2) whether he
was denied the effective assistance of counsel where trial counsel
failed to present evidence at sentencing of prosecutorial
misconduct; (3) whether he was denied effective assistance of
counsel where trial counsel failed to raise in his post trial

motion and present evidence that the trial court engaged in
judicial misconduct; (4) whether he was denied effective assistance
of counsel where trial counsel failed to introduce evidence of
his and the victim's mental states in order to support a finding
of second degree murder; and (5) whether he was denied the effective
assistance of counsel where trial counsel used false promises
of a thirty (30) year sentence in order to secure his acquiescence
in a jury waiver. See Exhibit A. On June 15, 2005, the Appellate
Court denied Petitioner leave to file the supplemental brief.

In People v. Handy, 278 Ill.App.3d 829, 664 N.E.2d 1042 (1996),
the Court held that a pro se motion filed by a defendant in a
criminal case while he is represented by counsel is "not
properly before the court." In Handy, the Court wrote:

> "[A trial court has] no responsibility
> to entertain [a] defendant's pro se
> motions during the time he was represented
> by counsel * * * A defendant when
> represented by competent counsel, must
> not be permitted to proceed unfettered,
> to file a stream of pro se motions * * *
>
> [A] defendant is not entitled to a 'hybrid
> trial' where he alternates between proceeding
> pro se and being represented by counsel."

In People v. Neal, 286 Ill.App.3d 353, 675 N.E.2d 130 (1996),
the Court held that a pro se motion to reduce sentence filed
while defendant was represented by appellate counsel was not
properly before the trial court. In so holding, the Court wrote:

> "[D]efendant had the benefit of trial counsel
> who did not deem the filing of a motion to
> reduce sentence to be appropriate. The defen-
> dant had the benefit of the original appeal
> upon all of the issues the OSAD chose to raise.
> Moreover, we note that the OSAD, on this appeal,
> rejected the grounds set forth in defendant's
> pro se motion."

Although Handy and Neal addressed matters at the trial level,

People v. Woods, 292 Ill.App.3d 172, 684 N.E.2d 1053 (1997), extended their holdings to encompass criminal cases at the appellate level.

Petitioner contends that the failure of the Appellate Court to allow him leave to file his supplemental brief denied him an adequate appellate review. Here, Petitioner had no Sixth Amendment right to the effective assistance of appellate counsel. Therefore, he is not permitted to raise an ineffective assistance of counsel claim against appellate counsel for her failure to brief the issues contained in his post conviction petition. If counsel chose not to raise the issues, then Petitioner would be denied appellate review of those issues, with no legal recourse.

Furthermore, the failure of counsel to brief the issues would be attributable to Petitioner for the purposes of filing a federal Petition for Writ of Habeas Corpus. Petitioner would then be forced to satisfy the cause and prejudice test, to determine whether the federal courts would allow him to proceed with the unexhausted issues. However, Petitioner would be unable to meet the federal standard, as he had no Sixth Amendment right to effective assistance of counsel, and only "constitutionally" ineffective assistance constitutes cause for a procedural default. See Murray v. Carrier, 477 U.S. 478, 106 S.Ct. 2639 (1986).

Thus, because any harm accrued from an appellate attorney's decision not to raise an issue on appeal, when there is no Sixth Amendment right to counsel, will be attributed to a criminal defendant, the "hybrid representation" rule should not apply in those instances.

## 6.
## CONCLUSION

Based on the foregoing arguments, Petitioner prays that this Honorable Court will grant him leave to appeal to address the questions presented herein.

Respectfully submitted,

Thomas O'Farrell #K54340
P.O. Box 99
Pontiac, Illinois 61764

NOTICE

The text of this order may be changed or corrected prior to the time for filing of a Petition for Rehearing or the disposition of the same.

FIRST DIVISION
Filed: 05/21/07

No. 1-04-2481

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the Circuit Court of Cook County. |
| Plaintiff-Appellee, | ) | |
| v. | ) | No. 95 CR 30463 |
| THOMAS O'FARRELL, | ) | Honorable Michael P. Toomin, Judge Presiding. |
| Defendant-Appellant. | ) | |

O R D E R

Defendant Thomas O'Farrell appeals from an order of the trial court granting the State's motion to dismiss his petition for relief under the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 et seq. (West 2002)) without an evidentiary hearing. On appeal, defendant contends that the trial court erred in denying his pro se motion for substitution of judge at the proceedings on his postconviction petition. In a pro se supplemental brief, defendant also contends that (1) the trial court erred in dismissing the petition without a hearing to determine whether defendant had received ineffective assistance of trial counsel; and (2) his postconviction counsel failed to comply with Illinois Supreme Court Rule 651(c) (134 Ill. 2d R. 651(c)). We affirm.

Following a bench trial, defendant was convicted of first degree murder for the shooting death of his wife, and sentenced

EXHIBIT Q

1-04-2481

to 50 years in prison.  On direct appeal, this court affirmed

defendant's conviction and sentence, but modified the mittimus to

reflect that defendant was to receive one day of good conduct

credit for each day in prison.  People v. O'Farrell, No. 1-97-

0911 (1999) (unpublished order under Supreme Court Rule 23).  The

facts of the offense are fully set out in our order on direct

appeal; we restate here only those facts necessary to an

understanding of defendant's current appeal.

Prior to trial, defendant filed a motion to suppress

statements allegedly made by him to inmate Thomas Dye.  The court

denied the motion.

Evidence at trial showed that at around 4 a.m. on September

28, 1995, defendant killed his wife, Lesley O'Farrell, by

shooting her once in the head and once in the chest while she was

sleeping, and then shot himself in the shoulder.  Initially,

defendant told responding police officers that he awoke to the

sound of a gunshot and saw a 6 foot, 3 inch, 200-pound African

American man shoot his wife.  He then struggled with the home

invader and was shot in the ensuing scuffle.  Later, however,

defendant told police officers that he shot his wife pursuant to

her request.  Specifically, defendant told officers that, because

his wife suffered from many physical ailments and no longer

wished to live, she devised a plan whereby he would kill her

1-04-2481

while she slept. The court found defendant guilty of first degree murder.

A capital sentencing hearing was held, after which the court determined defendant was not eligible for the death penalty. Prior to sentencing, defendant filed a motion for a new trial alleging, *inter alia*, that the court erred in denying his pretrial motion to suppress statements made to Dye. After hearing arguments, the court denied the motion.

At sentencing, Dye testified over defendant's renewed objection that he shared a jail cell with defendant in November and December 1995. During that time, he and defendant often spoke about defendant's crime. According to Dye, defendant married the victim and eventually killed her to gain access to her family's money. Specifically, defendant and the victim had a son, Leroi, who was to inherit the victim's money in the event of her death. Defendant believed that, at worst, the court would find him guilty of second degree murder because (1) his father was a police officer; (2) the victim was so ill that it would be considered a mercy killing; (3) he had no criminal background; and (4) he was "clean-cut." Dye testified that defendant believed if he was convicted of second degree murder, he would be out of prison before his son turned 18, and "would control the inheritance based on his son being a minor." Dye testified that defendant never expressed remorse for killing his wife.

- 3 -

1-04-2481

On cross-examination, Dye admitted that he had access to defendant's property because he shared a jail cell with defendant. He also admitted that he had previously been incarcerated for theft crimes in which he "worked [his] way into somebody's confidence and got into their apartments and stole from them." Dye admitted that he had 14 felony convictions at the time of this trial, was testifying in connection with a plea agreement, and that he had testified for the State in previous unrelated cases.

Clinical psychologist Dr. Larry Heinrich testified as an expert in forensic psychology. He testified that he met with defendant and examined the reports of another physician, Dr. Robbins, who had treated both defendant and the victim. Based on those reports, Dr. Heinrich believed that, at the time of the shooting, defendant suffered depression exacerbated by the stress of both his marriage and the victim's depression. Based on Dr. Robbins' reports and the victim's diary, Dr. Heinrich believed the victim had "passive suicidal ideation." On cross-examination, Dr. Heinrich admitted that he had not spoken with Dr. Robbins about the victim or defendant.

Defendant's brother and brother-in-law both testified that defendant was a caring father to his son.

The court sentenced defendant to 50 years in prison. Defendant's conviction was affirmed on appeal. People v.

- 4 -

1-04-2481

O'Farrell, No. 1-97-0911 (1999) (unpublished order under Supreme
Court Rule 23).

In January 2000, defendant filed a pro se postconviction
petition which was later amended by postconviction counsel.  The
initial pro se petition alleged, in relevant part, that trial
counsel was ineffective for failing to present evidence of
judicial misconduct in a post-trial motion.  Defendant attached
his own affidavit and that of his father.  Defendant attested
that the "Deputy *** told [him] in the elevator, prior to trial,
that, '[the trial judge was] going to find [him] guilty and give
[defendant] fifty (50) years.'"  Defendant's father attested that
defendant informed him that the court's "Deputy *** told
[defendant] that he was going to be found guilty and sentenced to
fifty (50) years."

On the same date that defendant filed his petition, he also
filed a pro se "motion for different judge to consider" (motion
for substitution), alleging that the trial judge would be biased
against him in deciding his postconviction petition because he
mentioned the trial judge in his petition when he discussed
judicial misconduct.  Defendant also alleged that he was
prejudiced by the trial court's bias because the trial court had
predetermined his guilt.

1-04-2481

On February 15, 2000, the court denied the motion for
substitution,[1] noting that

> "[i]t is not supported by affidavit pursuant
> to the statute. *** [Defendant] mentions that
> the judge is under judicial misconduct and,
> therefore, the judge would be biased against
> him.  There is no such allegation in his
> petition.  And he also alleges that since the
> trial court also found the Defendant guilty
> and sentenced him, therefore, he would be
> prejudiced.  The Defendant's motion does not
> rise to a level of allegations to substitute
> [the trial judge] for cause.  It is
> unsupported pursuant to the statute."

Subsequently, appointed counsel amended defendant's
postconviction petition without adopting defendant's *pro se*
postconviction petition.  This amended petition is the subject of
this appeal.  The State filed a motion to dismiss, which the
trial court granted on October 4, 2001.[2]  The amended

---

[1]It appears that defendant appealed the denial of his motion
for substitution of judge, but then moved to dismiss it on his
own motion, which this court allowed.  People v. O'Farrell, No.
1-00-0968 (2001) (dispositional order).

[2]While defendant's first postconviction petition was pending
in the circuit court, defendant filed an appeal, which he
subsequently moved to dismiss.  This court allowed the dismissal.
People v. O'Farrell, No. 1-00-0968 (2001) (dispositional order).

1-04-2481

postconviction petition contained the following claims:   (1)
defendant was denied the effective assistance of trial counsel
where counsel's performance at the suppression hearing, trial,
and sentencing hearing was inadequate; (2) defendant was denied
the effective assistance of appellate counsel where counsel
failed to raise certain issues on appeal; and (3) the trial court
erred in allowing State's witness Dye to testify without ensuring
that defendant was tendered all pertinent information and by
failing to take judicial notice of "applicable statutes
concerning the Probate of Minor Estates laws in Illinois."
Defendant's counsel then filed an "amendment to amended post
conviction petition" which added a fourth claim, that defendant's
sentence was excessive.  Attached to this document is defendant's
affidavit, in which he attests, *inter alia,*

> "4. I have reviewed the Amended Post
> Conviction Petition and the Amendment to the
> Post Conviction Petition;
> 5. All factual allegations are true to the
> best of my knowledge."

In May 2003, defendant filed a second *pro se* petition for
relief and another motion for substitution of judge.  In July

1-04-2481

2003, the second petition and the motion for substitution of judge were both denied.[3]

On appeal, defendant first contends that the court erred in denying his motion for substitution of judge in February 2000. Specifically, defendant asserts that the court made reversible error when it based its decision on the incorrect belief that (1) defendant's argument was that the trial court would be biased because it had previously found him guilty; (2) defendant did not raise the issue of judicial misconduct in his petition; and (3) the petition was not supported by the necessary affidavit. We disagree.

As an initial matter, defendant's failure to indicate that he was appealing the denial of his motion for substitution of judge in his notice of appeal does not result in this court's loss of jurisdiction over that order because such an order was a step in the procedural progression leading to the order mentioned in the notice of appeal. See <u>Jiffy Lube International v. Agarwal</u>, 277 Ill. App. 3d 722, 727 (1996).

---

[3]Twice defendant appealed the dismissal of his second postconviction petition, but then moved to dismiss it. This court allowed both dismissals. <u>People v. O'Farrell</u>, Nos. 1-03-2619 and 1-03-3404 (2004) (dispositional orders). Defendant then filed a third postconviction petition, which the circuit court dismissed. Defendant appealed the dismissal, and defendant's appellate counsel moved to withdraw pursuant to <u>Pennsylvania v. Finley</u>, 481 U.S. 551, 95 L. Ed. 2d 539, 107 S. Ct. 1990 (1987). This court allowed the withdrawal and affirmed the judgment. <u>People v. O'Farrell</u>, No. 1-04-1094 (2005) (unpublished order pursuant to Supreme Court Rule 23).

1-04-2481

We next note that defendant incorrectly asserts that the standard of review is *de novo* because the trial court allegedly failed to consider crucial evidence in denying his motion for substitution. The standard for reviewing the trial court's denial of defendant's motion for substitution of judge is abuse of discretion. See <u>People v. Meeks</u>, 249 Ill. App. 3d 152, 160 (1993). Furthermore, we review the trial court's judgment, not its reasons for the judgment. <u>People v. Lee</u>, 344 Ill. App. 3d 851, 853 (2003). Accordingly, we may affirm a trial court's judgment on any basis supported by the record, regardless of its reasons for reaching the decision. <u>Lee</u>, 344 Ill. App. 3d at 853. We now turn to the issue on appeal.

There is no absolute right to substitution of a judge at a postconviction proceeding. <u>People v. Enis</u>, 194 Ill. 2d 361, 416 (2000). Rather, defendant must show that he will be substantially prejudiced if the motion is denied. <u>Enis</u>, 194 Ill. 2d at 416. A defendant seeking substitution of judge for alleged prejudice must support such an allegation with an affidavit. <u>People v. Brim</u>, 241 Ill. App. 3d 245, 248-49 (1993). A mere conclusory statement, even if made under oath, is insufficient to establish the violation of any constitutional right. <u>People v. Coleman</u>, 32 Ill. App. 3d 949, 952 (1975). A trial judge who, prior to hearing any evidence, expresses the opinion that the

1-04-2481

defendant is guilty may be disqualified.   People v. Williams, 272
Ill. App. 3d 868, 874-75 (1995).

Here, contrary to defendant's contention, there are no
affidavits attached to the motion for substitution of judge.
Defendant, however, is apparently asserting that the affidavits
attached to his first postconviction petition were also intended
to support his motion for substitution where the motion and
petition were filed on the same date.   Defendant's motion for
substitution of judge and his petition for postconviction relief
were two separate pleadings.   Defendant was required to attach to
the motion for substitution an affidavit supporting his
allegations of prejudice.   See Brim, 241 Ill. App. 3d at 248-49.

Moreover, even considering defendant's motion in conjunction
with the affidavits attached to the postconviction petition, we
find that the trial court did not abuse its discretion in denying
the motion for substitution.   Defendant alleged in his petition
that the court was prejudiced against him because it determined
his guilt prior to hearing any evidence.   Defendant attested in
his affidavit that, prior to the start of his trial, the court's
deputy informed him that the judge was going to find him guilty
and sentence him to 50 years in prison.   Defendant's father
attested that defendant told him what the court's deputy had
said.   These affidavits merely attest to the deputy's statement
that the judge would find defendant guilty and sentence him to 50

- 10 -

1-04-2481

years.  They give no indication that the judge told the deputy
that he would find defendant guilty and impose a 50-year
sentence.  See Williams, 272 Ill. App. 3d at 874-75.
Accordingly, defendant's allegation in his motion that the judge
had found him guilty prior to trial was a mere conclusory
allegation that did not mandate substitution.  See Coleman, 32
Ill. App. 3d at 951-52.

In addition, the fact that defendant alleged judicial
misconduct in his postconviction petition cannot be used as a
basis to obtain substitution of his trial judge.  See generally
In re Marriage of Hartian, 222 Ill. App. 3d 566, 569 (1991) (the
respondent failed to show prejudice by the trial judge where he
filed a complaint against the judge with the Judicial Inquiry
Board); People v. House, 202 Ill. App. 3d 893, 899-900, 909-910
(1990) (substitution not required where the defendant complained
of the trial judge's rulings in his postconviction petition).
Furthermore, a judge is presumed to be impartial even after
extreme provocation.  People v. Jackson, 205 Ill. 2d 247, 276
(2001); People v. Steidl, 177 Ill. 2d 239, 265 (1997).  Moreover,
if we were to conclude that an allegation of judicial misconduct
in a postconviction petition would require recusal, then
defendants could simply allege misconduct on their trial judge's
part for the purpose of obtaining another judge.  See generally
People v. Smeathers, 297 Ill. App. 3d 711, 716 (1998) (filing a

1-04-2481

complaint against one's trial judge does not require substitution, because to hold otherwise would allow defendants to obtain a new judge by filing frivolous complaints "to force an endless stream of recusals"). Accordingly, we find that the trial court did not abuse its discretion in denying defendant's motion for substitution.

Next, defendant claims he was denied the effective assistance of trial counsel where counsel (1) failed to present "additional" evidence at the suppression hearing to prove defendant's confession was illegally obtained; (2) failed to raise the issue of judicial misconduct in his post-trial motion; (3) failed to present evidence of prosecutorial misconduct at the sentencing hearing; (4) failed to seek a lesser included offense or present a defense that defendant was innocent; (5) misled defendant into signing a jury waiver by promises of a 30-year sentence; and (6) failed to file a pre-trial motion for the recusal of the trial court. We disagree.

Postconviction relief is a collateral proceeding designed to allow inquiry into constitutional issues that could not have been previously adjudicated. People v. Franklin, 167 Ill. 2d 1, 9 (1995). To survive the State's motion to dismiss, the postconviction petition must make a substantial showing that defendant's constitutional rights were violated. People v. Coleman, 183 Ill. 2d 366, 381 (1998). We review the dismissal of

1-04-2481

a postconviction petition without an evidentiary hearing *de novo*. People v. Lander, 215 Ill. 2d 577, 583 (2005). When a defendant has taken a direct appeal, any issue capable of being raised on direct appeal is waived, and any issue that was previously decided is barred by *res judicata*. Franklin, 167 Ill. 2d at 9. Furthermore, where an amended postconviction petition, filed by appointed counsel, does not include allegations from the defendant's *pro se* postconviction petition, such issues are not before the court. People v. Phelps, 51 Ill. 2d 35, 38 (1972); Barnett v. Zion Park District, 171 Ill. 2d 378, 384 (1996) ("Where an amended pleading is complete in itself and does not refer to or adopt the prior pleading, the earlier pleading ceases to be part of the record for most purposes and is effectively abandoned and withdrawn.").

Defendant has waived his claims of ineffective assistance of counsel for failure to (1) present additional evidence at the suppression hearing; (2) raise the issue of judicial misconduct in a post-trial motion; (3) present evidence of prosecutorial misconduct; (4) failure to seek a lesser included offense or present an innocence defense; and (5) and for misleading defendant into signing a jury waiver by promises of a 30-year sentence because these issues were capable of being raised on direct appeal and because they were not contained in defendant's amended postconviction petition. See Franklin, 167 Ill. 2d at 9;

1-04-2481

Phelps, 51 Ill. 2d at 38.  Defendant's argument that we should
address these issues under the plain error doctrine does not
persuade us differently.

Next, because he failed to include it in his amended
postconviction petition, defendant has waived the claim that he
was subject to the ineffective assistance of trial counsel where
counsel failed to file a pre-trial motion for the recusal of the
trial court.  See Phelps, 51 Ill. 2d at 38; Zion Park District,
171 Ill. 2d at 384.

Next, defendant contends that his trial counsel was
ineffective for failing to alert the court at the sentencing
hearing that State's witness Dye's testimony was perjured.
Specifically, defendant claims that Dye's testimony was
"bolstered" by personal details of defendant's life which he
learned through documents he stole from defendant while they were
cellmates and via prosecutorial misconduct wherein the State gave
Dye access to specific information about defendant.  Because this
issue was contained in defendant's amended postconviction
petition, we will address it here.

To establish a claim of ineffective assistance of counsel, a
defendant must show that (1) his attorney's representation fell
below an objective standard of reasonableness; and (2) he was
prejudiced by this deficient performance.  Strickland v.
Washington, 466 U.S. 668, 687-688, 80 L. Ed. 2d 674, 693, 104 S.

- 14 -

1-04-2481

Ct. 2052, 2064 (1984); <u>People v. Coulter</u>, 352 Ill. App. 3d 151,
157 (2004). To satisfy the first prong, a defendant must
overcome the presumption that contested conduct which might be
considered trial strategy is generally immune from claims of
ineffective assistance of counsel. <u>People v. Martinez</u>, 348 Ill.
App. 3d 521, 537 (2004); <u>People v. Burks</u>, 343 Ill. App. 3d 765,
775 (2003). Failure to make the requisite showing of either
deficient performance or sufficient prejudice defeats the claim.
<u>People v. Palmer</u>, 162 Ill. 2d 465, 475-76 (1994). After
consultation with the client, trial counsel has the right to make
the ultimate decision with respect to matters of tactics and
strategy, including whether and how to conduct cross-examination.
<u>People v. Ramey</u>, 152 Ill. 2d 41, 54 (1992).

Here, defendant fails to overcome the presumption that
counsel's actions were a product of sound trial strategy. See
<u>Martinez</u>, 348 Ill. App. 3d at 537; <u>Burks</u>, 343 Ill. App. 3d at
775. Defendant asserts that counsel should have (1) had
defendant testify that he never spoke with Dye concerning his
case; (2) had defendant testify that Dye stole documents from his
cell; (3) present into evidence petitioner's inmate grievances in
which defendant reported the alleged theft; (4) present into
evidence copies of the stolen documents; (5) present testimony
that Dye's testimony was perjured; and (6) force Dye to admit on
cross-examination that his testimony was perjured.

- 15 -

1-04-2481

Counsel's representation was reasonable here, where counsel impeached Dye by eliciting testimony that he was a 14-time convicted felon who had previously been convicted of theft offenses in which he "worked [his] way into somebody's confidence" before stealing from them, that he had testified for the State in other unrelated cases, and that he was testifying against Defendant as part of a deal he had made with the State. Whether to further cross-examine Dye and whether to impeach with extrinsic evidence were matters of trial strategy. See Ramey, 152 Ill. 2d at 54.

Next, defendant contends that his trial counsel was ineffective for failing to present evidence of the mental states of defendant and the victim. Specifically, defendant asserts that this evidence would support a finding of second degree murder based upon sudden and intense passion resulting from serious provocation. We disagree.

The offense of first degree murder requires the State to prove that the offender, in pertinent part, intentionally killed another individual without lawful justification. 720 ILCS 5/9-1(a) (West 2002). A person commits second degree murder when he commits first degree murder under the mitigating circumstance of a sudden and intense passion resulting from serious provocation, which is conduct sufficient to excite an intense passion in a reasonable person, or an unreasonable subjective belief that he

- 16 -

1-04-2481

is justified in the use of deadly force.   720 ILCS 5/9-2 (West 2002).   Once the State has proven first degree murder beyond a reasonable doubt, the burden shifts to defendant to prove one of the mitigation factors required to reduce the offense from first degree to second degree murder.   People v. Thompson, 354 Ill. App. 3d 579, 586 (2004).   For purposes of reducing first degree murder to second degree murder based on serious provocation, the only recognized categories of serious provocation are substantial physical injury or assault, mutual quarrel or combat, illegal arrest, and adultery with the offender's spouse.   People v. Chevalier, 131 Ill. 2d 66, 71 (1989).

Here, even if counsel's representation was deficient, defendant's claim fails because he is unable to show resulting prejudice.   Defendant contends that evidence of his depression and the victim's depression, if introduced at trial, would have mitigated his conviction to second degree murder.   However, depression is not a recognized category of serious provocation. See Chevalier, 131 Ill. 2d at 71.   Trial counsel was not ineffective for failing to present evidence which would not have supported a finding of second degree murder.

Defendant's reliance on People v. Williams, 265 Ill. App. 3d 283 (1994), does not persuade us differently.   Williams is inapposite to the case at bar, where in Williams we did not review whether the trial court erred in reducing defendant's

- 17 -

1-04-2481

sentence from first degree murder to second degree murder.
Williams, 265 Ill. App. 3d 283.

Finally, defendant asserts that his postconviction counsel
failed to substantially comply with the requirements of Rule
651(c). Specifically, defendant argues that postconviction
counsel erred by failing to preserve various issues contained in
defendant's pro se postconviction petition by not including them
in the amended postconviction petition or the amendment to the
amended postconviction petition. We disagree.

In second-stage postconviction proceedings, an indigent
defendant is entitled to appointed counsel (725 ILCS 5/122-4
(West 2004)), who should provide a reasonable level of
assistance. People v. Pendleton, 223 Ill. 2d 458, 472 (2006).
Pursuant to Rule 651(c), counsel must consult with the defendant
to ascertain his contentions of deprivation of constitutional
rights, examine the record of trial proceedings, and amend the
petition as necessary to ensure that defendant's contentions are
adequately presented to the court. 134 Ill. 2d R. 651(c);
Pendleton, 223 Ill. 2d at 472. Counsel's obligation to amend the
petition as necessary does not require counsel to advance
frivolous or spurious claims on defendant's behalf. Pendleton,
223 Ill. 2d at 472.

Defendant argues that postconviction counsel rendered
unreasonable assistance where she (1) filed a "motion to remove"

1-04-2481

defendant's *pro se* postconviction petition and "supplanted" it
with the amended postconviction petition; and (2) refused to
include certain issues of prosecutorial error in the amended
petition because she was worried about the repercussions it would
have on her future clients because the two former assistant
State's Attorneys who were involved in defendant's case are now
members of the judiciary.  We disagree.

We first note that the record does not support defendant's
contention that counsel filed a "motion to remove" his petition.
Accordingly, we will not further address this issue.

In a criminal proceeding, decisions such as what plea to
enter, whether to testify, and whether to appeal belong
exclusively to the defendant.  People v. Bashaw, 361 Ill. App. 3d
963, 969 (2005).  However, those decisions that are matters of
trial tactics and strategy are to be made by trial counsel after
consultation with the defendant.  Bashaw, 361 Ill. App. 3d at
969.  In Bashaw, this court determined that the decision of
whether to amend a postconviction petition is more analogous to
the strategic decisions entrusted to trial counsel than the "few
core decisions" that belong to the defendant, and:

> "[w]hat amendments to a postconviction
> petition, if any, are necessary to adequately
> present the defendant's contentions is a
> matter calling for the exercise of an

1-04-2481

> attorney's professional judgment.  An
> attorney who surrenders the decision to the
> defendant does not fulfill his or her duty to
> exercise that professional judgment."
>
> Bashaw, 361 Ill. App. 3d at 969.

Here, we find that postconviction counsel rendered reasonable assistance to defendant.  Counsel fully complied with the requirements of Rule 651(c).  The record includes a signed certificate in compliance with Rule 651(c), stating that counsel reviewed defendant's pro se petition, record, transcripts, and brief, and "discussed the contents of the pro-se [sic] petition and the amended petition" with defendant in person.  Defendant concedes that he spoke with counsel both in person and on the telephone.  Furthermore, there is an affidavit attached to the amendment to the amended postconviction petition in which defendant attests that he reviewed both the amended postconviction petition and the amendment thereto.  Accordingly, we find that counsel rendered the reasonable assistance mandated by Rule 651(c).

For the foregoing reasons, we affirm the judgment of the trial court.

Affirmed.

R. Gordon, J., with Wolfson, P.J. and Garcia, J., concurring.

NOTICE
he text of this order may be
changed or corrected prior to the
me for filing of a Petition for
rehearing or the disposition of
he same.

FIRST DIVISION
Filed:  08/06/07

No. 1-04-2481

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 95 CR 30463 |
| | ) | |
| THOMAS O'FARRELL, | ) | Honorable |
| | ) | Michael P. Toomin, |
| Defendant-Appellant. | ) | Judge Presiding. |

MODIFIED ORDER UPON DENIAL OF PETITION FOR REHEARING

Defendant Thomas O'Farrell appeals from an order of the
trial court granting the State's motion to dismiss his petition
for relief under the Post-Conviction Hearing Act (Act) (725 ILCS
5/122-1 et seq. (West 2002)) without an evidentiary hearing.  On
appeal, defendant contends that the trial court erred in denying
his pro se motion for substitution of judge at the proceedings on
his postconviction petition.  In a pro se supplemental brief,
defendant also contends that (1) the trial court erred in
dismissing the petition without a hearing to determine whether
defendant had received ineffective assistance of trial counsel;
and (2) his postconviction counsel failed to comply with Illinois
Supreme Court Rule 651(c) (134 Ill. 2d R. 651(c)).  We affirm.

EXHIBIT R

1-04-2481

Following a bench trial, defendant was convicted of first degree murder for the shooting death of his wife, and sentenced to 50 years in prison. On direct appeal, this court affirmed defendant's conviction and sentence, but modified the mittimus to reflect that defendant was to receive one day of good conduct credit for each day in prison. People v. O'Farrell, No. 1-97-0911 (1999) (unpublished order under Supreme Court Rule 23). The facts of the offense are fully set out in our order on direct appeal; we restate here only those facts necessary to an understanding of defendant's current appeal.

Prior to trial, defendant filed a motion to suppress statements allegedly made by him to inmate Thomas Dye. The court denied the motion.

Evidence at trial showed that at around 4 a.m. on September 28, 1995, defendant killed his wife, Lesley O'Farrell, by shooting her once in the head and once in the chest while she was sleeping, and then shot himself in the shoulder. Initially, defendant told responding police officers that he awoke to the sound of a gunshot and saw a 6 foot, 3 inch, 200-pound African American man shoot his wife. He then struggled with the home invader and was shot in the ensuing scuffle. Later, however, defendant told police officers that he shot his wife pursuant to her request. Specifically, defendant told officers that, because his wife suffered from many physical ailments and no longer

1-04-2481

wished to live, she devised a plan whereby he would kill her
while she slept. The court found defendant guilty of first
degree murder.

A capital sentencing hearing was held, after which the court
determined defendant was not eligible for the death penalty.
Prior to sentencing, defendant filed a motion for a new trial
alleging, *inter alia*, that the court erred in denying his
pretrial motion to suppress statements made to Dye. After
hearing arguments, the court denied the motion.

At sentencing, Dye testified over defendant's renewed
objection that he shared a jail cell with defendant in November
and December 1995. During that time, he and defendant often
spoke about defendant's crime. According to Dye, defendant
married the victim and eventually killed her to gain access to
her family's money. Specifically, defendant and the victim had a
son, Leroi, who was to inherit the victim's money in the event of
her death. Defendant believed that, at worst, the court would
find him guilty of second degree murder because (1) his father
was a police officer; (2) the victim was so ill that it would be
considered a mercy killing; (3) he had no criminal background;
and (4) he was "clean-cut." Dye testified that defendant
believed if he was convicted of second degree murder, he would be
out of prison before his son turned 18, and "would control the

- 3 -

1-04-2481

inheritance based on his son being a minor." Dye testified that defendant never expressed remorse for killing his wife.

On cross-examination, Dye admitted that he had access to defendant's property because he shared a jail cell with defendant. He also admitted that he had previously been incarcerated for theft crimes in which he "worked [his] way into somebody's confidence and got into their apartments and stole from them." Dye admitted that he had 14 felony convictions at the time of this trial, was testifying in connection with a plea agreement, and that he had testified for the State in previous unrelated cases.

Clinical psychologist Dr. Larry Heinrich testified as an expert in forensic psychology. He testified that he met with defendant and examined the reports of another physician, Dr. Robbins, who had treated both defendant and the victim. Based on those reports, Dr. Heinrich believed that, at the time of the shooting, defendant suffered depression exacerbated by the stress of both his marriage and the victim's depression. Based on Dr. Robbins' reports and the victim's diary, Dr. Heinrich believed the victim had "passive suicidal ideation." On cross-examination, Dr. Heinrich admitted that he had not spoken with Dr. Robbins about the victim or defendant.

Defendant's brother and brother-in-law both testified that defendant was a caring father to his son.

- 4 -

1-04-2481

The court sentenced defendant to 50 years in prison. Defendant's conviction was affirmed on appeal. People v. O'Farrell, No. 1-97-0911 (1999) (unpublished order under Supreme Court Rule 23).

In January 2000, defendant filed a *pro se* postconviction petition which was later amended by postconviction counsel. The initial *pro se* petition alleged, in relevant part, that trial counsel was ineffective for failing to present evidence of judicial misconduct in a post-trial motion. Defendant attached his own affidavit and that of his father. Defendant attested that the "Deputy *** told [him] in the elevator, prior to trial, that, '[the trial judge was] going to find [him] guilty and give [defendant] fifty (50) years.'" Defendant's father attested that defendant informed him that the court's "Deputy *** told [defendant] that he was going to be found guilty and sentenced to fifty (50) years."

On the same date that defendant filed his petition, he also filed a *pro se* "motion for different judge to consider" (motion for substitution), alleging that the trial judge would be biased against him in deciding his postconviction petition because he mentioned the trial judge in his petition when he discussed judicial misconduct. Defendant also alleged that he was prejudiced by the trial court's bias because the trial court had predetermined his guilt.

1-04-2481

On February 15, 2000, the court denied the motion for substitution,[1] noting that

> "[i]t is not supported by affidavit pursuant
> to the statute. *** [Defendant] mentions that
> the judge is under judicial misconduct and,
> therefore, the judge would be biased against
> him.  There is no such allegation in his
> petition.  And he also alleges that since the
> trial court also found the Defendant guilty
> and sentenced him, therefore, he would be
> prejudiced.  The Defendant's motion does not
> rise to a level of allegations to substitute
> [the trial judge] for cause.  It is
> unsupported pursuant to the statute."

Subsequently, appointed counsel amended defendant's postconviction petition without adopting defendant's pro se postconviction petition.  This amended petition is the subject of this appeal.  The State filed a motion to dismiss, which the trial court granted on October 4, 2001.[2]  The amended

---

[1]It appears that defendant appealed the denial of his motion for substitution of judge, but then moved to dismiss it on his own motion, which this court allowed.  People v. O'Farrell, No. 1-00-0968 (2001) (dispositional order).

[2]While defendant's first postconviction petition was pending in the circuit court, defendant filed an appeal, which he subsequently moved to dismiss.  This court allowed the dismissal. People v. O'Farrell, No. 1-00-0968 (2001) (dispositional order).

1-04-2481

postconviction petition contained the following claims:   (1)
defendant was denied the effective assistance of trial counsel
where counsel's performance at the suppression hearing, trial,
and sentencing hearing was inadequate; (2) defendant was denied
the effective assistance of appellate counsel where counsel
failed to raise certain issues on appeal; and (3) the trial court
erred in allowing State's witness Dye to testify without ensuring
that defendant was tendered all pertinent information and by
failing to take judicial notice of "applicable statutes
concerning the Probate of Minor Estates laws in Illinois."
Defendant's counsel then filed an "amendment to amended post
conviction petition" which added a fourth claim, that defendant's
sentence was excessive.  Attached to this document is defendant's
affidavit, in which he attests, *inter alia*,

> "4. I have reviewed the Amended Post
> Conviction Petition and the Amendment to the
> Post Conviction Petition;
> 5. All factual allegations are true to the
> best of my knowledge."

In May 2003, defendant filed a second *pro se* petition for
relief and another motion for substitution of judge.  In July

1-04-2481

2003, the second petition and the motion for substitution of judge were both denied.[3]

On appeal, defendant first contends that the court erred in denying his motion for substitution of judge in February 2000. Specifically, defendant asserts that the court made reversible error when it based its decision on the incorrect belief that (1) defendant's argument was that the trial court would be biased because it had previously found him guilty; (2) defendant did not raise the issue of judicial misconduct in his petition; and (3) the petition was not supported by the necessary affidavit. We disagree.

As an initial matter, defendant's failure to indicate that he was appealing the denial of his motion for substitution of judge in his notice of appeal does not result in this court's loss of jurisdiction over that order because such an order was a step in the procedural progression leading to the order mentioned in the notice of appeal. See Jiffy Lube International v. Agarwal, 277 Ill. App. 3d 722, 727 (1996).

---

[3]Twice defendant appealed the dismissal of his second postconviction petition, but then moved to dismiss it. This court allowed both dismissals. People v. O'Farrell, Nos. 1-03-2619 and 1-03-3404 (2004) (dispositional orders). Defendant then filed a third postconviction petition, which the circuit court dismissed. Defendant appealed the dismissal, and defendant's appellate counsel moved to withdraw pursuant to Pennsylvania v. Finley, 481 U.S. 551, 95 L. Ed. 2d 539, 107 S. Ct. 1990 (1987). This court allowed the withdrawal and affirmed the judgment. People v. O'Farrell, No. 1-04-1094 (2005) (unpublished order pursuant to Supreme Court Rule 23).

- 8 -

1-04-2481

We next note that defendant incorrectly asserts that the standard of review is de novo because the trial court allegedly failed to consider crucial evidence in denying his motion for substitution. The standard for reviewing the trial court's denial of defendant's motion for substitution of judge is abuse of discretion. See People v. Meeks, 249 Ill. App. 3d 152, 160 (1993). Furthermore, we review the trial court's judgment, not its reasons for the judgment. People v. Lee, 344 Ill. App. 3d 851, 853 (2003). Accordingly, we may affirm a trial court's judgment on any basis supported by the record, regardless of its reasons for reaching the decision. Lee, 344 Ill. App. 3d at 853. We now turn to the issue on appeal.

There is no absolute right to substitution of a judge at a postconviction proceeding. People v. Enis, 194 Ill. 2d 361, 416 (2000). Rather, defendant must show that he will be substantially prejudiced if the motion is denied. Enis, 194 Ill. 2d at 416. A defendant seeking substitution of judge for alleged prejudice must support such an allegation with an affidavit. People v. Brim, 241 Ill. App. 3d 245, 248-49 (1993). A mere conclusory statement, even if made under oath, is insufficient to establish the violation of any constitutional right. People v. Coleman, 32 Ill. App. 3d 949, 952 (1975). A trial judge who, prior to hearing any evidence, expresses the opinion that the

- 9 -

1-04-2481

defendant is guilty may be disqualified.   People v. Williams, 272
Ill. App. 3d 868, 874-75 (1995).

Here, contrary to defendant's contention, there are no
affidavits attached to the motion for substitution of judge.
Defendant, however, is apparently asserting that the affidavits
attached to his first postconviction petition were also intended
to support his motion for substitution where the motion and
petition were filed on the same date.  Defendant's motion for
substitution of judge and his petition for postconviction relief
were two separate pleadings.  Defendant was required to attach to
the motion for substitution an affidavit supporting his
allegations of prejudice.  See Brim, 241 Ill. App. 3d at 248-49.

Moreover, even considering defendant's motion in conjunction
with the affidavits attached to the postconviction petition, we
find that the trial court did not abuse its discretion in denying
the motion for substitution.  Defendant alleged in his petition
that the court was prejudiced against him because it determined
his guilt prior to hearing any evidence.  Defendant attested in
his affidavit that, prior to the start of his trial, the court's
deputy informed him that the judge was going to find him guilty
and sentence him to 50 years in prison.  Defendant's father
attested that defendant told him what the court's deputy had
said.  These affidavits merely attest to the deputy's statement
that the judge would find defendant guilty and sentence him to 50

1-04-2481

years.  They give no indication that the judge told the deputy that he would find defendant guilty and impose a 50-year sentence.  See <u>Williams</u>, 272 Ill. App. 3d at 874-75. Accordingly, defendant's allegation in his motion that the judge had found him guilty prior to trial was a mere conclusory allegation that did not mandate substitution.  See <u>Coleman</u>, 32 Ill. App. 3d at 951-52.

In addition, the fact that defendant alleged judicial misconduct in his postconviction petition cannot be used as a basis to obtain substitution of his trial judge.  See generally <u>In re Marriage of Hartian</u>, 222 Ill. App. 3d 566, 569 (1991) (the respondent failed to show prejudice by the trial judge where he filed a complaint against the judge with the Judicial Inquiry Board); <u>People v. House</u>, 202 Ill. App. 3d 893, 899-900, 909-910 (1990) (substitution not required where the defendant complained of the trial judge's rulings in his postconviction petition). Furthermore, a judge is presumed to be impartial even after extreme provocation.  <u>People v. Jackson</u>, 205 Ill. 2d 247, 276 (2001); <u>People v. Steidl</u>, 177 Ill. 2d 239, 265 (1997).  Moreover, if we were to conclude that an allegation of judicial misconduct in a postconviction petition would require recusal, then defendants could simply allege misconduct on their trial judge's part for the purpose of obtaining another judge.  See generally <u>People v. Smeathers</u>, 297 Ill. App. 3d 711, 716 (1998) (filing a

1-04-2481

complaint against one's trial judge does not require substitution, because to hold otherwise would allow defendants to obtain a new judge by filing frivolous complaints "to force an endless stream of recusals").  Accordingly, we find that the trial court did not abuse its discretion in denying defendant's motion for substitution.

Next, defendant claims he was denied the effective assistance of trial counsel where counsel (1) failed to present "additional" evidence at the suppression hearing to prove defendant's confession was illegally obtained; (2) failed to raise the issue of judicial misconduct in his post-trial motion; (3) failed to present evidence of prosecutorial misconduct at the sentencing hearing; (4) failed to seek a lesser included offense or present a defense that defendant was innocent; (5) misled defendant into signing a jury waiver by promises of a 30-year sentence; and (6) failed to file a pre-trial motion for the recusal of the trial court.  We disagree.

Postconviction relief is a collateral proceeding designed to allow inquiry into constitutional issues that could not have been previously adjudicated.  People v. Franklin, 167 Ill. 2d 1, 9 (1995).  To survive the State's motion to dismiss, the postconviction petition must make a substantial showing that defendant's constitutional rights were violated.  People v. Coleman, 183 Ill. 2d 366, 381 (1998).  We review the dismissal of

1-04-2481

a postconviction petition without an evidentiary hearing *de novo*. People v. Lander, 215 Ill. 2d 577, 583 (2005). When a defendant has taken a direct appeal, any issue capable of being raised on direct appeal is waived, and any issue that was previously decided is barred by *res judicata*. Franklin, 167 Ill. 2d at 9. Furthermore, where an amended postconviction petition, filed by appointed counsel, does not include allegations from the defendant's *pro se* postconviction petition, such issues are not before the court. People v. Phelps, 51 Ill. 2d 35, 38 (1972); Barnett v. Zion Park District, 171 Ill. 2d 378, 384 (1996) ("Where an amended pleading is complete in itself and does not refer to or adopt the prior pleading, the earlier pleading ceases to be part of the record for most purposes and is effectively abandoned and withdrawn.").

Defendant has waived his claims of ineffective assistance of counsel for failure to (1) present additional evidence at the suppression hearing; (2) raise the issue of judicial misconduct in a post-trial motion; (3) present evidence of prosecutorial misconduct; (4) failure to seek a lesser included offense or present an innocence defense; and (5) and for misleading defendant into signing a jury waiver by promises of a 30-year sentence because these issues were capable of being raised on direct appeal and because they were not contained in defendant's amended postconviction petition. See Franklin, 167 Ill. 2d at 9;

1-04-2481

Phelps, 51 Ill. 2d at 38.  Defendant's argument that we should
address these issues under the plain error doctrine does not
persuade us differently.

Next, because he failed to include it in his amended
postconviction petition, defendant has waived the claim that he
was subject to the ineffective assistance of trial counsel where
counsel failed to file a pre-trial motion for the recusal of the
trial court.  See Phelps, 51 Ill. 2d at 38; Zion Park District,
171 Ill. 2d at 384.

Next, defendant contends that his trial counsel was
ineffective for failing to alert the court at the sentencing
hearing that State's witness Dye's testimony was perjured.
Specifically, defendant claims that Dye's testimony was
"bolstered" by personal details of defendant's life which he
learned through documents he stole from defendant while they were
cellmates and via prosecutorial misconduct wherein the State gave
Dye access to specific information about defendant.  Because this
issue was contained in defendant's amended postconviction
petition, we will address it here.

To establish a claim of ineffective assistance of counsel, a
defendant must show that (1) his attorney's representation fell
below an objective standard of reasonableness; and (2) he was
prejudiced by this deficient performance.  Strickland v.
Washington, 466 U.S. 668, 687-688, 80 L. Ed. 2d 674, 693, 104 S.

- 14 -

1-04-2481

Ct. 2052, 2064 (1984); People v. Coulter, 352 Ill. App. 3d 151,
157 (2004).  To satisfy the first prong, a defendant must
overcome the presumption that contested conduct which might be
considered trial strategy is generally immune from claims of
ineffective assistance of counsel.  People v. Martinez, 348 Ill.
App. 3d 521, 537 (2004); People v. Burks, 343 Ill. App. 3d 765,
775 (2003).  Failure to make the requisite showing of either
deficient performance or sufficient prejudice defeats the claim.
People v. Palmer, 162 Ill. 2d 465, 475-76 (1994).  After
consultation with the client, trial counsel has the right to make
the ultimate decision with respect to matters of tactics and
strategy, including whether and how to conduct cross-examination.
People v. Ramey, 152 Ill. 2d 41, 54 (1992).

Here, defendant fails to overcome the presumption that
counsel's actions were a product of sound trial strategy.  See
Martinez, 348 Ill. App. 3d at 537; Burks, 343 Ill. App. 3d at
775.  Defendant asserts that counsel should have (1) had
defendant testify that he never spoke with Dye concerning his
case; (2) had defendant testify that Dye stole documents from his
cell; (3) present into evidence petitioner's inmate grievances in
which defendant reported the alleged theft; (4) present into
evidence copies of the stolen documents; (5) present testimony
that Dye's testimony was perjured; and (6) force Dye to admit on
cross-examination that his testimony was perjured.

1-04-2481

Counsel's representation was reasonable here, where counsel impeached Dye by eliciting testimony that he was a 14-time convicted felon who had previously been convicted of theft offenses in which he "worked [his] way into somebody's confidence" before stealing from them, that he had testified for the State in other unrelated cases, and that he was testifying against Defendant as part of a deal he had made with the State. Whether to further cross-examine Dye and whether to impeach with extrinsic evidence were matters of trial strategy.  See Ramey, 152 Ill. 2d at 54.

Next, defendant contends that his trial counsel was ineffective for failing to present evidence of the mental states of defendant and the victim.  Specifically, defendant asserts that this evidence would support a finding of second degree murder based upon sudden and intense passion resulting from serious provocation.  We disagree.

The offense of first degree murder requires the State to prove that the offender, in pertinent part, intentionally killed another individual without lawful justification.  720 ILCS 5/9-1(a) (West 2002).  A person commits second degree murder when he commits first degree murder under the mitigating circumstance of a sudden and intense passion resulting from serious provocation, which is conduct sufficient to excite an intense passion in a reasonable person, or an unreasonable subjective belief that he

1-04-2481

is justified in the use of deadly force.  720 ILCS 5/9-2 (West 2002).  Once the State has proven first degree murder beyond a reasonable doubt, the burden shifts to defendant to prove one of the mitigation factors required to reduce the offense from first degree to second degree murder.  People v. Thompson, 354 Ill. App. 3d 579, 586 (2004).  For purposes of reducing first degree murder to second degree murder based on serious provocation, the only recognized categories of serious provocation are substantial physical injury or assault, mutual quarrel or combat, illegal arrest, and adultery with the offender's spouse.  People v. Chevalier, 131 Ill. 2d 66, 71 (1989).

Here, even if counsel's representation was deficient, defendant's claim fails because he is unable to show resulting prejudice.  Defendant contends that evidence of his depression and the victim's depression, if introduced at trial, would have mitigated his conviction to second degree murder.  However, depression is not a recognized category of serious provocation.  See Chevalier, 131 Ill. 2d at 71.  Trial counsel was not ineffective for failing to present evidence which would not have supported a finding of second degree murder.

Defendant's reliance on People v. Williams, 265 Ill. App. 3d 283 (1994), does not persuade us differently.  Williams is inapposite to the case at bar, where in Williams we did not review whether the trial court erred in reducing defendant's

1-04-2481

sentence from first degree murder to second degree murder.
Williams, 265 Ill. App. 3d 283.

Finally, defendant asserts that his postconviction counsel
failed to substantially comply with the requirements of Rule
651(c).   Specifically, defendant argues that postconviction
counsel erred by failing to preserve various issues contained in
defendant's pro se postconviction petition by not including them
in the amended postconviction petition or the amendment to the
amended postconviction petition.   We disagree.

In second-stage postconviction proceedings, an indigent
defendant is entitled to appointed counsel (725 ILCS 5/122-4
(West 2004)), who should provide a reasonable level of
assistance.   People v. Pendleton, 223 Ill. 2d 458, 472 (2006).
Pursuant to Rule 651(c), counsel must consult with the defendant
to ascertain his contentions of deprivation of constitutional
rights, examine the record of trial proceedings, and amend the
petition as necessary to ensure that defendant's contentions are
adequately presented to the court.   134 Ill. 2d R. 651(c);
Pendleton, 223 Ill. 2d at 472.   Counsel's obligation to amend the
petition as necessary does not require counsel to advance
frivolous or spurious claims on defendant's behalf.   Pendleton,
223 Ill. 2d at 472.

Defendant argues that postconviction counsel rendered
unreasonable assistance where she (1) filed a "motion to remove"

1-04-2481

defendant's *pro se* postconviction petition and "supplanted" it with the amended postconviction petition; and (2) refused to include certain issues of prosecutorial error in the amended petition because she was worried about the repercussions it would have on her future clients because the two former assistant State's Attorneys who were involved in defendant's case are now members of the judiciary. We disagree.

We first note that the record does not support defendant's contention that counsel filed a "motion to remove" his petition.

A careful review of the record reveals that defendant has misconstrued the record and the motion he claims was erroneously made does not exist. Postconviction counsel did not withdraw defendant's *pro se* petition; rather, postconviction counsel failed to incorporate the *pro se* allegations into her amended petition. This may be a distinction without difference, from defendant's perspective. Nevertheless, defendant misreads the record, and the motion he claims was made in the trial court was actually made in this court and was a motion to withdraw an earlier appeal.

In a criminal proceeding, decisions such as what plea to enter, whether to testify, and whether to appeal belong exclusively to the defendant. People v. Bashaw, 361 Ill. App. 3d 963, 969 (2005). However, those decisions that are matters of trial tactics and strategy are to be made by trial counsel after

- 19 -

1-04-2481

consultation with the defendant. <u>Bashaw</u>, 361 Ill. App. 3d at 969. In <u>Bashaw</u>, this court determined that the decision of whether to amend a postconviction petition is more analogous to the strategic decisions entrusted to trial counsel than the "few core decisions" that belong to the defendant, and:

> "[w]hat amendments to a postconviction
> petition, if any, are necessary to adequately
> present the defendant's contentions is a
> matter calling for the exercise of an
> attorney's professional judgment. An
> attorney who surrenders the decision to the
> defendant does not fulfill his or her duty to
> exercise that professional judgment."
> <u>Bashaw</u>, 361 Ill. App. 3d at 969.

Here, we find that postconviction counsel rendered reasonable assistance to defendant. Counsel fully complied with the requirements of Rule 651(c). The record includes a signed certificate in compliance with Rule 651(c), stating that counsel reviewed defendant's pro se petition, record, transcripts, and brief, and "discussed the contents of the pro-se [sic] petition and the amended petition" with defendant in person. Defendant concedes that he spoke with counsel both in person and on the telephone. Furthermore, there is an affidavit attached to the amendment to the amended postconviction petition in which

1-04-2481

defendant attests that he reviewed both the amended
postconviction petition and the amendment thereto. Accordingly,
we find that counsel rendered the reasonable assistance mandated
by Rule 651(c).

In defendant's petition for rehearing, defendant argues that
postconviction counsel's Rule 651(c) certificate was inadequate.
Defendant failed to raise this argument in either his initial
supplemental brief or his supplemental reply brief. As this
argument has been raised for the first time in a petition for
rehearing it is waived. See Supreme Court Rule 341(e)(7) (188
Ill. 2d R. 341(e)(7)) now codified as amended as Supreme Court
Rule 341(h)(7) (210 Ill. 2d R. 341(h)(7)).

For the foregoing reasons, we affirm the judgment of the
trial court.

Affirmed.

R. GORDON, J., with WOLFSON, P.J. and GARCIA, J., concurring.

NO. _____

IN THE SUPREME COURT OF ILLINOIS

| | | |
|---|---|---|
| PEOPLE OF THE STATE OF ILLINOIS, Respondent, | ) ) ) ) | Appellate Court, First District No. 1-04-2481 |
| v. | ) ) ) | Circuit Court, Cook County, Illinois No. 95 CR 30463 |
| THOMAS O'FARRELL, Petitioner, | ) ) ) | Honorable Michael P. Toomin, Judge Presiding |

## PETITION FOR LEAVE TO APPEAL

Thomas O'Farrell,
Pro-Se, Petitioner
Reg. No. K54340
P.O. Box 99
Pontiac, Illinois 61764

EXHIBIT S

IN THE
SUPREME COURT OF ILLINOIS

| People of the State of Illinois,<br>Respondent,<br><br>v.<br><br>Thomas O'Farrell,<br>Petitioner, | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Appellate Court,<br>First District<br>No. 1-04-2481<br><br>Circuit Court,<br>Cook County, Illinois<br>No. 95 CR 30463<br><br>Honorable Michael P. Toomin,<br>Judge Preseiding |
|---|---|---|

## PETITION FOR LEAVE TO APPEAL

### 1. PRAYER FOR LEAVE TO APPEAL

Your Petitioner, Thomas O'Farrell, Pro-Se, respectfully petitions this Honorable Court for leave to appeal pursuant to Supreme Court Rule 315, from judgment of the Illinois Appellate Court, First Judical District, which affirmed the judgment of the trial court on his pro-se post-conviction petition which was filed in the Circuit Court of Cook County, Illinois on January 26, 2000. (see exhibit attached to petition for rehearing)

### 2. OPINION AND PROCEEDING BELOW

On January 26, 2000, Petitioner filed a por-se petition for post-conviction relief and a motion for substitution of judge. The pro-se petition survived the 1st stage of the post-conviction proceedings and counsel was appointed. (see exhibit 15) On April 12, 2001, appointed counsel filed either a oral or written motion to withdraw appeal (pro-se petition. (see exhibit 35)  On April 13, 2001, appointed counsel filed an amended petition for post-conviction relief. On October 4, 2001, the trial court granted the State's motion to dismiss petition. Petitioner was given leave to file a late notice of appeal. On March 7, 2005, appointed counsel filed a brief and argument challenging only the denial

-i-

of the motion for substitution of judge.    On June 9, 2005, Petitioner

filed a motion for leave to file a supplemental brief.    On June 15, 2005,

the Appellate Court denied Petitioner leave to file the supplemental brief.

On August 30, 2005, the Appellate Court affirmed the denial of the

substitution of judge.    On October 20, 2005, Petitioner's petition for

leave to appeal was filed by the Clerk of the Supreme Court and case

#101468 was assigned.    On January 25, 2006, this Honorable Court denied

the PLA and issued a supervisory order instructing the Appellate Court to

vacate it's judgment and allow Petitioner to file a pro-se supplemental

brief raising any appellate issue(s) defendant deems appropriate. (see

Appendix B, exhibit 3)    In March 2006, the Appellate Court entered an

order allowing Petitioner to file his pro-se supplemental brief.    On

April 26, 2006, Petitioner filed his pro-se supplemental brief raising the

issues he deemed to be appropriate.    On May 21, 2007, the Appellate Court

denied Petitioner's appeal.    On June 11, 2007 a petition for rehearing

was filed.    On July 26, 2007, the Appellate Court denied the petition for

rehearing.    On August 6, 2007, the Appellate Court issued it's modified

order upon denial of petition for rehearing. (see Appendix B, exhibit 2)

This appeal follows.

## 3. POINTS RELIED UPON FOR REVERSAL

1. Whether a fundamental miscarriage of justice occured within this case at
bar, when Petitioner was convicted and sentencned for an offense that he is
actually innocent of and whether the sentence imposed upon Petitioner
violates his Constitutional Rights secured by both the 8th Amendment of the
United States Constitution and Article 1, Section 11 of the Illinois
Constitution.

2. Whether Petitioner's Constitutional Right to due process secured by the
5th & 14th Amendment of the United States Constitution as well as Article
1, Section 2 of the Illinois Constitution were substantially violated by
the Cook County State's Attorney's Office where the prosecution knowingly
used the perjured testimony of State's witness, Thomas Dye during
Petitioner's sentencing hearing.

-ii-

3. Whether Petitioner's Constitutional Rights secured by both the United States and Illinois Constitutions under the Right to effective assistance of counsel and dueprocess (U.S. Const. 6th & 14th Amends. and Ill, Const., Art. 1, Sec.'s 2 & 8), were substantially violated by trial counsel who failed to develop and pursue viable trial strategies which were logical under the circumstances of this case at bar, by either pursuing a lesser offense and/or defense based upon the statutory provision (a)(2)(ii) of 720 ILCS 5/12-31, inducement to commit suicide or statutory provision (a)(1)(b) of 720 ILCS 5/9-2, second degree murder.

4. Whether Petitioner's Constitutional Rights to a fair and impartial trial which is secured by both the 6th Amendment of the United States Constitution as well as Article 1, Section 8 of the Illinois Constitution were substantially violated by the trial judge who failed to recuse himself under Supreme Court Rule 63, Canon 3(C)(1)(a), upon recieving and reading ex parte communications informing the judge of several disputed evidentiary facts concerning Petitioner's proceedings as well as Petitioner's past criminal history.

5. Whether Petitioner's Constitutional Rights to a trial by jury which is secured by both the 6th Amendment of the United States Constitution as well as Article 1, Section 8 of the Illinois Constitution were substantially violated by trial counsel who used coercive tactics and false promises in order to acquiescence a jury waiver from Petitioner and allow Petitioner to proceed to a bench trial in front of a judge who was notified of disputed evidentiary facts concerning the case at bar and Petitioner's past criminal history.

6. Whether Petitioner's Constitutional Rights secured by the 5th, 6th & 14th Amendments of the United States Constitution as well as Article 1, Sections 2, 8 & 10 of the Illinois Constitution were substantially violated by trial counsel and the police where trial counsel failed to present direct evidence during the suppression hearing that corroborated Petitioner's claim that Detective Schaks threat to have Petitioner's son taken by the Department of Children and Family Services if Petitioner did not cooperate and give an incriminating statement. (Tr. A-44-45)

7. Whether Petitioner's Constitutional Rights secured by the 6th & 14th Amendment of the United States Constitution as well as Article 1, Sections 2 & 8 of the Illinois Constitution under due process were substantially violated by direct appeal counsel, who failed to incorporate within Petitioner's direct appeal brief the claims of ineffective assistance of trial counsel herein this petition to preserve further review.

8. Whether Petitioner was denied the required level of assistance of counsel in violation of Illinois Supreme Court Rule 651(c), where appellate counsel removed Petitioner's original pro-se post-conviction petition which contained Petitioner's contentions regarding meritorious claims of ineffective assistance of trial counsel without Petitioner's authority after the petition survived the first stage of post-conviction proceedings and was docketed for further determination in the second stage.

9. Whether the Appellate Court erred, denying Petitioner's Constitutional Right to due process secured by both the United States and Illinois Constitutions.

### 4. STATEMENT OF FACTS

The evidence at trial showed that at around 4 a.m. on September 28, 1995, the police were summons to the home of the victim, Lesley Chapman-O'Farrell and the Petitioner through a 911 call where Petitioner alleged that an unknown assailant ahd broken into their home and shot both the victim and Petitioner.  Petitioner initially told the responding officers, Officer Cooper and Detectives Kernan and Schak that he was awoke by the sound of a gunshot were he then saw a 6 foot, 3 inch, 200-pound African American male shoot his wife, Lesley.  Petitioner then stated that he then struggled with the home invader and was shot in the scuffle.  It was later revealed in Petitioner's confession that he merely assisted in his wife, Lesley's suicide.  Petitioner stated that his wife, Lesley was terminally ill, suffered from multiple ailments and no longer wished to live. Petitioner told Detective Schak that his wife, Lesley obtained a derringer, and removed a pane of glass from the downstairs bathroom per a plan devised by the victim, Lesley whereby Petitioner would shoot her and end her pain and suffering while she slept and blame it on an intruder, a 6 foot, 3 inch, 200-pound African American male.  Petitioner further revealed that his wife, Lesley attempted suicide in the past and that she continously plead with Petitioner to help her end her life.   Per Petitioner's confession, he finally agreed to assist in the suicide by executing the plan upon his wife, Lesley's request and shot her once in the head.   As Petitioner sat there, his wife, Lesley began to moan and shake.  It was at this time Petitioner realized that she was still alive and must be in more pain, so Petitioner reloaded the gun and shot Lesley once in the chest causing her death.   Petitioner then began to follow the plan devised by his wife, Lesley and then attempted to conceal the truth by staging the break-in and shooting himself in the shoulder.  The court found Petitioner guilty

of first degree murder.

A capitol sentencing hearing was held, after which the court declared that the State failed to prove premeditation and determined that Petitioner was not eligible for the death penalty.

At the sentencing hearing, State's witness, Thomas Dye testified over Petitioner's renewed objection that he shared a jail cell with Petitioner and during that time, he and Petitioner often spoke about Petitioner's crime. According to Dye, Petitioner married the victim and eventually killed her to gain access to her family's money. Specifically, Petitioner and the victim had a son, LeRoi, who was to inherit the victim's money in the event of her death. Petitioner believed that, at worst, the court would find him guilty of second degree murder because (1) his father was a police officer; (2) the victim was so ill that it would be considered and mercy killing; (3) he had no criminal backround; and (4) he was "clean-cut." Dye testified that Petitioner believed if he was convicted of second degree murder, he would be out of prison before his son turned 18, and "would control the inheritance based on his son being a minor." Dye also testified that Petitioner never expressed remorse for killing his wife.

On cross-examination, Dye admitted that he had access to Petitioner's property because he shared a jail cell with Petitioner. He also admitted that he had previously been incarcerated for theft crimes in which he "worked [his] wasy into somebody's confidence and got into their apartments and stole from them." Dye admitted that he had 14 felony convictions at the time of the hearing, was testifying in conection with a plea agreement, and that he had testified for the State in previous unrelated cases.

Clinical psychologist, Dr. Larry Heinrich testified as an expert in forensic psychology. He testified that he had met with Petitioner and examined the reports of another physician, Dr. Kenith Robins, who had

treated the victim and Petitioner. Based on those reports, Dr. Heinrich believed that, at the time of the shooting, Petitioner suffered depression exacerbated by the stress of both his marriage and the victims illness and depression. Based on Dr. Robins' reports and the victim's diary, Dr. Heinrich believed the victim had "passive suicidal ideations." Dr. Heinrich further testified that he believed that he believed that Petitioner's actions were as a Dr. Kevorkian assisted suicide.

Petitioner's adopted-brother testified to how he had lost his parents when he was young and that Petitioner asked his parents to take him in and eventually he was adopted. Petitioner's adopted-brother and brother-in-law testified that Petitioner was a caring father to his son. Petitioner's brother-in-law further testified that after being stabbed by another person, Petitioner provided first-aid, saving his life and made sure the assailant did not flee until the police arrived.

The evidence at sentencing also showed that Petitioner had a great deal of support from his family and friend, and that Petitioner had demonstrated many admirable qualities during the course of his life. The court was also presented with over 30 letters from Petitioner's siblings, cousins, aunts, uncles, and friend. One of these letters is from Marcus Cartlidge, an inmate at Cook County Correctional Center. In his letter, Mr. Cartlidge describes an incident where he was attacked by two inmates. During the attack, Petitioner came to Cartlidge's aid, pulling the attackers off Cartlidge, and prevented him from being seriously injured. In the course of helping Cartlidge, Petitioner was injured himself.

The court sentenced Petitioner to a 50 year prison term. Petitioner's conviction was affirmed and the sentence was modified on appeal. People v. O'Farrell, No. 1-97-0911 (1999) (unpublished order under Supreme Court Rule 23)

In January, 2000, Petitioner filed a pro-se post-coviction petition with the Clerk of the Circuit Court. (see exhibit attached to petition for rehearing No. 1-04-2481) Petitioner's original petition was removed upon a motion to withdraw appeal on April 12, 2001 and appellate counsel filed an amended petition and an amendment to the amended petition. The original pro-se petition alleged, in relevant part, that trial counsel was ineffective on many levels.

On the same date that Petitioner filed his pro-se petition, he also filed a pro-se "motion for different judge to consider" (motion for substitution of judge), alleging that trial court would be biased against him in deciding his post-conviction petition as Petitioner raised judicial misconduct within his original petition.

On February 15, 2000, the court denied the motion for substitution.

Subsequently, appointed counsel removed Petitioner's pro-se petition and filed an amended and amendment to the amended petition without adopting Petitioner's original petition.

The State filed a motion to dismiss, which the trial court granted on October 4, 2001.

In May 2003, Petitioner filed a second pro-se petition for relief and another motion for substitution of judge. In July 2003, the second petition and motion were both denied.

Petitioner appealed to the Appellate Court on both denials No. 1-03-2619 and 1-03-3404 (2004). Later Petitioner filed a motion to dismiss appeal No. 1-03-2619 and a motion to dismiss appeal as moot No. 1-03-3404 (see Appendix B, exhibit 5 & 6), so that Petitioner could file a late notice of appeal on No. 1-04-2481.

Each motion was granted by the Appellate Court and counsel was appointed for the appeal. Appellate counsel within her brief that she

-vii-

filed upon Petitioner's behalf only addressed the Motion for substituion of judge, counsel refused to raise any of the claims within Petitioner's original pro-se petition for post-conviction relief. Upon speaking with appellate counsel, Petitioner took it upon himself to file an motion to remove counsel and proceed on appeal pro-se, motion for leave to file a supplemental brief instanter and supplemenatl brief. All motions were subsequently denied by the court.

Petitioner next filed a petition for leave to appeal with this Honorable Court No. 101468. This petition was also denied, however, this Honorable Court entered a supervisory order instructing the Appellate Court to vacate their judgment and allow Petitioner to file an supplemental brief raising any issue(s) that he deems to be appropriate, with appropriate responsive briefing by appellee. In reconsideration its judgment, the Appellate Court is directed to consider all issues raised by appointed counsel and by pro-se Petitioner in resolving the appeal. (see Appendix B, exhibit 3)

Petitioner upon a order from the Appellate Court, filed his pro-se supplemental brief and reply brief upon the State's response brief. The Appellate Court denied the appeal and Petitioner filed a motion for rehearing which was also denied.

## 5. ARGUMENTS

1. WHETHER A FUNDAMENTAL MISCARRIAGE OF JUSTICE OCCURED WITHIN THIS CASE AT BAR, WHEN PETITIONER WAS CONVICTED AND SENTENCED FOR AN OFFENSE THAT HE IS ACTUALLY INNOCENT OF AND WHETHER THE SENTENCE IMPOSED UPON PETITIONER VIOLATES HIS CONSTITUTIONAL RIGHTS SECURED BY BOTH THE EIGHTH AMENDMENT OF THE UNITED STATES CONSTITUTION AND ARTICLE 1, SECTION 11 OF THE ILLINOIS CONSTITUTION.

A fundamental miscarriage of justice occurs when "a Constitutional violation has probably resulted in a conviction of one who is actually innocent." McLaughlin v. Moore, 152 F.Supp.2d 123 at 127.

As this case at bar involves the offense of inducement to commit suicide (720 ILCS 5/12-31), an offense which has never been before this Honorable Court or any other court within this jursidiction, this is a case of first impression for the State of Illinois. Black's Law defines a case of first impression as "a case that presents the court with an issue of law that has not previously been decided by any controlling legal authority in that jursidiction."

In this case at bar, Petitioner, Thomas O'Farrell argues that not only is he actually innocent of the offense of first degree murder for which he was convicted and sentenced, Petitioner's conduct at worse constituted the offense of inducement to commit suicide (720 ILCS 5/12-31), under the statutory provision (a)(2)(ii), where Petitioner merely assisted his wife, Lesley Chapman-O'Farrell's suicide by intentionally participating in the physical act by which death occured (i.e. pulled the trigger, causing death).

Although a prototypical example of "actual innocence" is the case where the state has convicted the wrong person of the crime, one is also actually innocent if the state has the "right person", but he is not guilty of the crime with which he is charged. Moore, supra at 131-132.

Thirty-six states and terrotories currently have statutes imposing sanctions for aiding, assisting, causing, or promoting suicide.[10]

10. ALASKA STAT. § 11.41.120 (1989); * * * ILL.REV.STAT. ch. 720 ¶5/12-31 (Westlaw 1996 * * *. Compassion in dying v. State of Washington, 79 F.3d 790 at 847.

As Petitioner has pointed out, the State of Illinois is one of many states who have drafted and enacted a specific law imposing criminal sanctions for the act of assisting another person in the commission of their suicide. "Yet, no person has ever been charged under the inducement to commit suicide statute." "In fact, no person has ever endured criminal consequences for assisting a suicide in Illinois." (see exhibit 1, pg. 3)

The legislature is granted broad discretion in defining crimes and affixing their punishment. People v. Arna, 658 N.E.2d 445 at 449. The task of statutory construction as to ascertains and give effect to the intent of the legislature. Huff v. Rock Island, 689 N.E.2d 1159 at 1166. When the intentions of the legislature is clearly expressed, the plain meaning of the statute must be given effect. Rock Island, supra at 1166 and Sweger v. Chesney, 294 F.3d 506 at 516.

720 ILCS 5/12-31, inducement to commit suicide provides:

    (a) A person commits the offense of inducement to commit suicide when he or she does either of the following:
    (1) Coerces another to commit suicide and the other person commits or attempts to commit suicide as a direct result of the coercion, and he or she exercises substantial control of the other person through (i) control of the other person's physical location or circumstances; (ii) use of psychological pressure; or (iii) use of actual or ostensible religious, political, social, philosophical or other principles.
    (2) With knowledge that another person intends to commit or attempt to commit suicide, intentionally (i) offers and provides the physical means by which another person commits or attempts to commit suicide, or (ii) participates in a physical act by which another person commits or attempts to commit suicide.
    (b) Sentence. Inducement to commit suicide under paragraph (a)(1) when the other person commits suicide as a direct result of the coercion is a Class 2 felony.

<u>Inducement to commit suicide under paragraph (a)(2) when
the other person commits suicide as a direct result of the
assistance provided is a Class 4 felony.</u>

Petitioner takes the position that the 88th. General Assembly of
the Illinois Legislature made their intentions extremely clear when they
defined, drafted, and enacted the offense of inducement to commit
suicide (720 ILCS 5/21-31, that the statute has (3) three seperate
statutory provisions for an offender to meet.   However, the only
provision that applies in this case at bar is the third provision, where
the offender <u>intentionally participates in the physical act by which the</u>
<u>other person commits suicide. (e.i. causes the death of the other person)</u>.
Here, one might either actually pull the trigger and shooting the person,
injecting lethal drugs into the person, by suffercating the person with
a pillow, or etc.

The new amendments within Public Act 88-392 § 5 (720 ILCS 5/12-31)
were ment to keep Dr. Jack Kevorkian from coming to Illinois and commit-
ing the acts that he had committed elsewhere as well as criminaling the
actions by any other individual, such as Petitioner, in Illinois who may
choose to emulate Dr. Kevorkian. (see exhibits 6-8 & 10)   Dr. Kevorkian
repeatedly assisted individuals in thier suicides by providing others
with lethal drugs so that they may commit suicide.  This action is a
clear violation of the statutory provision (a)(2)(i) of 720 ILCS 5/12-31,
where Dr. Kevorkian any provide the physical means. <u>Kevorkian v.</u>
<u>Thompson</u>, 947 F.Supp. 1152.   In <u>People v. Kevorkian</u>, 839 N.W.2d 291,
Dr. Kevorkian went to the extreme of personally injecting the lethal
drugs into Mr. Thomas Youk upon his request.   This action is a clear
violation of the statutory provison (a)(2)(ii) of 720 ILCS 5/12-31,
where Dr. Kevorkian <u>intentionally participated in the physical act by</u>
<u>which Mr. Youk committed suicide.(i.e. injected the lethal drugs, causing</u>

<u>death</u>.

Many other states such a California, Iowa, Indiana, Nebraska, New Mexico, Oklahoma, Orregon, and Texas have statutes criminalizing assisted suicide. However, none of the states mentioned have a statutory provision such as (a)(2)(ii) of 720 ILCS 5/12-31, where an individual intentionally participates in the physical act by which another person commits suicide. (see exhibits 11A-11G).

The Supreme Court has required a petitioner to support his allegation of Constitutional error with reliable evidence whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence that was not presented at trial. <u>Chesney</u>, supra at 523. The new facts need only raise sufficient doubt about petitioners guilt to undermine confidence in the result of the trial and to establish a threshold showing of innocence to justify a review of the merits of petitioner's Constitutional claims <u>Cherrix v. Braxton</u>, 131 F.Supp.2d 756 at 769.

In prosecutions for homicide where suicide of deceased is relied upon as a defense, the deceased's conduct, declarations, and threats indicating a suicidal dispostion are generally admitted into evidence for the purpose of showing the deceased's state of mind or intentions. (40A Am.Jur.2d, Homicide § 287 (Suicide)).

Relying upon 40A Am.Jur.2d, Homicide §287 above, Petitioner would like to present substantial evidence which was ommitted by trial counsel during Petitioner's proceedings which will prove the suicidal dispostion of the victim, Lesley Chapman-O'Farrell. The evidence is as follows: 1) The victim, Lesley previously attempted suicide several times by either overdosing on her insulin, overdosing on her prescription medications, and trying to cut her wrist with a razor blade (see exhibits

2,3,4,9, & 12N); 2) The victim, Lesley continuously plead with her husband, Petitioner to help her end her life because she no longer wished to live with the pain that she was experiencing (see exhibit 9); and 3) The victim, Lesley told her family members only (5) five days prior to her death, that "I would rather die than to go through the rest of my life looking and feeling the way I do." (see exhibits 2,3,4).

Petitioner would like to note that each attempt at suicide above was thwarted by himself.

Petitioner would like to further the proof of the victim, Lesley's suicidal disposition by offering the following: The John Marshall Law Review, spring 1996 published an article outlining a profile of people who commit suicide. (see exhibit 5) This article along with the testimony of Dr. Larry Hienrich (Tr. K-59-K61) and the medical health services progress notes that were generated by Dr. Kenith L. Robins, Ph.D., the victim, Lesley's doctor will prove that the victim, Lesley definately had a suicidal dispostion which could have been used as evidence during the proceedings.

Within Petitioner's confession, Petitioner stated that he believed that his wife, Lesley was terminally ill and that he assisted in Lesley's suicide upon her request. (Tr. I-153-156, I-182-187 and exhibit 19) Even Dr. Hienrich testified that he believed that Petitioner's actions was like a Dr. Kevorkian assisted suicide. (Tr. K-50)

Black's Law defines a mercy killing as "The affirmative act of bringing about immediate death allegedly in a painless way and generally administered by one who thinks that the dying person wishes to die because of a terminal or hopeless disease or condition." Black's Law also defines euthanasia as "The act or practice of killing or bringing

about the death of <u>a person who suffers from an incurable disease or</u>
<u>condition, esp. a painful one for reasons of mercy</u>."

Petitioner believes that there can not be any doubt within this
Honorable Courts mind after taking into consideration all the facts and
evidence above that Petitioner believed that his wife, Lesley was
terminally ill, that the victim, Lesley had several incurable and
hopeless diseases, that the victim, Lesley was in pain and that
Petitioner's actions were an assisted suicide, committed out of
compassion and mercy for the wife he loves.

Petitioner believes that in light of the substantial evidence herein,
Petitioner has raised more that a sufficient doubt of his guilt and a
substantial showing of his innocence of the offense of first degree
murder for which he was convicted and sentenced for.    Petitioner firmly
believes that no reasonable jury would have convicted him for the offense
of first degree murder had they been presented with the evidence herein.

Where, Petitioner has clearly demonstrated that his actions on
the morning of September 28, 1995, was at worse the offense of inducement
to commit suicide under the statutory provision (a)(2)(ii) of 720 ILCS
5/12-31 which carries the sentence of 1-3 years, the sentence imposed
upon Petitioner violates the Eighth Amendment of the United States
Constitution as well as Article 1, Section 11 of the Illinois
Constitution.

"Excessive bail shall not be required, nor excessive fines imposed,
<u>nor cruel and unusual punishment inflicted</u>." (8th. Amend. U.S. Const.)
"<u>All penalties shall be determined both according to the seriousness of</u>
<u>the offense</u> and with the objective of restoring the offender to useful
citizenship." (Art. 1, Sec. 11, Ill. Const.)

The Seventh Circuit has never expressly held that to be true, and
decisions in other circuits suggest that **"actual innocence"** exception
is available in non-capitol cases.  Indeed, this is the only reading
that makes sense.  **How can it be unconstitutional to execute someone
who is innocent, but constitutional to jail him?**  Moore, supra at 129.

2. WHETHER PETITIONER'S CONSTITUTIONAL RIGHT TO DUE PROCESS SECURED
   BY THE FIFTH AND FOURTEENTH AMENDMENTS OF THE UNITED STATES
   CONSTITUTION AS WELL AS ARTICLE 1, SECTION 2 OF THE ILLINOIS
   CONSTITUTION WERE SUBSTANTIALLY VIOLATED BY THE COOK COUNTY
   STATE'S ATTORNEY'S OFFICE WHERE THE PROSECUTION KNOWINGLY USED
   THE PERJURED TESTIMONY OF STATE'S WITNESS, THOMAS DYE DURING
   PETITIONER'S SENTENCING HEARING.

    Perjury is committed when a witness "gives false testimony
concerning a matter with the willful intent to provide false testimony,
rather than as result of confusion, mistake, or faulty memory." United
States v. Duggigan, 113 S.Ct. 1111 at 1116 and U.S. ex. rel. Washington
v. Page, 981 F.Supp. 1097 at 1100.

In this case at bar, State's Witness, Thomas Dye testified during
Petitioner's sentencing hearing on February 24, 1997.   During the
hearing, Mr. Dye testified that in January or February 1996, he had a
conversation with Assistant State's Attorney, Patrick J. Quinn, a
Supervisor of the Organized Crime Unit. (Tr. H-26-H-27 & H-37).

Within the deposition of State's witness, Thomas Dye in the case
Steven Manning v. Thomas Dye, et. al., case # 02 C 0372, (see exhibit 17)
Mr. Dye recounts the conversation ($7\frac{1}{2}$) seven and one half years earlier
with Assistant State's Attorney Quinn (hereafter ASA Quinn).  Within the
Deposition on October 18, 2004, Mr. Dye admittes that he was pressured
by ASA Quinn to lie in this case at bar. (see exhibit 17, pg 3)  Mr. Dye
further admittes that it was ASA Quinn who provided the motive that the
Petitioner killed his wife, Lesley for financial gain and solely
committed for insurance money (see exhibit 17, pg 2 & Tr. K-13-K15,

& K-19-K-21), That Petitioner used a derringer, that Petitioner

placed the derringer into a pillow and shot his wife, Lesley in the

head. (see exhibit 17, pg 5 & Tr. K-17-K-18).　Mr. Dye testified

within his deposition that ASA Quinn needed him to testify to the

above facts because these facts were not included within Petitioner's

confession. (see exhibit 17, pg 5)

ASA Quinn personally wrote Assistant State's Attorney, Jeff

Kendall of the DuPage County State's Attorney's Office, who was

prosecuting Mr. Dye for felony theft and requested that a deal be made

for Mr. Dye to secure his testimony in this case at bar. (see exhibit 21)

During Petitioner's sentencing hearing Mr. Dye testified that he was

testifing in connection with a plea argeement of (4) four years

incarceration for (3) three seperate felony theft offenses and that

per the agreement Mr. Dye was placed within the protective custody unit

at the Illinois River Correctional Center. (Tr. K-9 & K-28)

The evidence above, alone is enough to prove Petitioner's claim

that Mr. Dye was acting as a State agent, who recieved payment, not in

money, but in a deal for the (4) four years and placement in the

Illinois River, protective custody unit.　But, most importantaly,

the State prosecutor, namely ASA Quinn knowingly used perjured testimony

during the Petitioner's sentencing hearing.

Deliberate deception of the court and jurors by the presentation of

known false evidence will not be tolerated since it involves an affront

to the rudimentary demands of justice. Giglio v. United States, 92 S.Ct.

763 and United States v. Marrero, 516 F.2d 12 at 14.　The Supreme Court

has "consistently held that a conviction obtained by the knowing use of

perjured testimony is fundamentally unfair, and must be set aside. United

States v. Aguas, 96 S.Ct. 2392.　The governments use of perjured

testimony warranted a new trial. <u>United States v. McLaughlin</u>, 89 F.Supp. 2d 617 and <u>United States v. Adcox</u>, 19 F.3d 290 at 295.

Although, the perjured testimony of Thomas Dye did not occur until Petitioner's sentencing hearing and not the trial itself, Petitioner believes the same premise applies here as Petitioner's due process rights were still substantially violated by the perjury to warrant a new sentencing hearing without the tainted testimony of Mr. Dye.

3. WHETHER PETITIONER'S CONSTITUTIONAL RIGHTS SECURED BY BOTH THE UNITED STATES AND ILLINOIS CONSTITUTIONS UNDER THE RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL AND DUE PROCESS (U.S. CONST. 6th & 14th AMENDS AND ILL. CONST. ART. 1, SEC'S 2 & 8), WERE SUBSTANTIALLY VIOLATED BY TRIAL COUNSEL WHO FAILED TO DEVELOP AND PURSUE VIABLE TRIAL STRATEGIES WHICH WERE LOGICAL UNDER THE CIRCUMSTANCES OF THIS CASE AT BAR, BY EITHER PURSUING A LESSER OFFENSE AND/OR DEFENSE BASED UPON THE STATUTORY PROVISION (a)(2)(ii) OF 720 ILCS 5/12-31, INDUCEMENT TO COMMIT SUICIDE OR STATUTORY PROVISION (a)(1)(b) OF 720 ILCS 5/9-2, SECOND DEGREE MURDER.

Constitutionally, ineffective assistance of counsel is "cause". <u>People v. Flores</u>, 606 N.E.2d 1078 at 1085.   "The attorney did not present any evidence and did not advance a theory of defense, this court held that, in this situation, <u>prejudice would be presumed</u>, and the defendant did not have to meet the Strickland standard. <u>People v. Nieves</u>, 737 N.E.2d 150 at 154.

In this case at bar, trial counsel was notified by both Petitioner and his family members prior to any pre-trial or trial proceedings of substantial evidence which is uncontradicted to support either a lesser offense and/or defense of the offense of inducement to commit suicide or second degree murder to the alternative first degree murder charges sought by the State. (see exhibits 2 ¶34, 3 ¶23, 4 ¶14 & 9 ¶5) Petitioner personally instructed trial counsel to pursue a second degree murder alternative. (see exhibit 9 ¶47)

Despite trial counsel being notified of this evidence, trial

counsel failed to utilize the evidence and ultimately failed to present any defense at all on Petitioner's behalf. (Tr. I-197-I-198).

"In all criminal prosecutions, the accused shal enjoy the right * * * to have the Assistance of Counsel for his defense." (6th Amend. U.S. Const.)   "In criminal prosecutions, the accused shall have the right to appear and defend in person and by counsel." (Art. 1, Sec. 8, Ill. Const.)   "The lawyer-client relationship is one of trust and confidence.  Such confidence only can be maintained if the lawyer acts competently and zealously pursues and clients' intrest within the bounds of the law." (Preamble-Illinois Rules of Professional Conduct)

The evidence Petitioner relies upon for the lesser offense and/or defense of inducement to commit suicide is found within claim 1 herein. To support the lesser offense and/or defense of second degree murder, Petitioner relies on the following;

The second degree murder statute provides:

(a) A person commits the offense of second degree murder when he or she commits the offense of first degree murder as defined in paragraph (1) or (2) od subsection (a) of Section 9-1 of the Code and either of the following mitigating factors are present:

(1) At the time of the killing he is acting under a sudden and intense passion resulting from serious provocation by the individual killed or another whom the offender endeavors to kill, but he negligently or accidentally causes the death of the individual killed; or

(b) Serious provocation is conduct sufficient to excite an intense passion in a reasonable person.

Black's Law defines provocation as "The act of inciting another to do something; esp. to commit a crime.  Something (such as words or actions) that affects a person's reason of self-control, esp. causing the person to commit a crime impulsively."   The "sudden and intense passion resulting from serious provocation by the individual killed" (720 ILCS 5/9-2(a)(1) (West 1998) required for a finding of second degree murder did not necessarily have to be viewed in terms of

murder did not necessarily have to be viewed in terms of anger and violence, * * * "sudden and intense passion" could be viewed in terms of sympathy and the desire to help a friend. <u>Nieves</u>, supra at 156.

It would be inconceivable to believe the continous pleas from Petitioner's wife, Lesley to help end her life because she did not want to live with the pain, (see exhibit 9 ¶24) and watching the wife he loves live in pain while slowly succumbing to her illnesses could not, or did not, serve as a catalyst for Petitioner to want to end his wife, Lesley's pain or serve as the provocation to cause sudden and intense passion in Petitioner or any other reasonable person.

Petitioner recogizes the fact that this honorable Court only reconogizes the categories of serious provocation as substantial physical injury or assault, mutual quarrel or combat, illegal arrest, and adultery with the offender's spouse. <u>People v. Chevalier</u>, 131 Ill.2d 66 at 71 (1989).   However, this Honorable Court also must recognize the fact that the 84th. General Assembly who drafted, defined and enacted the second degree murder statute in effect at the time of Petitioner's offense, never outlined any categories of serious provocation, they simply noted "serious provocation". (see exhibit 14 & 720 ILCS 5/9-2(a)(1)) Therefore, the plain language of the law must be given effect.   <u>Rock Island</u>, supra at 1166 & <u>Chesney</u>, supra at 516.

Petitioner would like to address that although this Honorable Court has never had the opportunity to consider the actions of Petitioner as a sudden and intense passion resulting from a serious provocation, the Honorable Daniel Kelley of the Circuit Court of Cook County, Illinois has addressed conduct similar to Petitioners. <u>Petitioner notes the case of People v. Williams, 638 N.E.2d 345 is only to show the similarties in conduct between Petitioner and Williams, not for use of</u>

<u>the ruling by the Appellate Court.</u>    In the case of <u>Williams</u>, Judge
Kelley determined the actions of <u>Williams</u>, who shot his ailing wife,
who was suffering from a disabling disease amounted to second degree
murder.   In doing so, Judge Kelley stated <u>Williams</u> was acting under
"a sudden and intense passion, * * * he was acting on years and years
of living a difficult situation [and that this] was a stimulus provided
for provocation." <u>Williams</u>, supra at 347.

As Petitioners conduct mirrors the conduct of <u>Williams</u>, under
Article 1, Section 2 of the Illinois Constitution as well as the 14th
Amendment of the United States Constitution, due process and equal
protection clauses, Petitioner has the right to be treated the same as
<u>Williams</u> and been afforded the same opportunity to a second degree
murder defense as <u>Williams</u>.   <u>Once again Williams is only used as a</u>
<u>comparision of the offense committed!</u>

In this case at bar, trial counsel's failure to utilize the
substantial evidence herein and develop a proper trial strategy reduced
counsel's representation and the trial proceedings to a level of a sham
and mockery.   Trial counsel's failure and/or refusal to present said
evidence indicates a fatalistic acceptance of Petitioner's guilt or a
lack of faith in Petitioner and his witnesses credibilty, either of
which fatally impairs any effective representation and its tantomount
to no representation at all.   Not to mention, it prejudiced Petitioner
rights to appeal this meritorous claim further due to waiver and
procedural default doctrines.



4. WHETHER PETITIONER'S CONSTITUTIONAL RIGHTS TO A FAIR AND
IMPARTIAL TRIAL WHICH IS SECURED BY BOTH THE SIXTH
AMENDMENT OF THE UNITED STATES CONSTITUTION AS WELL AS
ARTICLE 1, SECTION 8 OF THE ILLINOIS CONSTITUTION WERE
SUBSTANTIALLY VIOLATED BY THE TRIAL JUDGE WHO FAILED
TO RECUSE HIMSELF UNDER SUPREME COURT RULE 63, CANON
3(C)(1)(a), UPON RECIEVING AND READING EX PARTE
COMMUNICATIONS INFORMING THE JUDGE OF SEVERAL DISPUTED
EVIDENTIARY FACTS CONCERNING PETITIONER'S PROCEEDINGS
AND PETITIONER'S PAST CRIMINAL HISTORY.

on, or about, September 23, 1996, prior to Petitioner's bench trial,
the trial judge recieved and read ex parte communications, via a letter
from Ms. Kathy Morris, who was a friend of the victim, Lesley Chapman-
O'Farrell. (see exhibit 28, Tr. Sept. 27, 1996 & K-43-K45)

Ms. Morris' letter went into great detail describing disputed
evidentiary facts surrounding this case at bar, many of which were
never brought to light during Petitioner's proceedings. (see exhibit 28)
Ms. Morris' letter also informed the trial judge about Petitioner's
past criminal history with the same Area Five Detectives, who arrested
Petitioner several years earlier for the offense of first degree murder.

Supreme Court Rule 63, Canon 3(C)(1)(a) states:

C. Disqualification.
(1) A judge **SHALL** disqualify himself or herself in a proceeding in
    which the judge's impartiality might reasonably be questioned,
    including but not limited to instances where:
(a) The judge has personal bias or prejudice concerning a party or
    a party's lawyer, **or personal knowledge of disputed evidentiary
    facts concerning the proceeding.**

In accordance with this Supreme Court Rule, the trial judge had a
duty to preserve Petitioner's due process rights secured by the 14th
Amendment of the United States Constitution and Article 1, Section 2 of
the Illinois constitution to recuse himself from any further proceeding
regarding this Petitioner, upon recieving and reading the ex parte
communications (letter). This resulted in a **undue prejudice.** Black's
Law defines undue prejudice as "the harm resulting from a trier of fact

being exposed to evidence that is presuasive but inadmissible such as evidence of prior criminal conduct or that so arouses the emotions that calm an logical reasoning is abondoned."

Pursuant to the Illinois Rules of Evidence, Petitioner's past criminal history would be admissible only if Petitioner had taken the stand to testify, and to a large extent it would have been inadmissible for impeachment purposes.  However, Petitioner never took the stand to testify. (Tr. I-1-I-3)

5. WHETHER PETITIONER'S CONSTITUTIONAL RIGHTS TO A TRIAL BY JURY WHICH IS SECURED BY BOTH THE SIXTH AMENDMENT OF THE UNITED STATES CONSTITUTION AS WELL AS ARTICLE 1 SECTION 8 OF THE ILLINOIS CONSTITUTION WERE SUBSTANTIALLY VIOLATED BY TRIAL COUNSEL WHO USED COERCIVE TACTICS AND FALSE PROMISES IN ORDER TO ACQUIESCENCE A JURY WAIVER FROM PETITIONER AND ALLOW PETITIONER TO PROCEED TO A BENCH TRIAL IN FRONT OF A JUDGE WHO WAS NOTIFIED OF DISPUTED EVIDENTIARY FACTS CONCERNING THE CASE AT BAR AND PETITIONER'S PAST CRIMINAL HISTORY.

On, or about, September 23, 1996, the trial judge recieved ex parte communications informing the judge of disputed evidentiary facts concerning the case at bar as well as Petitioner's past criminal history. (see claim 4 herein & exhibit 28)

On January 20, 1997, the evening before Petitioner's trial was scheduled to begin, trial counsel informed Petitioner that he (trial counsel) can not win. (see exhibit 9 ¶52)   Trial counsel then employed coercive tactics and false promises of a (30) thirty years sentence if Petitioner waived a jury trial and proceeded to a bench trial in front of a judge who was fully aware of Petitioner's past criminal history as well as disputed evidentiary facts concerning this case at bar. (see exhibits 9 ¶52 & 4 ¶11)   Trial counsel guaranteed Petitioner the (30) thirty year sentence if he waived a jury trial and took a bench trial, (see exhibit 9 ¶52)

It is well established that a criminal attorney can not make promises or guarantees concerning the outcome of judicial proceedings. (see Rule 8.4(4) & (6) of the Rule of Professional Conduct (West 2005))

If in fact there was an agreement between the defendant's attorney, the prosecutor and the judge that the defendant would recieve a sentence of 14 years, the judgment entered upon can not stand. People v. Washington, 232 N.E.2d 738 at 740.

A criminal defendant has a constitutional right to expect during trial that his attorney will, at all times, support him, never desert him, and will perform with the reasonable competence and diligence. Jemison v. Foltz, 672 F.Supp. 1002 at 1009.

Trial counsel waived a jury trial and allowed defendant to be tried before a judge that was fully aware of defendant's long criminal history, compounded with numerous other errors, constitutes ineffective assistance of counsel. Foltz, supra at 1002.

On January 20, 1997, trial counsel informed Petitioner that if he did not take a bench trial, the judge would give him all (60) years. (see exhibit 9 ¶52)   Trial counsel's erroneous advise that defendant would recieve a sentence six times greater if he proceeded to trial constitutes ineffective assistance of counsel and renders the guilty plea invalid. Cook v. U.S., 461 F.2d 530    Trial counsel lied to defendant to induce a guilty plea, constitutes ineffective assistance of counsel. U.S. v. Giardino, 797 F.2d 30

Although, Cook, Giardino and Washington, supra are cases where a guilty plea occured, Petitioner firmly believes that the same principle applies here, as Petitioner was guaranteed a thirty year sentence if he waived a jury trial, Petitioner was threated with sixty years if he proceeded to a jury trial.

proceeded to a jury trial, Petitioner was coerced into signing a jury
waiver and Petitioner was denied his Constitutional Right to a trial
before a fair and impartial jury, a right that is secured by both
Constitutions.

It should be noted that even though the trial court asked
Petitioner if he understood the rights and consequences of signing the
jury waiver, <u>the trial court never asked Petitioner if he had been
promised anything or was coerced into signing the waiver</u>. (Tr. I-2-I-4).

6. WHETHER PETITIONER'S CONSTITUTIONAL RIGHTS SECURED BY THE 5th,
6th & 14th AMENDMENTS OF THE UNITED STATES CONSTITUTION AS WELL
AS ARTICLE 1, SECTIONS 2, 8 & 10 OF THE ILLINOIS CONSTITUTION
WERE SUBSTANTIALLY VIOLATED BY TRIAL COUNSEL AND POLICE WHERE
TRIAL COUNSEL FAILED TO PRESENT DIRECT EVIDENCE DURING THE
SUPPRESSION HEARING THAT CORROBORATED PETITIONERS CLAIM THAT
DETECTIVE SCHAKS TREAT TO HAVE PETITIONER'S SON TAKEN BY THE
DEPARTMENT OF CHILDREN AND FAMILY SERVES IF PETITIONER DID NOT
COOPERATE AND GIVE AN INCRIMINATING STATEMENT. (Tr. A-44,45)

"No person shall * * * be compelled in any criminal case to be a
witness against himself." (U.S. Const. 5th Amend.)  "No person shall be
compelled in a criminal case to give evidence against himself." (Ill.
Const., Art. 1, Sec. 10)

In determining whether defendants confession was voluntary, the
court must consider the totality of the circumstances. <u>People v. Strong</u>,
737 N.E.2d 687 at 692.  The ultimate test of voluntariness is whether
the defendant made the statement freely, voluntary, and without
compulsion or inducement of any sort, or whether the defendants will
was overcome. <u>In re G.O.</u>, 727 N.E.2d at 1012 & <u>Strong</u>, supra at 692.
The admission of an involuntary confession is unlikely to be harmless
given the heavy weight typivally accorded confessions by the trier of
fact. <u>Colorado v. Connelly</u>, 107 S.Ct. 515 & <u>Strong</u>, supra at 693.

In addition to the evidence presented during the hearing,
Petitioner also relys upon the direct evidence and credible witnesses

trial counsel was made aware of by Petitioner and his family members
that would prove Petitioner's claim that police used coercive tactics.
(see exhibits 2 ¶34, 3 ¶23, 4 ¶14, 9 ¶5 & 13 ¶10)   Trial counsel was
personally notified that Petitioner had prior experience with the same
Area 5 detectives, who falsely arrested Petitioner for the offense of
first degree murder, who attempted to coerce Petitioner into giving an
incrminating statement by withholding food from him for (24) hours. (see
exhibits 9 ¶9 & 13, 18 ¶6), that it was not within Petitioner's nature
to cooperate with the police or give an incriminating statement, without
requesting counsel and involking his right to remain silent (see exhibits
9 ¶10 & 11, 2 ¶30-32 & 18 ¶7), that Petitioner's son was present at Area
5 when Detective Schak treatened to take Petitioner's son and give him
to the DCFS if Petitioner did not cooperate (see exhibits 9 ¶37, 2 ¶'s
14 & 18 20-21, 3 ¶ 16-17, 4 ¶8-9, 13 ¶6-7 & Tr. E-45-47), that Detective
Schak was present during the questioning of Petitioner by ASA Kuogias
and Petitioner was unable to speak freely to ASA Kougias about the
threat of DCFS by Detective Schak (see exhibit 9 ¶39 & Tr. A-99, I-156,
I-182 and Strong, supra at 693, and that Petitioner stopped cooperating
with Detective Schak & ASA Kougias upon being informed that Petitioner's
son was removed from Area 5 and was safe with family members. (see
exhibits 9 ¶40, 2 ¶ 15, 18, 20-21, 3 ¶16-17, 4 ¶8-9 & 13 ¶6-7 & Tr. E-
45-47).

Trial counsel's omissions and/or failure to utilize said evidence
and witnesses indicates a fatalistic acceptance of Petitioner's guilt or
a lack of faith in Petitioner and his witnesses credibility, either of
which fatally impairs any effective representation and is tantomount to
no representation at all, not to mention the prejudice caused by trial
counsel's failure to present and preserve the claim and it's evidence

for further review in Petitioner's appeal process.  The actions and/or
inactions of trial counsel during the hearing clearly violated
Petitioner's rights to effective assistance of counsel and due process
under the 6th & 14th Amendments of the United States Constitution as
well as Article 1, Sections 2 & 8 of the Illinois Constitution.

> 7. WHETHER PETITIONER'S CONSTITUTIONAL RIGHTS SECURED BY THE
> 6TH & 14TH AMENDMENTS OF THE UNITED STATES CONSTITUTION AS WELL
> AS ARTICLE 1, SECTION'S 2 & 8 OF THE ILLINOIS CONSTITUTION UNDER
> UNDER THE RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL AND DUE
> PROCESS WERE SUBSTANTIALLY VIOLATED BY DIRECT APPEAL COUNSEL,
> WHO FAILED TO INCORPORATE WITHIN PETITIONER'S APPEAL BRIEF
> THE CLAIMS OF INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL HEREIN
> THIS PETITION TO PRESERVE FURTHER REVIEW.

Due process guarantees defendants the right to effective assistance
of counsel on first direct appeal. Evitts v. Lucy, 105 S.CT. 830 &
Page v. Frank, 343 F.3d 901 at 909.   Appellate counsel's failure to
raise clearly meritorious issues on direct appeal constitutes
ineffective assistance. Banks v. Reynolds, 54 F.3d 1508 at 1515-1516
Constitutionally, ineffective assistance of counsel is "cause". People
v. Flores, 606 N.E.2d 1078 at 1085   When a defendant is constructively
denied his rights to counsel on appeal by counsel's actions, then
prejudice is presumed. Lofton v. Whitley, 905 F.2d 885   Appellate
counsel's failure to present issues, on direct appeal * * * prejudiced
defendant where counsel's failure prevented defendant from presenting
issue for discretionary review to the United States Court. Freeman v.
Lane, 962 F.2d 1252.

Petitioner informed direct appeal counsel that he wished to raise
many issues of ineffective assistance of counsel against trial counsel.
(see exhibit 23)   However, after Petitioner personally spoke with
counsel in length about his ineffective assistance claims against trial
counsel, direct appeal counsel informed Petitioner that the record did

not reflect any ineffectiveness and that Petitioner can raise the claims within his post-conviction petition. (see exhibit 24)

In light of the legal advise provided to Petitioner by direct appeal counsel, Petitioner made a reasonable and diligent attempt to pursue the ineffective assistance of trial counsel within his original pro-se post-conviction petition, which was filed in the circuit court on January 26, 2000. (see the exhibit attached and incorporated within Petitioner's petition for rehearing, case #1-04-2481) Said petition survived the first stage of the post-conviction proceedings and Judge Thomas R. Fitzgerald, Presiding Judge of the Criminal Division of the Circuit court of Cook County appointed pro bono counsel. (see exhibit 15 as well as claim 8 herein) Thus, any issue to be reviewed **must** be presented in the **petition filed** in the circuit court. People v. Jones, 809 N.E.2d 1233 at 1239 Under 725 ILCS 5/122-3 of the post-conviction hearing act "Any claims of substantial denial of Constitutional rights **not** raised in the original or amended petition is waived." As the original petition was filed within the circuit court and said issues were contained within said original petition, the claims were not waived.

The Appellate Court supports Petitioner's claim of ineffective assistance of direct appeal counsel within it's orders. The Appellate Court stated Petitioner's claims of ineffective assistance of trial counsel were waived because these issues **were capable of being raised on direct appeal.** (see appendix B-1 & B-2, pg.'s 13) Petitioner notes that the failure to raise the ineffective assistance of trial counsel within his direct appeal brief **was not due to his culpable negligence,** as Petitioner did everything within his power by writing and discussing the claims herein with direct appeal counsel. It was direct appeal counsel who gave Petitioner fatalistic legal advise and failed to raise these



meritorious claims that were capable of being raise, as per the Appellate Courts orders above.

> 8. WHETHER PETITIONER WAS DENIED THE REQUIRED LEVEL OF ASSISTANCE OF COUNSEL IN VIOLATION OF ILLINOIS SUPREME COURT RULE 651(c), WHERE APPELLATE COUNSEL REMOVED PETITIONER'S ORIGINAL PRO-SE POST-CONVICTION PETITION WHICH CONTAINED PETITIONER'S CONTENTIONS REGARDING MERITORIOUS CLAIMS OF INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL WITHOUT PETITIONER'S AUTHORITY AFTER THE PETITION SURVIVED THE FIRST STAGE OF THE POST-CONVICTION PROCEEDINGS AND WAS DOCKETED FOR FURTHER DETERMINATION IN THE SECOND STAGE.

On January 26, 2000, Petitioner's original pro-se post-conviction petition which contained meritorious claims of ineffective assistance of trial counsel was filed by the Clerk of the Circuit Court of Cook County, Illinois. (see exhibit attached and incorporated within the petition for rehearing filed, case #1-04-2481)   The original petition filed by Petitioner survived the first stage of the post-conviction proceedings and Thomas R. Fitzgerald, Presiding Judge of the Criminal Division of the Circuit Court of Cook County, Illinois docketed the original petition for further determination in the second stage and pro-bono counsel was appointed. (see exhibit 15)

At the second stage of post-conviction proceedings, which commences if and when the petition for post-conviction relief is docket for further consideration, having survived an initial examination for frivolity, the trial court **must** determine whether the petition and any accompanying documents substantially show any constitutional violation. People v. Sawczenko, 767 N.E.2d 519 at 524. Any claim within Petitioner's original petition which survived the 90-day period are preserved for further review.

Supreme Court Rule 651(c) clearly states that counsel **must** consult with petitioner either by mail or in person to ascertain his contentions regarding the deprivation of his constitutional rights,

that counsel examine the record of proceedings at trial, and that counsel has made any amendments to the petition filed pro-se that are necessary for an adequate presentation of **petitioner's contentions.** People v. Jones, 522 N.E.2d 1325 at 1329, People v. Porter, 521 N.E.2d 1158 at 1160 & People v. Vasquez, 824 N.E.2d 1071 at 1075. It was further ruled that compliance with the duties set forth in this Rule is **MANDATORY.** Vasquez, supra at 1075   The purpose of the appointed post-conviction attorney is to take a pro-se petition and ensure that it adequately presents the claims that petitioner wishes to make. People v. Brown, 808 N.E.2d 1113 at 1117.   The right to defend is given directly to the accused; for it is he who suffers the consequences if it fails. Faretta v. California, 95 S.Ct. 2525 at 2533.

Petitioner made his contentions regarding his original pro-se post-conviction filed very clear to appellate counsel in person during an attorney visit, in writing and by telephone, that appellate counsel was not given Petitioner's authority to remove his original pro-se petition and/or any issue contained therein said petition and that the amended and amendment to the amended petition were to be in addition to Petitioner's original pro-se petition already filed. (see exhibits 29-34)

Dispite Petitioner's wishes, appellate counsel blatantly disregarded Petitioner's contentions and went behind Petitioner's back without his knowledge and before Judge William S. Wood on April 12, 2001 filed a motion to withdraw appeal (petitioner's original pro-se petition) either in writing or a verbal motion, (see exhibit 35 pg 11) removing the original pro-se petition and all of it's meritorious claims.

The actions and/or inactions of appellate counsel during the post-conviction proceedings clearly prejudiced Petitioner as the Appellate Court stated "Where an amended pleading is complete in itself and does

not refer to or adopt the prior pleading, the earier pleading ceases
to be part of the record for the most purpose and is effectively
abandoned and withdrawn." (see appendix B, exhibits 1-13 & 2-13)
"Next, because he failed to include it in his amended post-conviction
petition, defendant has waived the claim that he was subject to the
ineffective assistance of trial counsel" (see appendix 2, exhibits
1-14 & 2-14). This conduct of appellate counsel clearly violates
Supreme Court Rule 651(c), as counsel ignored Petitioner's contentions
by removing his original pro-se petition without his authority, barring
further review of the meritorious claims in a higher court, which
constitutes a violation of due process.

9. WHETHER THE APPELLATE COURT ERRED, DENYING PETITIONER'S
CONSTITUTIONAL RIGHT TO DUE PROCESS SECURED BY BOTH THE
UNITED STATES AND ILLINOIS CONSTITUTIONS.

As Petitioner is limited to a total number of pages for this
petition for leave to appeal, and the Appellate Courts errors are many,
Petitioner wishes to incorporate the arguments that were contained
within his petition for rehearing which was filed and subsequently
denied in the Appellate Court within this claim. (see Appendix B, exhibit
4)

In addition to the arguments contained within Petitioner's petition
for rehearing, Petitioner wishes to further address the 651(c) violation,
as the Appellate Court in it's modified order upon denial of petition
for rehearing made additional errors. (see appendix B, exhibit 4, pg 19-
20)

The Appellate Court stated "a careful review of the record reveals
that defendant has misconstrued the record and the motion he claims was
erroneously made does not exist. Post-conviction counsel did not
withdraw defendant's por-se petition; rather, post-conviction counsel

failed to incorporate the pro-se allegations into her amended petition. This may be a distinction without difference, from defendant's perspective. Nevertheless, defendant misreads the record, and the motion he claims was made in the trial court was actually made in this court and was a motion to withdraw an earlier appeal." (see appendix B, exhibit 4, pg 19) However, this ruling is an error in two parts. First, as this Honorable Court may see in exhibit 35, on 04/21/01 a "special order" was entered in Petitioner's case. The order allowed appellant's motion to withdraw appeal, which was filed by appellate counsel, without Petitioner in court.   This motion to withdraw appeal was before the Honorable William S. Wood. However, exhibit 35 does not state if this motion was an oral or written motion, but it does state there in fact was a motion allowed.

The second error occured when the Appellate Court failed to properly view exhibit 35 and the date in which the motion to withdraw appeal was allowed.  The Appellate Court erred by mistaking a motion filed in the Circuit Court of Cook County, Illinois with a motion to dismiss appeal in case #1-03-2619 and a motion to dismiss appeal as moot in case #1-03-3404 which were filed and granted by the Appellate Court, to allow Petitioner to appeal case # 1-04-2481 which was granted by the Appellate Court upon Petitionerfiling a late notice of appeal. (see Appendix B, exhibits 5-6)   The Appellate Court clearly erred as the motion to withdraw appeal, Petitioner is referring to occured on **April 12, 2001** and the motions the Appellate Court is referring to occured in **March or April 2004,** (3) years after the motion Petitioner is referring to was allowed.

Aagain, Petitioner relys upon the arguments contained within his petition for rehearing to demonstrate the Appellate Courts errors.

## 6. CONCLUSION

Based upon the foregoing argument, Petitioner prays that this Honorable Court will grant him leave to appeal so that the questions herein will be addressed or grant any other relief this Honorable Court deems appropriate.

Respectfully submitted,

Thomas O'Farrell – K54340,
Pro-Se Petitioner
P.O. Box 99
Pontiac, Illinois 61764

## APPENDIX A

| EXHIBIT #'S | PAGES |
|---|---|
| #1-Article-Loyola University of Chicago Law Journal | 1-6 |
| #2-Affidavit-Thomas C. O'Farrell (Petitioner's father) | 1-7 |
| #3-Affidavit-Mary A. O'Farrell | 1-4 |
| #4-Affidavit-Colleen E. Kohn | 1-3 |
| #5-Article-John Marshall Law Review | 1-5 |
| #6-Public Act 86-980 | 1 |
| #7-Public Act 87-1167 | 1 |
| #8-Public Act 88-392 | 1-2 |
| #9-Affidavit-Thomas F. O'Farrell (Petitioner) | 1-8 |
| #10-Transcriptions-88th General Assembly | 1-10 |
| #11-Statutes from the States of Ca.,Ia.,In.,Ne.,N.M.,Ok.,& Tx. | A-G |
| #12-The victim, Lesley Chapman-O'Farrell's mental health services progress notes | A-P |
| #13-Affidavit-John Kohn | 1-2 |
| #14-Transcriptions-84th General Assembly | 1-8 |
| #15-Letter from Chicago Counsel of Lawyers to Atty. Gubin | 1 |
| #16-Affidavit-Joseph Wayda | 1-2 |
| #17-Deposition of Thomas Michael Dye | 1-6 |
| #18-Affidavit-Attorney Michael A. Pedicone | 1 |
| #19-Supplementary report-Chicago Police Department | 1-8 |
| #20-State's Attorney's answer to discovery | 1-5 |
| #21-Letter to A.S.A. Jeff Kendall, DuPage County State's Atty. from A.S.A. Patrick J. Quinn, Supervisor-Orginized Crime Unit | 1 |
| #22-Affidavit-Jose Flecha | 1-2 |
| #23-Letter to James Chadd, Asst. State Appellate Defender from Petitioner | 1-2 |
| #24-Affidavit-Thomas O'Farrell (Petitioner) | 1 |
| #25-People v. Williams, 638 N.E.2d 345 | 1-4 |
| #26-Legal Document for the Estate of the victim, Lesley Chapman-O'Farrell | 1 |
| #27-Death Certificate of the victim, Lesley Chapman-O'Farrell | 1 |
| #28-Letter to the Honorable Michael P. Toomin from Kathy Morris | 1-3 |
| #29-Letter to Attorney Gubin from Petitioner | 1-2 |
| #30-Affidavit-Thomas O'Farrell (Petitioner) | 1 |
| #31-Authorization form by Petitioner to Atty. Gubin | 1 |
| #32-Authorization form by Petitioner to Atty. Gubin | 1 |
| #33-Affidavit-Thomas O'Farrell (Petitioner) | 1 |
| #34-Affidavit-Inmate John Turpen | 1 |
| #35-Certified Statement of Conviction/Dispostion generated by Dorothy Brown, Clerk of the Circuit Court of Cook County, Illinois in the case People v. O'Farrell, #95 CR 3046301 | 1 |

## APPENDIX B

| | |
|---|---|
| #1-App. Ct. Order, dated 05/21/07 | 1-20 |
| #2-App. Ct. Order, dated 08/06/07 | 1-21 |
| #3-Ill. S.Ct. Supervisory Order #101468, dated 1/25/06 | 1-2 |
| #4-Petition for rehearing/Order App.Ct. | 1-12 |
| #5-Motion to dismiss appeal #1-03-2619 | 1-3 |
| #6-Motion to dismiss appeal #1-03-3404 as moot | 1-3 |

 Westlaw.

879 N.E.2d 936 (Table)
226 Ill.2d 601, 879 N.E.2d 936 (Table), 316 Ill.Dec. 548
**(Cite as: 226 Ill.2d 601)**

Page 1

People v. O'Farrell
Ill. 2007.
(The decision of the Court is referenced in the
North Eastern Reporter in a table captioned
"Supreme Court of Illinois Dispositions of Petitions
for Leave to Appeal".)
Supreme Court of Illinois
People
v.
Thomas O'Farrell
NO. 105256

NOVEMBER TERM, 2007
November 29, 2007

Lower Court: No. 1-04-2481

Disposition: Denied.

Ill. 2007.
People v. O'Farrell
226 Ill.2d 601, 879 N.E.2d 936 (Table), 316
Ill.Dec. 548

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

EXHIBIT T

CASE NO. _08CV2403_____

ATTACHMENT NO. 2<sup>(EXHIBITS A-DD)</sup>_____

EXHIBIT _____

TAB (DESCRIPTION) _____

STATE OF ILLINOIS    )
                     )ss
COUNTY OF LIVINGSTON)

RECEIVED

MAY 2 7 2003

CLERK OF THE CIRCUIT COURT
CRIMINAL DIVISION

IN THE CIRCUIT COURT OF COOK COUNTY
COUNTY DEPARTMENT — CRIMINAL DIVISION

PEOPLE OF THE STATE OF ILLINOIS,)
              Plaintiff-Respondent,)
                                   )
                v.                 )    Case No. 95 CR 3046301
                                   )
                                   )    Judge _____
THOMAS O'FARRELL,                  )
              Defendant-Petitioner,)

---

## PETITION FOR POST-CONVICTION RELIEF

NOW COMES, Petitioner, Thomas O'Farrell, Pro-Se, pursuant to Chapter 725 ILCS 5/122-1 Et. Seq. of the Illinois Compiled Statutes, hereby respectfully requesting that this Honorable Court to grant him post-conviction relief.    In support of said request, Petitioner states the following:

1) On September 28, 1995, Petitioner was charged with two counts of first degree murder -- by superceding indictment -- in the shooting death of his wife, Lesley Chapman-O'Farrell.

2) On January 21, 1997, following a bench trial, Petitioner was convicted of count 1 of the indictment.    Count 2 was merged into count 1.

3) On February 28, 1997, Petitioner was sentenced to a term of fifty (50) years in the Illinois Department of Corrections.

4) On March 24, 1999, the Illinois Appellate Court, First Judicial District, affirmed Petitioner's conviction and modified the sentence.

5) Petitioner was subsequently denied leave to appeal to the Illinois Supreme Court.

EXHIBIT U

-1-

6) On january 25, 2000, Petitioner filed his original petition for post-conviction relief in this Court. (see Exhibit A attached and incorporated herein by and with this reference)

7) Petitioner's original post-conviction petition survived the 90-day dismissal period in its entirety, and counsel was appointed.

8) On April 13, 2001, appellate counsel filed her amended post-conviction petition, and removed Petitioner's original petition, forclosing review of several substantial claims raised within the petition. (see Exhibit B & C attached and incorporated herein by and with this reference)

9) On October 4, 2001, this Honorable Court granted the State's motion to dismiss the amended petition.

### CAUSE AND PREJUDICE

10) As stated above, Petitioner has previously filed a petition for post-conviction relief. (see Exhibit A)

11) Petitioner contends that he meets the criteria for filing a successive post-conviction petition announced by the Illinois Supreme Court in People v. Pitsonbarger, _____ Ill.2d. _____, (2002), 2002 WL 1038729 (Ill. 2002).

12) In Pitsonbarger, the Court held that in order for a defendant to file a second petition under the Illinois Post-Conviction Hearing Act, he must demonstrate "Cause" for his failure to raise the issue in his original post-conviction petition.

13) That is, a defendant attempting to raise a claim in a successive post-conviction petition must show that some external

-2-

factor impeded his ability to raise the claim in a previous
post-conviction proceeding.

14) Once a defendant has demonstrated "Cause", he must then
demonstrate that "Prejudice" has or will ineluctably accure
from the Court's failure to address the merits of the claim.

15) Petitioner contends that cause is easily demonstrated.

16) The issues Petitioner is seeking to raise were contained
within his original post-conviction petition. (see Exhibit A)

17) The issues survived the 90-day dismissal period,
indicating that they were not frivolous or patently without
merit.

18) Appellate Counsel, Deborah J. Gubin failed to contain
the issues in her amended petition, although Petitioner instructed
counsel not to remove any issue from his petition. (see Exhibits
D & E attached and incorporated herein by and with this reference)

19) Because the issues removed by counsel had been deemed
meritorious by this Honorable Court, counsel's failure to include
the issues within her amended petition constitutes cause within
the meaning of the holding in Pitsonbarger.

20) Perjudice, within the meaning of the Pitsonbarger
decision, is demonstrated by the fact that the failure of Judge
Michael P. Toomin to address the merits of the claims contained
herein will result in the issues being procedurally defaulted
for purposes of habeas corpus.   This will preclude Petitioner
from seeking Federal Review of the claims.

21) Moreover, because Petitioner has no Sixth Amendment
Right to the effective assistance of post-conviction counsel,

-3-

10

prejudice will ineluctably accrue if Petitioner is required to bear the burden of counsel's deficient preformance, when the deficiencies rise to the level of a Sixth Amendment Right.

22) In other words, requiring Petitioner to bear the burden of counsel's deficient preformance simply because there is no Constitutional Amendment governing counsel's preformance is in itself highly prejudicial.

## ISSUES PRESENTED FOR REVIEW

### CLAIM ONE

23) Petitioner was denied the effective assistance of counsel, in violation of the Sixth Amendment, where trial counsel failed to present additional evidence during a suppression hearing to prove Petitioner's confession was illegally obtained.

24) Following Petitioner's arraignment, trial counsel filed a motion to suppress several pieces of physical evidence as well as Petitioner's statement to the police.

25) During the hearing, trial counsel failed to present evidence that would have substantial diminished the credibility of the arresting detectives; and would have served to prove that psychological coersion had been used to obtain a confession. (see Exhibit A's exhibit's 2,3,4,9, & 13 attached and incorporated herein by and with this reference)

26) Trial counsel failed to inform the Trial Court that on a previous arrest, the same Area Five Detectives withheld food from Petitioner for 24 hours in an pitiful attempt to coerce a confession. (see Exhibit A's exhibit's 9 & 18 attached and incorporated herein by and with this reference)

-4-

$c$ $20$

27) Trial counsel failed to present the testimony of Petitioner's father, Thomas C. O'Farrell, a retired police officer, who would have testified that Petitioner, after being informed that his son, LeRoi was no longer at the Area Five Police Station, Petitioner again demanded to have counsel present during questioning. (see Exhibit A's exhibit's 2,3,4,9, & 13)

28) Trial counsel failed to inform the Trial Court that Petitioner was being denied medication to treat the pain of his gunshot wound, until he cooperated with detectives. (see Exhibit A's exhibit's 2 & 9)

29) Trial counsel failed to adequately refute the State's claim that the confession was voluntary.   Assistant State's Attorney, Kougias testified that Petitioner invoked his right to counsel after making an oral confession, but before being requested to sign the written statement. (Tr. E57)   It is inconceivable to believe that a suspect who is voluntarily assisting police would do such.   Moreover, the fact that Petitioner's adamant demand for counsel came after he was informed that his son was no longer at the police station, has to be veiwed by this Honorable Court as more that cioncidental.

## CLAIM TWO

30) Appellate counsel, Deborah J. Gubin was grossly inadequate, in violation of Illinois Supreme Court Rule 651(c), where she failed to include in her amended petition that Petitioner's conviction for first degree murder should be reversed where Petitioner met his burden of proving that he acted under a sudden and intense passion resulting from serious

-5-

provocation pursuant to Ill. Rev. Stat. 720 ILCS 5/9-2.(1) and
(2)(b) - second degree murder.

31) On April 11, 2001, a telephone conversation was had
between Petitioner and Appellate Counsel, Deborah J. Gubin.
(see Exhibit E)

32) During this conversation, Petitioner insisted that
appellate counsel raised the instant claim in her amended
petition.    (Although Petitioner referred to the issue as a
"legal innocence" claim).    Appellate counsel agreed to raise
the claim. (see Exhibit E)

33) It is obvious that appellate counsel intentionally
deceived Petitioner, as the issue was not contained in her
amended post-conviction petition. (see Exhibit B)

34) Petitioner stood a sobstantial likelihood of success on
the merits of the claim.

35) The facts of Petitioner's case are analogous to People
v. Williams, 265 Ill. App.3d 283, ¢38 N.E.2d 345 (1st Dist.1994).

36) Under the Illinois Constitution, Article 1 Section 2 and
the United States Constitution, Amendment 14 Section 1's Due
Process and Equal Protection Clauses, "Similar situated persons
have a right to be treated in a similar manner".

37) In Williams, defendant was charged with first degree
murder in the shooting death of his ailing wife as this Petitioner.

38) Following a bench trial, defendant was convicted of
second degree murder.

39) In so doing, the Court stated that defendant acted under
"A sudden and intense passion, * * * he was acting on years and

-6-

yeras of living a difficult situation [and that this] was a stimulus provided for the provocation.

40) In this case at bar, Petitioner lived with his wife's debilitating illness for a prolonged period of time, serving as her sole care provider.

41) It would be inconceivable to believe that watching his wife live in pain while slowly succumbing to her illness could not, or did not, served as a catalyst for Petitioner to want to end her pain.

42) Moreover, Petitioner's wife had actually tried to take her own life on several occassions, and would have been successful had Petitioner not intervened. (see Exhibit A's exhibit's 2,3,4, and 9)

43) On September 23, 1995, five days prior to Petitioner's wife's death, Petitioner's wife informed her family members that "I would rather die that to go through the rest of my life looking and feeling the way I do (regarding the paralysis to her right side of her face and the pain in her head)." (see Exhibit A's exhibit's 2,3, and 4)

44) As in Williams, Petitioner was acting under a sudden and intense passion resulting from the stimulus above providing for Petitioner's provocation. (Ill. Rev. Stat. 720 ILCS 5/9-2.(1).

45) Serious provocation is cunduct sufficent to excite an intense passion in a reasonable person. (Ill. Rev. Stat. 720 ILCS 5/9-2.(2)(b).

46) Petitioner's actions were as a Doctor Kevorkian assisted suicide and Petitioner was acting under a extreme mental and

-7-

23

emotional disturbance at the time of the offense. (see Tr.K50 and Exhibit A's exhibit 19 attached and incorporated herein by and with this reference)

47) **The Honorable Michael P. Toomin who presided as the trier of fact in Petitioner's bench trial found that there was physical evidence that corroborates the second version (assisted suicide) gave to the Area Five Detectives on September 28, 1995 by Petitioner. (Tr.I208)**

48) Wherefore, based on the foregoing, Petitioner has the Constitutional Right secured by both the Illinois and United States Constitutions under the Due Process and Equal Protection Clauses to be treated as Williams.

### CLAIM THREE

49) Appellate counsel was grossly inadequate, in direct violation of Illinois Supreme Court Rule 651(c), where she failed to perfect a timely notice of appeal following dismissal of Petitioner's original post-conviction petition, after being instructed to do so by Petitioner. (see Exhibit F attached)

50) Wherefore, based on the foregoing, Petitioner prays that this Honorable Court 1) Allow Petitioner to proceed with the instant post-conviction petition; and 2) Grant post-conviction relief as necessary to insure the ends of justice.

Respectfully submitted,

Thomas O'Farrell, Pro-Se,
Defendant-Petitioner

Subscribed and Sworn to before me
on this 1st day of May , 2003.

_____
Notary Public

-8-

"OFFICIAL SEAL"
MARK G. SPENCER
Notary Public, State of Illinois
My Commission Exp. 06/08/2004

STATE OF ILLINOIS )
                   )ss
COUNTY OF LIVINGSTON )

RECEIVED
MAY 2 7 2003
CLERK OF THE CIRCUIT COURT
CRIMINAL DIVISION

## AFFIDAVIT OF THOMAS O'FARRELL

    I, Thomas O'Farrell, Defendant-Petitioner, Pro-se. first being duly Sworn on oath, deposes and says that as to the matters herein this post-conviction petition, he is the Defendant-Petitioner in the above entitled cause, that he has read the forgoing document, by him signing, and that the statements contained herein are true and correct in substance and in fact.

                                               Thomas O'Farrell, Pro-se
                                               Defendant-Petitioner

Subscribed and Sworn to before me on this 7 day of May , 2003.

_____
Notary Public

"OFFICIAL SEAL"
TRACY LYNN HILL
Notary Public, State of Illinois
My Commission Exp. 11/30/2004

STATE OF ILLINOIS    )
                         )ss
COUNTY OF COOK     )

### AFFIDAVIT OF THOMAS C. O'FARRELL

I, Thomas C. O'Farrell, hereby certify under penalty of perjury and as otherwise provided by law that the information and statements below are true and correct to the best of my knowledge:

1) I am sixty four (64) years of age and reside in the State of Illinois, Cook County, at 11445 So. Mather Ave., Alsip, Illinois 60803.

2) I am, Subject to rule of admissibility, competent to testify to the matters herein.

3) The Defendant in this cause, Thomas O'Farrell, is my son.

4) My son Thomas is dyslexic and required special education classes during his grammar and high school years.

Further affiant sayeth nought.

Subscribed and Sworn to before me on
this _0_ day of _May_____, 2003.

_____
Notary Public

"OFFICIAL SEAL"
JOHN CHRISTOPHER PETERSON
NOTARY PUBLIC STATE OF ILLINOIS
COMMISSION EXPIRES 01/19/04

_____
Thomas C. O'Farrell

STATE OF ILLINOIS    )
                     )ss
COUNTY OF LIVINGSTON)

### AFFIDAVIT OF MICHAEL SAPP

I, Michael Sapp, hereby certify under penalty of perjury and as otherwise provided by law that the information and statements below are true and correct to the best of my knowledge;

1) I am presently incarcerated in the Illinois Department of Correction at the Pontiac Correctional Center, Pontiac, Illinois 61764 under the I.D. #K56211.

2) I have a certain knowledge of the law and the court proceedings.

3) Thomas O'Farrell also is incarcerated here at the Pontiac Correctional Center.

4) Thomas O'Farrell is the Defendant in the case of the People of the State of Illinois v. Thomas O'Farrell, case number 95 CR 3046301.

5) Thomas O'Farrell is a severe dyslexic and has a hard time reading, writing and has a hard time comprehending the things he reads.

6) Thomas O'Farrell enlisted me to research and compile a post-convition petition in his behalf.

7) I have read the post-conviction petition to Thomas O'Farrell and can attest that he understands the issues and arguments that I have brought to this Honorable Courts attention.

-1-

8) Thomas O'Farrell by signing said post-conviction petition and affidavit gives me the authority to file said petition.

9) I am, subject to the rules of admissibility, competent to testify to the matters herein.

Further affiant sayeth nought.

Michael Sapp-K56211

Subscribed and Sworn to before me
on this ___ day of ___, 2003.

Notary Public

"OFFICIAL SEAL"
Kathryn J. Donovan
Notary Public, State of Illinois
My Commission Exp. 02/03/2007

-2-

STATE OF ILLINOIS   )
                    )ss
COUNTY OF COOK      )

### IN THE CIRCUIT COURT OF COOK COUNTY
### COUNTY DEPARTMENT - CRIMINAL DIVISION

| | |
|---|---|
| PEOPLE OF THE STATE OF ILLINOIS,)<br>Plaintiff-Respondent,) | |
| v. ) | CASE NO. 95 CR 3046301 |
| ) | JUDGE_____ |
| THOMAS O"FARRELL,   )<br>Defendant-Petitioner,) | |

#### MOTION FOR DIFFERENT JUDGE TO CONSIDER

NOW COMES, Defendant, Thomas O'Farrell, Pro-se, and request this Honorable Court enter an order granting Defendants Motion for different judge to consider Pursuant to Ill. Rev. Stat. 725 ILCS 5/122-8.   In support of said motion Defendant state as follows:

1) On, or about, September 25, 1996, prior to Defendants bench trial, Trial Judge, Michael P. Toomin received a letter from one Kathy Morris. (See exhibit 1 attached and incorporated herein by and with this reference).

2) Kathy Morris by way of the letter is a friend of the victim in this case at bar.

3) Within said letter to Judge Toomin, Ms. Morris informed the Trial Court of Defendants past criminal history with the Chicago Police Department, Area Five Detectives for the offense of first degree murder, which Judge Tommin normally would not have knew about.

4) Judge Michael P. Tommin did not suggest recusal, in spite of his knowledge of Defendants past criminal history and sat Trial Judge in Defendants bench trial, where Judge Toomin found Defendant guilty of count 1 and merged count 2 into count 1. Thereafter, sentencing Defendant to a term of fifty (50) years imprisonment.

5) Trial Judge, Michael P. Tommin was in direct violation of Illinois Supreme Court Rules Article 1.  General Rules Code Of Judicial Conduct, S.Ct. Rule 63 [a judge should perform the duties of judicial office impartially and diligently] Canon 3(1)(a) which states:

-1-



EXHIBIT V

00163

C. Disqualification.

(1) A judge shall disqualify himself or herself in a proceeding in which the judge's impartiality might reasonably be questioned, including but not limited to instances where:

(a) The judge has a personal bias or prejudice concerning a party or a party's lawyer, or **personal knowledge** of disputed evidentiary facts concerning the proceeding;

Therefore Judge Toomin had a duty to disqualify himself from any further proceedings, especially Defendants bench trial.

6) "Knowingly," "Knowledge," "Known" or "knows" denotes actual knowledge of the fact in question. A person's knowledge may be inferred from the circumstances.

7) Trial Counsel, Joseph Kennelly being fully aprised that Trial Judge, Michael P. Toomin was aware of Defendants past criminal history (Tr. september 27, 1996) failed to file a motion on behalf of Defendant for the recusal of Judge Toomin on the meritorious issue Judge Toomin knew Defendants past criminal history which Judge Toomin would not have known about unless Defendant took the stand at trial, which Defendant did not do.

8) Dispite Trial Counsel's knowledge that Judge Toomin knew Defendants past criminal history, Trial Counsel advised Defendant to waive his constitutional rights secured by both the Illinois and United States Constitutions to be guarenteed to a jury trial (Tr. I3-I4) and proceeded to a bench trial with a trial judge who was aware of Defendants past criminal history where the trial judge would soley rule on Defendants guilt or innocents and/or sentence.

9) Prior to Defendants bench trial, Judge Toomin determined Defendant to be guilty and sentence that he would impose.

10) In Jemison v. Foltz, 672 F.Supp. 1002(E.D. Mich.1987) at 1003&1004, the trial judge supervised Jemison's probation for prior convictions. Despite the trial judges knowledge, judge did not suggest recusal and sat trial judge in Jemison's bench trial where the Judge soley ruled upon Jemison's guilt and sentence.

11) It can be inferred that the trier of fact in Jemison's bench trial had prior knowledge of Jemison's past criminal history by way of supervising Jemison's prior convictions.

-2-

12) It also can be inferred that Judge Michael P. Toomin had knowledge of Defendant O'Farrell's past criminal history by receiving Ms. Morris's letter which contained Defendants prior arrest for first degree murder. (See exhibit 1 & Tr. I3-I4)

13) In Jemison v. Foltz, 672 F.Supp. 1002 at 1007, the court found defense counsel's handling of the Jemison case, shocking, and concluded Jemison was clearly deprived effective assistance of counsel.    Defense counsel had a duty to consult with Jemison on important decisions, and to bring to bear on such skill and knowledge as to make the trial reliable adversary proceeding as to the failure to file a motion for recusal of trial judge who knew Jemison's past criminal history.

14) Judge Michael P. Toomin should have recused himself from any further proceedings and should be barred from hearing Defendants sucessive post-conviction petition.

15) It would be a direct violation of Defendants Constitutional rights secured by both the Illinois and United States Constitutions under the Due Process and Equal Protection Clauses and Supreme Court Rule 63, C(1)(a) to have this Honorable Court now deny said motion and allow Judge Michael P. Toomin to again make a ruling on Defendants sucessive post-conviction petition with the judges prior knowledge of Defendants past criminal history.

WHEREFORE, Defendant prays that this Honorable Court grant said motion and enter an order for a different judge to hear Defendants sucessive post-conviction petition.

Subscribed and Sworn to before me on
this ___ day of _____, 2003.

_____
Notary Public

Respectfully submitted,

_____
Thomas O'Farrell,
Defendant-Pro-se

"OFFICIAL SEAL"
TRACY LYNN HILL
Notary Public, State of Illinois
My Commission Exp. 11/30/2004

-3-

00165

1   STATE OF ILLINOIS )
                      )
2   COUNTY OF C O O K )

3          IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
                COUNTY DEPARTMENT – CRIMINAL DIVISION
4
    THE PEOPLE OF THE      )
5   STATE OF ILLINOIS      )
                           )
6                          )
           –vs–            )   No. 95 CR 30463
7                          )
    THOMAS O' FARRELL      )
8                          )

9              REPORT OF PROCEEDINGS had at the hearing

10  of the above–entitled cause, before the Honorable

11  MICHAEL TOOMIN, Judge of said Court, on the 9th day of

12  July, A. D., 2003.

13
        APPEARANCES:
14
            HONORABLE RICHARD E. DEVINE,
15             State's Attorney of Cook County, by:
            MR. XXXX XXXXXXXXX,
16             Assistant State's Attorney,
               appeared  on behalf of the People;
17
            MS. RITA FRY,
18            Public Defender of Cook County, by:
            MR.
19           Assistant Public Defender,
             appeared on behalf of the Defendant,
20                      ***********
21  MS. BARBARA J. KIMBROUGH, CSR
    Official Court Reporter
22  2650 South California
    Room 4 C 02
23  Chicago, Illinois 60608

24

EXHIBIT W          -55

1          THE COURT:  95 CR 30463-01, Thomas
2    O'Farrell, O-f-a-r-r-e-l-l.

3               This case comes on my call from Judge
4    Toomin's call. This Defendant filed a pro se Petition
5    for Post-conviction relief in front of Judge Toomin,
6    and also filed a Motion for a different judge to
7    consider the Post-conviction. He is alleging that
8    Judge Toomin should recuse himself because apparently
9    in 1996 some friend of the victim sent Judge Toomin a
10   letter. Thereafter, the Defendant was convicted in a
11   bench trial by Judge Toomin.

12              In fact, this is his second
13   Post-conviction Petition. In the first one he also
14   filed a Motion for an SOJ, which I heard and denied.
15   And the basis for the judge's purported bias or
16   prejudice is because, according to Mr. O'Farrell,
17   Judge Toomin had personal knowldge of facts from the
18   letter.

19              Judges are deemed to be fair and
20   impartial. The Defendant has failed to show that Judge
21   Toomin is prejudiced against him; that he did not
22   receive a fair ruling on his Post-conviction Petition.
23   And in this case, case law is that the judge who heard
24   the underlying trial should handle the

56

1  Post-conviction.

2              So, the Defendant's Pro Se Motion For

3  SOJ is denied. The case is transferred instanter back

4  to Judge Toomin.

5              (WHICH WERE ALL THE PROCEEDINGS

6              HAD IN THE ABOVE-ENTITLED CAUSE)

7              **************

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

57

```
 1   STATE OF ILLINOIS)
                      )  SS:
 2   COUNTY OF C O O K)

 3

 4

 5

 6

 7           I, BARBARA J. KIMBROUGH, CSR, Official Court

 8   Reporter of the Circuit Court of Cook County, County

 9   Department — Criminal Division, do hereby certify that

10   I reported in shorthand the proceedings had at the

11   hearing in the above—entitled cause; that I thereafter

12   caused to be transcribed into typewriting the above

13   Report of Proceedings, which I hereby certify is a

14   true and correct transcript of the proceedings heard

15   on said date, before the Honorable MICHAEL TOOMIN,

16   Judge of said court.

17

18

19                             _____
                               Official Court Reporter
20                             Circuit Court of Cook County
                               Criminal Division
21

22

23

24
```

58

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, CRIMINAL DIVISION

| | | |
|---|---|---|
| PEOPLE OF THE STATE OF ILLINOIS, | ) | |
| | ) | |
| Plaintiff-Respondent, | ) | |
| | ) | Post-Conviction |
| -vs- | ) | 95 CR 30463 |
| | ) | |
| THOMAS O'FARRELL, | ) | |
| | ) | |
| Defendant-Petitioner. | ) | |
| | ) | |

*ENTERED July 24, 2003 — Judge Michael Toomin, Deputy Circuit Clerk (stamp)*

## **ORDER**

In this successive petition for post-conviction relief, Thomas O'Farrell again seeks relief from the judgment of conviction entered in the above-entitled cause on February 24, 1997. On that date, following a bench trial, this court sentenced O'Farrell to a term of 50 years imprisonment for the offense of first degree murder, in violation of Section 9-1-A of the Illinois Criminal Code, 720 ILCS 5/9-1A (West 1992). As grounds for relief, petitioner asserts that he was denied the effective assistance of counsel in his earlier post-conviction proceeding where appointed counsel, *inter alia*, failed to both include in her amended petition and argue meritorious claims of constitutional error which had been set forth in his original *pro se* petition.

EXHIBIT X

00127

## BACKGROUND AND PROCEDURAL HISTORY

The instant prosecution stemmed from the fatal shooting of petitioner's wife, Lesley O'Farrell, in the early morning hours of September 28, 1995. Mrs. O'Farrell was shot and killed by two gunshot wounds as she lay in her bed at the family residence located at 3435 West Ardmore Street in Chicago Illinois.

At trial, the evidence established that Chicago Police Officers responded to the scene pursuant to a radio transmission alerting them that a shooting or burglary was in progress. Upon arrival, the officers were met by petitioner who was bleeding from a gunshot wound to his shoulder. O'Farrell told the officers that he and his wife had been shot by an intruder who entered their second floor bedroom. He described the offender as "a six foot three inch, black man with short black hair, approximately 200 pounds." (R. Vol. IV at 26). O'Farrell related that he was awakened by a loud boom and then observed the intruder. He further claimed that as he tried to disarm the offender he was shot in the ensuing struggle. O'Farrell repeated this version of the events to the police officer who accompanied him to Illinois Masonic Hospital and also to Detective William Kernan who interviewed him there.

As the investigation continued, O'Farrell was confronted with certain discrepancies in his initial version. Sensing that O'Farrell had become a suspect, rather than simply a witness, Detective Richard Schak administered *Miranda* warnings to him. O'Farrell then changed his story, informing Schak that he had killed his wife pursuant to a mutually conceived plan. O'Farrell related that Lesley was a diabetic and was beginning to experience kidney failure. Also, she had been diagnosed with Bell's Palsy and voiced concerns over her disfigurement. He told Detective Schak that when he arrived home

2

00128

from work that evening his wife produced the weapon, a Derringer, and asked him to shoot her when she fell asleep. Earlier, she had removed a glass pane from the downstairs bathroom window to make it appear that an intruder had entered. After deciding to implement the plan, O'Farrell fired a shot into his wife's head as she lay in her bed and directed another shot to her chest. He fired a third shot in the hallway, and, after shooting himself in his shoulder, he put the Derringer in a video cassette box and then called 911. In an interview with Assistant State's Attorney Tom Kougias, O'Farrell essentially repeated what he had told Detective Schak.

Dr. Nancy Jones, the medical examiner, removed two bullets from the victim's remains, opining that the cause of death was multiple gunshot wounds. Additionally, a gunshot residue test administered to O'Farrell revealed the presence of residue on his left hand, indicating that he had handled, fired or been in close proximity to a weapon when it was discharged. (R. Vol. IV at 140).

At the conclusion of the trial, O'Farrell was found guilty of two counts of first degree murder. In the capital sentencing proceeding that followed, petitioner again waived jury and the issue of eligibility was presented to this court. After the proofs had been concluded, the court determined that the State had failed to establish by its requisite burden that the murder had been committed in a cold, calculated and premeditated manner pursuant to a preconceived plan.

As the sentencing hearing continued the State presented Thomas Dye, a police informant, who testified regarding conversations he shared with petitioner while they were cellmates in the Cook County Jail. Dye related that O'Farrell told him that he had planned to kill his wife, that he did not like her, and that he had stayed with her to solidify

3

the insurance money that was coming from her grandparents. Although O'Farrell's son would inherit the money, petitioner related that he would be in a position to control the inheritance during his son's minority. O'Farrell further expressed his hope to be found guilty of second degree murder because his father was a police officer, his wife's illness would support the claim of a mercy killing and he had no criminal record.

In mitigation, the defense presented Dr. Larry Heinrich, a licensed clinical psychologist who evaluated O'Farrell for fitness and sanity during the course of the trial proceedings. Dr. Heinrich concluded that O'Farrell suffered from chronic depression related to family and personal issues. He also noted that the victim had manifested passive suicidal ideation and wishes during therapy sessions.

At the conclusion of the hearing, O'Farrell was sentenced to a term of fifty years imprisonment in the Illinois Department of Corrections. Thereafter, a direct appeal was taken to the Illinois Appellate Court, wherein O'Farrell claimed that:

1) He received an excessive sentence;

2) The mittimus should be amended to reflect that he was convicted and sentenced for only one count of first degree murder; and

3) He should not have been subject to the truth-in-sentencing law because it violated the single-subject rule of the Illinois Constitution.

In affirming petitioner's conviction, while rejecting claims one and two, the reviewing court, by its order of March 24, 1999, modified the mittimus in conformity with *People v. Reedy*, 295 Ill. App.3d 34, 44, 692 N.E.2d 376 (1998), to reflect petitioner's entitlement to receive one day of good conduct credit for each day of service in prison. *People v. Thomas O'Farrell*, No. 1-97-0911 (1999), (unpublished order under Supreme court Rule 23).

00130

Although O'Farrell sought further review in the Illinois Supreme Court, his petition for leave to appeal was denied on February 2, 2000. See, *People v. O'Farrell*, 187 Ill.2d 585, 724 N.E.2d 1273 (2000).. The record does not reflect whether O'Farrell proceeded further by way of *certiorari* in the United States Supreme Court.

However O'Farrell did seek collateral relief in a Motion for Writ of Habeas Corpus filed in this court on October 25, 1999. In that proceeding, O'Farrell claimed that because he had not been prosecuted by the State of Illinois, but rather by the Cook County Court, a home rule unit, his conviction and ensuing imprisonment constituted an unlawful and unconstitutional detention. Following due consideration of the merits of O'Farrell's motion, this court by order of November 2, 1999, denied habeas corpus relief. Although O'Farrell initially appealed this order, the appellate court subsequently allowed his motion to withdraw the appeal.

O'Farrell also sought collateral relief in a post-conviction proceeding commenced in this court on January 26, 2000. In his *pro se* petition O'Farrell asserted that he had been denied the effective assistance of counsel by trial counsel's:

1) Failure to adequately investigate and present meritorious evidence in support of his pretrial motions to suppress evidence and his motion to suppress statements.

2) Coercive tactics employed to obtain petitioner's jury waiver;

3) Failure to present meritorious evidence and argument supporting entry of judgment for the lesser grade offense of second degree murder.

4) Failure to present meritorious evidence establishing perjurious testimony of Chicago Police Officers Collins and Moran, as well as Tommy Dye;

5) Failure to adequately prove and present in a post-trial motion evidence of judicial misconduct; and

5

00131

6)  Failure to adequately investigate and present meritorious mitigation evidence at sentencing and in his motion to reconsider sentence.

Although O'Farrell also sought to disqualify this court upon allegations of bias, his motion for substitution of judges was heard and denied by Judge Colleen McSweeney Moore on February 15, 2000. When the matter was returned to this call, the court docketed O'Farrell's *pro-se* filing and appointed Attorney Deborah J. Gubin to represent him in his post-conviction proceeding.

On April 13, 2001, an amended post-conviction petition was filed with petitioner's concurrence asserting that counsel's representation was ineffective in that:

1)  Trial Counsel's presentation and argument of the Motion to Quash Arrest and Suppress Evidence and Motion to Suppress Physical Evidence was inadequate;

2)  Trial Counsel failed to present meritorious evidence to support entry of the lesser judgment of second degree murder;

3)  Trial Counsel failed to adequately prepare for and represent petitioner at the sentencing hearing;

4)  Appellate Counsel failed to raise the following issues on appeal

   - The denial of the Motion to Quash Arrest and Suppress Evidence,
   - The denial of the Motion to Suppress Physical Evidence;
   - Trial counsel's ineffective representation at trial and at the sentencing hearing;
   - The denial of the motion for additional discovery concerning Mr. Dye, and
   - Prosecutorial misconduct concerning the use of Mr. Dye at sentencing.

1)  Additionally, the court's error in allowing Mr. Dye to testify without insuring that all *Brady* material had been tendered to the defense.

On May 7, 2001, counsel filed an amendment to the amended petition, adding the claim of excessive sentence.

6

00132

Thereafter, respondent moved to dismiss the proceeding asserting that the amended petition failed to raise any constitutional questions within the purview of the Post-Conviction Hearing Act, that the claims presented were barred by the doctrines of *res judicata* and waiver, and that the petition failed to establish the requisite deficient performance and resulting prejudice to support a claim of ineffective assistance of counsel. On October 4, 2001, by its written order of 16 pages, this court granted the Motion to Dismiss. (*See,* Ruling on Respondent's Motion to Dismiss attached hereto and made a part hereof as Exhibit 1). An examination of this court's records as well as the appellate court reveals that no appeal was taken from the dismissal order.

## ANALYSIS

With this procedural history in mind, the court will now address Mr. O'Farrell's most recent filing, a successive petition for post-conviction relief, filed in the Circuit Court of Cook County on May 27, 2003. Although O'Farrell again sought to disqualify this court upon allegations of bias, his Motion for Substitution of Judges was heard and denied by Judge Colleen McSweeney Moore on July 9, 2003. In his *pro se* petition O'Farrell asserts that his post-conviction counsel was deficient by reason of her failure to include in the amended petition the following issues, each of which he claims was raised in his original *pro se* petition:

1)  That trial counsel failed to present additional evidence at the suppression hearing proving that petitioner's confession was illegally obtained;

2)  That post-conviction counsel was grossly inadequate by her failure to honor petitioner's direction to raise and present his meritorious claim that the evidence supported a conviction for the lesser offense of second degree murder; and

7

00133

3) That post-conviction counsel was grossly inadequate by her failure to perfect a timely notice of appeal following dismissal of petitioner's original post-conviction petition, after being instructed to do so by petitioner.

Initially, the court recognizes its duty to examine the petition and make a determination of its legal sufficiency pursuant to Section 122-2.1 of the Post-Conviction Hearing Act ("Act"). 725 ILCS 5/122-2.1 (West 2003); *People v. Holiday*, 313 Ill.App.3d 1046, 1048, 732 N.E.2d 1, 2 (4th Dist.2000). A post-conviction petition is a collateral attack on prior conviction and sentencing. *People v. Simms*, 192 Ill.2d 348, 359, 736 N.E.2d 1092, 1105 (2000). Under the act, a defendant may challenge his conviction or sentence for violations of federal or state constitutional rights. *People v. King*, 192 Ill.2d 189, 192, 735 N.E.2d 569, 572 (2000). However, the court is also empowered to summarily dismiss non-meritorious claims raised by the defendant. *People v. Richardson*, 189 Ill.2d 401, 407, 727 N.E.2d 362, 367 (2000).

First, it is apparent that O'Farrell's claim of ineffective assistance of counsel is barred by the doctrine of waiver. As noted, this is petitioner's second petition for post-conviction relief. The Post-Conviction Hearing Act generally limits a petitioner to the filing of only one post-conviction petition. *People v. Holman*, 191 Ill.2d 204, 209, 730 N.E.2d 39, 43 (2000). Indeed, "a ruling on an initial post-conviction petition has *res judicata* effect with respect to all claims that were raised or could have been raised in the initial petition." *People v. Jones*, 191 Ill.2d 354, 358, 732 N.E.2d 573, 575 (2000); *see also* 725 ILCS 5/122-3 (West 2001). Thus, as a threshold matter, this court must determine whether the waiver rule should be relaxed and petitioner's successive claims be considered.

00134

A narrow exception to the waiver rule holds that a claim brought in a successive petition will be considered if the prior proceedings were deficient in some fundamental way. *People v. Britt-El*, No.89837, slip op. at *13 (Ill. Sup. Ct., August 29, 2002). In *People v. Pitsonbarger*, No. 89368, slip op. (Ill. Sup. Ct., May 22, 2002), the Illinois Supreme Court announced a new method for analyzing claims raised in successive post-conviction petitions to determine if a fundamental deficiency existed in the prior proceedings. First, the court noted that Section 122-3 of the Act provides that any "claim of substantial denial of constitutional rights not raised in the original or an amended petition is waived." *Pitsonbarger*, No. 89368, slip op. at 10 (*quoting People v. Flores*, 153 Ill.2d 264, 274, 606 N.E.2d 1078, 1083 (1992)).

The Supreme Court further held that the "cause-and-prejudice test" is the analytical tool that courts should use to determine whether fundamental fairness requires that an exception to the waiver rule be made and successive claims be considered on their merits. *Pitsonbarger*, No. 89368, slip op. at 10. For purposes of the "cause-and-prejudice test," "cause" is defined as "some objective factor external to the defense [that] impeded counsel's efforts to raise the claim in an earlier proceeding." *Pitsonbarger*, No. 89368, slip op. at 11 (*quoting Flores*, 153 Ill.2d at 279, 606 N.E.2d at 1085). "Prejudice" will be found where "the petitioner [was] denied consideration of an error that so infected the entire trial that the resulting conviction or sentence violates due process." *Pitsonbarger*, No. 89368, slip op. at 15 (*quoting Flores*, at *id.*).

This new mechanism for evaluating successive claims shifts the focus from the sufficiency of the original post-conviction proceeding to whether the petitioner had the ability to raise the successive claim in that initial proceeding. Thus, the court held that,

00135

rather than focusing on whether a successive petition will be allowed, trial judges should apply the cause-and-prejudice test to individual claims. *Pitsonbarger*, No. 89368, slip op. at 13. In other words, "the petitioner 'must show how the deficiency in the first proceeding affected his ability to raise each specific claim.'" *People v. Thompson*, 331 Ill.App.3d 948, 954, 773 N.E.2d 15, 20 (1st Dist. 2002) (*Quoting Pitsonbarger*, No. 89368, slip op. at 13).

In the present case, O'Farrell fails to demonstrate that fundamental fairness requires relaxation of the waiver rule and consideration of his claim of ineffective assistance of trial counsel. O'Farrell articulates no reason why he could not have raised this issue in his amended petition for post-conviction relief. Although the factual assertions relied upon by O'Farrell in support of the claim were available to him at the time he filed his amended post-conviction petition, he has failed to identify any external factor which impeded his effort to raise the claim in that proceeding. O'Farrell does not allege that the facts that provide the basis for his claim were withheld from him or that the claim is based on newly discovered evidence. Rather, the claim was not included in the amended petition because post-conviction counsel believed it lacked merit, a decision concurred in by petitioner (*See*, Exhibit "E" attached to petitioner's successive petition). Nor has O'Farrell demonstrated that, had this claim been presented, there is a reasonable probability that he would have prevailed. Clearly, O'Farrell has failed to demonstrate that he was precluded from raising this claim in the initial post-conviction proceeding or that prejudice resulted from counsel's decision to forego inclusion of that issue in the amended petition. Thus, O'Farrell has failed to demonstrate that the prior proceeding was deficient in any fundamental way.

00136

O'Farrell next claims that post-conviction counsel was grossly inadequate when she failed to include in the amended petition that petitioner met his burden of proving sudden and intense passion, thereby entitling him to a judgment on the lesser offense of second degree murder.  However, the issue of post-conviction counsel's effectiveness is not properly before this court through a successive petition, but rather, should have been raised in appeal of this court's order granting Respondent's Motion to Dismiss. *People v. Flores,* 153 Ill.2d 264, 277, 606 N.E.2d 1078, 1084 (1992) (holding that claims of ineffective assistance of counsel in prior petitions is beyond the scope of the Act). Moreover, petitioner is in error in his assertion that Attorney Gubin failed to include this issue in her amended petition. (*See,* amended post-conviction petition, page 3):

> "2.  Mr. Kennelly failed to call any witnesses which could have introduced evidence of the emotional state of defendant and deceased at the time of the incident which would have reduced the matter to second degree.  Included in this is the emotional and physical condition of the deceased; his statements to defendant's family members.
>
> A.  Thomas C. O'Farrell was ready willing and able to testify as to the relationship between O'Farrell and Lesley; his observations of her mental state. (Affidavit of Thomas C. O'Farrell).
>
> B.  Mrs. O'Farrell was ready, willing and able to testify as to the deceased's state of mind and her observations of the relationship between O'Farrell and his wife. (Affidavit of Mary A. O'Farrell).
>
> C.  Failed to call his medical expert on the effect Lesley's medical condition could have on her mental state in conjunction with her documented "Chronic Depression".

It is further apparent that this court gave full consideration to this issue and concluded that there was no merit to the claim that the evidence supported a second degree finding. (*See,* Ruling on Respondent's Motion to Dismiss, at 10-11).    Accordingly, further consideration of this claim is foreclosed by the doctrine of *res judicata.*

11

O'Farrell's successive petition further claims that counsel was grossly inadequate by failing to perfect a timely notice of appeal following dismissal of petitioner's original post-conviction petition after being instructed to do so by petitioner. Petitioner cites Exhibit F, attached to the successive petition in support of this claim. In reality, that exhibit is a letter from Attorney Gubin informing O'Farrell of this court's denial of his petition and enclosing the written findings entered by the court. Counsel also informed O'Farrell of his appeal rights specifically noting:

> "If you wish I will file a notice of appeal, order the transcript on argument and today's ruling and request counsel be appointed. Please inform me of your decision."

Clearly, this exhibit lends no credence to O'Farrell's present claim that he requested counsel to perfect his appeal. Nor has he provided any other documentation or communication in support of that assertion. What the record establishes is that although post-conviction counsel stood ready to protect petitioner's appeal rights, O'Farrell took no steps to make his desires known to counsel.

Interestingly, what the common law records does reflect is that O'Farrell on his own elected to insure that his appellate rights were secured. In a *pro se* filing of November 1, 2001, O'Farrell forwarded to the Clerk of the Circuit Court his "Affidavit of Intent to File Appeal," together with his "Motion for Appointment of Counsel" and "Motion for Leave to Proceed in Forma Pauperis". However because O'Farrell failed to file the requisite Notice of Appeal, the Clerk did not docket the papers and transmit them to the appellate court. Consequently it is manifestly disingenuous for O'Farrell to now seek to hold appointed counsel responsible for the loss of his appellate rights when he, by his own hand, was clearly the responsible party. Futhermore , it would have been unnecessary for

00138

petitioner to have docketed his *pro se* filings if he indeed had instructed counsel to perfect his appeal.

O'Farrell also faults Attorney Gubin for failing to include in her amended post-conviction the issues raised in his original *pro se* petition. O'Farrell asserts that he instructed Ms. Gubin not to delete any of these issues but that she nonetheless failed to abide by his direction. Support for petitioner's claim is said to be found in Exhibit "E" attached to the successive petition. Yet, a clear reading of that correspondence clearly belies his assertion. In the letter, O'Farrell memorializes his understanding that Ms. Gubin include two issues – illegal arrest and second degree murder – within the amended petition, a direction which she most assuradly followed. The letter makes no mention of the issues raised in the original petition, nor did O'Farrell at any time, up to now, inform this court of his dissatisfaction with the amended petition. The doctrine of waiver should serve to preclude O'Farrell from raising this issue now.

Moreover, O'Farrell chooses to overlook the fact that, in amending the original petition, Ms. Gubin was fulfilling her responsibilities as appointed counsel in accordance with well-established rules. As our supreme court recognized many years ago in *People v. Slaughter*, 39 Ill.2d 278, 284-85, 235 N.E.2d 566, 569 (1968):

> "The Post-Conviction Hearing Act provides that counsel shall be appointed to represent indigent prisoners who request counsel and it also provides that a petition may be amended or withdrawn. (Ill. Rev. Stat. 1967, chap. 38, pars. 122-4, 122-5.) These provisions were included because it was anticipated that most of the petitions under the Act would be filed *pro se* by prisoners who had not had the aid of counsel in their preparation. To the end that the complaints of a prisoner with respect to the validity of his conviction might be adequately presented, the statute contemplated that the attorney appointed to represent an indigent petitioner would consult with him either by mail or in person, ascertain his alleged grievances, examine the record of the proceedings at the trial and then amend the petition that had been filed *pro se*, so that it would adequately present the prisoner's constitutional contentions..."

00139

O'Farrell recognizes that he has no constitutional right to the assistance of counsel at a post-conviction proceeding. The law requires only a "reasonable level of assistance" by appointed counsel at such proceedings. *People v. Moore*, 189 Ill.2d 521, 541, 727 N.E.2d 348, 358-59 (2000). In the instant case, Ms. Gubin's representation was in conformance with that standard. O'Farrell's filings reflect that she consulted with him both by mail and in person, that she ascertained his grievances, examined the record of the trial proceedings and then amended the *pro se* petition to the end that it adequately presented petitioner's constitutional contentions. Her amended petition, which was complete in itself, caused the original petition in effect to be abandoned and withdrawn. *Larkin v. Sanelli*, 213 Ill.3d 597, 602, 572 N.E.2d 1145, 1149 (1st Dist, 1991); *Field Surgical Associates, LTD. v. Shadob*, 59 Ill.App.3d 991, 994, 376 N.E.2d 660, 663 (Dist.1978); *Yarc v. American Hospital Supply Corp.*, 17 Ill.App.3d 667, 670, 307 N.E.2d 749, 752 (Dist.1974).

00140

## CONCLUSION

Based upon the foregoing discussion, the court finds that the issues raised and presented by Mr. O'Farrell are frivolous and patently without merit. Accordingly, the successive petition for post-conviction relief shall be and is hereby dismissed. Likewise, O'Farrell's motions for appointment of counsel and for leave to proceed in *forma pauperis* is also denied.

ENTERED: _____

Michael P. Toomin
Supervising Judge
Circuit Court of Cook County
Criminal Division

DATED: _____

00141

3RD POST-CONVICTION

STATE OF ILLINOIS)
                 )ss
COUNTY OF COOK   )

IN THE CIRCUIT COURT OF COOK COUNTY
COUNTY DEPARTMENT - CRIMINAL DIVISION

PEOPLE OF THE STATE OF ILLINOIS,)
          Plaintiff-Respondent,)
                                )   CASE NO. 95 CR 3046301
               v.               )
                                )   JUDGE _____
THOMAS O'FARRELL,               )
          Defendant-Petitioner,)

## PETITION FOR POST-CONVICTION RELIEF

NOW COMES, Petitioner, Thomas O'Farrell, Pro-Se, pursuant to Chapter 725 ILCS 5/122-1 et.seq. of the Illinois Compiled Statutes, hereby respectfully requesting that this Honorable Court to grant him post-conviction relief. In support of said petition, Petitioner states the following:

1) On September 28, 1995, Petitioner was charged with two counts of first degree murder -- by superseding indictment -- in the shooting death of his wife, Lesley Chapman-O'Farrell.

2) On January 21, 1997, following a bench trial, Petitioner was convicted of both counts of first degree murder.

3) On February 28, 1997, Petitioner was sentenced to a term of fifty (50) years imprisonment within the Illinois Department of Corrections.

4) On March 24, 1999, the Illinois Appellate Court, First Judicial District, affirmed Petitioner's conviction and modified the sentence.

5) Petitioner was subsequently denied leave to appeal to the Illinois Supreme Court.

1.

00003

6) On January 25, 2000, Petitioner filed his originial petition for post-conviction relief in the Court. (see exhibit A Petitioner's second petition for post-conviction relief).

7) Petitioner's original petition survided the 90-day dismissal period in its entirety, and counsel was then appointed.

8) On April 13, 2001, post-conviction counsel filed her amended post-conviction petition, and removed Petitioner's original petition, forclsing review of several substantial claims raised within the original petition. (see exhibit B & C Petitioner's second petition for post-conviction relief).

9) On October 4, 2001, this Honorable Court granted the State's motion to dismiss the amended petition.

10) On May 21, 2003, Petitioner filed a successive post-conviction petition.

11) On July 24, 2003, this Honorable Court dismissed Petitioner's successive petition.

12) To survive stage one, the petition must only provide a gist of a Constitutional claim. People v. Scullark, 795 N.E.2d 565 at 570-571.

13) A post-conviction petition suffices if it sets forth the gist of a meritorious Constitutional claim -- means that the pro-se petitioner need not consrtuct legal arguments in their petition nor even understand what legal arguments the fact they present therein might support. People v. Lemons, 613 N.E.2d 1234 at 1238.

14) Therefore, we cunclude that in order to withstand

-2-

dismissal at the first stage of post-conviction proceedings. a petition for post-conviction relief need only contain a simple statement which presents the gist of a claim ofr relief which is meritorious when considered in view of the record of trial court proceedings.  Requiring pro-se petitioner to state their claims in great detail than this would have the practial effect of sepriving many such persons of their right of meaningful access to the court's. Lemons, 613 N.E.2d 1234 at 1240.

### CAUSE AND PREJUDICE

15) As stated avove, Petitioner has previously filed two petitions for post-conviction relief.

16) Petitioner contends that he meets the criteria for filing another successive post-conviction petition announced by the Illinois Supreme Court in People v. Pitsonbarger, ___ Ill.2d ___, (2002), 2002 WL 1038729 (Ill. 2002)

17) In Pitsonbarger, the Court held that in order for a defendant to file a successive petition under the Illinois Post-Conviction Hearing Act, he must demonstrate "Cause" for his failure to raise the claim in his original post-conviction petition.

18) Thus when "Cause" is based on a fundamental deficiency in the first post-conviction proceedings, the petitioner must show that the deficiency directly affected his ability to raise the specific claim now asserted. Pitsonbarger, note #18.

19) Once a defendant has demonstrated "Cause", he then must demonstrate "Prejudice".

-3-

00005

20) "Prejudice", in the context, would occur if the petitioner were denied consideration of an error that so infected the entire trial that the resulting conviction or sentence violates due process. Pitsonbarger, note #25.

21) Petitioner had the Constitutional Right under Due Process to effective assistance of counsel during the trial and direct appeal proceedings under the Sixth Amendment of the United States Constitution and Article 1 Section 2 of the Illinois Constitution which were grossly violated.

22) Petitioner had the right to a reasonable level of assistance of counsel during the post-conviction proceedings under the Post-Conviction Hearing Act 725 ILCS 5/122-1.

23) Trial counsel, Joseph Kennelly failed to prusue the meritorious claim within Claim One herein during the pre-trial motions and/or trial proceedings constituting ineffective assistance of counsel which infected the entire trial and sentence resulting in the violation of Petitioner's due proccess rights.

24) Direct appeal counsel, James Chadd failed to pursue the meritorious claim within Claims One and Two herein during the direct appeal proceedings constituting ineffective assistance of counsel which resulted in the violation of Petitioner's due process rights.

25) Post-conviction counsel, Deborah J. Gubin failed to pursue the meritorious claim within Claims One, Two and Three herein within her amended and amendment to the amended post-conviction petition constituting ineffective assistance of counsel ans a level of assistance well below the reasonable assistance required

-4-

by the Post-Conviction Hearing Act.

26) "[C]onstitutionally ineffective assistance of counsel... is Cause.'" People v. Flores, 606 N.E.2d 1078 at1085.

27) Petitioner is a severe dyslexic and has an extremely hard time reading and writing. (see exhibit 1 & 2 attached and incorporated herein by and with this reference). Clearly, Petitioner is a layman to the law and is without the knowledge and understanding of the Illinois Compiled Statutes, namely the Statute regarding the offense of Inducement to Commit Suicide. If not for a careful reading of Illinois Compiled Statutes one may never be apprised of the Inducement to Commit Suicide Statute at all. Petitioner certainly is unable to know as to how his circumstances, evidence, affidavits and the record can be utilized to show how Petitioner has met the requirements of the Inducement to Commit Suicide Statute and the Constitutional Provisions of Due Process and Equal Protection Clauses of both the Illinois and United States Constitutions and the Limitation of Penalties After Conviction Clause of the Illinois Constitution. It is obvious that Petitioner's disabilities affected his ability to raise this meritorious claim in prior proceedings.

28) The ineffective assistance of counsel at trial, direct appeal and post-conviction proceedings along with Petitioner's disabilities demonstrates "Cause" within the meaning of the holding in Pitsonbarger.

29) "Prejudice", within the meaning of the Pitsonbarger decicion, is demonstrated by the fact the trial, direct appeal and post-conviction counsel's failure to address the meritorious

-5-

00007

claims within Claims One through Four herein resulted in the claims being procedurally defaulted and waived for review for purpose of appeal and habeas corpus.  This will preclude Petitioner from seeking State and Federal review on the meritorious claims herein violating Petitioners Constitutional Rights to appeal.

30) The Right to appeal is secured under Article 6 Section 6 of the Illinois Constitution.  To be denied the Right to appeal is a clear misjustice of the law and is a violation of the Illinois Constutition and is "Prejudicial" in itself.

31) Because a proceeding brought under the Act is a collateral attack on a judgement of conviction, all issues which could have been raised in the original proceedings, but were not, are waived. The doctrine of res judicata and waiver, however, will be relaxed in three situations: where fundamental fairness so requires; where the alleged waiver stems from the incompetence of appellate counsel; or where the facts relating to the claim do not appear on the face of the original appellate record. People v. Mahaffey, 742 N.E.2d 251 at 261.

32) Petitioner has met the "Cause" and "Prejudice" test to relax the waiver doctrine.  Petitioner has also demonstrated that he has met the requirements within Mahaffey.  Not one and all three requirements to relax the waiver doctrine.

33) Therefore, Fundamental fairness requires relaxation of the waiver doctrine under the meaning of the Pitsonbarger decision.

-6-

## CLAIM ONE

DEFENDANT'S FIRST DEGREE MURDER CONVICTION MUST BE
REVERSED WHERE DEFENDANT HAS MET THE STATUTORY REQUIREMENTS
OF THE OFFENSE OF INDUCEMENT TO COMMIT SUICIDE PURSUANT TO
720 ILCS 5/12-31(a)(2)(ii) AND THE CONSTITUTIONAL PROVISIONS
OF THE DUE PROCESS AND EQUAL PROTECTION CLAUSE OF BOTH THE
ILLINOIS AND UNITED STATES CONSTITUTIONS AND THE LIMITATION
OF PENALTIES AFTER CONVICTION CLAUSE OF THE ILLINOIS CONSTITUTION.

34) It is clear that the members of Congress gave careful
attention in determining the wording and their **INTENT** in the
drafting and adopting our Illinois Constitution.   In doing so,
Congress solely relys on the judgement of the Governor and General
Assembly of Illinois to create the laws and the proper statutory
sentence for specific offenses.

35) Under Due process and Equal Protection clauses of both
the Illinois and United States Constitutions, similar situated
persons have a right to be treated in a similar manner. (Il.Const.
Art.1 Sec.2 and 14th Amend. Sec 1 U.S.Const.)

36) The United States Supreme Court ruled that Equal Protection
Clause directs that "All persons similarly circumstanced **SHALL**
be treated alike." Plyler v. Doe, 102 S.Ct. 2382 at 2394.

37) Under the Limitation of Penalties After Conviction Clause
of the Illinois Constitution, all penalties **SHALL** be according to
the seriousness of the **OFFENSE**. (Il.Const. Art.1 Sec.11).

38) The Illinois Supreme Court stated that "Article 1, Section
11, of the Constitution is applicable to the Legislature as well
as to courts.  Section 11 is **DIRECTED** to the Legislature in its
function of declaring what CONDUCT is CRIMINAL and the PENALITIES
for the CONDUCT and that it is within the Legislative province to
DEFINE OFFENSES and determine the PENALTIES REQUIRED to protect
the intrests of our society. People v. Taylor, 102 Ill.2d 201 at

-7-

205-206.

39) Thirty-six states and territories currently have statutes imposing criminal santions for aiding, **assisting**, causing, or promoting suicide. (FN10). Compassion in Dying v. State of Washington, 79 F.3d 720 at 847.  (FN10) Ill.Rev.Stat. Ch. 720 ¶ 5/12-31 (westlaw 1996), State of Washington, 79 F.3d 720 at 858.

40) Most states have consistently punished the act of **assisting a suicide** as either a common-law or **statutory crime** and some continue to view suicide as an unpunishable crime. (FN14). Washington v. Glucksberg, 117 S.Ct 2258 at 2286. (U.S.Wash.1997) (FN14) Ill.Comp.Stat., Ch.720 § 5/12-31(1993) Glucksberg, 117 S.Ct. 2258 at 2293, (see exhibit 3 attached and incorporated herein).

41) It is clear that the Governor and General Assembly of Illinois gave careful consideration in determining the **statutory requirements and their INTENT** in drafting and enacting the laws and proper statutory sentence for the offense of Inducement to Commit Suicide. (Public Acts 86-980, 87-1167, 88-392, Ch. 38 par. 12-31 and 720 ILCS 5/12-31 (1990-1993).

42) From its birth in July 1990, the offense of Inducement to Commit Suicide went through several amendments, where the Governor and General Assembly changed the **statutory requirements** to be met by a defendant.

43) Throughout the life of the offense of Inducement to Commit Suicide the statutory sentence went from a Class 2 felony, to a Class 3 felony to the present **Class 4 felony**.

44) The present Statute reads as follows:
5/12-31. Inducement to Commit Suicide.

§12-31. Inducement to Commit Suicide.

00010

(a) A person commits the offense of inducement to commit suicide when he or she does either of the following:

(1) Coerces another to commit suicide and the other person commits or attemps to commit suicide as a direct result of the coercion, and he or she exercises substantial control over the other person through (i) control of the other person's physical location or circumstances; (ii) use of psychological pressure; or (iii) use of actual or ostenible religious, political, social, philosophical or other principles.

(2) With knowledge that another person intends to commit or attempts to commit suicide, intentionally (i) offers and provides the physical means by which another person commits or attempts to commit suicide, or (ii) participates in the physical act by which another person commits or attempts suicide.
For the purpose of this Section, "attempts to commit suicide" means any act done with the intent to commit suicide and which substantial steps toward commission of suicide.

(b) Sentence.
Inducement to commit suicide under paragraph (a)(1) when the other person commits suicide as a direct result of the coercion is a Class 2 felony.
Inducement to commit suicide under paragraph (a)(2) when the other person commits suicide as a direct of the assistance provided is a Class 4 felony.

45) In accordance with the Statutory Sentencing Guidelines the appropriate sentence for the offense of Inducement to Commit Suicide is a Class 4 felony.

46) The statute on sentencing which was in effect when Petitioner committed his offense reads as follows:

§ 5/5-8-1 Sentencing of imprisonment for felony.
(a) Except as otherwise provided in the statute defining the offense, a sentence of imprisonment for a felony SHALL be a determinate sentence set by the court under this Section, according to the following limitations;
(7) for a Class 4 felony, the sentence SHALL be not less than 1 year and not more than 3 years.

47) Petitioner will now demonstrate via the Inducement to

-9-

Commit Suicide Statute 720 ILCS 5/12-31(a)(2)(ii) and the record that: 1) the ecidence within the record will reflect that the victim, Lesley Chapman-O'Farrell did in fact commit suicide; 2) Petitioner was in fact a participant in the physical act by which the victim, Lesley committed suicide; and 3) Petitioner has met the Statutory Reqiurements set forth within the statute for Inducement to Commit Suicide 720 ILCS 5/12-31(a)(2)(ii).

48) The record will reflect the following:

a) That the victim, Lesley Chapman-O'Farrell had passive suicidal ideation prior to her death. (Tr. K-39-40, K-55 and K-60);

b) That the victim, Lesley attempted suicide several time prior to het death. (Tr.I-149,I-154,I-192 and exhibit A's exhibits 2,3,4 and 9 of Petitioner's second post-conviction petition);

c) That the victim, Lesley continuously plead with Petitioner her husband for approximantely 18 months prior to her death to help end her life because she no longer wanted to live with the pain and suffering that she was going through because of her medical conditions. (Tr.I-152,I-182 and exhibit A's exhibit 9 of Petitioner's second P.C.);

d) That the victim, Lesley told her family members that "I would rather die than to go through the rest of my life looking and feeling the way I do (regarding the paralysis to the side of her mouth and face and the pain in her head.)" (exhibit A's exhibits 2,3 and 4 of Petitioner's second P.C.);

e) That the victim, Lesley had several severe medical conditions. (Tr.I-149,I-158,I-182,K-37-38,K-61 and exhibit A's

-10-

00012

exhibits 9 and 16 of Petitioner's second P.C.);

f) That individuals with the medical conditions that the victim, Lesley had sometimes over-emphasize their illness. (Tr.K-61);

g) That Petitioner believed that his wife and victim, Lesley was terminall ill. (Tr.I-182,I-192 and K-50);

h) That Petitioner often missed and/or left work early because his wife and victim, Lesley was seriously ill and needed Petitioner to take care of her because she was unable to take care of herself. (exhibit A's exhibits 9 and 16 of Petitioner's second P.C.);

i) That the victim, Lesley wrote in her diary and mentioned to her doctor that she felt that Petitioner, her husband did help her when she was very ill and that she said that she knew that Petitioner did not want to lose her. (Tr.K-38);

j) That Petitioner loved his wife and victim, Lesley and would do anything possible to keep their marriage intect. (Tr.K-36-37);

k) That Petitioner's employer could not cover Petitioner's wife and victim, Lesley on the companies insurance policy due to her several severe medical problems. (exhibit A's exhibits 9 and 16 of Petitioner's second P.C.)

l) That Petitioner sufferd from chronic depression, severe emotional and mental disturbance at the time of the offense. (Tr.K-35 and K-39-40);

m) That the victim, Lesley enlisted Petitioner her husband

-11-

to assist in her suicide. (Tr.I-148-149,I-182 and exhibit A's exhibit 9 of Petitioner second P.C.);

n) That Petitioner's actions resulted from the pressure from his wife and victim, Lesley. (Tr.I-150-151);

o) That Petitioner confessed to assisting his wife, and victim, Lesley's suicide. (Tr. I-148-149 and I-182-183);

p) That Petitioner was truly remorseful for his actions. (Tr.K-58 and K-86);

q) That Petitioner told the police two versions of what happend on the morning the victim, lesley died. (Tr.I-206-208 and J-41);

r) That Petitioner first told the police that a unknown intruder, whom he described as a male black, about 200 pounds and six foot tall shot his wife and victim, Lesley and Petitioner. (Tr.I-206 and J-41);

s) That the second version Petitioner told the police and assistant state's attorney that of a mercy killing at the behest of his wife and victim, Lesley who engaged in the planning, who did certain of the preliminary work, discussed this in full with Petitioner her husband and provided the cover-up story to be told to the police. (Tr.I-208-209 and J-41-42); and

t) That there was physical evidence that corroborated the second version given by Petitioner. (Tr.I-208)

49) There is addition burden on loved ones and family members that is often overlooked.  Some terminall ill persons enlist their children, parents, or others who care for them deeply, in an agonizing, brutal and damaging endeavor,

-12-

criminalized by the state, **to end their pain and suffering.**  The
loving and dedicated persons who agree to help--even if they are
fortunate enough to aviod prosecution, **and almost all are--will
likely suffer pain and guilt for the rest of their lives**.
Compassion in Dying v. State of Washington, 79 F.3d 720 at 836.

50) Some terminally ill patients stockpile prescription
medication, which they can use to end their lives when they
decide the time is right.   Even if the terminally ill patient are
able to accumulate sufficient drugs, given the pain killers and
other medication they are taking, most of them would lack the
knowledge to determine what dose of any drug or drugs they must
take, or in what combination.   Miscalculation can be tragic.   It
can lead to an even more painful and lingering death.
Alternatively, if the medication reduces **respiration** enough to
restrict the flom of oxygen to the brain but not enough to cause
death, it can result in the patient's falling into a comatose or
vegetative state. State of Washington, 79 F.3d 720 at 832.

51) Blacks law defines **mercy killing** as: Euthanasia.  The
affirmative act of bringing about immediate death allegadly in a
painless way and generally administered by one who thinks the
dying person wishes to die because of a terminal or hopeless
disease or condition.

52) **Euthanasia** is defined by Blacks law as: The act or
practice of killing or bringing about death of a person who
suffers from an incurable disease or condition, espacially a
painful one, for reasons of mercy. - Also termed as mercy killing.

53) In prosecutions for homicide where suicide of deceased

-13-

is relied as a **defense** <u>the deceased's conduct, declarations, and</u>
<u>threats indicating a **suicidal dispostion** are gernerally admitted</u>
<u>into evidence for the purpose of showing the deceased's state of</u>
<u>mind or intention.</u> 40A Am Jur2d Homicide § 287 (Suicide)

54) The record clearly demonstrates that the victim, Lesley
had suicidal ideation and had attempted suicide several times
prior to her death.   The record also reflects that the victim,
Lesley enlisted Petitioner her husband to assist in her suicide.
And Petitioner did in fact confess to assisting his wife and
victim, Lesley's suicide.

55) It would be inconceivable to believe that watching his
wife and victim, Lesley live in pain while slowly succumbing to
her illness could not, or did not, served as a catalyst for
Petitioner to want to end her pain and suffering.

56) Petitioner herein has enlightened the Court as to how
the emotional state of either the victim, Lesley and Petitioner
could have conceivably have warranted the offense of Inducement
to Commit Suicide.   Under the circumstances and evidence
presented herein, competent counsel would have reasonably
perceived that the emotional state of the victim, Lesley and
Petitioner would suffice to establish the Statutory Requirements
to support the offense of Inducement to Commit Suicide.

57) The evidence within the record and within this argument
clearly demonstrates that Petitioner has met the Statutory
Requirements of the offense of Inducement to Commit Suicide.

58) The State will most certainly contend that Petitioner
committed the murder with premeditaion. (Tr.J-4 and J-22)

-14-

00016

In doing so the State must rely on the testimony of the State's witness, Thomas Dye. (Tr.K-8-K-29). However, the State's argument is misplaced and nonexistent for the following reasons:

a) At the end of the capital sentencing hearing the trial court found that the State **failed** to estabilish by its requisite burden that the murder had been committed in a cold, calculated and premeditated manner pursuant to a preconceived plan. (Tr. J-44);

b) The trial court was in the best postion to assess Dye's credibility based on his testimony and in reviewing him. (Opinion of direct appeal dated March 24, 1999 pg. 16); and

c) The trial court clearly stated within its ruling on respondent's motion to dismiss dated October 4, 2001 "Moreover, it is apparent from the record that Dye's testimony had no effect upon the sentence imposed by this court." (Ruling pg.12) and "This is likewise true with respect to the issues surrounding Thomas Dye, for a careful reading of the record would have alerted appellate counsel to the fact that the court placed utterly no reliance upon Dye's proffers at sentencing." (Ruling pg. 14)

59) Therefore, the State should be barred from the usage of these unfounded theory's within these post-conviction proceedings to prevent Petitioner from receiving relief. Without the testimony of State's witness, Thomas Dye, the State did not present any evidence at trial or capital sentencing hearing to support the claim that Petitioner actions were premeditated in any manner.

60) Now without the theory that the murder was committed in

-15-



a premeditated manner, the State must then rely on the **intent**
theory and that the murder was committed with malicious **intent**
to prevent Petitioner from being granted relief on the
meritorious claim.    However, Petitioner agrees with the State to
a degree.    Petitioner argues that "yes" there is a certain degree
of intent involved in the offense of <u>Inducement to Commit Suicide</u>
although the **intent** is of <u>love, compassion and of mercy.</u>

61) The <u>Inducement to Commit Suicide Statute 720 ILCS 5/12-31</u>
<u>(a)(2)(ii)</u> more clearly defines Petitioner's actions and/or
offense and also demonstrates that there is a degree of intent
within said statute. (§ (a)(2). (**INTENTIONALLY**)

62) It is so very clear that the Governor and General Assembly
of Illinois **INTENDED** that thoses who commit the offense as
Petitioner did, that they be <u>charged and sentenced to the offense</u>
<u>of Inducement to Commit Suicide 720 ILCS 5/12-31 and not first</u>
<u>degree murder</u>.

63) Congress clearly made their **INTENT** known when they
drafted and adopted our Constitution that thoses persons similarly
situated **SHALL** be treated the <u>same</u> and therefore Petitioner had
the right to be <u>treated</u> as those who commit the offense of
<u>Inducement to Commit Suicide</u> under the Equal Protection Clauses.

64) Congress was also very clear that Petitioner has a right
to be afforded the opportunity of a <u>defense</u> and/or lesser
included <u>offense of Inducement to Commit Suicide</u> be brought
before a fair and impartial jury under the Right to a Jury and
Due Process Clauses of both the Illinois and United States
Constitutions.

-16-

65) Petitioner has clearly demonstrated that he has met the Constitutional Requirements under the Due Process and Equal Protection Clauses of both the Illinois and United States Constitutions and has showed this Honorable Court that Petitioners Constitutional Rights were substantially violated under the same Constitutional Provisions.

66) Now Petitioner will demonstrate to this Honorable Court as to how his Constitutional Rights under the Limitation of Penalties After Conviction Clause of the Illinois Constitution was violated.

67) Petitioner was tried and convicted for two counts of first degree murder (Order dated July 24, 2003 pg.3) and was sentenced to a term of fifty years imprisonment within the Illinois Department of Corrections. (Order dated July 24, 2003 pg.4). The sentence of fifty years is well within the Statutory Guidelines of 730 ILCS 5/5-8-1 (first degree murder). However, the actual offense committed by Petitioner was not a first degree murder, but in fact was the offense of Inducement to Commit Suicide 720 ILCS 5/12-31(a)(2)(ii) and the appropriate sentence per the Statutory Guidelines 730 ILCS 5/5-8-1(a)(7) is a term not less than 1 year and not more than 3 years not the fifty years sentence imposed by the trial court.

68) The Governor and General Assembly of Illinois made it extremely clear that their INTENTIONS were that thoses who commit the offense of Inducement to Commit Suicide SHALL be sentenced to no more than three years imprisonment under the Statutory Guidelines 730 ILCS 5/5-8-1(a)(7). Therefore, the sentence of fifty years imposed on Petitioner was grossly excessive.

-17-

69) It is also very clear that Congree **INTENDED** that all penalties **SHALL be according to the seriousness of the OFFENSE under the Limitation of Penalties After Conviction Clause of the Illinois Constitution**.

70) Petitioner most certainly does not dispute that his actions were not of a serious nature, however Petitioner's actions were not of a first degree murder, clearly the most serious of the offenses within the Illinois Compiled Statutes. Petitioner's actions, however serious does not warrant the sentence of fifty years imprisonment, it does however warrant the maximum sentence aloud by the Statutory Guidelines which is three years for the actual offense of Inducement to Commit Suicide.

71) Moreover, a sentence which is within the statutory guidelines will not be disturbed upon review unless it is grossly disproportionate to the nature of the offense. People v. Phillips, 637 N.E.2d 715 at 722.

72) Any question of **INTENT** by Congress, the Governor and General Assembly of Illinois and the United States have been addressed and answered herein.   The **INTENT** was made extremely clear by the careful selection of the words and adopting and/or enacting the Constitutional Provisions and Laws (statutes for seperate offenses and the sentences that **MUST** be imposed by the courts.

73) Petitioner has clearly demonstrated that he has met the Constitutional and Statutory Requirements of the Limitation of Penalties After Conviction Clause of the Illinois Constitution and 730 ILCS 5/58-1(a)(7) of the Statutory Guidelines of the

-18-

Illinois Compiled Statutes.   Petitioner has also demonstrated

that his Constitutional Rights under the same Constitutional

Provisions were substantially violated.

74) Petitioner has clearly demonstrated that the fifty years

imposed on Petitioner was <u>grossly disproportionate to the nature</u>

<u>of the offense, the offense being Inducement to Commit Suicide.</u>

### CLAIM TWO

PETITIONER WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL,
IN VIOLATION OF THE SIXTH AMENDMENT OF THE UNITED STATES
CONSTITUTION AND ARTICLE 1 SECTION 2 OF THE ILLINOIS CONSTITUTION,
WHERE TRIAL COUNSEL, JOSEPH KENNELLY FAILED TO PURSUE A DEFENSE
AND/OR PURSUE A LESSER INCLUDED OFFENSE OF INDUCEMENT TO COMMIT
SUICIDE 720 ILCS 5/12-31 TO BE BROUGHT BEFORE A JURY FOR
THEIR CONSIDERATION.

75) Trial counsel, Joseph Kennelly was made aware of the facts

within Claim One prior to any pre-trial motions and/or trial by

Petitioner and the witnesses whom have offered affidavits for

Petitioner's original post-convition petition.

76) Trial counsel, Kennelly failed to present a viable defense

on behalf of Petitioner.   Trial counsel, Kennelly offered only

one witness in defense at trial and only asked the witness one

question of relevance which pretained to the predominate hand of

Petitioner and then rested. (Tr.I-198)

77) Trial counsel, Kennelly could have called witnesses and

presented the evidence within Claim One herein to support an

<u>Inducement to Commit Suicide defense and/or pursue a lesser</u>

<u>included offense of Inducement to Commit Suicide</u> to be brought

before a fair and impartial jury for their consideration.

78) To prevail on a claim of ineffective assistance of counsel

a defendant must show both that counsel's representation was so

deficient as to fall below an objective standard of reasonableness

00021

under professional norms and that the deficient proformance so prejudiced defendant as to deny him a fair trial.   People v. Pitsonbarger, 2002 WL 1038729 (Ill.2002)

79) The first prong of the Strickland test the defendant must show that counsel's performance was deficient.   This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Strickland v. Washington, 104 S.Ct. 2052 at 2064.

80) The second prong of the Strickland test the defendant must show that the deficient performance prejudiced the defense.   This requires showing that counsel's errors were so serious as to deprive defendant of a fair trial, a trial whose result is reliable. Washington, 104 S.Ct. 2052 at 2064.

81) It is extremely clear that Petitioner has met the Statutory and Constitutional Requirements of Article 1 Section 2, Equal Protection Clause and Article 1 Section 11, Limitation of Penalties After Conviction Clause of the Illinois Constitution and the Statute for Inducement to Commit Suicide 720 ILCS 5/12-31 (a)(2)(ii)  within Claim One herein to have prevailed at trial.

82) The failure to pursue a defense and/or pursue a lesser included offense of Inducement to Commit Suicide pursuant to 720 ILCS 5/12-31(a)(2)(ii) clearly demonstrates that trial counsel, Kennelly was deficient and that this error is so serious that trial counsel, Kennelly was not functioning as the "counsel" guqranteed by both the Illinois and Unites States Constitutions as to satisfy the first prong of the Strickland test.

-20-

83) The failure to pursue a defense and/or pursue a lesser included offense of Inducement to Commit Suicide pursuant to 720 ILCS 5/12-31(a)(2)(ii) clearly demonstrates that trial counsel, Kennelly was deficient and that the deficiency clearly prejudiced the defense.   Had trial counsel, Kennelly presented a viable defense and/or pursued a lesser included offense of Inducement to Commit Suicide, Petitioner would have proceeded to a trial with a fair and impartial jury, instead of taking a bench trial and most certainly would have been convicted of the offense of Inducement to Commit Suicide instead of first degree murder.

84) Had trial counsel, Kennelly pursued the defense and/or pursued a lesser included offense of Inducement to Commit Suicide, Petitioner would have certainly prevailed in a conviction of Inducement to Commit Suicide and would have been sentenced to a term of one to three years imprisonment instead of the fifty year sentence imposed by the trial court for the offense of first degree murder.   In doing so, trial counsel, Kennelly now subjects Petitioner to serve an additional forty eventto forty nine years incarecration within the Illinois Department of Corrections.   This most definitely prejudiced Petitioner as to satisfy the second prong of the Strickland test.

85) Trial counsel, Kennelly is bound by the Illinois Rules of Professional Conduct and has a duty to stay apprised of new law.   The Statutory Provision Petitioner now relys upon was enacted two years prior to Petitioner's offense and was available for a viable defense.   Trial counsel, Kennelly's failure to utilize this Statute prejudice Petitioner.

-21-

00023

## CLAIM THREE

PETITIONER WAS DENIED THE EFFECTIVE ASSISTAMCE OF COUNSEL,
IN VIOLATION OF THE SIXTH AMENDMENT OF THE UNITED STATES
CONSTITUTION AND ARTICLE 1 SECTION 2 OF THE ILLINOIS CONSTITUTION,
WHERE DIRECT APPEAL COUNSEL, JAMES CHADD FAILED TO RAISE THE
MERITORIOUS CLAIM OF INEFFECTIVE ASSISTANCE OF COUNSEL AGAINST
TRIAL COUNSEL FOR HIS FAILURE TO PURSUE A DEFENSE AND/OR
PURSUE A LESSER INCLUDED OFFENSE OF INDUCEMENT TO COMMIT
SUICIDE 720 ILCS 5/12-31 TO BE BROUGHT BEFORE A JURY FOR
CONSIDERATION WITHIN PETITIONER'S DIRECT APPEAL.

86) Direct appeal counsel, James Chadd was made aware of the

facts within Claim One herein prior to the filing Petitioner's

direct appeal by Petitioner.

87) Direct appeal counsel, Chadd failed to present this

meritorious claim within Petitioner's direct appeal.

88) Direct appeal counsel, Chadd could have incorporated

the affidavits of the witnesses and showed the Appellate Court

by way of the record (as Petitioner now does) that Petitioner

was denied his Constitutional Rights secured by both the

Illinois and United States Constitutions to have been afforded

the opportunity of a defense and/or lesser include offense of

Inducement to Commit Suicide 720 ILCS 5/12-31(a)(2)(ii) brought

before a fair and impartial jury for their consideration.  This

most definitely would have demonstrated the ineffective

assistance of counsel of trial counsel, Joseph Kennelly.

89) It is extremely clear that Petitioner has met the

Statutory and Constitutional Requirements of Article 1 Section 2,

Equal Protection Clause and Article 1 Section 11, Limitaion of

Penalties After Conviction Clause of the Illinois Constitution

and the Statute for Inducement to Commit Suicide within Claim

One to have prevailed at trial and to have been successful on

direct appeal.

-22-

00024

90) The failure to raise the meritorious claim of ineffective assistance of counsel against trial counsel Kennelly for his failure to pursue a defense and/or pursue a lesser included offense of Inducement to Commit Suicide 720 ILCS 5/12-31(a)(2)(ii) to be brought before a fair and impartial jury for their consideration within Petitioner's direct appeal was deficient and this error is so serious that direct appeal counsel, Chadd was not functioning as the "counsel" guaranteed by both the Illinois and United States Constitutions to satisfy the first prong of the Strickland test.

91) The failure to raise this meritorious claim within Petitioner's direct appeal clearly demonstrates that direct appeal counsel, Chadd was deficient and that the deficiency clearly prejudiced Petitioner's direct appeal. Had direct appeal counsel Chadd presented this meritorious claim within Petitioner's direct appeal, the Appellate Court would have reversed and remanded this cause for a new trial with instructions that Petitioner be afforded the opportunity of a lesser included offense of Inducement to Commit Suicide to be brought before a jury for consideration.

92) Had direct appeal counsel, Chadd raised this meritorious claim within Petitioner;s direct appeal, Petitioner would have had his first degree murder conviction reversed and this cause would have been remanded back for a new trial with the instruction that Petitioner be afforded a lesser included offense of Inducement to Commit Suicide be brought to a fair and impartial jury for their consideration where Petitioner would have been convicted of the offense of Inducement to Commit Suicide instead of first

-23-

degree murder due to the overwhelming evidence which Petitioner
now presents within Claim One.

93) Had direct appeal counsel, Chadd raised this meritorious
claim within Petitioner's direct appeal, Petitioner would have
benn convicted of the offense of <u>Inducement to Commit Suicide</u>
instead of first degree murder and would have been senetnced to
a term of one to three years imprisonment instead of the fifty
years imposed by the trial court.    In doing so direct appeal
counsel, Chadd now subjects Petitioner to serve an additional
forty seven to forty nine years incarceration within the Illinois
Department to Corrections.    This is most definitely highly
prehudical to Petitioner to satisfy the second prong of the
Strickland test.

94) Direct appeal counsel, Chadd is bound by the Illinois
Rules of Professional Conduct and has a duty to stay apprised of
new law.    The Statutory Provision Petitioner now relys upon was
enacted two years prior to Petitioner's offense and was available
for a viable defense.    Direct appeal counsel, Chadd's failure
to utilize this Statute and raise the claim of ineffective
assistance of counsel against trial counsel prejudiced Petitioner.

## CLAIM FOUR

PETITIONER WAS DENIED A REASONABLE LEVEL OF ASSISTANCE OF COUNSEL,
IN VIOLATION OF THE POST-CONVICTION HEARING ACT 725 ILCS 5/122-1,
WHERE POST-CONVICTION COUNSEL, DEBORAH J. GUBIN FAILED TO RAISE
THE MERITORIOUS CLAIM OF INEFFECTIVE ASSISTANCE OF COUNSEL
AGAINST DIRECT APPEAL COUNSEL, JAMES CHADD FOR HIS FAILURE TO
RAISE THE MERITORIOUS CLAIM OF INEFFECTIVE ASSISTANCE OF COUNSEL
AGAINST TRIAL COUNSEL, JOSEPH KENNELLY FOR HIS FAILURE TO PURSUE
A DEFENSE AND/OR PURSUE A LESSER INCLUDED OFFENSE OF INDUCEMENT
TO COMMIT SUICIDE PURSUANT TO 720 ILCS 5/12-31(a)(2)(ii) TO BE
BROUGHT BEFORE A FAIR AND IMPARTIAL JURY FOR THEIR CONSIDERATION
WITHIN PETITIONER'S DIRECT APPEAL.

-24-

00026

95) Post-conviction counsel, Deborah J. Gubin was made aware of the facts within Claim One herein prior to her filing an amended and/or amendment to the amended post-conviction petition on behalf of Petitioner by Petitioner.

96) Post-conviction counsel, Gubin also had the opportunity to review the record and Petitioner's original post-conviction petition which included the facts that Petitioner now relys upon within Claim One.

97) Post-conviction counsel, Gubin could have raised this meritorious claim within her amended and/or amendment to the amended post-conviction petition to show how Petitioner's Constitutional Rights under Due Process and Equal Protection Clauses of the Illinois and United States Constitutions were violated.

98) Post-conviction counsel, Gubin also could have incorporated the affidavits of the witnesses and used the record to demonstate to the trial court (as Petitioner now does) as to how Petitioner was denied the Constitutional Rights secured by both the Illinois and United States Constitutions to have been afforded the Right to a defense and/or a lesser included offense of <u>Inducement to Commit Suicide pursuant to 720 ILCS 5/12-31(a)(2)(ii)</u> brought before a fair and impartial jury for their consideration.   This clearly demonstrates that post-conviction counsel, Gubin was ineffective.

99) It is extremely clear that Petitioner has met the Statutory and Constitutional Requirements of Article 1 Section 2, Equal Protection Clause and Article 1 Section 11, Limitaion of Penalties After Conviction Clause of the Illinois Constitution and the Statute for the offense of <u>Inducement to Commit Suicide 720</u>

-25-

00027

ILCS 5/12-31(a)(2)(ii) within Claim One herein to have prevailed at trial and to have been successful on direct appeal and post-conviction relief.

100) The failure to raise this meritorious claim within Petitioner's post-conviction counsel, Gubin's amended and/or amendment to the amended post-conviction petition clearly demonistrates to this Honorable Court that post-conviction counsel, Gubin was well below the reasonable level of assistance required by the Post-Conviction Hearing Act 725 ILCS 5/122-1.

101) Had post-conviction counsel, Gubin raised this meritorious claim herein within Petitioner's amended and/or amendment to the amended post-conviction petition, Petitioner's first degree murder conviction would have been reverse and this cause would have been sent back for a new trial with the instructions that Petitioner be afforded a lesser included offense of Inducement to Commit Suicide 720 ILCS 5/12-31(a)(2)(ii) be presented to a fair and impartial jury for their consideration and where Petitioner would have proceeded to trial before a fair and impartial jury instead of proceeding to a bench trial where Petitioner would have been convicted of the offense of Inducement to Commit Suicide instead of first degree murder due to the overwhelming evidence which Petitioner presented within Claim One herein.

102) Had post-conviction counsel, Gubin presented this meritorious claim within Petitioner's amended and/or amendment ot the amended post-conviction petition, Petitioner would have prevailed in a conviction for the offense of Induement to Commit Suicide and would have been sentenced to a term of one to three

00028

years imprisonment instead of the fifty years imposed by the trial court for the offense of first degree murder. In doing so post-conviction counsel, Gubin now subjects Petitioner to serve an additional forty seven to forty nine years incarceration in the Illinois Department of Corrections. This in its self is highly prejudical to Petitioner.

103) Post-conviction counsel, Gubin is also bound by the Illinois Rules of Professional Conduct and also has a duty to stay apprised of new law. The Statutory Privion Petitioner now relys upon was enacted two years prior to Petitioner's offense and was available for a viable defense. Post-conviction counsel Gubin's failure to utilize this Statue and raise they claims of ineffective assistance of counsel against trial and direct appeal counsel severely prejudiced Petitioner.

104) Petitioner offers the following remedy, and respectfully moves this Honorable Court to grant relief in reversing and remanding this cause for a new trial with the instruction that Petitioner be afforded a lesser included offense of Inducement to Commit Suicide pursuant to 720 ILCS 5/12-31(a)(2)(ii) be brought to a fair and impartial jury for their consideration.

Wherefore, based upon the foregoing, Petitioner, Thomas O'Farrell respectfully moves this Honorable Court to deem this petition not frivolous, hold an evidentary hearing on any contested aspect of this petition, vacate the judgement of conviction and sentence, and grant post-conviction relief in the form as mentioned above.

Respectfully submitted

Thomas O'Farrell, Pro-Se
Defendant-Petitioner

-27-

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, CRIMINAL DIVISION

| | |
|---|---|
| PEOPLE OF THE STATE OF ILLINOIS, ) | |
| ) | |
| Plaintiff-Respondent, ) | |
| ) | Post-Conviction |
| -vs- ) | 95 CR 30463 |
| ) | |
| THOMAS O'FARRELL, ) | |
| ) | |
| Defendant-Petitioner. ) | |
| ) | |

400 **FILED**
TIME
JAN 02, 2004
Dorothy
Clerk of the
Criminal

## <u>ORDER</u>

In this third petition for post-conviction relief, Thomas O'Farrell once more seeks redress from the judgment of conviction entered herein on February 24, 1997. On that occasion, this court sentenced O'Farrell to a term of 50 years imprisonment after finding him guilty of first degree murder, in violation of section 9-1A of the Illinois Criminal Code, 720 ILCS 5/9-1A (West 1992). As grounds for relief, petitioner alleges that he was denied the effective assistance of counsel where counsel at all stages of the proceedings failed to argue that petitioner's conduct at worst, constituted the lesser-included offense of inducement to commit suicide.

1

## PROCEDURAL HISTORY

The factual background underlying petitioner's murder conviction has been recounted in the decision of the appellate court on direct appeal as well as in the two previous orders of this court dismissing petitioner's first and second petitions for post-conviction relief. Suffice it to say, petitioner was convicted for the intentional and knowing murder of his wife on September 28, 1995, as she lay in her bed inside the family home located on the northwest side of the City of Chicago. In the capital sentencing hearing that followed, this court determined that the State had failed to establish that the murder had been committed in cold, calculated and premeditated manner pursuant to a preconceived plan. Alternatively, petitioner was sentenced to a term of 50 years imprisonment.

As noted, a direct appeal was taken to the Illinois Appellate court, wherein petitioner asserted that:

1) he received an excessive sentence;

2) the mittimus should be amended to reflect that he was convicted and sentenced for only one count of first degree murder; and

3) he should not have been subject to the truth-in-sentencing law because it violated the single-subject rule of the Illinois Constitution.

In affirming petitioner's conviction, while rejecting claims one and two, the reviewing court, by its order of March 24, 1999, modified the mittimus in conformity with *People v. Reedy*, 295 Ill. App.3d 34, 44, 692 N.E.2d 376 (1998), to reflect petitioner's entitlement to receive one day of good conduct credit for each day of service in prison. *People v. Thomas O'Farrell*, No. 1-97-0911 (1999) (unpublished order under Supreme court Rule 23).

2

Petitioner sought further review in the Illinois Supreme Court, however his petition for leave to appeal was denied on February 2, 2000. See, *People v. O'Farrell*, 187 Ill.2d 585, 724 N.E.2d 1273 (2000). The record does not reflect whether he proceeded further by way of *certiorari* in the United States Supreme Court.

However, Petitioner did seek collateral relief in a motion for writ of habeas corpus filed in this court on October 25, 1999. In that proceeding, O'Farrell claimed that because he had not been prosecuted by the State of Illinois, but rather by the Cook County Court, a home rule unit, his conviction and ensuing imprisonment constituted an unlawful and unconstitutional detention. Following due consideration, this court by its order of November 2, 1999, rejected the claim for habeas corpus relief. Although petitioner initially appealed this order, the appellate court subsequently allowed his motion to withdraw the appeal.

Petitioner also sought collateral relief in a post-conviction proceeding commenced in this court on January 26, 2000. Following appointment of counsel, an amended petition for post-conviction relief was filed asserting that counsel's representation in the earlier proceedings was ineffective in that:

1) trial counsel's presentation and argument of the motion to quash arrest and suppress evidence and motion to suppress physical evidence was inadequate;

2) trial counsel failed to present meritorious evidence to support entry of the lesser judgment of second degree murder;

3) trial counsel failed to adequately prepare for and represent petitioner at the sentencing hearing;

4) appellate counsel failed to raise the following issues on appeal:

- the denial of the motion to quash arrest and suppress evidence,
- the denial of the motion to suppress physical evidence;
- trial counsel's ineffective representation at trial and at the sentencing hearing;
- the denial of the motion for additional discovery concerning Mr. Dye; and
- prosecutorial misconduct concerning the use of Mr. Dye at sentencing.

Additionally, petitioner raised this court's alleged error in allowing Mr. Dye to testify without insuring that all *Brady* material had been tendered to the defense. On May 7, 2001, counsel filed an amendment to the amended petition, adding the claim of excessive sentence.

Thereafter, respondent moved to dismiss the proceeding asserting that the amended petition failed to raise any constitutional questions within the purview of the Post-Conviction Hearing Act, that the claims presented were barred by the doctrines of *res judicata* and waiver, and that the petition failed to establish the requisite deficient performance and resulting prejudice to support a claim of ineffective assistance of counsel. On October 4, 2001, by its written order of 16 pages, this court granted the motion to dismiss. An examination of this court's records as well as the appellate court reveals that no appeal was taken from the dismissal order.

Nonetheless, on May 27, 2003, Mr. O'Farrell filed a second petition for post-conviction relief. In his *pro se* filing O'Farrell claimed that his post-conviction counsel was deficient by reason of her failure to include in the amended petition the following issues, each of which he argued had been properly raised in his original *pro se* petition:

4

1) that trial counsel failed to present additional evidence at the suppression hearing proving that petitioner's confession was illegally obtained;

2) that post-conviction counsel was grossly inadequate by her failure to honor petitioner's direction to raise and present his meritorious claim that the evidence supported a conviction for the lesser offense of second degree murder; and

3) that post-conviction counsel was grossly inadequate by her failure to perfect a timely notice of appeal following dismissal of petitioner's original post-conviction petition, after being instructed to do so by petitioner.

In its analysis of O'Farrell's petition, this court noted that the filing constituted a successive petition under the holding of *People v. Flores*, 153 Ill.2d 264, 606 N.E.2d 1078 (1992). Applying the rationale of *People v. Pitsonbarger*, 265 Ill.2d 444, 793 N.E.2d 609 (2002), the court by its 15 page order of July 24, 2003, summarily dismissed the proceeding. An appeal was taken by petitioner and is presently pending in the Illinois Appellate Court, First Judicial District under number, 1-03-3404.

## ANALYSIS

The court recognizes its duty to examine the instant petition and make a determination of its legal sufficiency pursuant to Section 122-2.1 of the Post-Conviction Hearing Act ("Act"). 725 ILCS 5/122-2.1 (West 2003); *People v. Holiday*, 313 Ill.App.3d 1046, 1048, 732 N.E.2d 1, 2 (4th Dist.2000). A post-conviction petition is a collateral attack on prior conviction and sentencing. *People v. Simms*, 192 Ill.2d 348, 359, 736 N.E.2d 1092, 1105 (2000). Under the act, a defendant may challenge his conviction or sentence for violations of federal or state constitutional rights. *People v. King*, 192 Ill.2d 189, 192, 735 N.E.2d 569, 572 (2000). However, the court is also empowered to summarily dismiss non-meritorious claims raised by the defendant. *People v. Richardson*, 189 Ill.2d 401, 407, 727 N.E.2d 362, 367 (2000).

Application of well-established principles yields the conclusion that O'Farrell's claim of ineffective assistance of counsel is barred by the doctrine of waiver. As noted, this is petitioner's third petition for post-conviction relief. However, the Post-Conviction Hearing Act generally limits a prisoner to the filing of only one such petition. *People v. Holman*, 191 Ill.2d 204, 209, 730 N.E.2d 39, 43 (2000). Indeed, "a ruling on an initial post-conviction petition has *res judicata* effect with respect to all claims that were raised or could have been raised in the initial petition." *People v. Jones*, 191 Ill.2d 354, 358, 732 N.E.2d 573, 575 (2000); *see also* 725 ILCS 5/122-3 (West 2001). Thus, as a threshold matter, this court must determine whether the waiver rule should be relaxed and petitioner's successive claims be considered.

A narrow exception to the waiver rule holds that a claim brought in a successive petition will be considered if the prior proceedings were deficient in some fundamental way. *People v. Britt-El*, 206 Ill.2d 331, 339, 794 N.E.2d 204, 209 (2002). Petitioner recognizes that the Illinois Supreme Court has determined that the "cause-and-prejudice test" is the analytical tool that courts should use to determine whether fundamental fairness requires that an exception to the waiver rule be made and successive claims be considered on their merits. *Pitsonbarger*, 205 Ill.2d at 463, 793 N.E.2d at 623. For purposes of the "cause-and-prejudice test," "cause" is defined as "some objective factor external to the defense [that] impeded counsel's efforts to raise the claim in an earlier proceeding." *Pitsonbarger*, 205 Ill.2d at 462, 793 N.E.2d at 622 (*quoting Flores*, 153 Ill.2d at 279, 606 N.E.2d at 1085). "Prejudice" will be found where "the petitioner [was] denied consideration of an error that so infected the entire trial that the resulting

6

conviction or sentence violates due process." *Pitsonbarger*, 205 Ill.2d at 464, 793 N.E.2d at 624 (*quoting Flores,* at *id.*).

This new mechanism for evaluating successive claims shifts the focus from the sufficiency of the original post-conviction proceeding to whether the petitioner had the ability to raise the successive claim in that initial proceeding. Thus, the court held that, rather than focusing on whether a successive petition will be allowed, trial judges should apply the cause-and-prejudice test to individual claims. *Pitsonbarger*, 205 Ill.2d at 462, 793 N.E.2d at 622. In other words, "the petitioner 'must show how the deficiency in the first proceeding affected his ability to raise each specific claim.'" *People v. Thompson*, 331 Ill.App.3d 948, 954, 773 N.E.2d 15, 20 (1st Dist. 2002) (*Quoting Pitsonbarger*, 205 Ill.2d at 463, 793 N.E.2d at 623.

In the present case, petitioner again fails to demonstrate that fundamental fairness requires relaxation of the waiver rule and consideration of his claims of ineffective assistance of trial, appellate or post-conviction counsel. O'Farrell articulates no reason why he could not have raised these claims in his two prior petitions for post-conviction relief. Although the factual assertions relied upon by O'Farrell in support of his claims were available to him at the time the earlier petitions were filed, he has failed to identify any external factor which impeded his effort to raise them in those proceedings. Petitioner does not allege that the facts that provide the basis for his claims were withheld from him or that the claims are based on newly discovered evidence. Rather, the claims were not included in the earlier petitions because of post-conviction counsels' derelictions and because petitioner's purported disabilities affected his ability to raise his

7

claims in prior proceedings. Thus, petitioner has failed to establish that "cause" prevented him from making his claims in the two prior filings.

It is likewise apparent that petitioner has failed to demonstrate that any "prejudice" inured from the failure to assert these claims earlier. Simply put, had they been presented earlier, there is scant probability that petitioner would have prevailed. In the instant petition O'Farrell expounds upon his perception that the evidence giving rise to his conviction lead to the inescapable conclusion that his conduct at worst constituted the offense of inducement to commit suicide, 720 ILCS 5/12-31 (West 1992), and not first degree murder. The statute provides:

(a)  A person commits the offense of inducement to commit suicide when he or she does either of the following:

(1)  Coerces another to commit suicide and the other person commits or attempts to commit suicide as a direct result of the coercion, and he or she exercises substantial control over the other person through (i) control of the other person's physical location or circumstances; (ii) use of psychological pressure; or (iii) use of actual or ostensible religious, political, social, philosophical or other principles.

(2)  With knowledge that another person intends to commit or attempts to commit suicide, intentionally (i) offers and provides the physical means by which another person commits or attempts to commit suicide, or (ii) participates in the physical act by which another person commits or attempts suicide.

For the purpose of this Section, "attempts to commit suicide" means any act done with the intent to commit suicide and which substantial steps toward commission of suicide.

(b)  Sentence.

Inducement to commit suicide under paragraph (a) (1) when the other person commits suicide as a direct result of the coercion is a Class 2 felony. Inducement to commit suicide under paragraph (a) (2) when the other person commits suicide as a direct of the assistance provided is a Class 4 felony.

8

Petitioner clearly misapprehends the thrust of the statute. Contrary to petitioner's analysis, the enactment cannot be construed as a lesser-included offense of first-degree murder. A lesser included offense is "an offense which is established by the same or less than all of the facts or a less culpable mental state (or both), than that which is required to establish the commission of the offense charged...." 720 ILCS 5/2-9 (a) (West 2003). The offense of homicide requires that the defendant intentionally or knowingly kill the victim (720 ILCS 5/9-1 (a) (1) (West 2003)), while the offense of inducement to commit suicide merely requires that the defendant either coerce the victim to committing suicide or provide the means for such. 720 ILCS 5/12-31 (West 2003). Furthermore, this court has found no decision in which an Illinois court has held that inducement to commit suicide is a lesser-included offense of murder. Moreover, a clear reading of the statute demonstrates that its prescriptions focus upon situations where "another person commits or attempts to commit suicide." Most assuredly, the evidence refutes any suggestion that this was the situation at bar. The victim, Lesley O'Farrell, did not commit or attempt to commit suicide. Rather, as this court found, petitioner shot and killed his wife as she lay helpless in her bed. Petitioner's belated suicide claim followed on the heels of the rejection of his initial "black intruder" defense and was similarly bereft of any hint of believability.

Clearly, petitioner not only has failed to demonstrate that that he has satisfied *Pitsonbarger's* "cause and prejudice test," but has also failed to establish that trial, appellate or post-conviction counsel were ineffective in failing to interpose and argue this defense. In assessing such claims, Illinois adheres to the often noted test of *Strickland v. Washington*, 466 U.S. 668, 687, 80 L.Ed.2d 674, 693, 104 S.Ct. 2052, 2064 (1984).

9

Under this standard, petitioner must show that counsel's representation fell below an objective standard of reasonableness, and that, but for this deficiency, there is a reasonable probability that counsel's performance was prejudicial to the defense. *People v. Albanese*, 104 Ill.2d 504, 525-26, 473 N.E.2d 1246, 1255 (1984). Here, as noted, there is no reasonable probability that had the inducement to commit suicide defense been interposed at any stage of the proceedings, a different result would have obtained.

## CONCLUSION

Based upon the foregoing discussion, the court finds petitioner's claim is frivolous and patently without merit. Accordingly, this successive petition for post-conviction relief shall be and is hereby dismissed. Likewise, Mr. O'Farrell's motion for leave to proceed *in forma pauperis* and for appointment of counsel is denied.

ENTERED: _____

DATED: _____

10

12

No. 1-04-1094

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

---

| | |
|---|---|
| PEOPLE OF THE STATE OF ILLINOIS, ) | Appeal from the Circuit Court |
| ) | of Cook County, Illinois. |
| Respondent-Appellee, ) | |
| ) | |
| -vs- ) | No. 95 CR 30463. |
| ) | |
| THOMAS O'FARRELL, ) | Honorable |
| ) | Michael P. Toomin, |
| Petitioner-Appellant. ) | Judge Presiding. |

---

## MOTION TO WITHDRAW AS COUNSEL ON APPEAL PURSUANT TO *PENNSYLVANIA V. FINLEY*

The Office of the State Appellate Defender, by Michael J. Pelletier, Deputy Defender, and Kari K. Firebaugh, Assistant Appellate Defender, moves for leave to withdraw as counsel for Appellant, Thomas O'Farrell, in this cause.

In support of this motion Kari K. Firebaugh, Assistant Appellate Defender, states:

1.     Petitioner-Appellant, Thomas O'Farrell was sentenced to 50 years in prison for first degree murder on January 28, 1997.  Appellant is currently incarcerated.  His conviction and sentence were affirmed on direct appeal in *People v. O'Farrell*, No. 1-97-0911 (1st Dist. March 24, 1999) (Rule 23 Order).

2.     On November 7, 2003, Petitioner-Appellant filed a petition for post-conviction relief.  The petition was denied by the circuit court on January 2, 2004.

EXHIBIT AA

3.      Notice of appeal was mailed on January 8, 2004, and filed by the clerk of the circuit court on April 13, 2004. The Office of the State Appellate Defender was appointed.

4.      After an examination of the record on appeal, and after discussing the case with another attorney in the office who also read the record on appeal, counsel has concluded that an appeal in this cause would be frivolous. Counsel has informed petitioner of this conclusion and that counsel intends to file the motion to withdraw. Therefore, counsel hereby moves to withdraw as counsel on appeal pursuant to *Pennsylvania v. Finley*, 481 U.S. 551 (1987). A memorandum supporting this motion is attached.

WHEREFORE, the Office of the State Appellate Defender respectfully moves to withdraw as counsel on appeal in this cause.

Respectfully submitted,

MICHAEL J. PELLETIER
Deputy Defender

KARI K. FIREBAUGH
Assistant Appellate Defender
Office of the State Appellate Defender
203 North LaSalle Street - 24th Floor
Chicago, Illinois 60601
(312) 814-5472

COUNSEL FOR PETITIONER-APPELLANT

STATE OF ILLINOIS    )
                    )  SS
COUNTY OF COOK    )

## AFFIDAVIT

Kari K. Firebaugh, being first duly sworn on oath, deposes and says that she has read the foregoing Motion by her subscribed and the facts stated therein are true and correct to the best of her knowledge and belief.

_____
KARI K. FIREBAUGH
Assistant Appellate Defender

SUBSCRIBED AND SWORN TO BEFORE ME
on June 3, 2005.

_____
NOTARY PUBLIC

Official Seal
Alicia M. Corona
Notary Public State of Illinois
My Commission Expires 05/21/08

No. 1-04-1094

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the Circuit Court of Cook County, Illinois. |
| Respondent-Appellee, | ) | |
| -vs- | ) | No. 95 CR 30463. |
| THOMAS O'FARRELL, | ) | Honorable Michael P. Toomin, |
| Petitioner-Appellant. | ) | Judge Presiding. |

## MEMORANDUM IN SUPPORT OF MOTION FOR LEAVE TO WITHDRAW AS COUNSEL ON APPEAL

I.

### STATEMENT OF FACTS

Following a bench trial, Thomas O'Farrell was convicted of first degree murder. (T.R.-I-209-210)[1]. On January 28, 1997, Mr. O'Farrell was sentenced to a term of 50 years

---

[1] The volumes of the record will be cited as follows:
    C: Current Post-Conviction Common Law Record
    R: Current Post-Conviction Report of Proceedings
    P.C.: Prior Post-Conviction Common Law Record
    P.R.: Prior Post-Conviction Report of Proceedings
    S.R.Vol.I: Supplemental Post-Conviction Common Law Record
    S.R.Vol.II: Supplemental Post-Conviction Common Law Record
    S.R.Vol.III: Supplemental Post-Conviction Report of Proceedings
    S.R.Vol.IV: Supplemental Post-Conviction Report of Proceedings

imprisonment. (T.R.-K-87).

## Trial

Officer Pettry testified that on September 28, 1993, around 4:20 a.m., she and her partner, Officer Maderer, received a flash message that a man had been shot and there was a burglary in progress at 3435 Ardmore. (T.R.I-20-22). Pettry and Maderer arrived a few minutes later, and noticed that the door to the house was open and Mr. O'Farrell was sitting inside at the base of the stairs with his son. (T.R.I-21-23). When O'Farrell saw the officers, he said "Get the hell in here," he was agitated, and his shirt was blood-stained. (T.R.I-24). O'Farrell told Pettry that he and his wife had been shot by an intruder, whom he described as a 200-pound black male with short black hair, and that his wife was in the upstairs bedroom. (T.R.I-25-26). Maderer asked O'Farrell if he could search for the intruder, and then went upstairs. (T.R.l-27).

At this point, O'Farrell told Pettry that he had been awakened by a gunshot, saw the intruder, and struggled with him into the hallway. (T.R.I-28). During the struggle, O'Farrell was shot, and he thought that the intruder had also been shot in the stomach. (T.R.I-28). O'Farrell told Pettry that the intruder had entered his home through the first floor bathroom window. (T.R.I-39, 41). When Maderer came downstairs, Pettry searched the first floor, but found no one inside the home and while upstairs, saw several pictures on the hallway floor and O'Farrell's wife lying on the bed in the master bedroom. (T.R.I-29-32). Mrs. O'Farrell had gunshot wounds in her head

---

S.R.Vol.V: Supplemental Post-Conviction Common Law Record
S.R.Vol.VI: Supplemental Trial Common Law Record
S.R.Vol.VII: Current Supplemental Post-Conviction Common Law Record
S.R.Vol.VIII: Current Supplemental Post-Conviction Common Law Record
T.C.: Trial Common Law Record
T.R.: Trial Report of Proceedings

2

and chest, and there were two bullet holes with black residue surrounding them on a pillow near her feet. (T.R.I-30-32). An ambulance eventually came and took O'Farrell to the hospital. (T.R.I-32-35).

On the way to the hospital, O'Farrell told Officer Cooper that he had been awakened by two gunshots, saw a black male standing over his wife, and struggled with him into the hallway. (T.R.I-43-50). During the struggle, O'Farrell was shot in the shoulder, and he believed that the intruder was shot in the stomach. (T.R.I-50). O'Farrell fell over one of his dogs when they came out into the hallway, and the intruder ran down the stairs and out the back door near the kitchen. (T.R.I-50-51). O'Farrell noticed that the intruder was bent over, holding his abdomen as he ran. (T.R.I-50-51).

Detective Kernan interviewed O'Farrell in the emergency room around 4:30 a.m. (T.R.I-58-60). O'Farrell told Kernan that on the previous night he had left work at 10:30 p.m., stopped at a bar for a few beers, and left the bar at 11:30 p.m. (T.R.I-61). When he arrived home shortly after midnight, O'Farrell spoke with his wife, who was in bed but awake, and then fell asleep. (T.R.I-61-62). O'Farrell was awakened by two gunshots, saw an intruder standing over his wife, and then struggled with the intruder. (T.R.I-62-63). During the struggle, both he and the intruder were shot, and his son opened his bedroom door letting one of the dogs out into the hallway. (T.R.I-62-63). O'Farrell tripped over the dog, and the intruder ran down the stairs and out the back door. (T.R.I-63). O'Farrell called the police from the kitchen and then went upstairs to his bedroom, where he saw that his wife had been shot in the head and chest. (T.R.I-64). After five minutes passed, O'Farrell called the police again and then called his dad. (T.R.I-64).

Detective Collins testified that he arrived at 3435 Ardmore sometime between 5:00 and

3

6:30 a.m., and noticed a television in the corner of the master bedroom sitting on top of a stand. (T.R.I-117-120, 122-123). When he went to look behind it, Collins' foot bumped the bottom of the stand and the door swung open, causing a video cassette box entitled A Nightmare Before Christmas to fall out and pop open at his feet. (T.R.I-119-120, 123). Both Collins and evidence technician, Patrick Moran, saw that the box contained a .22 caliber derringer pistol, three discharged .22 caliber shell casings, one live .22 caliber cartridge, and a hypodermic needle. (T.R.I-89-90, 101-103, 114-115, 119-120). Moran additionally testified that the glass pane from the window in the first floor bathroom was on the lawn, a pile of flag stone and pieces of lumber were below the window, picture frames were on the hallway floor, and a bullet hole was in the hallway wall approximately the same height as the wound to O'Farrell's shoulder. (T.R.I-73-74, 81, 95-100, 109-110).

O'Farrell was transported by officers from the hospital to Area Five. (T.R.I-152-153). Detective Schak was assigned to continue the investigation, and around 8:30 or 9:00 a.m., learned that a derringer had been recovered from a video cassette box in the bedroom. (T.R.I-143-144). After receiving this information, Schak asked O'Farrell if he owned a gun or if there was any reason for one to be in his home, to which O'Farrell responded, "No." (T.R.I-144, 146). When Schak asked O'Farrell whether the Nightmare Before Christmas meant anything to him, O'Farrell became attentive and alert, and Schak told O'Farrell that he was now a suspect in the death of his wife and advised him of his rights. (T.R.I-146-148).

O'Farrell told Schak that he left work around 11:30 p.m., went to a bar, and had a few drinks, and when he went home, his wife pleaded with him to shoot her after she fell asleep, and he agreed. (T.R.I-149-150). O'Farrell's wife had diabetes, kidney failure, had been recently

4

diagnosed with Bell's Palsy, and tried to commit suicide six months before by overdosing on her insulin. (T.R.I-149). O'Farrell told Schak that he and his wife made a loose plan, his wife provided the weapon, and she told him that she had taken the glass out of the bathroom window. (T.R.I-149-150). His wife woke up several times and asked him why he had not taken her life. (T.R.I-150). At 4:00 a.m., O'Farrell shot her in the head through a pillow. (T.R.I-151). His wife began quivering and moving around, so O'Farrell shot her in the chest. (T.R.I-151). At this point, his wife stopped moving. (T.R.I-151). O'Farrell told Schak that he fired into the hallway and shot himself in the shoulder because he thought it would look better. (T.R.I-152). O'Farrell put the gun in the video cassette box, made some phone calls, and then went downstairs, opened the front door, and waited for the police to arrive. (T.R.I-152).

Assistant State's Attorney Kougias testified that he went to Area Five between 10:45 and 11:00 a.m, and learned that O'Farrell had made a statement. (T.R.I-178, 190-191). Around 11:40 a.m., Kougias spoke to O'Farrell with Schak present and O'Farrell related basically the same version of events that he had earlier related to Schak. (T.R.I-178-187, 192-195). In the version related to Kougias, O'Farrell added that he and his wife had argued in the past about her requests that he end her life and he believed that she was terminally ill. (T.R.I. 182, 192). In addition, O'Farrell told Schak that his wife had come up with the plan the night before and created the story about the black male intruder. (T.R.I-182-183). O'Farrell further stated that after the shooting, he went downstairs, broke the screen door, and pushed the window out in the bathroom. (T.R.I-156, 185, 194-195).

The parties stipulated that Nancy Jones, an expert in the area of forensic pathology, would testify that she performed an autopsy on Leslie O'Farrell, and it was her opinion that she died of

5

multiple gunshot wounds. (T.R.I-158-160).

Dick Chenow, an expert in firearms identification employed by the Chicago Police Department Crime Lab, testified that one of the bullets recovered during the autopsy had class characteristics that were consistent with the bullets test fired from the gun found in the video cassette box, but there were no individual characteristics that could positively show that the bullet had been fired from that gun. (T.R.I-163-172). The derringer was a single shot gun, which had to be reloaded every time that it was fired. (T.R.I-173-174).

Robert Berk, a trace evidence analyst employed by the Chicago Police Department Crime Lab, testified that there was gun shot residue on O'Farrell's left hand, which could be consistent with a struggle over a weapon. (T.R.I-135-141). Defendant's father, Thomas O'Farrell, testified that his son is right handed. (T.R.I-198).

### Direct Appeal

On direct appeal, O'Farrell argued that: (1) his sentence was excessive; (2) the truth-in-sentencing law violated the single subject rule of the Illinois Constitution; and (3) the mittimus should be amended to reflect that he was convicted and sentenced for only one count of first degree murder. (P.C.-110-119; S.R.Vol.I-2-31, 69-83). On March 24, 1999, in Appellate Court Number 1-97-0911, this court affirmed O'Farrell's conviction and sentence, but amended the mittimus to reflect that he was to receive one day of good conduct credit for each day in prison. (P.C.-110-119). O'Farrell's petition for rehearing, petition for leave to appeal, and petition for writ of habeas corpus were denied. (P.C.-30-31; S.R.Vol.I-100, 147).

### Post-Conviction Proceedings

On January 26, 2000, O'Farrell filed his first *pro se* post-conviction petition in which he

6

raised various claims of ineffective assistance of trial counsel. (P.C.-29-148). O'Farrell also filed

a *pro se* motion for substitution of judge, which the circuit court denied on February 15, 2000.

(S.R.Vol.I-124; S.R.Vol.IV-18). Private counsel was appointed to represent O'Farrell, and on

April 13, 2001, an amended post-conviction petition was filed. (P.C.-149-224). In this petition,

O'Farrell raised various allegations of trial court error and ineffective assistance of counsel.

(P.C.-149-224). On May 8, 2001, an amendment to the amended petition was filed in which

O'Farrell raised an additional ineffective assistance of counsel claim. (P.C.-225-229).

The circuit court granted the State's motion to dismiss O'Farrell's petitions on October 4,

2001. (S.R.Vol.I-142-155; S.R.Vol.II-2-19; S.R.Vol.III-4-26; S.R.Vol.IV-32, 36-37, 40-41;

S.R.Vol.VII-3-7). In doing so, the court found that several of the claims O'Farrell raised were

barred by the doctrines of waiver and *res judicata* and O'Farrell failed to make a substantial

showing that his constitutional rights were violated either at trial or on direct appeal. (S.R.Vol.I-

142-155; S.R.Vol.IV-40-41). On November 1, 2001, O'Farrell mailed several documents to the

circuit court clerk, including a document entitled Affidavit of Intent to File an Appeal to the

Appellate Court of Illinois, First Judicial District, which neither the clerk nor the circuit court

recognized as a notice of appeal. (S.R.Vol.II-26-36).

O'Farrell filed his second *pro se* post-conviction petition on May 27, 2003, which was

dismissed by the circuit court on July 24, 2003. (P.C.-17-270). Upon review of the record in this

appeal, appellate counsel became aware of the clerk's failure to recognize O'Farrell's notice of

intent as a notice of appeal and, on August 24, 2004, filed a motion asking this court to allow

O'Farrell leave to file a late notice of appeal, which this court granted on September 7, 2004.

(S.R.Vol.II-20-38). The appeal from the dismissal of O'Farrell's second post-conviction petition

was subsequently dismissed as moot, and O'Farrell's appeal from the dismissal of his initial post-conviction petitions is currently pending before this court in Appellate Court Number 1-04-2481.

On November 7, 2003, O'Farrell filed his third *pro se* post-conviction petition. (C-2-33). In this petition, O'Farrell maintained that he should have been charged and sentenced for the offense of inducement to commit suicide pursuant to 720 ILCS 5/12-31 (West 2002), which carries a sentencing range of one to three years imprisonment. (C-8-28). O'Farrell argued that trial counsel was ineffective for failing to present this as a defense or lesser included offense to first degree murder, appellate counsel was ineffective for failing to raise trial counsel's ineffective assistance, and post-conviction counsel did not provide a reasonable level of assistance because she failed to raise both trial and appellate counsel's ineffective assistance in her amended petition. (C-8-28). O'Farrell additionally argued that fundamental fairness required that the court address his claims because he was prevented from raising them in an earlier proceeding and would be prejudiced. (C-4-7). In support of this petition, O'Farrell attached his own affidavit, the affidavit of his father, and the affidavit of another inmate which all attested to the fact that he was severely dyslexic and had trouble reading and writing. (C-29-31). O'Farrell also attached an article titled, "Assisted Suicide Laws Around the World." (C-32-33).

On January 2, 2004, the circuit court summarily dismissed O'Farrell's petition, finding that the claims O'Farrell raised were barred by the doctrine of waiver and were frivolous and without merit. (C-34-43; R-4).

8

II.

## LEGAL ANALYSIS

Counsel has considered raising the following issue on Mr. O'Farrell's behalf:

### The Circuit Court Erred When it Summarily Dismissed

### Mr. O'Farrell's *Pro Se* Post-Conviction Petition Based on

### The Doctrine of Waiver.

In dismissing Mr. O'Farrell's post-conviction petition, the circuit court stated that the

petition was frivolous and without merit, pursuant to 725 ILCS 122-2.1. (R-4). In its written

order, the circuit court reiterated this finding but also found that this petition was barred by

waiver. (C-34-43). Specifically, the court found that Mr. O'Farrell's petition did not pass the

"cause and prejudice test," set out in *People v. Pitsonbarger*, 205 Ill. 2d 444, 793 N.E.2d 609

(2002), a test used to determine whether waiver should apply to a successive petition. (C-34-43).

Appellate counsel considered arguing that the circuit court exceeded the parameters of

permissible review in first stage proceedings by basing its ruling, in part, on matters outside the

allegations of the petition since at the initial stage of post-conviction proceedings, the court

should only determine the post-conviction petition's substantive value and not its procedural

compliance. *People v. Boclair*, 202 Ill. 2d 89, 101-102, 789 N.E.2d 734 (2002); *People v.

Edwards*, 197 Ill. 2d 239, 244, 757 N.E.2d 442 (2001); *People v. McGhee*, 337 Ill. App. 3d 992,

996, 787 N.E.2d 324 (1ˢᵗ Dist. 2003); *People v. Blair*, 338 Ill. App. 3d 429, 788 N.E.2d 240 (1ˢᵗ

Dist. 2003), leave to appeal allowed, 205 Ill. 2d 594, 803 N.E.2d 486 (2003). Early dismissal is

only warranted where the petition lacks substantive merit, and may not be dismissed on

9

procedural grounds such as timeliness, waiver, or *res judicata*. *McGhee*, 337 Ill. App. 3d at 995-996; *Blair*, 338 Ill. App. 3d at 431-432.

However, as noted above, the circuit court has also correctly applied the standard for first stage proceedings in finding that Mr. O'Farrell's claims were frivolous and patently without merit. *See* 725 ILCS 5/122-2.1(a)(2) (West 2002). Since this was an appropriate standard for the court to apply at first stage proceedings, appellate counsel has determined that the issue of the use of an improper standard as part of the justification for dismissing the petition is without merit.

In addition, no argument can be made that the allegations in Mr. O'Farrell's petition were not frivolous or patently without merit. In his petition, O'Farrell maintained that his trial counsel was ineffective for failing to present the defense of inducement to commit suicide or argue that it was a lesser included offense of first degree murder, appellate counsel was ineffective for failing to raise trial counsel's ineffective assistance, and post-conviction counsel did not provide a reasonable level of assistance because she failed to raise both trial and appellate counsel's ineffective assistance in the amended petition. (C-4-33).

Claims for ineffective assistance of trial and appellate counsel in a post-conviction petition are measured by the standard set forth in *Strickland v. Washington*, 466 U.S. 668, 80 L.Ed.2d 674, 104 S. Ct. 2052 (1984). Under *Strickland*, to establish a claim for ineffective assistance of counsel, a defendant must show that counsel's representation fell below an objective standard of reasonableness, and that counsel's actions resulted in prejudice to the defendant. *Strickland*, 466 U.S. at 687-688. The right to post-conviction counsel is wholly statutory, and thus, petitioners are entitled to only a "reasonable level of assistance," an issue that

10

is not cognizable under the Post-Conviction Hearing Act. *People v. Turner*, 187 Ill. 2d 406, 719 N.E.2d 725 (1999); *People v. Guest*, 166 Ill. 2d 381, 655 N.E.2d 873 (1995). Mr. O'Farrell has failed to state the gist of a claim that his attorneys were ineffective for failing to argue that he should have been convicted of inducement to commit suicide rather than first degree murder.

First, the offense of inducement to commit suicide is not a lesser included offense of first degree murder. A lesser included offense is "established by proof of the same or less than all of the facts or a less culpable mental state (or both), than that which is required to establish the commission of the offense charged." 720 ILCS 5/2-9(a) (West 2002). The offense of first degree murder requires that the defendant intentionally or knowingly kill another individual. 720 ILCS 5/9-1(a)(1) (West 2002). The offense of inducement to commit suicide, on the other hand, requires that the defendant coerce another individual to commit suicide, or intentionally provide the physical means or participate in the physical act by which another individual commits or attempts to commit suicide. 720 ILCS 5/12-31 (West 2002). Thus, inducement to commit suicide is not a lesser included offense of first degree murder.

Furthermore, the record does not support that the victim, Leslie O'Farrell, committed suicide. When the officers initially arrived at O'Farrell's home, he told them that he had been awakened by gunshots, saw a black male intruder standing over his wife, and struggled with the man into the hallway. (T.R.I-21-28, 43-50, 62-63). During the struggle, O'Farrell said that he was shot in the shoulder and believed that the intruder was also shot in the stomach. (T.R.I-28, 50-51, 62-63). The officers found O'Farrell's wife lying on the bed in the master bedroom with gunshot wounds in her head and chest. (T.R.I-29-32). The officers also discovered that the glass from the first floor bathroom window had been removed, there was a pile of flag stone and pieces of

11

lumber below the window, and a bullet hole in the hallway wall approximately the same height as the wound to O'Farrell's shoulder. (T.R.I-73-74, 81, 95-100, 109-110). Upon searching the home, the officers recovered a video cassette box from the master bedroom that contained a .22 caliber derringer pistol, three .22 caliber discharged shell casings, one live .22 caliber cartridge, and a hypodermic needle.(T.R.I-89-90, 101-103, 114-115, 117-120, 122-123).

Once confronted with this evidence, O'Farrell claimed that when he returned home from work that night, his wife pleaded with him to shoot her after she fell asleep. (T.R.I-149-150, 182). O'Farrell and his wife made a loose plan, his wife provided the weapon and came up with the story about the black male intruder, and at some point the glass was removed from the bathroom window. (T.R.I-149-150, 182-183, 195). The record shows that O'Farrell's wife did have a history of suicide attempts, suffered from several illnesses including diabetes, kidney failure, and Bell's Palsey, that both she and O'Farrell were in treatment for depression, and O'Farrell believed that his wife was terminally ill. (P.C.-75-76, 82-83, 86-88, 94-101; T.R.I-149, 182, 192; T.R.K-35-61). O'Farrell himself shot his wife in the head and chest, before shooting himself in the shoulder, putting the gun in the videocassette box, and calling the police. (T.R.I-150-152, 183-187). Thus, the record shows that Leslie O'Farrell did not commit suicide.

Therefore, trial counsel's failure to present the defense of inducement to commit suicide or argue that it was a lesser included offense of first degree murder could not have been ineffective assistance because there is no reasonable probability that had counsel made these arguments, the result of the proceeding would have been different. Since it has been determined that O'Farrell's trial counsel did not provide ineffective assistance, O'Farrell's additional claims that his appellate counsel provided ineffective assistance and that his post-conviction counsel did

No. 1-04-1094

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the Circuit Court of Cook County, Illinois. |
| | ) | |
| Respondent-Appellee, | ) | |
| | ) | |
| -vs- | ) | No. 95 CR 30463. |
| | ) | |
| THOMAS O'FARRELL, | ) | Honorable |
| | ) | Michael P. Toomin, |
| Petitioner-Appellant. | ) | Judge Presiding. |

## PROOF OF SERVICE

TO:  Richard A. Devine
     Cook County State's Attorney
     300 Daley Center
     Chicago, Illinois  60602

Mr. Thomas O'Farrell
Register No. K-54340
Pontiac Correctional Center
P.O. Box 99
Pontiac, IL 61764

     You are hereby notified that on June 3, 2005, we personally delivered the original and three copies of the attached Motion to Withdraw as Counsel on Appeal Pursuant to *Pennsylvania v. Finley* in the above-entitled cause to the Clerk of the above Court, a copy of which is hereby served on you.

KARI K. FIREBAUGH
Assistant Appellate Defender

STATE OF ILLINOIS  )
              ) SS
COUNTY OF COOK  )

     The undersigned, being first duly sworn on oath, deposes and says that he personally delivered the required number of copies of the attached Motion to the Clerk of the above Court and to the State's Attorney of Cook County on June 3, 2005.

CLERK

SUBSCRIBED AND SWORN TO BEFORE ME
on June 3, 2005.

NOTARY PUBLIC
Official Seal
Angie M. Conory's
Notary Public State of Illinois
My Commission Expires 09/13/06

NOTICE

The text of this order may be
changed or corrected prior to the
time for filing of a Petition for
Rehearing or the disposition of
the same.

No. 1-04-1094

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 95 CR 30463 |
| | ) | |
| THOMAS O'FARRELL, | ) | Honorable Michael P. Toomin, |
| Defendant-Appellant. | ) | Judge Presiding. |

## O R D E R

Following a bench trial, defendant Thomas O'Farrell was convicted of first degree murder and sentenced to 50 years in prison. On direct appeal, this court affirmed defendant's conviction and sentence but modified the mittimus to reflect that defendant was to receive one day of good conduct credit for each day in prison. <u>People v. O'Farrell</u>, No. 1-97-0911 (1999) (unpublished order under Supreme Court Rule 23).

In January 2000, defendant filed a *pro se* petition for post-conviction relief, which was later amended by appointed post-conviction counsel. The State filed a motion to dismiss, which

1-04-1094

the circuit court granted.[1]  After allowing defendant to file a
late notice of appeal in 2004, this court affirmed the dismissal.
People v. O'Farrell, No. 1-04-2481 (2005) (unpublished order
under Supreme Court Rule 23).

In May 2003, defendant filed a second *pro se* successive
post-conviction petition, which the court dismissed.[2]

In November 2003, defendant filed his third *pro se*
successive post-conviction petition, which the circuit court
dismissed.  Defendant has appealed from that dismissal.

The State Appellate Defender, who represents defendant on
appeal, has filed a motion for leave to withdraw as appellate
counsel.  A memorandum in support of the motion has been
submitted pursuant to Pennsylvania v. Finley, 481 U.S. 551, 95 L.
Ed. 2d 539, 107 S. Ct. 1990 (1987), in which counsel concluded
that there are no issues of arguable merit.  Defendant has
responded.

We have carefully reviewed the record in this case, the
aforesaid memorandum and defendant's response in compliance with
the mandate of the Finley decision and find no issues of arguable
merit.  Therefore, the motion of the State Appellate Defender for

---

[1]While defendant's first post-conviction petition was
pending in the circuit court, defendant filed an appeal, which he
subsequently moved to dismiss.  This court allowed the dismissal.
People v. O'Farrell, No. 1-00-0968 (2001) (dispositional order).

[2]Defendant filed appeals of the court's dismissal of his
second post-conviction petition, but then moved to dismiss the
appeals, which this court allowed.  People v. O'Farrell, Nos. 1-
03-2619 and 1-03-3404 (2004) (dispositional orders).

1-04-1094

leave to withdraw as counsel is allowed.

The judgment of the circuit court of Cook County is affirmed.

Affirmed.

BURKE, J., with GORDON and McBRIDE, JJ., concurring.

ORIGINAL

NO. __101736__

IN THE SUPREME COURT OF ILLINOIS

| | | |
|---|---|---|
| PEOPLE ~~OF THE~~ STATE OF ILLINOIS, | ) | Appellate Court, |
| | ) | First District |
| Respondent, | ) | No. 1-04-1094 |
| | ) | |
| | ) | Circuit Court, |
| V. | ) | Cook County |
| | ) | No. 95 CR 30463 |
| THOMAS O'FARRELL, | ) | |
| | ) | |
| Petitioner, | ) | Hon. Michael P. Toomin, |
| | ) | Judge Presiding. |

PETITION FOR LEAVE TO APPEAL

Thomas O'Farrell
Reg. No. K-54340
P.O. Box 99
Pontiac, Illinois 61764

FILED

DEC 1 2 2005

SUPREME COURT CLERK

35-120505

R-103105

No RH

EXHIBIT CC

IN THE
SUPREME COURT OF ILLINOIS

| | |
|---|---|
| PEOPLE OF THE STATE OF ILLINOIS,<br>Plaintiff-Appellee,<br><br>V.<br><br>THOMAS O'FARRELL,<br>Defendant-Appellant, | ) Appeal from the Circuit<br>) Court of Cook County,<br>) Illinois.<br>)<br>) No. 95 CR 30463<br>)<br>) Honorable<br>) Michael P. Toomin,<br>) Judge Presiding. |

## PETITION FOR LEAVE TO APPEAL

### 1.
### PRAYER FOR LEAVE TO APPEAL

Your Petitioner, Thomas O'Farrell, Pro-Se, respectfully
petitions this Honorable Court for Leave to Appeal pursuant to
Supreme Court Rule 315, from the judgement of the Illinois
Appellate Court, First Judicial District, which affirmed the
summary dismissal of his Pro-Se Petition for Post-Conviction
Relief by the Circuit Court of Cook County, Illinois.

### 2.
### OPINION AND PROCEEDINGS BELOW

On January 21, 1997, following a bench trial, Petitioner,
Thomas O'Farrell was convicted of first degree murder.   On
February 28, 1997, Petitioner was sentenced to 50 years in
prison.   On March 24, 1999, on direct appeal, the Appellate
Court, First Judicial District, affirmed Petitioner's
conviction and sentence but modified the mittimus to reflect
that Petitioner was to recieve one day good conduct credit for
each day on prison. People v. O'Farrell, No. 1-97-0911 (1999)

I

(unpublished order under Supreme Court Rule 23). Petitioner sought further review from this Honorable Court, however his petition for leave to appeal was denied on February 2, 2000. (People v. O'Farrell, 187 Ill,2d 585, 724 N.E.2d 1273 (2000). On January 25, 2000, Petitioner filed a pro-se petition for post-conviction relief, which was later amended by appointed post-conviction counsel. The state filed a motion to dismiss, which the circuit court granted. (People v. O'Farrell, No. 1-00-0968 (2001)(dispositional order). After allowing Petitioner to file a late notice of appeal in 2004, the Appellate Court, First Judicial District affirmed the dismissal. (People v. O'Farrell, No. 1-04-2481 (2005)(unpublished order under Supreme Court Rule 23). On May 21, 2003, Petitioner file a successive post-conviction petition (Petitioner's second petition over'all), which was dismissed as moot as the Appellate Court, First Judicial District allowed Petitioner to file a late appeal. (People v. O'Farrell, No.'s 1-03-2619 and 1-03-3401 (2004)(dispositional order). On November 7, 2003, Petitioner filed a second successive post-conviction petition (Petitioner's third petition over'all). On January 8, 2004, Petitioner filed a notice of appeal with the circuit court clerk upon the January 2, 2004 dismissal of the circuit court. The clerk of the circuit court held and later filed Petitioner's notice of appeal on April 13, 2004. On May 22, 2005, Petitioner filed a motion to proceed on appeal pro-se, which was subsequently denied by the Appellate Court, First Judicial District. On June 3, 2005, Appellate

counsel filed a motion for leave to withdraw as appellate counsel.
A memorandum in support of the motion was submitted pursuant to
Pennsylvania v. Finley,, 481 U.S. 551, 95 L.Ed.2d 539, 107 S.Ct.
1990 (1987).    Petitioner was ordered to respond, and did.
The Appellate Court, First Judicial District granted appellate
counsel's motion and allowed her to withdraw and affirmed the
judgement of the circuit court. (People v. O'Farrell, No. 1-04-
1094.    On October 20, 2005, the Clerk of the Illinois Supreme
Court filed Petitioner's petition for leave to appeal in Case No.
1-04-2483, Ill. S.Ct. No. 101468, which is still pending a ruling.
On November 5, 2005, Petitioner filed an affidavit of intent to
file a petition for leave to appeal to the Illinois Supreme Court
in Case No. 1-04-1094.    This appeal follows.

### 3.
### POINTS RELIED UPON FOR REVERSAL

1. Whether the Appellate Court erred in failing to
recognize that Inducement To Commit Suicide qualifys as a lesser
included offense of First Degree Murder.

2. Whether the Appellate Court erred in failing to
recognize that Petitioner had a Constitutional Right to have the
defense of Inducement to commit suicide and it's vital evidence
presented to a jury at trial for their consideration.

3. Whether the Trial Court erred in failing to
recognize the intentions of the Illinois Governor and General
Assembly in drafting and enacting the Laws and Statutory
Requirements for the offense of Inducement To Commit Suicide.

4. Whether the Appellate Court erred in denying

3

Petitioner's Pro-Se Motion To Proceed On Appeal Pro-Se.

      5. Whether the Appellate Court erred in failing to recognize that Petitioner stated a meritorious claim within his response to appellate counsel's motion for leave to withdraw as appellate counsel.

      6. Whether the Appellate Court erred in failing to recognize the Trial Court erred in dismissing Petitioner's pro-se successive post-concition petition as frivolous and patently without merit, where Petitioner stated a gist of a Constitutional claim.

4.
### STATEMENT OF FACTS

      On November 7, 2003, Petitioner filed his third pro-se post-conviction petition.    In this petition, Petitioner maintained that he should have been charged and sentenced for the offense of Inducement To Commit Suicide pursuant to 720 ILCS 5/12-31(a)(2)(ii)(2002), which carries a sentencing range of one to three years imprisonment, as Petitioner confessed to intentionally participating the in physical act of assisting his wife, Lesley in her suicide.    Petitioner arued that trial counsel was ineffective for failing to present this as a defense and/or lesser included offense of first degree murder along with it's vital evidence which trial counsel knew prior to pre-trial motion and trial.    Petitioner further argued that both appellate counsel and post-conviction counsel failed to provide a reasonable level of assistance for failing to raise said issue within Petitioner's direct appeal and post-conviction petition to preserve said issue for later review.    Petitioner argued that

4

fundamental fairness required the relaxation of the waive doctrine
as Petitioner demonstrated that the combination of trial counsel's,
appellate counsel's post-conviction counsel's ineffectiveness and
his severe dyslexia affected his ability to raise the specific
claim he is now asserting within in his original proceedings,
which is "cause".    Petitioner demonstrated that the combination
of the denial of his Constitutional Right to appeal said issue
further and being convicted of an offense which he did not commit
and was sentenced to a term 47 years over the statutory maximum
for the actual offense Petitioner confessed to was "prejudice".
In support, Petitioner attached affidavits of his father, mother,
sister and himself which included vital evidence to prove the
allegations within his petition.    Petitioner also included a
affidavit from inmate Michael Sapp which supports the claim of
dyslexia.

On January 2, 2004, the circuit court summarily dismissed
Petitioner's petition, finding that he claims raised were barred
by the doctrine of waiver and were frivolous and without merit.
The circuit court stated that Petitioner failed to demonstrate
"cause" or "prejudice" to relax the waiver doctrine.    The
circuit court further stated that Petitioner failed to prove
ineffective assistance of counsel pursuant to Strickland v.
Washington.    The circuit court failed to recognize the attached
affidavits which served as the vital evidence that proved
Petitioner's claim.    Relying only on the evidence presented at
trial, the circuit court adamantly stated that "the victim,
Lesley O'Farrell, did not commit or attempt to commit suicide".
And Petitioner "shot and killed his wife as she lay helpless in

her bed". As to Petitioner's claim that Inducement To Commit Suicide is a lesser included offense of first degree murder, the circuit court stated that "Petitioner clearly misapprehends the thrust of the statute. Contrary to Petitioner's analysis, the enactment cannot be construed as a lesser-included offense of first degree murder. A lesser included offense is 'an offense which is established by the same or less than all of the facts or a less culpable mental state (or both), than that which is required to establish the commission of the offense charged... "720 ILCS 5/2-9(a)(West 2003). The offense of homicide requires that the defendant intentionally or knowingly kill the victim (720 ILCS 5/9-1(a)(1)(West 2003)), while the offense of inducement to commit suicide merely requires that the defendant either coerce the victim to committing suicide or provide the means for such. 720 ILCS 5/12-31(West 2003)."

On January 8, 2004, Petitioner filed a notice of appeal with the clerk of the circuit court. The circuit court clerk did not file said notice of appeal or send a copy to the clerk of the appellate court until April 13, 2004, at which time the appellate court appointed the State Appellate Defenders Office to represent Petition in his appeal. On May 22, 2005, Petitioner filed a pro-se motion to proceed on appeal pro-se. Petitioner argued that appellate counsel as of May 22, 2005 did not yet file a brief and stated that Petitioner has a right to represent himself during legal proceedings pursuant to Farretta v. California. On June 3, 2005, appellate counsel filed a motion to withdraw as counsel on appeal pursuant to Pennsylvania v. Finley. Appellate

counsel within her motion agreed with the ruling of the circuit court and requested to withdraw as appellate counsel. On October 31, 2005, the appellate court stated "In November 2003, defendant filed his third pro-se successive post-conviction petition, which the circuit court dismissed. Defendant has appealed from that dismissal. The State Apppellate Defender, who represents defendant on appeal, has filed a motion for leave to withdraw as appellate counsel... counsel concluded that there are no issues of arguable merit. Defendant has responded." The appellate court ruled "we carefully reviewed the record in this case, the aforesaid memorandum and defendant's response in compliance with the mandate of the Finley decision and find no issues of arguable merit. Therefore, the motion of the State Appellate Defender for leave to withdraw as counsel is allowed. The judgement of the circuit court of Cook County is affirmed."

Upon recieving the order of the appellate court, Petitioner filed an affidavit of intent to file a petition for leave to appeal to the Illinois Supreme Court on November 5, 2005.

### 5.
### ARGUMENTS

1. THE APPELLATE COURT ERRED IN FAILING TO RECOGNIZE THAT INDUCEMENT TO COMMIT SUICIDE QUALIFYS AS A LESSER INCLUDED OFFENSE OF FIRST DEGREE MURDER.

This Honorable Court in People v. Novak, 163 Ill.2d 93, 643 N.E.2d 762 (1994), adopted an approach concerning the charging instrument. In order for a crime to be a lesser included offense of another, its elements must be described in the charging instrument of the greater. "The 'lesser offense must have a

7

broad foundation in the instrument charging the greater,' or at least 'set out the main outline of the lesser offense.'"  Novak, 163 Ill.2d at 107 qouting People v. Bryant, 113 Ill.2d 497, 505, 499 N.E.2d 413 (1983).    Significantly, Bryant goes on to say in the very same paragraph that the fact "that the indictment did not, expressly allege all the elements of the lesser offense is not, in our view, fatal under these circumstances[.]"

In the case at bar, the indictment alleged that Petitioner "without lawful justification, intentionally or knowly shot and killed Lesley O'Farrell with a gun. . .."    Petitioner contends that this language sufficiently outlines the elements of inducement to commit suicide.    Enough so to qualify it as a lesser included offense of the first degree murder count.

Chapter 720 ILCS 5/12-31(a)(2)(ii) reads in relevant part:

12-31. Inducement to Commit Suicide.

(a) A person commits the offense of inducement to commit suicide when he or she does either of the following:

(2) With knowledge that another person intends to commit or attempts to commit suicide, intentionally

(ii) participates in the physical act by which another person commits or attempts to commit suicide.    720 ILCS 5/12-31(a)(2)(ii)(West 1996) (emphasis added).

The language of the statute clearly indicates that a person is guilty of inducement to commit suicide if he or she "intentionally participates in the physical act by which another person commits suicide."    The language of the indictment expressly outlines this conduct.    Petitioner never claimed that he did not participate in the shooting of his wife, Lesley.  ▰

8

Petitioner in fact confessed that, after years of watching Lesley suffer -- both physically and emotionally with her ailments -- he finally agreed to help her end her life, thus ending Lesley's suffering. (Tr.I-182).    Because "intentionally or knowingly [shooting] Lesley O'Farrell with a gun" could arguably include "intentionally participat[ing] in the physical act by which another person commits suicide," inducement to commit suicide must be a lesser included offense of first degree murder in this case.    Thus, both the trial court's and appellate court's ruling contrary to the fact was erroneous.

> 2. THE APPELLATE COURT ERRED IN FAILING TO RECOGNIZE
> THAT PETITIONER HAD A CONSTITUTIONAL RIGHT TO
> HAVE THE DEFENSE OF INDUCEMENT TO COMMIT SUICIDE
> AND IT'S VITAL EVIDENCE PRESENTED TO A JURY AT
> TRIAL FOR THEIR CONSIDERATION.

This Honorable Court set a well settled principle of law in People v. DeRosa, 378 Ill. 557, 39 N.E.2d 1 (1941), that a criminal defendant has a right to present as many defenses as he has or thinks he has, even if he offers these defenses for no other purpose than to confuse the jury.    A criminal defendant may even present incongruous or inconsistent defenses, although he must bear the burden of any detrimental effect the decision to do so carries. People v. Smith, 121 Ill.App.2d 105, 110, 257 N.E.2d 261 (1970).

In this case at bar, there was substantial and uncontradicted evidence which established that the victim had made several attempts to end her own life.    A great deal of this documentation was attached to Petitioner's petition.    The victim's lack of

success is due primarily to Petitioner's intervention, a fact
that is also well documented.    Given this evidence, and the fact
that it is uncontradicted, it was objectively unreasonable for
counsel not to pursue a defense which centered on this evidence.
In prosecutions for homicide where <u>suicide of deceased is relied
as a defense the deceased's conduct, declarations, and threats
indicating a suicidal dispostion are generally admitted into
evidence for the purpose of showing the deceased's state of mind
or intention</u>.40A Am Jur2d Homicide § 287 (Suicide).    Through the
well documented suicide attempts, statements by the victim, Lesley
O'Farrell and the confession of Petitioner this evidence would
further corroborate a defense of inducement to commit suicide.
The State will certainly contend that Petitioner committed murder
with premeditation (Tr.J-4 & J-22) but in doing so the State
must rely on the testimony of State's Witness, Thomas Dye. (Tr.K8
& K29).    However, the State must be barred from the use of this
witness in these proceedings as the appellate court ruled that
the trial court was in the best postion to assess Dye's
credibility. (Mar. 24, 1999 opinion pg. 16)    Within the trial
court's order dated October 4, 2001, pg. 14, the trial court
"placed utterly no reliance upon Dye's proffers."    And within
Mr. Dye's deposition, he admits that ex-assistant State's
Attorney, now Appellate Justice, Patrick Quinn pressured him into
lying in Petitioner's case and gave him the vital evidence that
Quinn needed Dye to testify to. (see attached deposition).    The
question of Dye's credibility, whether or not Petitioner is
guilty of inducement to commit suicide of first degree murder,

the weight of Petitioner's additional vital evidence, or whether
or not the victim, Lesley O'Farrell committed suicide is clearly
critical evidence and questions to be brought before a jury at
trial for their consideration.    Therefore, both the trial court
and the appellate court erred again in their rulings.

3. THE TRIAL COURT ERRED IN FAILING TO RECOGNIZE THE INTENTIONS
   OF THE ILLINOIS GOVERNOR AND GENERAL ASSEMBLY IN DRAFTING
   AND ENACTING THE LAWS AND STATUTORY REQUIREMENTS FOR THE
   OFFENSE OF INDUCEMENT TO COMMIT SUICIDE.

The Petitioner confessed that, after years of watching his
wife, Lesley suffer -- both physically and emotionally with her
ailments -- he finally agreed to help her end her life, thus
ending Lesley's suffering, (Tr.I-182) thus, assisting her suicide.

Thirty-six states and territories currently have statutes
imposing criminal santions for aiding, **assisting**, causing, or
promoting suicide. (FN10). Compassion in Dying v. State of
Washington, 79 F.3d 720 at 847. (FN10) Ill.Rev.Stat. Ch. 720 ¶
5/12-31(Westlaw 1996), Compassion in Dying, 79 F.3d 720 at 858.
Most states have consistenly punished the act of **assisting a**
**suicide** as either a common-law or **statutory crime** and some
continue to view suicide as an unpunishable crime. (FN14).
Washington v. Glucksberg, 117 S.Ct 2258 at 2286. (U.S.Wash. 1997)
(FN14) Ill.Comp.Stat., Ch. 720 § 5/12-31(1993), Glucksberg, 117
S.Ct. 2258 at 2293.

The State of Illinois in July 1990, drafted and enacted a
statutory Law regarding coercing , intentionally providing the
means and intentionally participating in another person in
committing suicide.

It is clear that the Governor and General Assembly of Illinois gave careful consideration in wording and determining the __statutory requirements__ and their __intent__ in drafting and enacting the Laws and the proper __statutory__ sentences for the __offense of inducement to commit suicide__. (Public Act 86-980, 87-1157, 88-392, Ch. 38 ¶ 12-31 and 720 ILCS 5/12-31 (1990-1993). From it's birth in July 1990, the __offense of inducement to commit suicide__ went through several amendment, where the Governor and General Assembly changed the __statutory requirements__ to be met by a defendant and the __statutory sentence__ for said offense. On the date of Petitioner's offense the statute read as follows:

> 5/12-31. Inducement to Commit Suicide.
> §12-31. Inducement to Commit Suicide.
> (a) __A person commits the offense of inducement to commit suicide__ when he or she does either of the following:
> (1) Coerces another to commit suicide and the othe■ person commits or attempts to commit suicide as a direct result of the coercion, and he or she exercises substantial control over the other person through (i) control of the other person's physical location or circumstances; (ii) use of psychological pressure; or (iii) use of actual or ostenible religious, political, social, philosophical or other principles.
> (2) __With the knowledge that another person intends to commit or attempts to commit suicide, intentionally__ (i) offers and provides the physical means by which another person commits or attempts to commit suicide, or (ii) __participates in the physical act by which another person commits or attempts to commit suicide.__ For the purpose of this Section, "attempts to commit suicide" means any act done with the __intent__ to commit suicide and which substantial steps toward commission of suicide.

and the statutory sentencing guidelines and appropriate sentence for the __offense of inducement to commit suicide is a Class 4 felony__ which reads as follows:

> § 5/5-8-1 Sentencing of imprisonment for felony.
> (7) __for a Class 4 felony, the sentence shall be not less than 1 year and not more than 3 years.__

Petitioner offered the necessary proof within his successive post-conviction petition that the victim did in fact commit suicide.

Within Petitioner's confession, he admitted to physically participating in his wife, Lesley's suicide when he fired the fatal shot into his wife, Lesley.

720 ILSC 5/12-31(a)(2)(ii), inducement to commit suicide can no better discribe Petitioner's action and offense as well as the degree of **intent** required for said offense.    The drafting and enacting of inducement to commit suicide by the Governor and General Assembly clearly demonstrates their **intent** and that those who commit the acts/offense as Petitioner committed should be charged under 720 ILCS 5/12-31(a)(2)(ii) and not under 720 ILCS 5/9-1(a)(1) nor 5/9-1(a)(2) first degree murder.    The argument above clearly points out that the trial court and appellate court erred here as well.

### 4. THE APPELLATE COURT ERRED IN DENYING
### PETITIONER'S PRO-SE MOTION TO
### PROCEED ON APPEAL PRO-SE.

Petitioner was appointed the State Appellate Defender to represent him on the appeal of his second successive post-conviction petition.    From the beginning appellate counsel was of the opinion that Petitioner claim had no merit.    Petitioner on several occasions spoke with counsel and even wrote counsel to show how 720 ILCS 5/12-31(a)(2)(ii) applied to his case. Appellate counsel repeatedly told Petitioner that he was wrong and explained that this statute only applied if Petitioner coerced the victim into taking her own life.    Counsel informed Petitioner that if she could not find any supporting caselaw to support Petitioner's claim, she would not file a brief in this case at bar.

Concerned that appellate counsel would file a motion to withdraw as counsel under <u>Pennsylvania v. Finely,</u> 107 S.Ct 1990, waiving Petitioner's rights for further review on said claim, Petitioner file a motion to proceed on appeal pro-se and placing same in the institutional mail at the Pontiac Correctional Center on May 22, 2005. (see attached)    Within said motion, Petitioner requested the right to represent himself pursuant to <u>Faretta  v. California</u>, 95 S.Ct. 2525.

The Sixth Amendment does not provide merely that a defense shall be made for the accused; it grants to the accused personally the right to make his defense.    Although not stated in the Amendment in so many words, the right to self-representation -- to make one's own defense personally -- is thus necessarily implied by the structure in the Amendment.    The right to defend is given directly to the accused; for it is he who suffers the consequences if the defense fails,  <u>Faretta v. California</u>, 95 S.Ct. 2525 at 2533.

Had Petitioner knew of 720 ILCS 5/12-31(a)(2)(ii) and the ruling of the United States Supreme Court in  <u>Faretta</u>, Petitioner would have sought to represent himself at trial.    However,  this is not the situation here, Petitioner did not know the above at trial but he definitely knew during the appeal of his second successive petition and in fact he motioned the appellate court prior to appellate counsel filing her motion to withdraw which was filed on June 3, 2005.

In the case at bar, trial counsel was made aware of the vital evidence which would have supported Petitioner defense of inducement to commit suicide, 720 ILCS 5/12-31(a)(2)(ii).

14

However, trial counsel failed to introduce said evidence at trial.   Instead, trial counsel presented no viable defense. (Tr.I-198).

The evidence presented in Petitioner's second succussive petition suppots that the victim, Lesley O'Farrell did in fact commit suicide and in doing so enlisted her husband, Petitioner in assisting said suicide.

There is additional burden on loved ones and family members that is often overlooked.   Some terminally ill persons enlist their children, parents, or others who care for them deeply, in an aginizing, brutal and damaging endeavor, criminalized by the state, to end their pain and suffering.   The loving and dedicated persons who agree to help -- even if they are fortunate to avoid prosecution, and almost all are -- will likely suffer pain and guilt for the rest of their lives., Compassion in Dying, 79 F.3d 720 at 836.

A mercy killing as defined by Blacks is the affirmative act of bringing about immediate death allegadly in a painless way and generally administered by one who thinks the dying person wishes to die because of a terminal or hopeless disease or condition. Euthanasia as defined by Blacks is the act or practice of killing or bringing about death of a person who suffers from an incurable disease or condition, especially a painful one, for reasons of mercy.

The Petitioner stated within his confession that he believed that his wife, Lesley was terminally ill and that Lesley had numerous medical conditions. (Tr.I-182)   An expert witness testified at sentencing only that the victim, Lesley O'Farrell

had feelings of worthlessness as a woman, was frustrated with her health conditions, depressed, had diabetes which resulted in kidney and vision problems, and had partial facial paralysis from Bell's Palsy.    The expert witness also testified that a person suffering a major depression might over-emphasize the illnesses the victim, Lesley O'Farrell experienced and could suffer suicide thoughts. (Tr.K-60-61)

Unfortunately everyday somewhere in the world individuals commit suicide and do so in the comforts of their own home and even beds.    Most consume lethal doses of medications and in some cases individuals enlisted the assistance of Dr. Jack Kevorkian to provide the lethal dosage of medications and instruct the person as how to end their lives.    In the assisted suicide of Thomas Youk, Dr. Kevorkian altered his norm of only giving the patients the drugs and equipment with which they could kill themselves (assisted suicide), to personally giving Mr. Youk a direct injection of lethal substances (murder in the eyes of Michigan law.)  Dr. Kevorkian was sentenced to serve 15-25 years imprisonment in the State of Michigan for second degree murder. (see attached)

Unlucky to Petitioner, Michigan law is diferent than Illinois law.    Had Dr. Kevorkian committed the same act in Illinois he would have met the requirements of 720 ILCS 5/12-31(a)(2)(ii) inducement to commit suicide as he <u>intentionally participated in the physical act by which another person commits or attempts to commit suicide</u>.    Although Petitioner had no access to the drugs and equiptment Dr. Kevorkian had access to, Petitioner used the only means that was provided him by his wife, Lesley,

16

a gun and in the manner that Dr. Kevorkian personally injected Mr. Youk with the lethal substances, Petitioner personally fired the fatal shot that ended his wife, Lesley's life.    Therefore, Petitioner has proven that he met the requirements for inducement to commit suicide 720 ILCS 5/12-31(a)(2)(ii) and had a right to said defense.

Unless the accused has acquiesced in such representation, the defense presented is not the defense guaranteed him by the Constitution, for, in a very real sense, it is not his defense. Faretta, 95 S.Ct. 2525 at 2573.

The United States Supreme Court ruled in forcing Faretta, under these circumstances, to accept against his will a state-appointed public defender, the California courts deprived him of his Constitutional right to conduct his own defense. Faretta, 95 S.Ct. 2525 at 2541.  Therefore the appellate court erred in denying Petitioner his Constitutional right to represent himself on appeal.

    5.  THE APPELLATE COURT ERRED IN FAILING TO RECOGNIZE THAT PETITIONER STATED A MERITORIOUS CLAIM WITHIN HIS RESPONSE TO APPELLATE COUNSEL'S MOTION FOR LEAVE TO WITHDRAW AS APPELLATE COUNSEL.

Within appellate counsel's motion for leave to withdraw as counsel, counsel argued that trial court did not err in dismissing Petitioner's second successive petition.  Appellate counsel agreed that Petitioner's petition failed to state a gist of a Constitutional claim and that petition was frivolous and patently without merit.  However, appellate counsel's assertion is incorrect as a matter of law.

Within Petitioner's response to said motion, Petitioner stated that the trial court erred in summarily dismissing Petitioner's pro-se successive post-conviction petition as frivolous and patently without merit, where the petition clearly stated the gist of a Constitutional claim. Petitioner argued the denial of effective assistance of counsel at trial, in violation of the Sixth Amendment, when trial counsel refused to present at trial that Petitioner was no guilty of first degree murder but was in fact guilty of the lesser included offense of inducement to commit suicide. However, when the trial court dismissed the petition the trial court stated that there was no evidence presented at trial that would substantiate Petitioner's claim that the victim, Lesley O'Farrell committed suicide, inducement to commit suicide is not a lesser included offense of first degree murder and because of such, Petitioner was not denied effective assistance of counsel. The trial court further went on to rule Petitioner failed satisfy the two prong test of Strickland v. Washington, 104 S.Ct. 2052 to prove either trial counsel was ineffective or that Petitioner's outcome would have changed. Therefore Petitioner failed to prove either "cause" or "prejudice" to relax the waiver doctrine pursuant to People v. Pitsonbarger, 793 N.E.2d 609.

However, the trial court erred as Petitioner clearly presented a gist of a Constitutional claim pursuant to People v. Coleman, 701 N.E.2d 1063 and that a Petitioner is not expected to construct legal arguments, cite legal authority, or draft a petition as artfuly as counsel would pursuant to People v. Lemons, 613 N.E.2d 1234. Petitioner also alleged the bare-

18

bones structure of a claim of the deprivation of his Constitional right which was not contradicted by anything appearing in the record pursuant to People v. Seaberg, 635 N.E.2d 126,130.

In the case at bar, there was no evidence presented at trial or within the record that contradicts Petitioner's claim that he assisted in his wife, Lesley's suicide. However, the trial court stated that there was no evidence presented at trial to support Petitioner's claim that his wife, Lesley committed suicide. But, Petitioner did not have to prove his innocence at trial at this juncture. Simply, the additional evidence within affidavits attached to petition which confirms victims suicidal mental state and that trial counsel knew of these facts prior to trial but yet choose to not present it at trial to prove Petitioner was not guilty of the offense of first degree murder clearly constitutes a gist of a Constitutional claim to survive dismissal.

The evidence contained within this petition clearly demonstrates ineffective assistance of counsel at trial to satisfy the first prong of Strickland. And Constitutionally ineffective assistance of counsel ... is "cause", People v. Flores, 606 N.E.2d 1078 at 1085, which satisfys "cause" within the meaning of Pitsonbarger. Furthermore, Petitioner is a severe dyslexic which impeded him from including the claim within his second successive petition in his first post-conviction petition. Petitioner within his response to appellate counsel's motion for leave to withdraw as counsel on appeal formed a proper argument to assist the appellate court in better understanding this disease. Pitsonbarger defines "cause" as a fundmental deficiency in the first post-conviction proceedings, the Petition must show that the deficiency affected

his ability to raise the specific claim now asserted. Pitsonbarger, note #18. Petitioner asserts that his dyslexia affected his ability to raise said claim within his first petition, which also satisfys "cause" within the meaning of Pitsonbarger.

Clearly if trial counsel would have presented the defense of inducement to commit suicide 720 ILCS 5/12-31(a)(2)(ii) at trial, Petitioner would not have been convicted for the offense of first degree murder and not sentenced to a 50 year prison term. This would satisfy the second prong of Strickland. "Prejudice", in the context, would occur if the petitioner were denied consideration of an error that so infected the entire trial that the resulting conviction or sentence violates due process., Pitsonbarger. note #25. Trial counsel's ineffectiveness for failing to present the viable defense of inducement to commit suicide and its vital evidence infected the entire trial and sentencing to satisfy "prejudice" within the meaning of Pitsonbarger. Therefore, the waiver doctrine should have been relaxed in order for Petitioner to succeed the first stage of post-conviction relief.

The Illinois Post-Conviction Hearing Act makes provisions for claims of actual innocence advanced by post-conviction petitioners. 725 ILCS 5/122-1(c)(West 2005). In this case at bar, Petitioner is contending that he is actually innocent of first degree murder, and trial counsel failed to advance the defense of inducement to commit suicide which would have proved this fact.

Furthermore, Petitioner's claim warrents review under the plain error doctrine. See People v. Ross, 709 N.E.2d 621.

Moreover, the facts as alleged within Petitioner's pro-se petition were sufficient to satisfy the "prejudice" prong of the new Illinois Post-Conviction Hearing Act Statute, and advance the petition to the second stage of post-conviction review. Not to mention how "prejudicial" it is that the Petitioner did not commit the offense of first degree murder and yet he must remain imprisoned for an additional 14-15 years simply because trial counsel failed to represent Petitioner with the zeal required by the Constitution. For the above reasons, appellate court erred in granting appellate counsel leave to withdraw as counsel on Petitioner's appeal.

6. THE APPELLATE COURT ERRED IN FAILING TO RECOGNIZE THE TRIAL COURT ERRED IN DISMISSING PETITIONER'S PRO-SE SUCCESSIVE POST-CONVICTION PETITION AS FRIVOLOUS AND PATENTLY WITHOUT MERIT, WHERE PETITIONER CLEARLY STATED A GIST OF A CONSTITUTIONAL CLAIM.

Within Petitioner's second successive petition he attached supporting affidavits which confirm that Petitioner and his family informed trial counsel of the victim, Lesley O'Farrell's several past suicide attempts, mental state of mind prior to her death, and that Lesley consistently plead with Petitioner to help her end her life because she no longer wanted to live with the pain and suffering that she was going through due to her several medical conditions.

Armed with this vital information, which trial counsel knew prior to trial, trial counsel failed to present said evidence which would prove Petitioner to be innocent of first degree murder during the trial proceedings allowing Petitioner to be

convicted and sentenced for an offense he did not commit.

Petitioner within his petition unequivocally proved that he met the requirements of 720 ILCS 5/12-31(a)(2)(ii) inducement to commit suicide, where Petitioner <u>intentionally participated in</u> <u>physical act by which his wife, Lesley committed suicide</u>. (see argument #1 within)   Petitioner's confession also confirms that Petitioner assisted in Lesley's suicide. (Tr.I-182)

Within Petitioner's response to appellate counsel's motion for leave to withdraw as counsel on appeal, Petitioner further demonstrated through <u>People v. Coleman</u>, 701 N.E.2d 1063, <u>People v. Lemon</u>, 613 N.E. 2d 1234 and <u>People v. Seaberg</u>, 635 N.E.2d 126, 130 that Petitioner did in fact present a gist of a Constitutional claim sufficient enough to survive summary dismissal on his petition. (see attached)

To further assist the appellate court, Petitioner relied on <u>People v. Novak</u>, 643 N.E.2d 762 and <u>People v. Bryant</u>, 499 N.E.2d 413 to show   that   720 ILCS 5/12-31(a)(2)(ii) qualifies as a lesser included offense of first degree murder  which contradicts the trial court ruling to prove err.   (see attached and argument #1 within)   Due to the foregoing reasons the appellate court erred in allowing appellate counsel to withdraw on Petitioner's appeal.

### 6.
### CONCLUSION

Based on the foregoing arhuments, Petitioner prays that this Honorable Court will grant him leave to appeal to address the questions presented herein

Westlaw.

844 N.E.2d 970 (Table)
217 Ill.2d 618, 844 N.E.2d 970 (Table), 300 Ill.Dec. 527
**(Cite as: 217 Ill.2d 618)**

People v. O'Farrell
Ill. 2006.
(The decision of the Court is referenced in the
North Eastern Reporter in a table captioned
"Supreme Court of Illinois Dispositions of Petitions
for Leave to Appeal".)

Supreme Court of Illinois
People
v.
Thomas O'Farrell
**NO. 101736**

JANUARY TERM, 2006
January 25, 2006

Lower Court: No. 1-04-1094

Disposition: Denied.

Ill. 2006.
People v. O'Farrell
217 Ill.2d 618, 844 N.E.2d 970 (Table), 300
Ill.Dec. 527

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

EXHIBIT DD