

**FILED** Cth

JUL 1 2008 μω

Jul 1 2008

MICHAEL W. DOBBINS

CLERK, U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF ILLINOIS

EASTERN DIVISION

| | | |
|---|---|---|
| Thomas O'Farrell-K54340, | ) | Habeas Corpus Petition |
| Plaintiff, | ) | Case # 08 C 2403 |
| | ) | |
| | ) | Honorable Milton I. Shadur |
| v. | ) | Presiding Judge |
| | ) | |
| Joseph Mathy, Assistant Warden, | ) | Judge Keys |
| Defendant, | ) | Magistrate Judge |

MOTION FOR RECONSIDERATION AND LEAVE TO FILE REPLY TO STATE'S
LIMITED RESPONSE TO PETITION FOR WRIT OF HABEAS CORPUS INSTANTER

NOW COMES, Thomas O'Farrell-K54340, Plaintiff, Pro-Se, who request and prays that this Honorable Court will grant this motion allowing reconsideration and leave to file reply to State's limited response to petition for writ of habeas corpus.    In support, Plaintiff states as follows:

1) On June 24, 2008, Plaintiff recieved a copy of this Honorable Court's Memorandum Order dated June 18, 2008.

2) Previously to recieving the Memorandum Order, Plaintiff just completed a reply to the State's limited response to petition for writ of habeas corpus, in which, Plaintiff sets forth essential facts that were not in the State's response and unknown to this Honorable Court.    These additional facts were to assist this Honorable Court in rendering a fair decision on said response by the State.

3) Upon reading the Memorandum Order, Plaintiff was devastated to find that his petition for writ of habeas corpus was dismissed as untimely.

4) Plaintiff firmly believes that if this Honorable Court would have had the essential facts within his reply to the State's limited response to Petition for writ of habeas corpus, the Court's ruling would have been different.

5) Granting reconsideration would not prejudice the State as they already filed their response.

-1-

6) Granting Plaintiff leave to file his reply to the State's limited response again would not prejudice the State.

Whereas, there would be no prejudice towards the State, Plaintiff prays and requests that this Honorable Court grant said motion.

June 25, 2008

Thomas O'Farrell-K54340
Pro-Se, Plaintiff

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF ILLINOIS

EASTERN DIVISION

---

Thomas O'Farrell-K54340,                    )

                 Plaintiff,)   Habeas Corpus Petition

                        ) Case # 08 C 2403

                        )   Honorable Milton I. Shadur

         v.                         )   Presiding Judge

                        )

Joseph Mathy, Assistant Warden,  )   Judge Keys

               Defendant,)   Magistrate Judge

---

REPLY TO STATE'S LIMITED RESPONSE TO
PETITION FOR WRIT OF HABEAS CORPUS

       NOW COMES, Petitioner, Thomas O'Farrell-K54340, Pro-Se, who believes that
the State's response to Petitioner's Petition For Writ Of Habeas Corpus needs
a reply so that this Honorable Court has before it all the essential facts so
to render a fair decision.   In support, Petitioner states as follows:

       1) Numbers 1-7 on pages 2-3 of the State's response are true and correct
to the best of Petitioner's (his) knowledge.

       2) Number 8 on page 3 of the response is incorrect as the "Affidavit of
Intent to File an Appeal to the Appellate Court of Illinois, First Judicial
District" was timely filed 28 days after the dismissal of his first post-
conviction petition and in fact the body of the document filed by Petitioner
satisfys the requirements for a notice of appeal set forth in Supreme Court
Rule 606(d). (see exhibits 1, page 18 & 2 attached and incorporated herein by
and with this reference).

       3) Numbers 9-10 on page 4 of the response are true and correct to the best
of his knowledge.

       4) Petitioner notes for the record in regards to number 11 on page 4 of
the response that the Appellate Court recognized the aforesaid "Affidavit of
Intent" which was filed on November 1, 2001 as a "Notice of Appeal" when it
granted Petitioner's motion to dismiss appeal numbers 1-03-2619 & 1-03-3404,

-1-

thus allowing Petitioner the right to appeal his first post-conviction petition, a right that was denied for approximately 2 years and 4 months due to the failure of the Circuit Court Clerk to file said document.

5) Numbers 12-20 on pages 5-7 of the response are true and correct to the best of his knowledge.

6) Petitioner notes for the record regarding number 21 on page 7 of the response, that appeal numbers 1-03-2619 & 1-03-3404, appeals from the denial of Petitioner's second post-conviction petition was sought to be dismissed as moot, voluntarily as to clear the way for an appeal on the dismissal of his first post-conviction petition, in which Petitioner filed on November 1, 2001, 28 days after the dismissal of said petition the aforesaid timely "Affidavit of Intent", which in accordance with S.CT. Rule 606(d) is in fact a "Notice of Appeal". (see exhibits 1, page 18 & 2)

7) Numbers 22-25 on page 8 of the response are true and correct to the best of his knowledge.

8) Petitioner notes for the record regarding number 26 on pages 8-9 of the response, that Petitioner's petition for writ of habeas corpur and all of its attached documentation was placed in the internal mailing system at the Pontiac Correctional Center (PCC) on April 17, 2008, with the postage being prepaid on April 18, 2008 (see exhibits 3 & 4 attached and incorporated herein by and with this reference), approximately 150 days after Petitioner completely exhausted every possible legal remedy that the State of Illinois provides. (see exhibit 6 attached and incorporated herein by and with this reference).

9) Petitioner notes for the record regarding number 27 on page 9 of the response, that the State has failed to recognize the claim of actual and/or factual innocence/fundamental miscarriage of justice which is in and through (B)(1), the ineffective assistance of counsel claim (see pages 9-10 of petition for writ of habeas corpur-person in state custody), filed in this Honorable Court on April 28, 2008.  A fundamental miscarriage of justice occurs when "a Constitutional violation has probably resulted in a conviction of one who is actually innocent". Murray v. Carrier, 106 S.Ct. 2639 (1986); Schlup v. Delo, 115 S.Ct. 851 (1995); Dugger v. Adams, 109 S.Ct. 1211 (1989); Maciel v. Carter, 22 F.Supp.2d 843 (N.D.Ill.)(1998); & U.S. v. Gilmore, 986 F.Supp.491 (1997). Although a prototypical example of "actual innocence" is the case where the State has convicted the wrong person for the crime, one is also actually innocent if the State has the "right person", but he is not guilty of the crime

-2-

with which he is charged. McLaughlin v. Moore, 152 F.Supp.2d 123 (D.N.H.)(2001).
"Moreover, 'actual innocence' means factual innocence". Maciel v. Carter,
supra (1998); Bousley v. U.S., 118 S.Ct. 1604 (1998). We conclude that the
"ends of justice" requires Federal Courts to entertain such petitions only
where the prisoners Constitutional claim is one of a colorable showing of
factual innocence. Kuhlmann v. Wilson, 106 S.Ct. 2616 (1986). A four-justice
plurality of the Supreme Court suggessted that the ends of justice will demand
consideration of the merits of claims only where there is "a colorable showing
of factual innocence". Kuhlmann, supra (1986).  Justice O'Connor wrote in
Carrier that "in an extraordinary case, where a Constitutional violation has
probably resulted in the conviction of one who is actually innocent, a Federal
Habeas Court may grant the writ even in the absence of a showing of cause for
procedural default. Schlup, supra (1995); Murray, supra (1986); Dugger, supra
(1989); Gilmore, supra (1997); Steward v. Gilmore, 80 F.3d 1205 (7th.Cir) (1996);
Milone v. Camp, 22 F.3d 693 (7th Cir)(1994); & Britz v. Cowan, 192 F.3d 1101
(7th Cir)(1999).

   10) With the exception of (B)(1) of number 27 on page 9, the rest of
number 17-29 on pages 9-12 of the response are true and correct to the best of
his knowledge.

   11) Next Petitioner replies to the State's argument sections, A-C on pages
12-24 of the response and to be expeditious, Petitioner will address each
argument seperately as follows:

## REPLY TO ARGUMENT A OF THE RESPONSE

   We * * * hold that the substance of a federal habeas corpus claim must
first be presented to the state courts. Picard v. Connor, 404 U.S. 270 (1971)
at 278.  An application for habeas corpus by one detained under a state court
judgment of conviction for a crime wil be entertained by a federal court only
after all state remedies avilable, including all appellate remedies in the
state courts. Ex Parte Hawk, 321 U.S. 114 (1944) at 116-17; 28 U.S.C. §2254(b)
(1988); & The Habeas Corpus Checklists, 1997 Edition by Ira P. Robbins. Quoting
the habeas corpus checklists, §10.02 "The doctrine of exhaustion of state
judicial remedies is discretionary, not jurisdictional. If a state has a post-
conviction remedy, however, it must be exhausted before the petitioner seeks
federal habeas corpus relief.  Therefore, it would have been procedurally fatal
for Petitioner to file his habeas corpus petition before the complete exhaustion
on November 19, 2007, upon denial of Petitioner's Petition for Leave to Appeal

-3-

on the denial of his first post-conviction petition.

Petitioner again addresses the State's contention that Petitioner did not file a timely notice of appeal from the judgment dismissing his first post-conviction petition on October 4, 2001.  Petitioner states that 28 days after the dismissal of said petition, on November 1, 2001, Petitioner filed by placing 1 original and 5 copies of the following documents: A) "Affidavit of Intent to File an Appeal to the Appellate Court of Illinois, First Judicial District"; B) Motion for leave to file and proceed In Forma Pauperis; C) Motion for appointment of Appellate Panal Counsel or Pro-Bono Counsel; and D) Motion for transcripts and common law records in the internal mailing system at the PCC. (see exhibit 1, pages 10-12 & 16-21).

Although the document Petitioner filed was entitled "Affidavit of Intent to File an Appeal to the Appellate Court of Illinois, First Judicial District", when considered together with the other 3 documents filed in conjunction, which were all timely mailed to the Clerk of Circuit Court, that entitled document effectively was a "Notice of Appeal", sufficient to confer jurisdiction in the Appellate Court. (see exhibit 1, page 18).

Contrary to the State's contentions, Petitioner's "Affidavit of Intent to File an Appeal" could and should have been treated by the Circuit Court as a "Notice of Appeal".   The "Affidavit of Intent" was timely filed, indicated a desire to appeal, identified the final judgment from which Petitioner wanted to appeal, and the accompanying documents identified the date of the order from which Petitioner wanted to appeal, the Court to which the appeal would be taken, the nature of the order, the fact that Petitioner was indigent, without counsel, and wanted counsel appointed, satisfying the requirements for a "Notice of Appeal" set forth in S.Ct. Rule 606(d). (see exhibits 1, page 18 & 2).

It is important to construe pro se filings liberally, Coulter v. Gramely, 93 F.3d 394 (U.S. Ct. App.)(7th Cir)(1996).  Any defects in the document were ones of form, rather than substance, which would have caused no prejudice to the state, and therefore, should have been overlooked, as a notice of appeal is to be liberally construded. People v. Hanson, 555 N.E.2d 797 (4th Dist.)(1990); & People v. Gallagher, 548 N.E.2d 78 (4th Dist)(1989).  A notice of appeal should be considered as a whole and where notice fairly and adequately sets out judgement complained of and relief sought so that party is advised of nature of proceedings then absence of strick technical compliance with form of notice is not fatal. Hamer v. Board of Ed. of Tp, High School Dist., 383 N.E.2d 231 (Ill. App. Ct.)(2nd Dist)(1978);          -4-

People v. New York Cent. R. Co., 63 N.E.2d 405 (Ill.S.Ct.)(1945).

Petitioner contends that the failure of the Clerk to file the "Affidavit of Intent to Appeal" '(Notice of Appeal' in body) was not due to Petitioner's culpable negligence, whereas, the Clerk could and should have filed said document, allowing Petitioner to appeal or formally notify Petitioner that the document was mistitled as to give Petitioner a chance to file an amended notice fo appeal within 30 days as to protect Petitioner's Constitutional rights to appeal. Ebert v. Dr. Scholl's Foot Comfort Shops, Inc., 484 N.E.2d 1178 (Ill.Ct. App.)(1985).   However, this was not the instant case.  The only notification Petitioner ever recieved that his "Affidavit of Intent to Appeal" was improper came from the Court in a letter, on July 24, 2003, approximately 600 days after the initial filing of Petitioner's "Affidavit of Itent to Appeal".  The letter instructed Petitioner to file a "Notice of Appeal" not an "Affidavit of Intent to File an Appeal" on the recent denial of his successive post-conviction petition. (see exhibit 5 attached and incorporated herein by and with this reference).

Had either the Court or its Clerk notified Petitioner back in 2001 and inform his that his document was incorrectly titled, Petitioner could and would have filed an amended notice of appeal and then filed his appeal with the Appellate Court regarding the dismissal of his first post-conviction petition, thus making the argument unnecessary and moot, as Petitioner's petition for habeas corpus would have been filed several years ago.  Instead, Petitioner had to exhaust every possible remedy in Illinois State Courts by filing 2 additional post-conviction petitions in the Circuit Court, taking their appeal to the Appellate Court upon their denial, and then taking their PLA's to the Illinois Supreme Court, which was totally completed on November 29, 2007. (see exhibit 6).

As this Honorable Court can see from the record, Petitioner repeatedly and exhaustively pursued every possible legal option that this State has available by filing the afore said appeal to each court level before proceeding with this current appeal to this Honorable Court.  To now penalize Petitioner for the failure of the Clerk to recognize and file his "Affidavit of Intent to Appeal" as a "Notice of Appeal" would be highly prejudicial to Petitioner given the fact that Petitioner once again would be denied the right to appeal and have this Honorable Court address his meritorious claims within his habeas corpus petition.

### REPLY TO ARGUMENT B OF THE RESPONSE

Here the State contends that had Petitioner been excercising due diligence, he would have sought an affidavit from State's witness, Thomas Dye in 2000-2001. (see page 21 of the response). unfortunately for the State, this scerario is totally impossible for Petitioner who is now and has been incarcerated since 1995.    The Illinois Department of Corrections, Departmental Rules, 20 Ill. Admin. Code, Section 525.120, titled Processing Mail states: "Offenders (such as Petitioner) may correspond with anyone in the free community in accordance with this subpart without approval of the Chief Administrative Officer **except** with employees, former employees, or **releasees of the Department of Corrections" (convicted felons).**  Now the record is very clear about State's witness, Thomas Dye, who has an extremely long criminal record and has been previously incarcerated within the Illinois Department of Correction (see exhibits 7-8 attached and incorporated herein by and with this reference).  This fact can not be argued against by the State and as such incarceration, Petitioner is and was prohibited from having any contact with Mr. Dye per the cited rule herein.

Now the State or this Honorable Court may contend that Petitioner's counsel, who was appointed to represent him in his first post-conviction petition in 2001 would have obtained the needed affidavit from Mr. Dye, however, they could be no more wrong.   Petitioner offers exhibits 9-10 attached and incorporated herein by and with this reference, to show appointed counsel insisted that Petitioner remove the claim of prosecutor misconduct from his pro-se first post-conviction petition because counsel who had other clients before former Assistant State's Attorney's Patrick Quinn, who is now an Appellate Justice and Nicholas Ford, who is now a Circuit Court Judge, feared that Quinn and Ford would be pissed at her for the claim of prosecutorial misconduct within the first post-conviction petition and take it out on her other clients. ( see exhibits 9-10).

Petitioner only recieved a copy of the pertinent transcripts of the State's witness, Thomas Dye shortly after October 18, 2004 from Steven Mannings attorney, Jon Rosenblatt of Loevy & Loevy, Attorneys at Law.    Had it not been for Attorney Rosenblatt, Petitioner would have never even known that the deposition was taken or that Mr. Dye would give him the direct evidence which proves the length former ASA Quinn went to secure the sentence against Petitioner. This act is simply criminal and as the offense of perjury is an offense without a statute of limitation for prosecution, there should not be a statute of

-6-

limitation to raise such a claim within a federal habeas curpus, here given the fact that upon recieving the deposition, Petitioner immediately incorporated the newly discovered evidence which confirms perjury and prosecutoral misconduct within his new appeal, dispite the fact that the Court did not even consider it or its value.

Within the State's response the State acknowledges the fact that their own witness, Thomas Dye admitted to perjury and that ASA Quinn pressured Mr. Dye to testify falsely at Petitioner's sentencing hearing. (see page 21 of the response), however the State simply wants this Honorable Court to turn a blind eye to the perjury althought Petitioner's due process rights were proven beyond a reasonable doubt to be violated.

The Supreme Court has "consistently held that a conviction obtained by the knowing use of perjury testimony is fundamentally unfair, and must be set aside". <u>U.S. v. Agurs</u>, 96 S.Ct, 2392 (1976); <u>Mooney v. Holohan</u>, 55 S.Ct. 340 (1935).   "Indeed, if it is established that the government knowingly permitted the introduction of false testimony, reversal is 'virtually automatic'". <u>Napue v. Illinois</u>, 79 S.Ct. 1173 (1959);  <u>U.S. v. Boyd</u>, 833 F.Supp. 1277 (N.D.Ill.) (1993).    The State can not argue that the fact the prosecution knowingly permitted the use of perjured testimony in Petitioner's sentencing hearing and althought the case cited above states at trial to obtain a conviction, due process is still guaranteed at sentencing as well.   Petitioner further relys upon the case law contained within Ground One on page 1-2 of his Memorandum of Law in Support of Habeas Corpus Petition which was filed at the same time as said petition.

Petitioner also request that this Honorable Court entertain the Plain Error  Rule  in considering this reply.   "Nothing in the Rule precludes taking notice of plain error affecting substantial rights although they were not brought to the attention of the Court". Federal Rules of Evidence, 103(d). The plain error rule (Supreme Court Rule 615(a)) allows consideration of non-preserved errors in two circumstances: (1) Where the evidence is closely balanced, and (2) **where the error is so fundamental and of such magnitude that the defendant was denied a fair trial**. <u>People v. Herrett</u>, 561 N.E.2d 1; <u>People v. Young</u>, 538 N.E.2d 461 ; <u>People v. Sanders</u>, 457 N.E.2d 1241.   Because a substantial right is involved, the plain error rule applies. <u>People v. Lofton & Stewart</u>, 740 N.E.2d 782.

## REPLY TO ARGUMENT C OF THE RESPONSE

The State contends that Petitioner is not entitled to equitable tolling.

-7-

Petitioner states that he may or may not be responsable for his attorneys misconduct and that it may or may noy be attributable to Petitioner, however, even the State can not say that Petitioner is responsable for the action or inaction of the Court or its Clerk.    Petitioner believes that the failure to file his "Affidavit of Intent to File an Appeal to the Appellate Court of Illinois, First Judicial District" which satisfys the requirement of a "Notice of Appeal" set forth in Supreme Court Rule 606(d) was not due to his culpable

negligence and qualifys as an extraordinary circumstance beyond Petitioner's control which prevented him from timely filing of his "Affidavit of Intent to Appeal" ("Notice of Appeal") with the Appellate Court, thus preventing a timely filing of his federal habeas corpus petition to warrant the equitable tolling of the time from November 1, 2001 to November 29, 2007. (see exhibits 1, page 18 & 6).

For the reason set forth herein, the petition for writ of habeas corpus is in fact timely and the State should be ordered to answer said petition.

June 25, 2008

Thomas O'Farrell,
K54340, Pro-Se,
Plaintiff



*Exhibit 1*

No. 1-04-2481

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the Circuit Court |
| | ) | of Cook County, Illinois. |
| Respondent-Appellee, | ) | |
| | ) | |
| -vs- | ) | No. 95 CR 30463. |
| | ) | |
| THOMAS O'FARRELL, | ) | Honorable |
| | ) | Michael P. Toomin, |
| Petitioner-Appellant. | ) | Judge Presiding. |

## PROOF OF SERVICE

TO:   Richard A. Devine                 Mr. Thomas O'Farrell
      Cook County State's Attorney      Register No. K-54340
      300 Daley Center                  Pontiac Correctional Center
      Chicago, Illinois 60602           P.O. Box 99
                                        Pontiac, IL 61764

    You are hereby notified that on September 3, 2004, we personally delivered the original and three copies of the attached Motion for Leave to Reply Instanter to the State's Response to the Motion for Leave to File a Late Notice of Appeal in the above-entitled cause to the Clerk of the above Court, a copy of which is hereby served on you.

                                        KARI K. FIREBAUGH
                                        Assistant Appellate Defender

STATE OF ILLINOIS    )
                     )  SS
COUNTY OF COOK       )

    The undersigned, being first duly sworn on oath, deposes and says that he personally delivered the required number of copies of the attached Motion to the Clerk of the above Court and to the State's Attorney of Cook County on September 3, 2004.

                                        CLERK

SUBSCRIBED AND SWORN TO BEFORE ME
on September 3, 2004.

NOTARY PUBLIC
Official Seal
Alicia M. Corona
Notary Public State of Illinois
My Commission Expires 06/21/08

No. 1-04-2481

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the Circuit Court |
| | ) | of Cook County, Illinois. |
| Respondent-Appellee, | ) | |
| | ) | |
| -vs- | ) | No. 95 CR 30463. |
| | ) | |
| THOMAS O'FARRELL, | ) | Honorable |
| | ) | Michael P. Toomin, |
| Petitioner-Appellant. | ) | Judge Presiding. |

## APPELLANT'S MOTION FOR LEAVE TO REPLY INSTANTER TO THE STATE'S RESPONSE TO THE MOTION FOR LEAVE TO FILE A LATE NOTICE OF APPEAL

Appellant, Thomas O'Farrell, by Michael J. Pelletier, Deputy Defender, and Kari K. Firebaugh, Assistant Appellate Defender, Office of the State Appellate Defender, respectfully requests that this Court allow him leave to reply to the State's response to his motion for leave to file a late notice of appeal.

1.    On August 24, 2004, appellant filed a motion asking this Court to allow him leave to file a late notice of appeal from the dismissal of his first post-conviction petition on October 4, 2001, where the record showed that the clerk's failure to file a notice of appeal was not due to the appellant's culpable negligence.

2.    Specifically, appellant maintained that although the document he filed was entitled "Affidavit of Intent to File an Appeal to the Appellate Court of Illinois, First Judicial District," when considered together with his Motion for Leave to File and Proceed In Forma Pauperis, Motion for Appointment of Appellate Panel Counsel or Pro-Bono Counsel, and Motion for

Transcripts and Common Law Records, which were all timely mailed to the clerk of the circuit court on November 1, 2001, that document effectively was a notice of appeal, sufficient to confer jurisdiction on this Court.

3.   On August 30, 2004, the State filed a response to appellant's motion contending that this Court did not have jurisdiction to consider the motion, where appellant did not file a timely notice of appeal and his "Affidavit of Intent to File an Appeal to the Appellate Court of Illinois, First Judicial District," was insufficient to confer jurisdiction on this Court.

4.   Contrary to the State's assertion, however, appellant's affidavit of intent to file an appeal could and should have been treated by the circuit court as a notice of appeal. The affidavit was timely filed, indicated a desire to appeal, and identified the final judgment from which appellant wanted to appeal, and the accompanying documents identified the date of the order from which appellant wanted to appeal, the court to which the appeal would be taken, the nature of the order, and the fact that he was indigent, without counsel, and wanted counsel appointed, satisfying the requirements for notices of appeal set forth in Supreme Court Rule 606(d). Any defects in the document were ones of form, rather than substance, which would have caused no prejudice to the State, and therefore, should have been overlooked, as a notice of appeal is to be liberally construed. *People v. Hanson*, 198 Ill. App. 3d 160, 555 N.E.2d 797 (4th Dist. 1990); *People v. Gallagher*, 191 Ill. App. 3d 488, 548 N.E.2d 78 (4th Dist. 1989). The State has cited no authority to the contrary.

5.   As appellant did timely file a notice of appeal, this Court has jurisdiction to consider this motion, which merely seeks to remedy the failure of the circuit court clerk to properly process his notice of appeal.

6.   The State additionally contends that it is unclear whether the four documents

attached to appellant's original motion were the same documents addressed by the trial judge on

December 5, 2001, since the record shows that they were not stamped "received" by the clerk of

the circuit court until December 19, 2001.

7.    Although the State is correct that the documents attached to the appellant's motion

were not stamped "received" until after the court's ruling, it is apparent from the record that these

were the same documents addressed by the court.  The proof of service and notice of filing

indicates that all four documents were mailed to the clerk of the circuit court on November 1,

2001.  The memorandum of orders further shows that the three motions were filed by the clerk

on November 30, 2001, the same day that the hearing date was assigned, and, at the hearing, the

court specifically stated that appellant's affidavit of intent to file an appeal had been received by

the clerk in November. (*See* Attachments to the Original Motion). While the documents were not

stamped received until December 19, 2001, the record shows that the clerk returned appellant's

copies to him without file stamping them, and on December 9, 2001, appellant sent them back to

the clerk requesting that she do so.  Appellant continued to make efforts to have his affidavit of

intent filed and processed as a notice of appeal, but was unsuccessful. (*See* Attached Documents).

8.    Thus, where the appellant's "Affidavit of Intent to File an Appeal to the Appellate

Court of Illinois, First Judicial District" could and should have been treated by the circuit court as

a notice of appeal because it was timely filed and sufficient to confer jurisdiction upon this Court,

the clerk's failure to file a notice of appeal was not due to the appellant's culpable negligence,

and therefore, appellant's motion for leave to file a late notice of appeal should be allowed.

WHEREFORE, appellant respectfully requests that the Court grant this motion.

Respectfully submitted,

KARI K. FIREBAUGH
Assistant Appellate Defender
Office of the State Appellate Defender
203 North LaSalle Street - 24th Floor
Chicago, Illinois 60601
(312) 814-5472

COUNSEL FOR PETITIONER-APPELLANT

STATE OF ILLINOIS )
                  )  SS
COUNTY OF COOK    )

## AFFIDAVIT

Kari K. Firebaugh, being first duly sworn on oath, deposes and says that she has read the foregoing Motion by her subscribed and the facts stated therein are true and correct to the best of her knowledge and belief.

KARI K. FIREBAUGH
Assistant Appellate Defender

SUBSCRIBED AND SWORN TO BEFORE ME
on September 3, 2004.

NOTARY PUBLIC

Official Seal
Alicia M. Corona
Notary Public State of Illinois
My Commission Expires 06/21/08

STATE OF ILLINOIS)
COUNTY OF COOK )ss
                      )

RECEIVED

APR 0 2 2002

CLERK OF THE CIRCUIT COURT
CRIMINAL DIVISION

FILED
APR 17 2002
DOROTHY BROWN
CLERK OF CIRCUIT COURT

IN THE CIRCUIT COURT OF COOK COUNTY
COUNTY DEPARTMENT - CRIMINAL DIVISION

PEOPLE OF THE STATE OF ILLINOIS,)
        PLAINTIFF-RESPONDENT, )
                      )
        -v-           )
                      )
THOMAS O'FARRELL,     )
        DEFENDANT-PETITIONER,)

No. 95 CR 30463

Paul Biebel
Chief Justice Presiding

## MOTION TO COMPEL CLERK OF THE CIRCUIT COURT TO FILE DEFENDANTS AFFIDAVIT OF INTENT TO FILE AN APPEAL TO THE APPELLATE COURT OF ILLINOIS WITH THE CLERK OF THE APPELLATE COURT.

NOW COMES, Defendant, Thomas O'Farrell, Pro-Se, and request this Honorable Court enter an order granting Defendants Motion. In support of this Motion Defendant states as follows:

1) On November 1, 2001, Defendant filed with the Clerk of the Circuit Court of Cook County, Dorothy Brown One (1) original and Five (5) copies of the following documents:

A) Affidavit of intent to file appeal to the Appellate Court of Illinois, First Judicial District;

B) Motion for leave to file and proceed In Forma Pauperis;

C) Motion for appointment of Appellate Panel Counsel or Pro-Bono Counsel; and

D) Motion for transcripts and common law records. Defendant also served a copy of the above documents upon the State's Attorney of Cook County, Illinois, Richard A. Devine. (see exhibits 1-3 attached and incorporated herein by and with this reference)

-1-

(7)

00099

2) On November 19, 2001 the Clerk of the Circuit Court, Dorothy Brown sent Defendants copies of the above documents back o Defendant. (NOTE: copies were not file stamped)(see exhibit 4 attached and incorporated herein by and with this reference)

3) On December 9, 2001, Defendant sent the above documents back to the Clerk of the Circuit Court, Dorothy Brown to be file stamped and returned to Defendant. (see exhibit 5 attached and incorporated herein by and with this reference)

4) On December 19, 2001, Clerk, Brown file stamped and returned the above documents to Defendant. (see exhibits 6-10 attached and incorporated herein by and with this reference)

5) On March 3, 2002, Defendant wrote to the Clerk of the Circuit Court, Dorothy Brown requesting that a copy of the Affidavit of Intent to File an Appeal to the Appellate Court, 'inois, First Judicial District to the Clerk of the Appellate Court. (see exhibits 11&12 attached and incorporated herein by and with this reference)

6) On March 3, 2002, Defendant wrote to the Clerk of the Appelate Court requesting that he contact the Circuit Court Clerk, Dorothy Brown and have Clerk Brown send a copy of the above Affidavit of Intent to his office. (see exhibits 13&14 attached and incorporated herein by and with this reference)

7) On March 7, 2002, Clerk of the Appellate Court, Steven M. Ravid wrote Defendant and informed Defendant that there has not been a Notice of Appeal filed with his office by Clerk Brown and until Clerk Brown sends a copy to his office Defendant would not

-2-

Ⓑ

be able to appeal because there has not been a docketing number assigned due to Clerk Browns failure to file Defendants document th the Clerk of the Appellate Court. (see exhibit 15 attached and incorporated herein by and with this reference)

WHEREFORE, Defendant prays that this Honorable Court will grant Defendants motion and order the Clerk of the Circuit Court of Cook County, Illinois, Dorothy Brown to prepare and send Defendants Affidavit of Intent to file an Appeal to the Appellate Court of Illinois, First Judicial District to the Clerk of the Appellate Court, Steven M. Ravid.

Respectfully submitted,

Thomas O'Farrell, Pro-Se,
Defendant-Petitioner

-3-

⑨

STATE OF ILLINOIS )
)ss
COUNTY OF LIVINGSTON )

## PROOF OF SERVICE

I, the undersigned, hereby certify under penalty of
perjury and as otherwise provided by law that I have served a
copy of the foregoing documents upon the following parties of
record by placing same into an envelope with the following names
and addresses in plain view:

Dorothry Brown,
Clerk of the Circuit Court
2650 S. California Ave.
Chicago, Illinois 60608

State's Attorney for Cook County,
Richard A. Devine
2650 S. California Ave.
Chicago, Illinois 60608

and placing same into the United States Mail at the Pontiac
Correctional Center, Pontiac, Illinois with proper postage to be
fully prepaid by the State of Illinois in accordance with the
policies and procedures of the Pontiac Correctional Center on
this 1 day of November, 2001.

By _____
Thomas O'Farrell, Pro-Se
Defendant-Petitioner

## NOTICE OF FILING

PLEASE TAKE NOTICE, that on the date stated herein, I
mailed to Dorothy Brown, Clerk of the Circuit Court of Cook
County, Illinois for filing in the case of People v. O'Farrell,
Case Number 95 CR 30463 One (1) original and Five (5) copies of
the following documents:
affidavit of intent to file an Appeal to the Appellate Court of
Illinois First Judicial District;   Motion for leave to file and
proceed In Forma Pauperis;    Motion for appointment of Appellate
Panel Counsel or Pro-Bono Counsel; and Motion for transcripts and
common law records
with One (1) to be stamped filed and returned to me.

Respectfully submitted,

_____
Thomas O'Farrell, Pro-Se,
Defendant-Petitioner

Sbsrcibed and Sworn to before me
o this 1 day of November, 2001.

_____
Notary Public

**"OFFICIAL SEAL"**
Paula G. Rich
Notary Public, State of Illinois
My Commission Exp. 04/24/2005

(10)

00102

**REQUEST FOR PAYMENT**

STATE OF ILLINOIS
DEPARTMENT OF CORRECTIONS

Name (print): Thomas Shaffett    I.D. No.: K54340    Date: Nov 1, 2007

Please pay to: U.S. Postal Service    Housing Unit: Sfc 6H

Address: _____

City: _____ State: _____ Zip: _____

the sum of _____ dollars and _____ cents

and charge to my account, for Legal Mail Clerk Brown

Notice of Appeal

APPROVED    _____    K54340

NOT APPROVED    Warden Signature

Assistant Warden/Superintendent/Designee    Witness

**REQUEST FOR PAYMENT OF POSTAGE**

I hereby request and authorize payment of postage for the attached mail.

_____ Inmate Signature

ID No.    K54340

**FOR TRUST FUND USE ONLY**

Trust Fund Balance    $ _____
Less amount of payment    $ _____
Current balance after payment    $ _____

Check No. _____    Date _____

**REQUEST FOR PAYMENT OF POSTAGE**

Postage requested in the amount of _____ dollars    72 cents

Postage Paid    LEGAL

**FOR JUVENILE DIVISION USE ONLY**

Received by: _____ (Staff) _____ Date

Received by: _____ (Youth) _____ Date

C 928 (09/91)    IL 426-0207

11

REQUEST FOR PAYMENT

DEPARTMENT OF CORRECTION

Date:

Name (print): THOMAS Chaffen        I.D. No.: K54340        Housing Unit: SPC 611

Please pay to: u.s. postal service

Address: _____

_____ State: _____ Zip: _____

The sum of _____ dollars and _____ cents

and charge to my account, for Legal Mail Dick Devine

Notice of Appeal _____

APPROVED _____

NOT APPROVED _____ #K54340

Assistant Warden/Superintendent/Designee        Witness

---

**REQUEST FOR PAYMENT OF POSTAGE**

I hereby request and authorize payment of postage for the attached mail.

_____ (I.D. Holder's Signature)

ID No. K54340

**FOR TRUST FUND USE ONLY**

| | | |
|---|---|---|
| Trust Fund Balance | $ | _____ |
| Less amount of payment | $ | _____ |
| Current balance after payment | $ | _____ |

Check No. _____ Date _____

Business Office

---

**REQUEST FOR PAYMENT OF POSTAGE**

Postage requested

In the amount of _____ dollars 57 cents

Postage Paid LEGAL

DOC (09/91)

---

**FOR JUVENILE DIVISION USE ONLY**

Received by: _____

(Staff)        Date

Received by: _____

(Youth)        Date

JL 426-0207

18

Dorothy Brown,
Clerk of the Circuit Court

December 9, 2001

Ms Brown,

On November 1, 2001 I sent to you for filing (1) one original and (5) five copies of the enclosed documents. I recieved my return copies but they were not stamped filed. Can you please stamp file the documents enclosed the same date as the original and send them back to me. I would also like to know the status of these documents.

THANK you for your time and cooperation in this matter.

Sincerely,
Thomas Garrett

Handwritten Copy { File

14

00106



Thomas O. Farrell #K-54340
P.O. Box 99

RECEIVED
DEC 1 9 2001
CLERK OF THE CIRCUIT COURT
CRIMINAL DIVISION



STATE OF ILLINOIS)
                 )ss
COUNTY OF COOK   )

## IN THE CIRCUIT COURT OF COOK COUNTY
### COUNTY DEPARTMENT - CRIMINAL DIVISION

| | |
|---|---|
| PEOPLE OF THE STATE OF ILLINOIS,)<br>        PLAINTIFF-RESPONDENT,)<br>        -v-                      )<br>THOMAS O'FARRELL,            )<br>        DEFENDANT-PETITIONER,)<br>                             ) | Appeal from the<br>Circuit Court of<br>Cook County, Illinois<br><br>No. 95 CR 30463<br><br>Michael P. Toomin<br>Judge Presiding |

### MOTION FOR TRANSCRIPTS AND COMMON LAW RECORDS

NOW COMES, Defendant, Thomas O'Farrell, Pro-Se, and request this Honorable Court enter an order granting Defendants Motion. In support of this Motion Defendant states as follows:

1) Defendant is in the custody of the State of Illinois, under the Department of Corrections of said State, pursuant to an order entered February 24, 1997 under indictment number above in the Circuit Court of Cook County, Illinois.

2) That Defendant is without funds, assets, personal, or real property to pay the costs for the documents requsted herein:

a) Transcripts of all Court proceedings and Motions entered;

b) Motions and any written responses to this particular case number;

c) Orders entered in this cause; and

d) Any papers filed on behalf and/or against Defendant involving the initial arrest.

**RECEIVED**

DEC 1 9 2001

CLERK OF THE CIRCUIT COURT
CRIMINAL DIVISION

-1-



00108

3) In accordance with Supreme Court Rules:

The report of the proceedings are hereby requested and held pursuant to Supreme Court Rule 607 of Chapter 110A of the Illinois Complied Statutes 725 ILCS 5/122-1 of the Post-Conviction Act.

WHEREFORE, Defendant prays that this Honorable Court will grant Defendants Motion and order the Clerk of the Circuit Court, Dorothy Brown to prepare and forward a copy of the above records to Defendant.

Respectfully submitted,

Thomas O'Farrell, Pro-Se,
Defendant-Petitioner

-2-

17

00109

STATE OF ILLINOIS)
)ss
COUNTY OF COOK )

IN THE CIRCUIT COURT OF COOK COUNTY
COUNTY DEPARTMENT - CRIMINAL DIVISION

PEOPLE OF THE STATE OF ILLINOIS,)
PLAINTIFF-RESPONDENT,)    Appeal from the
Circuit Court of
-v-    )    Cook County, Illinois
)
THOMAS O'FARRELL,    )    No. 95 CR 30463
DEFENDANT-PETITIONER,)
)    Michael P. Toomin
)    Judge Presiding

AFFIDAVIT OF INTENT TO FILE AN APPEAL
TO THE APPELLATE COURT OF ILLINOIS, FIRST JUDICIAL DISTRICT

NOW COMES, Defendant, Thomas O'Farrell, Pro-Se, Defendant-
Petitioner who states as follows:

1) That the above captioned cause was decided by the
Honorable Michael P. Toomin on October 4, 2001.

2) That Defendant intends, in good faith to file an Appeal
the Appellate Court of Illinois, First Judicial District
in the above captioned cause.

3) That the undersigned, first being duly Sworn on oath,
deposes and states that the statements contained herein are true
in substance and in fact.

Respectfully submitted,

Thomas O'Farrell, Pro-Se,
Defendant-Petitioner

STATE OF ILLINOIS)
                 )ss
COUNTY OF COOK    )

IN THE CIRCUIT COURT OF COOK COUNTY
COUNTY DEPARTMENT - CRIMINAL DIVISION

PEOPLE OF THE STATE OF ILLINOIS,)    Appeal from the
          PLAINTIFF-RESPONDENT,)     Circuit court of
                               )     Cook County, Illinois
            -v-                )
                               )
THOMAS O'FARRELL,              )     No. 95 CR 30463
          DEFENDANT-PETITIONER,)
                               )     Michael P. Toomin
                               )     Judge Presiding

## MOTION FOR LEAVE TO FILE AND PROCEED IN FORMA PAUPERIS

NOW COMES, Defendant, Thomas O'Farrell, Pro-Se, and request this Honorable Court enter an order granting Defendants Motion. In support of this Motion Defendant states as follows:

1) That Defendant is in the custody of the State of Illinois, under the Department of Corrections of said State, pursuant to order entered February 24, 1997 under indictment number above in the Circuit Court of Cook County, Illinois.

2) That Defendant is without funds, assets, personal, or real property to pay the costs of the proceedings on Appeal.

WHEREFORE, Defendant prays that this Honorable Court will grant Defendants Motion and allow Defendant to proceed In Forma Pauperis.

Respectfully submitted,

Thomas O'Farrell, Pro-Se,
Defendant-Petitioner

19

EXHIBIT 10

STATE OF ILLINOIS)
                 )ss
COUNTY OF COOK   )

IN THE CIRCUIT COURT OF COOK COUNTY
COUNTY DEPARTMENT - CRIMINAL DIVISION

PEOPLE OF THE STATE OF ILLINOIS,)
        PLAINTIFF-RESPONDENT,)
                             )
         -v-                 )
                             )
THOMAS O'FARRELL,            )
        DEFENDANT-PETITIONER,)
                             )

Appeal from the
Circuit Court of
Cook County, Illinois

No. 95 CR 30463

Michael P. Toomin
Judge Presiding

## MOTION FOR APPOINTMENT OF APPELLATE PANEL COUNSEL OR PRO-BONO COUNSEL

NOW COMES, Defendant, Thomas O'Farrell, Pro-Se, and request this Honorable Court enter an order granting Defendants Motion. In support of this Motion Defendant states as follows:

1) Defendant is in the custody of the State of Illinois, under the Department of Corrections of said State, pursuant to order entered February 24, 1997 under indictment number above in the Circuit Court of Cook County, Illinois.

2) That Defendant is without funds, assets, personal, or real property to pay the costs of counsel in the Appeal proceedings.

3) Defendant is now Appealing the ruling on Defendants Post-Conviction Petition, where Defendant raised Ineffective Assistance of Trial Counsel an Assistant Public Defender and Appellate Counsel an Assistant State Appellate Defender.

4) Defendant firmly believes that the Public Defenders Office and the Office of the State Appellate Defender will

-1-

20

not defend Defendant to the best of their ability on Defendants Appeal due to the issue of Ineffective Assistance of Counsel on both an Assistant Public Defender and on Appellate Counsel an Assistant Appellate Defender.    Defendant believes that the Offices of the Public Defender and State Appellate Defender would proceed half-heartedly on filing Defendants Appeal, therefore violating Defendants Rights to Due Process secured to all in the State of Illinois and United States Constitutions.

WHEREFORE, Defendant prays that this Honorable Court will grant Defendants Motion and appoint either an Appellate Panel Counsel or Pro-Bono Counsel to represent Defendant in the Appeal to the Appellate Court of Illinois, First Judicial District.

Respectfully submitted,

Thomas O'Farrell, Pro-Se,
Defendant-Petitioner

(21)

00117

**REQUEST FOR PAYMENT**

STATE OF ILLINOIS
DEPARTMENT OF CORRECTIONS

Date: _MAR 3, 2002_

Name (print): _Thomas Clardell_     I.D. No.: _K54340_     Housing Unit: _SEC 601_

Please pay to: _U.S. Postal Service_

Address: _____

City: _____ State: _____ Zip: _____

The sum of _____ dollars and _____ cents

and charge to my account, for _Clerk Dorothy Brown_

_____

_____

☐ APPROVED

☐ NOT APPROVED

_Inmate Signature_          _ID No._

_Assistant Warden/Superintendent/Designee_          _Witness_

---

**REQUEST FOR PAYMENT OF POSTAGE**

I hereby request and authorize payment of postage for the attached mail.

_____
_Inmate Signature_

ID No. _K54340_

**FOR TRUST FUND USE ONLY**

Trust Fund Balance          $ _____

Less amount of payment     $ _____

Current balance after payment  $ _____

Check No. _____

_Business Office_

---

**REQUEST FOR PAYMENT OF POSTAGE**

Postage requested
in the amount of _____ dollars _57_ cents

☐ Postage Paid          _Legal_

DC 826 (09/91)

---

**FOR JUVENILE DIVISION USE ONLY**

Received by: _____
_(Staff)_          _Date_

Received by: _____
_(Youth)_          _Date_

IL 426-0207

22

00114

Thomas O'Farrell
K54340
P.O. Box 99
Pontiac, Illinois 61764

February 24, 2002

Gilbert Marchman,
Clerk of the Appellate Court,
First Judicial District
160 N. LaSalle - Suite S1400
Chicago, Illinois 60601

RE: 95 CR 30463

Mr. Marchman,

On November 1, 2001, I sent to the Clerk of the Circuit Court of Cook County, Illinois, Dorothy Brown an Affidavit of Intent to Appeal to the Appellate Court, First Judicial District which was stamped received in the Clerks Office on December 19, 2001.

I have been awaiting a response from your office notifying me of my docket number so that I may proceed in filing my appeal. I can only assume from the non-contact of your office that the Clerks office in the Circuit Court of Cook County has not sent a copy of the document to your office for a docket number.

I am enclosing a copy of the documents that were filed in Ms. Brown's office and request that your office contact theirs so that they can send you a copy of the original document so that I may proceed in my appeal after you issue a docket number.

Thank you for your time and cooperation in this matter.

Sincerely,

Thomas O'Farrell

C: file
   clerk of circuit court of cook county, dorothy brown

23

# REQUEST FOR PAYMENT

STATE OF ILLINOIS
DEPARTMENT OF CORRECTIONS

Date: _MAR. 3, 2002_

Name (print): _THOMAS CHAFFERS_   I.D. No.: _K54340_   Housing Unit: _SPC 601_

Please pay to: _U.S. Postal Service_

Address: _____

_____   State: _____   Zip: _____

In sum of _____ dollars and _____ cents

and charge to my account, for _CLERK GILBERT MARCHMAN_

_____

_____

APPROVED

NOT APPROVED   _____   _____
                  Inmate Signature            ID No.

Assistant Warden/Superintendent/Designee   _____   _____
                                                                Witness

| REQUEST FOR PAYMENT OF POSTAGE |
| --- |
| I hereby request and authorize payment of postage for the attached mail. |
| _____ |
| Inmate Signature |
| ID No. _K54340_ |

## FOR TRUST FUND USE ONLY

Trust Fund Balance           $ _____

Less amount of payment       $ _____

Current balance after payment $ _____

Check No. _____   Date _____
                    Registered Officer

## REQUEST FOR PAYMENT OF POSTAGE

Postage requested
in the amount of _____ dollars  _57_ cents

☐ Postage Paid   _Leon_

## FOR JUVENILE DIVISION USE ONLY

Received by: _____   _____
            (Staff)              Date

Received by: _____   _____
            (Youth)             Date

DC 826 (09/91)

IL 426-0207

CLERK'S OFFICE

APPELLATE COURT FIRST DISTRICT
STATE OF ILLINOIS
160 NORTH LASALLE STREET, RM S1400
CHICAGO, ILLINOIS 60601

STEVEN M. RAVID
CLERK

March 7, 2002

Thomas O'Farrell
Reg. No. K-54340
P. O. Box 99
Pontiac, IL 61764

In Re: 95CR30463

Dear Mr. O'Farrell:

Enclosed and being returned to you is your February 24, 2002 letter and attached documents.

In response to your inquiry in your letter, please be advised that the Appellate Court does not have a Notice of Appeal docketed for you for a current appeal from Circuit Court number 95CR30463, which means this Court has not received from the Circuit Court a Notice of Appeal timely filed with the Clerk of the Circuit Court.

If you still wish to appeal, you must file a motion in the Appellate Court for leave to file a Late Notice of Appeal that meets all the requirements of Supreme Court Rules 606(c) and 610 (which incorporates Rule 361). Those Rules provide in pertinent part:

**Rule 606(c)**
On motion supported by a showing of reasonable excuse for failure to file a notice of appeal on time filed in the reviewing court within 30 days of the expiration of the time for filing the notice of appeal, or an motion supported by a showing by affidavit that there is merit to the appeal and that the failure to file a notice of appeal on time was not due to appellant's culpable negligence, filed in the reviewing court within six months of the expiration of the time for filing the notice of

appeal, in either case accompanied by the proposed notice of appeal, the reviewing court may grant leave to appeal and order the clerk to transmit the notice of appeal to the trial court for filing.

**Rule 610**
Motions in reviewing courts shall be governed by Rule 361...

**Rule 361(b)(1)**
[A] motion, together with proof of service, shall be filed with the clerk.  Service and filing will be excuse only in case of necessity.

**Rule 361(b)(3)**
Motions, supporting papers, and responses filed... in the Appellate Court [shall consist of] an original and three copies .... A proposed order phrased in the alternative (e.g., "Allowed" or "Denied") shall be submitted with each motion, and a copy served upon all counsel of record.  A copy of the style of such orders may be obtained from the Clerk's Office.  No motion shall be accepted by the clerk unless accompanied by such a proposed order.

Very truly yours,

Cindy Wyle
Administrative Attorney

CW/cb

(26)

00118

# OFFICE OF THE CIRCUIT COURT CLERK OF COOK COUNTY

### CRIMINAL BUREAU
CRIMINAL DIVISION
Room 526
2650 S. California Ave
Chicago, Illinois 60608
(773) 869-3141
FAX (773) 869-4444

TIMOTHY BROWN
CLERK OF THE COURT

RICHARD SCIARAFFA
ASSOCIATE CLERK
CRIMINAL BUREAU
(773) 869-3140

Date: *April 25, 2002*

*Thomas O'Farrell #K54340*
*Pontiac C.C.*
*P.O. Box 99*
*Pontiac, IL 61764*

Case Number: *95CR30463-01*

Dear *Thomas O'Farrell*,

Please be advised that on *April 16, 2002*

The Honorable Judge *Michael P. Toomin* denied

your motion ~~for~~ *to Compel Clerk to file*

*Defendent's Appeal with Appellate Court.*

If you have any further questions or requests, please feel free to notify our office.



Sincerely,

CRIMINAL DIVISION
MOTION DEPARTMENT

COMMENTS: _____

_____

_____

MISSION STATEMENT

The mission of the office of the Clerk of the Circuit Court of Cook County is to serve the citizens of Cook County and the participants in the judicial system in a timely, efficient and ethical manner. All services, information and court records will be provided with courtesy and cost efficiency.

27

No. 1-04-2481

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the Circuit Court |
| | ) | of Cook County, Illinois. |
| Respondent-Appellee, | ) | |
| | ) | |
| -vs- | ) | No. 95 CR 30463. |
| | ) | |
| THOMAS O'FARRELL, | ) | Honorable |
| | ) | Michael P. Toomin, |
| Petitioner-Appellant. | ) | Judge Presiding. |

## ORDER

This matter coming to be heard on appellant's motion, all parties having been duly notified, and the Court being advised in the premises,

IT IS HEREBY ORDERED:

That appellant's motion for leave to file a reply instanter to the State's response to his motion for leave to file a late notice of appeal is hereby allowed/denied.

_____
PRESIDING JUSTICE

_____
JUSTICE

_____
JUSTICE

DATE: _____

KARI K. FIREBAUGH
Assistant Appellate Defender
Office of the State Appellate Defender
203 North LaSalle Street - 24th Floor
Chicago, Illinois 60601
(312) 814-5472
COUNSEL FOR PETITIONER-APPELLANT



No. 1-03-3404

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the Circuit Court |
| | ) | of Cook County, Illinois. |
| Respondent-Appellee, | ) | |
| | ) | |
| -vs- | ) | No. 95 CR 30463. |
| | ) | |
| THOMAS O'FARRELL, | ) | Honorable |
| | ) | Michael P. Toomin, |
| Petitioner-Appellant. | ) | Judge Presiding. |

## PROOF OF SERVICE

TO:   Richard A. Devine                     Mr. Thomas O'Farrell
      Cook County State's Attorney          Register No. K-54340
      300 Daley Center                      Pontiac Correctional Center
      Chicago, Illinois  60602              P.O. Box 99
                                            Pontiac, IL 61764

You are hereby notified that on October 6, 2004, we personally delivered the original and three copies of the attached Motion to Dismiss Appeal in the above-entitled cause to the Clerk of the above Court, a copy of which is hereby served on you.

KARI K. FIREBAUGH
Assistant Appellate Defender

STATE OF ILLINOIS   )
                    ) SS
COUNTY OF COOK      )

The undersigned, being first duly sworn on oath, deposes and says that he personally delivered the required number of copies of the attached Motion to the Clerk of the above Court and to the State's Attorney of Cook County on October 6, 2004.

CLERK

SUBSCRIBED AND SWORN TO BEFORE ME
on October 6, 2004.

NOTARY PUBLIC
Official Seal
Alicia M. Corona
Notary Public State of Illinois
My Commission Expires 05/21/06

29



No. 1-03-3404

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the Circuit Court |
| | ) | of Cook County, Illinois. |
| Respondent-Appellee, | ) | |
| | ) | |
| -vs- | ) | No. 95 CR 30463. |
| | ) | |
| THOMAS O'FARRELL, | ) | Honorable |
| | ) | Michael P. Toomin, |
| Petitioner-Appellant. | ) | Judge Presiding. |

## MOTION TO DISMISS APPEAL AS MOOT

Appellant, Thomas O'Farrell, by Michael J. Pelletier, Deputy Defender, and Kari K.

Firebaugh, Assistant Appellate Defender, Office of the State Appellate Defender, respectfully

moves that this court dismiss his appeal as moot.

In support of this motion counsel states:

1.     Appellant was convicted of first degree murder and sentenced to a 50-year term of

imprisonment by the Honorable Michael P. Toomin on February 24, 1997.  On direct appeal,

appellant's conviction was affirmed by this court in an unpublished order on March 24, 1999.

*People v. O'Farrell*, No. 01-97-0911.

2.     Appellant is currently incarcerated.

3.     On January 25, 2000, appellant filed his first *pro se* post-conviction petition.

Counsel was appointed to represent appellant, and filed an amended petition and an amendment

to the amended petition.  On October 4, 2001, the State's motion to dismiss these petitions was

granted.

4.      On November 1, 2001, appellant mailed four documents to the circuit court clerk: an Affidavit of Intent to File an Appeal to the Appellate Court of Illinois, First Judicial District, a Motion for Leave to File and Proceed In Forma Pauperis, a Motion for Appointment of Appellate Panel Counsel or Pro-Bono Counsel, and a Motion for Transcripts and Common Law Records.

5.      On December 5, 2001, the court denied appellant's motions and declined to recognize his affidavit of intent as a notice of appeal. Appellant continued to make efforts to have his notice of intent filed and processed as a notice of appeal, but was unsuccessful.

6.      On May 27, 2003, appellant filed a second *pro se* post-conviction petition, which the court dismissed on July 24, 2003. A notice of appeal was filed on August 12, 2003, and on August 22, 2003, the Office of the State Appellate Defender was appointed to represent appellant.

7.      Upon review of the record in this appeal, appellate counsel became aware of the clerk's failure to process his notice of intent as a notice of appeal following the dismissal of appellant's first post-conviction petition and, on August 24, 2004, filed a motion asking this court to allow appellant leave to file a late notice of appeal. Appellant's motion was granted on September 7, 2004.

8.      Two of the three issues raised in appellant's second post-conviction petition are also raised in his first *pro se* petition and the third issue concerns post-conviction counsel's failure to file a notice of appeal. That third issue is now moot as this court has allowed appellant to appeal from the dismissal of the first post-conviction, and the other two issues can now be more appropriately addressed in that appeal. The appeal from the dismissal of the second post-conviction petition is thus now moot, and should be dismissed.

WHEREFORE, appellant, Thomas O'Farrell, respectfully requests that this court grant his motion.

Respectfully submitted,

KARI K. FIREBAUGH
Assistant Appellate Defender
Office of the State Appellate Defender
203 North LaSalle Street - 24th Floor
Chicago, Illinois 60601
(312) 814-5472

COUNSEL FOR PETITIONER-APPELLANT

No. 1-03-2619

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the Circuit Court of Cook County, Illinois. |
| Respondent-Appellee, | ) | |
| -vs- | ) | No. 95 CR 30463. |
| THOMAS O'FARRELL, | ) | Honorable Michael P. Toomin, |
| Petitioner-Appellant. | ) | Judge Presiding. |

**ORDER**

This matter coming to be heard on Appellant's motion, all parties having been duly notified, and the Court being advised in the premises,

IT IS HEREBY ORDERED:

That Appellant's Motion to Dismiss Appeal is allowed/denied.

_____
PRESIDING JUSTICE

_____
JUSTICE

_____
JUSTICE

**ORDER ENTERED**

MAR 2 9 2004

APPELLATE COURT, FIRST DISTRICT

DATE: _____
MICHAEL J. PELLETIER
Deputy Defender
Office of the State Appellate Defender
203 North LaSalle Street - 24th Floor
Chicago, Illinois  60601
(312) 814-5472
COUNSEL FOR PETITIONER-APPELLANT

5–3

33

**Westlaw.**

ILCS S. Ct. Rule 606

**C**

Formerly cited as IL ST CH 110A ¶ 606

*WEST'S* SMITH-HURD ILLINOIS COMPILED STATUTES ANNOTATED
COURT RULES
ILLINOIS SUPREME COURT RULES
**ARTICLE VI. APPEALS IN CRIMINAL CASES, POST-CONVICTION CASES, AND JUVENILE COURT PROCEEDINGS**
➡ **Rule 606. Perfection of Appeal**

**(a) How Perfected.** In cases in which a death sentence is imposed, an appeal is automatically perfected without any action by the defendant or his counsel. In other cases appeals shall be perfected by filing a notice of appeal with the clerk of the trial court. The notice may be signed by the appellant or his attorney. If the defendant so requests in open court at the time he is advised of his right to appeal or subsequently in writing, the clerk of the trial court shall prepare, sign, and file forthwith a notice of appeal for the defendant. No step in the perfection of the appeal other than the filing of the notice of appeal is jurisdictional.

**(b) Time.** Except as provided in Rule 604(d), the notice of appeal must be filed with the clerk of the circuit court within 30 days after the entry of the final judgment appealed from or if a motion directed against the judgment is timely filed, within 30 days after the entry of the order disposing of the motion. When a timely posttrial or postsentencing motion directed against the judgment has been filed by counsel or by defendant, if not represented by counsel, any notice of appeal filed before the entry of the order disposing of all pending postjudgment motions shall have no effect and shall be stricken by the trial court. Upon striking the notice of appeal, the trial court shall forward to the appellate court within 5 days a copy of the order striking the notice of appeal, showing by whom it was filed and the date on which it was filed. This rule applies whether the timely postjudgment motion was filed before or after the date on which the notice of appeal was filed. A new notice of appeal must be filed within 30 days following the entry of the order disposing of all timely postjudgment motions. Within 5 days of its being so filed a copy of the notice of appeal or an amendment of the notice of appeal shall be transmitted by the clerk of the circuit court to the clerk of the court to which the appeal is taken. Except as provided in paragraph (c) below, and in Rule 604(d), no appeal may be taken from a trial court to a reviewing court after the expiration of 30 days from the entry of the order or judgment from which the appeal is taken. The clerk of the appellate court shall notify any party whose appeal has been dismissed under this rule.

**(c) Extension of Time in Certain Circumstances.** On motion supported by a showing of reasonable excuse for failing to file a notice of appeal on time filed in the reviewing court within 30 days of the expiration of the time for filing the notice of appeal, or on motion supported by a showing by affidavit that there is merit to the appeal and that the failure to file a notice of appeal on time was not due to appellant's culpable negligence, filed in the reviewing court within six months of the expiration of the time for filing the notice of appeal, in either case accompanied by the proposed notice of appeal, the reviewing court may grant leave to appeal and order the clerk to transmit the notice of appeal to the trial court for filing.

**(d) Form of Notice of Appeal.** The notice of appeal shall be substantially in the following form:

In the Circuit Court of the _____ Judicial Circuit, _____ County, Illinois,

(or In the Circuit Court of Cook County)

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

ILCS S. Ct. Rule 606

THE PEOPLE OF THE STATE OF ILLINOIS,

     v.                           No. _____

_____

Notice of Appeal

An appeal is taken from the order or judgment described below.

(1) Court to which appeal is taken: _____

(2) Name of appellant and address to which notices shall be sent.

Name: _____

Address: _____

(3) Name and address of appellant's attorney on appeal.

Name: _____

Address: _____

If appellant is indigent and has no attorney, does he want one appointed?

(4) Date of judgment or order: _____

(5) Offense of which convicted: _____

(6) Sentence: _____

(7) If appeal is not from a conviction, nature of order appealed from: _____

(8) If the appeal is from a judgment of a circuit court holding unconstitutional a statute of the United States or of this state, a copy of the court's findings made in compliance with Rule 18 shall be appended to the notice of appeal.

                        (Signed)   _____
                                       (May be signed by appellant, attorney
                                       for appellant, or clerk of circuit
                                       court.)

The notice of appeal may be amended as provided in Rule 303(b)(4).

**(e) Copies of Notice of Appeal to be Sent by Clerk.**

(1) *When Defendant Is Appellant and Action Is Prosecuted by the State.* When the defendant is the appellant and the action was prosecuted by the State, the clerk shall send a copy of the notice of appeal to the State's Attorney of the county in which the judgment was entered and a copy to the Attorney General at his Springfield, Illinois, office.

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

EXHiBiT 3

## ~~Offen~~der **Authorization for** Payment

Posting Document # _____          Date April 17, 2008

Offender Name Thomas Chapiac          ID# K54346          Housing Unit ___ ___

Pay to U.S. postal Service

    Address _____

    City, State, Zip _____

The sum of _____ dollars and _____ cents charged to my trust fund

account, for the purpose of Envelope #2 of 3 Habeas Corpus

☒ I hereby authorize payment of postage for the attached mail. ☐   I hereby request information on electronic
funds transfers to be placed in the attached mail.

Offender Signature _____          ID# K54346

Witness Signature _____          █████ APR 1█ ████

☐ Approved ☐ Not Approved    Chief Administrative Officer Signature _____

Postage applied in the amount of _____ 5 _____ dollars and _____ cents.

Distribution: Business Office, Offender

Printed on Recycled Paper

DOC 0296 (Eff. 1/2006 )
(Replaces DC 628)

---

ILLINOIS DEPARTMENT OF CORRECTIONS

EXHiBiT 3

## ~~Offen~~der **Authorization for** Payment

Posting Document # _____          Date April 17, 2008

Offender Name Thomas Chapiac          ID# K54346          Housing Unit ___ ___

Pay to U.S. postal Service

    Address _____

    City, State, Zip _____

The sum of _____ dollars and _____ cents charged to my trust fund

account, for the purpose of Envelope #1 of 3 Habeas Corpus

☒ I hereby authorize payment of postage for the attached mail. ☐   I hereby request information on electronic
funds transfers to be placed in the attached mail.

Offender Signature _____          ID# K54346

Witness Signature _____          ████████ APR 1█ ████

☐ Approved ☐ Not Approved    Chief Administrative Officer Signature _____

Postage applied in the amount of _____ 5 _____ dollars and ___ 05 ___ cents.

Distribution: Business Office, Offender

Printed on Recycled Paper

DOC 0296 (Eff. 1/2006 )
(Replaces DC 628)

EXHIBIT 4

## Offender Authorization for Payment

Posting Document # _____ Date _April 13, 2008_

Offender Name _Thomas Chatterl_ ID# _K54316_ Housing Unit _Sp-C-52_

Pay to _U.S. Postal Service_

Address _____

City, State, Zip _____

The sum of _____ dollars and _____ cents charged to my trust fund

account, for the purpose of _Envelope #3 of 3 Habeas Corpus_

[X] I hereby authorize payment of postage for the attached mail. [ ] I hereby request information on electronic funds transfers to be placed in the attached mail.

Offender Signature _____ ID# _K54316_

Witness Signature _____

[ ] Approved [ ] Not Approved   Chief Administrative Officer Signature _____

Postage applied in the amount of _____5_____ dollars and __05__ cents.

Distribution: Business Office, Offender

Printed on Recycled Paper

DOC 0286 (Eff. 1/2006)
(Replaces DC 628)

EXHIBIT 5



### State of Illinois
### Circuit Court of Cook County
### Criminal Division

Michael P. Toomin
Supervising Judge
July 24, 2003

2600 S. California Avenue
Chicago, Illinois 60608
(773) 869-3059
Fax: (773) 869-4963

Thomas O'Farrell
Reg. #K54340
P.O. Box 99
Pontiac, Illinois 61764

Re: People of the State of Illinois v. Thomas O'Farrell
P.C. No. 95 CR 30463

Dear Mr. O'Farrell:

Enclosed herewith please find the order dismissing your successive petition for post-conviction relief entered this date.

In the event you are desirous of appealing from the dismissal order, you have 30 days to file a Notice of Appeal with the Clerk of the Circuit Court of Cook County. If you plan to proceed *pro se*, I would suggest that you conform to the requirements of Supreme Court Rule 303, which specifies the form and contents of a notice of appeal. Your previous efforts to obtain appellate review of this court's dismissal orders failed because the "Affidavit of Intent to File an Appeal" you filed was not in form or substance a "Notice of Appeal". Consequently it did not suffice to vest jurisdiction in the reviewing court.

Very truly yours,

Michael P. Toomin
Supervising Judge
Circuit Court of Cook County
Criminal Division

MPT:at
enclosures

*Exhibit 6*

105256

**SUPREME COURT OF ILLINOIS**
**CLERK OF THE COURT**
SUPREME COURT BUILDING
SPRINGFIELD, ILLINOIS 62701
(217) 782-2035

November 29, 2007


Mr. Thomas O'Farrell
Reg. No. K-54340
Pontiac Correctional Center
P. O. Box 99
Pontiac, IL 61764

No. 105256 - People State of Illinois, respondent, v. Thomas
            O'Farrell, petitioner.  Leave to appeal, Appellate
            Court, First District.


     The Supreme Court today DENIED the petition for leave to

appeal in the above entitled cause.


     The mandate of this Court will issue to the Appellate Court

on January 4, 2008.



**Chicago Tribune**
INTERNET EDITION

A Fresh NEW Website from

| Home | | Go | | | OK |

**COMPLETE COVERAGE**
**Part 1**

**Part 2**

**Part 3**

# The jailhouse informant

**By Steve Mills
and Ken Armstrong**
Tribune Staff Writers
*November 16, 1999*

**FEATURED ADVERTISERS**



**Browse by:**

Category

Go

**WINTER SPECIAL**
Treat yourself and friends to Chicago's favorite cheesecake.



**Jewel-Osco**
**What's for dinner?**
Search **Jewel's** "Meals Made Easy" recipes:

Poultry

Go

-STORE LOCATOR-

Find the **Jewel** nearest you!

Zip Code

Go



**for all the business news you**

**ALSO IN THE NEWS**
Other stories and features
available

His criminal record dates to 1978 and includes more than a dozen convictions. He has been in the penitentiary four times and is wanted in four states. His parole officer once called him "a menace to society." A federal prosecutor wrote he was "a pathological liar . . . not worthy of this court's trust."

Indeed, Tommy Dye lies about almost everything, even his own name. He has a dozen aliases, court and police records show, and he uses them liberally, usually when he is arrested. William Zonka, Thomas O'Neil, Sean P. Kelly, Tommy Welch, Thomas Moriarty--Dye is the man behind each of

of the questions and issues brought up in the Tribune's series on the death penalty? Is the death penalty working in Illinois? What are the other options?



Wanted in four states, Tommy Dye is one of 46 jailhouse informants whose testimony helped put defendants on Death Row. (Handout)

**VIDEO**
• with Tribune reporters and a report on the Chicago Tribune series. (Courtesy of Chicago Tribune Television)

Case 1:08-cv-02403     Document 21     Filed 07/01/2008     Page 51 of 71



can use:

Moriarty--Dye is the man behind each of the names. Selling cocaine, he used the moniker Big Daddy Woo Woo.

Even under oath, Dye lies. He once told a judge he was the valedictorian at St. Michael's High School in Chicago, but he did not even finish high school. He told a federal grand jury that he graduated from the University of Pennsylvania. That, too, was a lie. He took some correspondence classes in prison and has worked as a waiter.



REPORT CARD

The failure of the death penalty in Illinois

But when Dye testified at the 1993 murder trial of Steve Manning, a corrupt former Chicago police officer facing a possible death sentence, Cook County prosecutors Patrick J. Quinn and William Gamboney asked jurors to believe that Dye was telling the truth.

Dye's testimony was the centerpiece of an otherwise weak case, one in which no physical evidence tied Manning to the murder. His word, and little more, put Manning on Death Row.

According to Dye, he and Manning were in Cook County Jail when Manning confessed to him the 1990 murder of a suburban trucking firm owner whose body was found floating in the Des Plaines River.

Manning, Dye testified, admitted committing the execution-style killing during six hours of tape recordings that Dye secretly made using a tiny recorder an FBI agent strapped to the inside of his right thigh.

But when the tapes were played in court, there were no murder confessions. Dye's explanation: Manning's confessions were lost in two seconds-long gaps in the recordings, one caused by a malfunction, the other by Dye bending over and inadvertently covering the microphones tucked under the waistband of his underwear.

In return for testifying against Manning, Dye's 14-year prison sentence on theft and firearms charges was cut to 6 years, and, according to court documents, he and a girlfriend were placed in the federal Witness Protection Program. Other criminal charges against him were dropped.

Dye's pivotal role in the Manning conviction provides a troubling glimpse into the world of the jailhouse informant, or snitch, the prisoner who trades information for favors--most often giving prosecutors a confession he claims he heard in exchange for some type of favor or leniency.

The use of such untrustworthy witnesses carries considerable costs in death-penalty cases--and not only by undermining the foundation of cases where the stakes are the highest. The misuse of informants also adds financial costs to taxpayers when convictions based on their testimony are retried or exonerated defendants receive court settlements.

Even prosecutors acknowledge that jailhouse informants are among the least reliable of witnesses. Yet in Illinois, at least 46 inmates have been sent to Death Row in cases where prosecutors used a jailhouse informant, according to a Tribune investigation that examined the 285 death-penalty cases since capital punishment was reinstated in 1977.

In about half of those 46 cases, the informant played a significant role in the conviction. Often, prosecutors put jailhouse informants on the witness stand in cases where the evidence of guilt was flimsy or during sentencing to demonize a defendant with inflammatory accounts of the crime.

Prosecutors tried to use jailhouse informants in numerous other cases as well, according to the Tribune's investigation, but backed off after defense attorneys challenged their

truthfulness and threatened to expose their backgrounds.

Snitch testimony helped convict or condemn 4 of the 12 Illinois Death Row inmates who were later exonerated. In two other cases, prosecutors had jailhouse informant testimony ready but did not use it.

Little to lose, much to gain

While prosecutors say jailhouse snitches can provide important--and truthful--testimony, informants have little to lose by lying on the witness stand. Rarely are they charged with perjury. Instead, they often have something very real to gain: time shaved off their sentence, creature comforts in jail or some other favor from prosecutors.

Informants who fabricate stories can glean details of a crime from newspapers or another inmate's legal papers and stitch them together into a compelling confession. In the most notorious cases, prosecutors and police have been accused of providing them with false stories to tell.

In Los Angeles, Leslie Vernon White was such a prolific jailhouse informant that in 1988 he demonstrated for jailers how simple it was to concoct a confession and convince prosecutors it was genuine.

Using a jail telephone, White--a convicted kidnapper, robber and car thief--posed as a police officer, prosecutor and bail bondsman to obtain information about a murder suspect he had never met, then falsified jail records to show he had shared a cell with the suspect.

White's demonstration, and his admission that he had lied in a dozen cases for prosecutors, sparked an uproar and a grand jury report assailing the Los Angeles County district attorney's office for habitually using informant testimony in murder cases, even when prosecutors had

substantial reason to doubt the informant's truthfulness.

Stung by White's disclosures, the district attorney's office in 1989 set up a clearinghouse to monitor and centralize information about jailhouse informants and required prosecutors to corroborate informant statements.

California courts also responded to the White scandal, crafting a special instruction warning jurors to view a jailhouse informant's testimony with skepticism.

Oklahoma's highest criminal court went even further when faced with a death-penalty case that depended on dubious snitch testimony.

In July, the court overturned the double-murder conviction and death sentence of Rocky Eugene Dodd and, in an extraordinary move, set up a system to screen informants before they testify at trial.

Prosecutors in Oklahoma must disclose an informant's criminal background, any deal they have made with him, the alleged confession he obtained and all other cases in which the informant played a similar role--no matter how minor.

Moreover, judges now must conduct a separate pretrial hearing on the snitch's reliability to determine, for example, whether the snitch's testimony can be corroborated. Judges also must instruct jurors to be wary of these witnesses.

Illinois courts have never been moved to take such steps, although the Illinois Supreme Court may address the issue as part of a broader effort to reform the state's death-penalty system.

Northwestern University law professor Lawrence Marshall, whose work helped exonerate two of Illinois' Death Row

inmates, suggests that prosecutors be barred from using jailhouse informants in death-penalty cases.

"If they're so desperate that they're going to use snitches," he said, "then death shouldn't be an option."

Mindful of how prosecutors use jailhouse testimony, many defense attorneys warn their clients not to talk to other prisoners. That is what Arlie Ray Davis' attorney instructed Davis to do when he was arrested in connection with the 1995 murder of Laurie Gwinn in Henry County in northwestern Illinois. The attorney was so fearful he even asked jail officials to put Davis in his own cell but was turned down.

Davis, according to jailers' testimony, took his attorney's advice to heart. They said he never talked to fellow inmates, even ignoring their questions.

But one day, Davis testified, he returned to his cell from the showers to find his cellmate, William Joe Tennison, rifling through his court papers. Tennison, who had convictions for forgery, burglary and domestic battery, later told prosecutors that Davis confessed to him.

Tennison also testified that Davis told him he wished he had killed his co-defendant and quoted him making disparaging remarks about Gwinn.

"There's no way Arlie Ray talked to this guy Tennison like he said he did," said Davis' attorney, Edward Waller. "I mean, he caught him going through his court papers. Then all of a sudden he's got a confession? Come on."

For all the criticism of the use of jailhouse informants, especially in death-penalty cases, prosecutors continue to put them on the witness stand, setting aside doubts about their credibility in an effort to win

convictions.

Willie Williams, a three-time felon, testified he read newspaper accounts of the 1988 slayings of five people on Chicago's South Side before he contacted police to report that a friend, Ronald Kitchen, had confessed during a collect phone call.

Telephone company records showed no call from the prison where Williams was being held. When police moved Williams from Vandalia Correctional Center to the Cook County Jail's witness quarters, he made more than a half dozen tape-recorded calls to Kitchen. But Williams failed to elicit any information about the slayings.

Still, Williams was an important witness for prosecutors in convicting Kitchen, who remains on Death Row while he appeals his case.

Officials in the Cook County state's attorney's office say their policy for jailhouse informants is to begin with the assumption the informant is lying, vigorously test the claim and try to find corroboration.

"When we deal with snitches," said Bob Benjamin, a spokesman for State's Atty. Dick Devine, "we deal from this point: Most likely they're lying, so you have to double-prove and triple-prove everything they say."

A history of lies

The prolific Dye has been a favorite of Cook County prosecutors. In addition to his involvement in the Manning prosecution, Dye has relayed disputed confessions in at least two other cases--one of them a murder.

He also provided testimony or information to federal prosecutors against five other defendants, according to documents obtained by the Tribune.

Dye apparently told his first lie under oath when he was 18 years old and applying for a passport. He swore his name was Dave Street.

From there, according to court documents, he lied on everything from driver's license forms to job applications. He often lied to women. Good-looking and well-spoken, with an apartment at Presidential Towers on the Near West Side, Dye met women drinking at the bars on Rush Street, then went home with them.

When they went into the bathroom or fell asleep, Dye stole their jewelry or cash, according to Cook County court documents. This occurred so many times that the late Chicago Tribune columnist Mike Royko wrote about him in 1989 and 1990.

"He's handsome. He's witty. He's funny," said Michelle Keortgen, a victim of Dye's in the late 1980s. "It's easy to mistake him for a good person."

Dye lied to the police, prosecutors and judges as well. Even some of his attorneys feared that he might ensnare them in his fabrications.

"I'm always afraid to talk to him," said lawyer Kenneth Flaxman, who represented Dye in a 1990 lawsuit. "You never know if he's trying to set you up."

When Dye began to cooperate with authorities, he had to own up to the falsehoods. So whenever he testified, prosecutors began by asking about his lies, hoping to show jurors that, by acknowledging a less-than-truthful past, he had abandoned it.

Dye's formal cooperation with authorities began in 1990, when he was in Cook County Jail awaiting trial on three felony charges of robbery and theft, according to

court records. At the same time, he was
serving a 14-year sentence on separate theft
and firearms charges.

That August, Manning also was in jail,
awaiting extradition to Missouri to face
charges of kidnapping two drug dealers.
Manning, a former Chicago police officer
who had been convicted of a car insurance
fraud scheme, had a checkered history that
included cooperating as an informant for
federal authorities. According to documents,
federal prosecutors suspected Manning in as
many as a half-dozen murders.

Dye and Manning were in protective
custody at the jail because of their particular
security needs--Dye because he was an
informant, Manning because as a former
police officer he could be a target of other
prisoners.

Manning would seem an unlikely person to
be caught by a jailhouse informant. He once
even filed a lawsuit alleging officials were
using an informant to trap him, saying it
was a violation of his civil rights. And as a
former police officer, he knew how
informants were used.

On Aug. 22, five days after Manning
arrived, Dye met with the FBI and agreed to
tape-record his conversations with
Manning. He wore the recorder for the first
time on Aug. 24, a Friday, and taped
conversations through the weekend,
according to court documents.

Their conversations, according to Dye,
revolved around "anything two guys could
talk about under those circumstances."
What that meant, Dye explained at a pretrial
hearing, was "primarily crime--crimes that
we had done, crimes that we were aware of."

Dye made six hours of recordings, none of
them flattering to Manning. Manning talked
about the Missouri kidnapping charges--he

was convicted and sentenced to two life terms plus 100 years in prison--and other illegal schemes since he resigned from the Police Department.

He even discussed ways they could provide alibis for each other.

But James Pellegrino, the trucking company owner whom Manning was alleged to have killed, is never mentioned, according to the transcripts.

"There's no confession . . . not a syllable. Nothing," Manning said during an interview with the Tribune in a high-security section of Cook County Jail.

In the debriefing reports written after the tapings by FBI agents--which were obtained by the Tribune--Dye is not quoted telling the federal agents that Manning had confessed to the Pellegrino homicide.

"You have to ask yourself why he doesn't mention that Manning confessed," Manning's attorney, Raymond J. Smith, who was appointed by the court to represent Manning on appeal, said in an interview. "I think the answer's obvious. It's because Manning never did confess."

There were plenty of reasons for prosecutors Quinn and Gamboney to doubt Dye's credibility.

In May 1991, more than two years before Manning went on trial, Dye testified in a federal drug case in which prosecutors tried to seize Chicago attorney Stuart Goldberg's black 1986 Porsche, saying he had used the car in drug deals.

Dye testified that he saw Goldberg drive the Porsche in 1984. But, according to trial testimony, Goldberg did not buy the car until 1986.

Federal prosecutors lost the case, in large

part because of Dye.

"He's no better than a rent-a-witness," said
Dennis Berkson, who represented Goldberg
and conducted a withering
cross-examination of Dye. "He just makes
this stuff up. And the government doesn't
care."

By the time Manning went to trial in
October 1993, Quinn, now an Illinois
Appellate Court judge, and Gamboney, who
now is in private practice, offered Dye as
the star witness. Gamboney's questioning
began like so many others; he asked Dye's
name and his age.

Then things took a turn.

"Is that the name that you're using now?"
Gamboney asked.

"No, sir," responded Dye, who had an
armed federal marshal at his side.

"Are you able to tell us what your name is
now?" Gamboney asked.

"No, sir."

By then, Dye was in the Witness Protection
Program for his work on the Manning
prosecution. He was getting a stipend from
the federal government and cooperating in
other cases.

He also had an explanation for why
Manning's alleged confessions were not
captured on the tapes. The first confession,
Dye testified, occurred during a two-second
gap on the tape. It could not be heard, Dye
said, because he was bent over as Manning
demonstrated how he shot Pellegrino and
his body covered the microphone.

The second supposed confession, Dye said,
was lost when the recorder malfunctioned.

"There's going to be times whenever you
bend over," Dye told the jury, "whenever

you move a certain way, where it stops the recording."

Dye declined to comment about his role in the Manning case. Quinn would not discuss the case in detail, saying that Gamboney was the lead prosecutor and that Dye was Gamboney's witness.

Gamboney told the Tribune that Dye was treated with "some skepticism" and that he and Quinn would not have used him as a witness had he not worn the tape recorder.

But he said Dye was able to provide prosecutors information from Manning that only the killer would have known--although none of it was on the tapes. And he offered an explanation prosecutors often use when their witnesses have criminal pasts.

"The old line is that we're not dealing with altar boys or Boy Scouts," he said in an interview. "I didn't have any problem with his credibility. The judge didn't, and neither did the 12 jurors. Yes, he is a scam artist. But in this particular case we checked, and what he said checked out."

Gamboney, however, wouldn't discuss how authorities corroborated Dye's testimony.

The rest of the testimony against Manning came from Pellegrino's wife, Joyce, and an associate. His wife said that when she last saw her husband, he told her that if he didn't return to tell the FBI that Manning had killed him.

The associate, a convicted felon named Ronald Tyrakowski, was serving a 10-year federal prison sentence when he testified as part of a deal with prosecutors. He said he last saw Pellegrino just before Pellegrino was supposed to meet Manning to buy more than $50,000 worth of cocaine.

A jury convicted Manning, and Judge Edward M. Fiala Jr. sentenced him to death.

One factor in the verdict was that jurors didn't like Manning's demeanor. "I just had this feeling Manning was laughing at the process, like he thought he was going to beat the system," said juror Carole Burval. "That really got to me."

Some jurors also said they didn't think prosecutors would rely on an untruthful witness. "I thought maybe the confession didn't really happen," said juror Donna Woodlock. "But who am I to say?"

Reversal of fortune

Early last year, the Illinois Supreme Court reversed Manning's conviction and death sentence, but not because of the tapes. The court ruled that Joyce Pellegrino's testimony was unreliable hearsay and should not have been admitted. It said the tape recordings that dealt with other alleged crimes also were inadmissible. Manning is awaiting a new trial.

Writing for the court, Chief Justice Charles Freeman called the evidence against Manning "minimally sufficient." He said that without Dye's testimony, a conviction would have been difficult.

The cooperation between prosecutors--especially Quinn--and Dye did not end with Manning's trial, according to court records, prosecutors' letters and other documents.

Dye told Quinn another inmate, Thomas O'Farrell, had confessed to the 1995 murder of his wife. Dye testified for prosecutors, and O'Farrell was found guilty and sentenced to 50 years in prison.

Cook County Assistant State's Atty. Steven Krueger also threatened to use Dye in a 1995 sex case against Steven Ehrlich. According to Krueger, Quinn offered Dye as a witness, saying Dye heard Ehrlich's

confession in jail. Ehrlich pleaded guilty to aggravated criminal sexual assault, so Krueger never had to use Dye.

With Dye, there always were questions about how he got his information. O'Farrell and Ehrlich filed grievances with the County Jail that alleged Dye read their court papers when they briefly were out of their cells.

"I didn't tell that guy a thing," O'Farrell said from the Joliet Correctional Center, where he was serving a 50-year sentence for murder.

Dye's cooperation benefited him immensely, and it was Quinn who often made that happen. Court records and correspondence among prosecutors show that he helped Dye get a placement in protective custody at the Illinois River Correctional Center, a medium-security prison in Canton.

He also urged DuPage County prosecutors to sweeten a plea deal in a theft case. In a March 1996 letter to prosecutor Jeff Kendall, Quinn asked that Kendall lower his plea offer for Dye to 4 years from 5, saying Dye was instrumental in the Manning case, as well as other murder investigations.

But Dye's goodwill was running out. Around this time, Dye was offering help in another case, but on this occasion against the government. Dye, according to court documents, offered testimony against a key government witness in a drug-related case in federal court, saying the man had made incriminating admissions to him.

Federal prosecutors responded by attacking Dye's credibility, arguing that he was not to be believed.

In 1996 court documents, they called Dye an "accomplished con artist" with a "nefarious background." Dye, the

government wrote, is "an admitted perjurer," "an admitted drug dealer" and "a career criminal." He had been thrown out of the Witness Protection Program, according to court papers.

Dye returned to Chicago earlier this year. At the time, Cook County officials and the state Department of Corrections had fugitive warrants for him. Others were searching for him as well.

Dye is wanted in Miami, where he said his name was Sean P. Kelly when he was arrested in 1995 and charged with fraud and theft from a South Beach restaurant. He is wanted in Baltimore, where a July 1998 warrant charges him with auto theft.

Police in Denver are seeking Dye for a robbery and consider him armed and dangerous. Police in San Diego issued a warrant charging Dye with burglary, grand theft and auto theft and are seeking his extradition, according to officials.

Today, Dye is being held in Cook County Jail. On Aug. 25, he was arrested and charged with theft from The Fireplace Inn, a Near North Side restaurant where he worked for five days, according to police and court records. His new attorney: Gamboney, the former prosecutor who, with Dye's testimony, helped send Manning to Death Row.

But unlike most jail inmates, Dye is being held in special witness quarters, watched not by guards but by investigators for the state's attorney's office. The setting is more dormitory than jail, and Dye has more privileges than most inmates. He has not been extradited.

When Manning goes on trial for a second time, prosecutors again plan to put Dye on the witness stand. This time, his credibility will be strained further than at Manning's

first trial--by both the government's blistering attack on his character and all the new criminal charges.

Again, prosecutors will likely begin Dye's testimony with a long recitation of his criminal history--the aliases, the arrests, the convictions.

And again, they will have to ask a jury to believe that, this time, Dye is telling the truth.

- 
- 

RETURN TO TOP |



# Illinois Death Row defendants who have been exonerated

The 13 men released from Death Row since 1977 have been exonerated for various reasons, including new DNA evidence and recanted testimony was used to convict or condemn the defendant.



## Death Row

CONTINUED FROM PAGE 1.

happens to the justice system, when the public's well-founded fear of criminal-trial results in giving police and prosecutors a mandate to convict at all costs, even if some innocents are wrongly con-victed."

Manning will not be freed as a result of Tuesday's decision. He is serving a 14-year prison sentence in Missouri on unrelated kidnapping charges, although he is appealing those convictions as well.

Regarding the decision to drop the charges against Manning, Bob Benjamin, a spokesman for Cook County State's Atty. Dick Devine, initially, the fact that Manning is

going to Missouri to serve two life sentences plus 1100 years is some consolation."

"When Manning stood trial for murder in 1990, Dye testified that while he and Manning shared a Cook County Jail cell, Manning twice confessed to him that he was making it difficult for prosecutors to take the case to trial again.

Smith praised Devine for drop-ping the charges but said he hopes there is so will be an investigation at the request of the FBI, failed to reveal any such information, telling Dye that he killed Palle-grino. "That's the end of it. This guy was on Death Row," he said.

In exchange for his testimony, Dye had his 14-year prison sen-



A file photo of Carl Lawson appears courtesy of St. Louis Post-Dispatch. It was taken by J.B. Forbes.

M.Y
Copy

ExhiBit 9

Thomas O'Farrell
K54340
P.O. Box 99
Pontiac, Illinois 61764

March 13,2001

Deborah J. Gubin,
Deborah J. Gubin & Associates
605 West Madison - Suite 331
Chicago, Illinois 60661

Ms. Gubin,

     Accompanying this letter is my affidavit, police report and
authorization for you to remove exhibit #15, the hospital report
of my wife, Lesley from my original post-conviction petition as
we discussed on the attorney visit dated march 12, 2001.    I am
also authorizing you to put my wife, Lesley's estate documents
in an amended post-conviction petition and file said document in
addition to my original post-conviction petition as we discussed
in our attorney visit on march 12, 2001.    Lastly, I authorize
you to add the issue on the amended post-conviction petition on
the illegal arrest without probable cause as we discussed on our
visit on march 12, 2001.    I am enclosing a copy of the arrest
report dated september 28, 1995, which I showed you on our visit
on march 12, 2001.    Please take notice to box #30 of said report,
which you will find on line (6) six, (6) boxes to the right of the
report, titled **arrestee transported.**    Notice the time of arrest
noted on said report.    It clearly showes that I was placed under
arrest at 7:20 a.m., which was the time I claimed to be arrested
in my motion to supperess arrest.    It is clearly approximatly
(2) two hours prior to the discovery of the weapon at my home and
without probable cause.    This document is clearly a chicago
police department arrest report.    This document is undisputable,
is not fabricated by myself or anyone that I know.    It clearly
showes that detective's Szeluga and Schak perjured themselves
during my court proceedings, when they both stated that I **was not
placed under arrest until after 9:00-9:30a.m.,** after the weapon
was discovered at my home.

     I know that you insisted that I drop the issue on prosecuto-
rial misconduct that I raised in my original post-conviction
petition on our visit dated march 12, 2001.    You did not want to
pursue this issue because Appellate Court Judge Patrick Quinn and
Cook County Judge Nicholas Ford may or may not deny your other
clients proceedings and make your job difficult.    If Judges Quinn
and Ford did not violate my constitutional rights secured by both
the United States and Illinois Constitutions by illegally using
what they knew or what they should have known to be perjured
testimony (Thomas Dye) to justify the stiff sentece of (50) fifty
years imprisonment, they would not have to be fearing the loosing
of their new jobs as judges and/or their licence to practice law.
As for Judges Quinn and Ford getting pissed off at you for bringing
this issue to the light of the Courts and the public, I do not
care.    The only thing that I can say is if Judge's Quinn and Ford

show their bias towards your clients because you proceeded with this issue on prosecutorial miscunduct against them, you should appeal or have them remove themselves from those cases, but I refuse to bow down to them simply because the are now Judges in the Appellate Court and Circuit Court of Cook County.

Now if you have a problem with me or the issue I insist to raise, just remove yourself under a conflict of intrest and I will not object.

Thank you for your time and cooperation in this matter.

Sincerely,

Thomas O'Farrell,
Defendant

XC:file
   family

*EXHIBIT 10*

STATE OF ILLINOIS      )
                       )s
COUNTY OF LIVINGSTON   )

### AFFIDAVIT

I, Thomas O'Farrell, Defendant, hereby certify under penalty of perjury and as otherwise provided by law that the information and statements below are true and correct to the best of my knowledge:

1) On, or about, March 12, 2001, I had a attroeny visit at the Pontiac Correctional Center with my court appointed counsel, Deborah J. Gubin of DeboraH J. Gubin & Associates, 695 West Madison - Suite 331, Chicago, Illinois 60661;

2) On, or about, March 12, 2001, appellate counsel, Deborah J. Gubin refused to fully go through all the issues stated within my original post-conviction petition stating that " I have no time to go through each and every one of your claims within your original post-conviction petition. It's over (100) one hundred pages long and I must get back to the city for a meeting.";

3) On, or about, March 12, 2001, appellate counsel, Deborah J. Gubin insisted that I remove the prosecutorial misconduct issue from my original post-conviction petition against Appellate Court Judge, Patrick Quinn and Cook County Judge, Nicholas Ford who are Ex-Cook County Prosecutors who were involved in my original court proceedings. Appellate Counsel, Gubin stated that " I have and will have other clients in the future in front of both judge's Quinn and Ford and I fear that if I proceed on this issue of prosecutor misconduct against these judges they will get pissed off at me and take it out on my clients by ruling against them.";

4) The statements and claims stated within Defendants authorization document are true and correct to the best of my knowledge.

Further affiant sayth nought.

_____
Thomas O'Farrell,
Defendant

Subscribed and Sworn to before me
on this 13 day of March, 2001.

_____
Notary Public

STATE OF ILLINOIS        )
                         )ss
COUNTY OF LIVINGSTON )

## AUTHORIZATION

I, Thomas O'Farrell, Defendant, the undersigned, authorize my Appellate Counsel, Deborah J. Gubin of Deborah J. Gubin & Associates, 605 West Madison - Suite 331, Chicago, Illinois 60661 to do the following concerning my notice of appeal from the denial of my post-conviction petition on October 4, 2001:

1) I authorize my Counsel, Deborah J. Gubin to file on my behalh a notice of appeal in regards to the denial of my post-conviction petition as per our discussion on the telephone dated October 7, 2001.

_____
Thomas O'Farrell

Subscribed and Sworn to before me on this __9__ day of __OCTOBER__, 2001

_____
Notary Public

"OFFICIAL SEAL"
Kathryn J. Donovan
Notary Public, State of Illinois
My Commission Exp. 02/03/2007

CERTIFICATE OF SERVICE


    I, Thomas O'Farrell, Plaintiff, Pro-Se, swear under penalty of perjury that I served a copy of the attached documents on Michael R. Blankenheim, Assistant Attorney General, 100 W. Randolph St. - 12th Floor, Chicago, Illinois 60601, by placing it into the U.S. Mail at the Pontiac Correctional Center on June 25, 2008

RE: Case #08 C 2403

                                     Thomas O'Farrell,
                                     K54340, Pro-Se
                                   Plaintiff